CASE NO. 19-cv-60341-CIV-COOKE/HUNT

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 19-CV-60341-CIV-COOKE/HUNT

| | |
|---|---|
| OJ COMMERCE LLC; and <br> NAOMI HOME, INC., <br><br> *Plaintiffs*, <br><br> v. <br><br> KIDKRAFT, LP; and <br> MIDOCEAN PARTNERS, LP, <br><br> *Defendants*. | § § § § § § § § § § § § § § |

## DEFENDANTS' DISPOSITIVE MOTION TO DISMISS
## FOR FAILURE TO STATE A CLAIM

Defendants KidKraft, Inc. ("KidKraft") and MidOcean Partners IV, L.P. ("MidOcean")[1] respectfully move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the Complaint of Plaintiffs OJ Commerce LLC ("OJC") and Naomi Home, Inc. ("Naomi Home") for failure to state a claim upon which relief can be granted. Defendants submit the below memorandum of law in support of their motion to dismiss.

---

[1] Plaintiffs have named the incorrect legal entities. MidOcean Partners, L.P. and KidKraft, L.P. should be removed and replaced with MidOcean Partners IV, L.P. and KidKraft, Inc.

- 1 -

48474236;1

## MEMORANDUM OF LAW

## INTRODUCTION

The only conduct by KidKraft that is alleged in the Complaint is its termination of OJC as a retailer of KidKraft toy kitchens. Compl. ¶¶ 32-36. It is beyond dispute, however, that a manufacturer—even an alleged monopolist—has broad freedom to determine the persons with whom it will deal and, in particular, the distributors through which its products are sold. As the Supreme Court has emphasized, "as a general matter, the Sherman Act 'does not restrict the long recognized right of [a] trader or manufacturer engaged in an entirely private business, freely to exercise his own independent discretion as to parties with whom he will deal.'" *Verizon Comms. Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 408 (2004) (quoting *United States v. Colgate & Co.*, 250 U.S. 300, 307 (1919)). Plaintiffs' Complaint should be dismissed because it fails to offer any factual allegations showing that KidKraft's termination of a single retailer was anything other than an exercise of its right, or that it caused any harm to competition—an essential element of all of Plaintiffs' antitrust claims. OJC's alleged lost profits as a retailer of KidKraft toy kitchens are merely harm to one competitor in a vast retail marketplace, and do not establish the requisite harm to *competition*. Quite simply, the antitrust laws do not require KidKraft to continue selling to a retailer with which it no longer wishes to deal.

Plaintiffs attempt two paths around the general rule that a manufacturer has freedom to choose the retailers with whom it will deal. Both fail as a matter of law. First, Plaintiffs allege that OJC is affiliated with Naomi Home, which manufactures toy kitchens in competition with KidKraft. Compl. ¶¶ 15, 26. And they allege that KidKraft terminated OJC, at least in part, because it was unhappy that OJC was selling Naomi Home's competing toy kitchens. Compl. ¶¶ 32-34. But even assuming these facts as true, they do not support a claim. The antitrust laws do not require a manufacturer to continue to

sell to any retailer, and certainly not one with divided loyalties. To the contrary, a manufacturer—even an alleged monopolist—may terminate a retailer for carrying competitive products. *See, e.g., E-One, Inc. v. Oshkosh Truck Corp.*, 2006 WL 3320441, at *2–3 (N.D. Ill. Nov. 13, 2006) (defendant "cannot be forced to continue a relationship with a dealer who chooses to distribute products of defendant's competitor"); *Healthco Int'l, Inc. v. Adec, Inc.*, 1989 WL 104064, at *8 (D. Mass. Apr. 17, 1989) ("Even a manufacturer with monopoly power is not obliged to retain an ineffective dealer or one which has become its competitor."). Moreover, Plaintiffs offer no factual allegations showing harm to competition in relation to Naomi Home. For example, they offer no factual allegations suggesting that Naomi Home's ability to manufacture and sell its own toy kitchens depends in any way on whether its affiliated retailer (OJC) sells KidKraft toy kitchens at retail. That would make no sense. Plaintiffs likewise allege no facts showing that Naomi Home's ability to compete with KidKraft was harmed in any way when KidKraft stopped selling its toy kitchens to OJC.

Second, Plaintiffs attempt to concoct an antitrust conspiracy claim by asserting that KidKraft and MidOcean conspired to refuse to deal with OJC. This claim fails at the threshold, however, because MidOcean, a private equity firm, is the majority and controlling owner of KidKraft. That means Plaintiffs have not alleged an agreement among two or more separate entities, which dooms their antitrust conspiracy claims under the rule of *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 767 (1984).

For similar reasons, Plaintiffs' state law tortious interference claim against MidOcean fails as a matter of law. MidOcean is not a stranger to the business relationships of its portfolio company. Therefore, as a matter of law, MidOcean cannot have tortiously interfered with those relationships. *See, e.g., Volvo Aero Leasing, LLC v. VAS Aero Servs., LLC*, 2019 WL 1142330, at *3 (Fla. Dist. Ct. App. Mar. 13, 2019). Moreover, there is nothing tortious about KidKraft's decision to stop selling its toy kitchens to OJC, which was well within its rights.

At the very most, OJC alleges that it would have made more money if KidKraft had continued selling it toy kitchens to sell at retail. Even if true, however, Plaintiffs' marketplace disappointment is not harm to competition. KidKraft's decision to stop selling toy kitchens to this retailer is within its rights and did not cause harm to competition.

For these reasons and the reasons more particularly described below, the Complaint should be dismissed with prejudice.

## LEGAL STANDARDS

Under both Section 1 and Section 2 of the Sherman Act, "an antitrust plaintiff must show harm to competition in general, rather than merely damage to an individual competitor." *Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commc'ns., Inc.*, 376 F.3d 1065, 1069 (11th Cir. 2004). "The purpose of the Sherman Act is not to protect businesses from the working of the market; it is to protect the public from the failure of the market. The law directs itself not against conduct which is competitive, even severely so, but against conduct which unfairly tends to destroy competition itself." *Id.* (quoting *Spectrum Sports, Inc. v. McQuillan*, 506 U.S 447, 459 (1993)). Accordingly, an antitrust plaintiff must "allege facts that would support a showing of this harm to competition, rather than merely to itself." *Id.*

Moreover, a claim for monopolization under Section 2 of the Sherman Act (Count I) requires that Plaintiffs establish that KidKraft (a) possesses monopoly power, and (b) "the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *Trinko*, 540 U.S. at 407 (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966). "[T]he possession of monopoly power will not be found unlawful unless it is accompanied by an element of anticompetitive *conduct*." *Id.* (emphasis in original).

Plaintiffs' attempted monopolization claim (Count II) requires facts showing that "(1) the defendant has engaged in predatory or anticompetitive conduct with (2) a specific

intent to monopolize and (3) a dangerous probability of achieving monopoly power." *Spanish Broadcasting*, 376 F.3d at 1074 (quoting *Spectrum Sports*, 506 U.S. at 456).

Finally, to establish their claims under Section 1 of the Sherman Act (Counts III and IV), Plaintiffs must establish (a) "a 'contract, combination . . . or conspiracy' between *separate* entities," that (b) unreasonably restrains trade. *Copperweld*, 467 U.S. at 767 (emphasis in original). The conduct of a parent and its subsidiary "must be viewed as that of a single enterprise for purposes of § 1 of the Sherman Act." *Id.* at 771. To show an unreasonable restraint of trade under the rule of reason,[2] Plaintiffs must "prove (1) the anticompetitive effect of the defendant's conduct on the relevant market, and (2) that the defendant's conduct has no pro-competitive benefit or justification." *Spanish Broadcasting*, 376 F.3d at 1071. "[T]he 'anticompetitive effects' are measured by their impact on the market rather than by their impact on competitors." *Id.*

---

[2] Certain restraints are deemed illegal *per se*, such as "horizontal agreements among competitors to fix prices or to divide markets," but most asserted Section 1 violations are evaluated under the rule of reason. *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 886 (2007). If there is an agreement here, Plaintiffs do not allege that it is between horizontal competitors, as Plaintiffs recognize that MidOcean is a private equity firm, not a manufacturer of toy kitchens. To the extent there is any agreement not to deal with OJC, it "more closely resembles a unilateral refusal to deal" than a "group boycott" where multiple competitors agree not to deal with a third party. *See Seagood Trading Corp. v. Jerrico, Inc.*, 924 F.2d 1555, 1568-69 (11th Cir. 1991) ("That LJS may have instigated M-B's refusal to deal does not create the plurality of 'refusals' necessary for the arrangement to be called a group boycott."). Accordingly, any alleged agreement here must be analyzed under the rule of reason. *Id.*

## ARGUMENT

**I.   Plaintiffs' Antitrust Claims Fail as a Matter of Law Because They Have Not Alleged Any Harm to Competition.**

Plaintiffs' claims are based solely on KidKraft's decision that it will no longer do business with OJC as a retailer of KidKraft's toy kitchens. "[A]s a general matter, the Sherman Act 'does not restrict the long recognized right of [a] trader or manufacturer engaged in an entirely private business freely to exercise his own independent discretion as to parties with whom he will deal.'" *Trinko*, 540 U.S. at 408 (quoting *Colgate*, 250 U.S. at 307); *accord Pac. Bell Tel. Co. v. LinkLine Comms., Inc.*, 555 U.S. 438, 448 (2009) ("As a general rule, businesses are free to choose the parties with whom they will deal, as well as the prices, terms, and conditions of that dealing."). To escape from this general rule, Plaintiffs must offer factual allegations showing that KidKraft's alleged refusal to sell toy kitchens to OJC caused "actual competitive injury":

> It is well established that a party may choose with whom he will do business and with whom he will not do business, and that this behavior . . . will not give rise to liability absent a showing of *actual competitive injury*.

*Seagood*, 924 F.2d at 1567 (emphasis added). "[H]arm to an individual competitor or consumer is not sufficient"—the challenged conduct "must tend to cause harm to competition." *Mr. Furniture Warehouse, Inc. v. Barclays American/Commercial Inc.*, 919 F.2d 1517, 1522 (11th Cir. 1990). Plaintiffs fail to allege any facts showing this essential element of their claim.

Plaintiffs' claim of competitive harm is just a string of boilerplate conclusions, recited verbatim three times in the Complaint: "KidKraft's actions have actually harmed competition and consumers, by decreasing output of competitive wooden kitchens, restricting consumer choice of wooden play kitchens, decreasing avenues for distribution, and artificially inflating the price consumers pay for wooden play kitchens." Compl. ¶¶

50, 61, 70. This sort of threadbare recital of the elements Plaintiffs must prove, "supported by mere conclusory statements," is obviously insufficient and is entitled to no presumption of truth under *Twombly* and *Iqbal*. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Indeed, Plaintiffs' conclusory recital of supposedly increased prices, limited consumer choice, and injured competition is strikingly similar to the boilerplate allegations held insufficient in *Spanish Broadcasting*, 376 F.3d at 1079. And just as in *Spanish Broadcasting*, Plaintiffs' Complaint is entirely devoid of any "specific factual allegations to support the likelihood of any of this happening." *Id.*

For example, Plaintiffs offer no factual allegations to explain how KidKraft's termination of a single retailer has resulted in increased prices, decreased output of toy kitchens, decreased avenues for distribution, or any other purported harm listed in the mantra-like recitation in the Complaint. Moreover, even though KidKraft allegedly stopped selling to OJC more than two years ago (Compl. ¶ 36), Plaintiffs offer no factual allegations substantiating their conclusory assertion that any of these purported harms has actually happened.

Nor can Plaintiffs cure this pleading failure by amendment, because it makes no sense that a manufacturer's refusal to sell toy kitchens to a single retailer would cause any of these impacts. *See, e.g.*, *Wilson v. I.B.E. Indus., Inc.*, 510 F.2d 986, 988 (5th Cir 1975) ("the situation before us is simply a distributor's refusal to deal with a retailer, and it therefore lacks any anti-trust overtones"). Plaintiffs allege that there is a nationwide market for the sale of toy kitchens. Compl. ¶ 22. They also allege that toy kitchens (including KidKraft's) are sold through a wide range of "online marketplaces" and "brick and mortar retail chains," such as Costco, Walmart, Target, Amazon.com, Ebay.com, and Walmart.com. Compl. ¶¶ 14, 22. Plaintiffs have offered no factual allegations suggesting that it is even *possible*—much less plausible (as required under *Twombly*)—that KidKraft's refusal to sell its toy kitchens to a single retailer has harmed competition in this market.

Plaintiffs' Complaint is equally devoid of factual allegations showing that KidKraft's alleged refusal to sell toy kitchens to OJC to resell at retail has somehow harmed Naomi Home's ability to manufacture and sell its own toy kitchens. Plaintiffs have not even attempted to allege facts showing any impact on Naomi Home's ability to compete. This omission is fatal, but not surprising. It is nonsensical to assert that Naomi Home's ability to manufacture and sell its own toy kitchens depends on whether its affiliated retailer is able to sell KidKraft's toy kitchens. There is nothing about the design, construction, or sale of toy kitchens that renders Naomi Home any more or less able to compete when OJC is selling the toy kitchens of a competing manufacturer.[3]

---

[3] Plaintiffs may have intended to invoke *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585 (1985), in which the Supreme Court held that an operator of three ski mountains in Aspen, Colorado violated Section 2 of the Sherman Act by refusing to continue cooperating with the operator of the fourth ski mountain through a joint lift ticket offering. But Plaintiffs' effort is unavailing for several reasons. First, the plaintiff in *Aspen Skiing* showed that the defendant's termination of a longstanding course of dealing harmed competition and consumers. *Id.* at 605-08. And, in sharp contrast to the Complaint here, the plaintiff showed that continued cooperation from the defendant was necessary for the plaintiff to compete. *Id.* at 594 (without the defendant's continued cooperation, the plaintiff "basically 'becomes a day ski area in a destination resort'"). Those essential facts are missing here, so there is no need even to address whether the very limited duty to cooperate with a competitor found in *Aspen Skiing* is implicated here. Second, the Supreme Court has made clear that "*Aspen Skiing* is at or near the outer boundary of § 2 liability." *Trinko*, 540 U.S. at 409. The duty to deal with a competitor found in *Aspen Skiing* was a "limited exception" to the general right of a company to refuse to deal with its competitors, and it was confined to its facts, including a past course of mutually profitable dealing with a competitor whose termination harmed competition. *Id.* Here, Plaintiffs allege no course of dealing between KidKraft and its competitor, Naomi Home. To the contrary, they allege that KidKraft terminated its retail relationship with OJC because it did not want to sell through a retailer that was affiliated with Naomi Home. Compl. ¶ 32. Plaintiffs allege that Naomi Home sought a cooperative agreement with KidKraft—in the form of a collusive truce—which KidKraft rightfully refused. Compl. ¶ 29. Thus, even if Plaintiffs had alleged harm to competition, they have not alleged facts that could invoke the very limited *Aspen Skiing* duty to continue venturing with a competitor.

Fundamentally, the Complaint is about nothing more than OJC's alleged financial loss from selling fewer KidKraft toy kitchens at retail. That is mere harm to a competitor, not harm to competition that could support a viable antitrust claim. *See Spanish Broadcasting*, 376 F.3d at 1069. KidKraft's decision not to sell to OJC has nothing to do with Naomi Home's ability to manufacture and sell its own toy kitchens. And it has no plausible effect on competition in the market as a whole.

Indeed, the Complaint identifies other factors—unrelated to KidKraft's alleged refusal to sell toy kitchens to OJC—that explain any lack of growth in Naomi Home's sales of toy kitchens. First, the Complaint alleges that Naomi Home intentionally pulled back on its competitive efforts in an apparent offer of a competitive truce to KidKraft. According to Plaintiff's allegations:

> First, [Naomi Homes] scaled back production of current NH wooden play kitchen models so as not to compete too heavily with KidKraft. Second, it stopped trying to design and produce additional models so that KidKraft would not become concerned that NH was competing across many different models. Third, NH did not approach any other retailers to sell its kitchens.

Compl. ¶ 29. Plainly, Naomi Home's misguided decision to pull back on its own sales efforts cannot be a basis for an antitrust claim against KidKraft. Indeed, it would be an utter perversion of the antitrust laws to hold KidKraft liable for refusing Naomi Home's offer of a competitive truce. *See Schor v. Abbott Labs.*, 457 F.3d 608, 610 (7th Cir. 2006) ("[A]ntitrust law does not require monopolists to cooperate with rivals by selling them products that would help the rivals to compete. . . . Cooperation is a problem in antitrust, not one of its obligations.").

Second, Plaintiffs allege that Costco denied Naomi Home's request to distribute its toy kitchens. *See* Compl. ¶ 38. Plaintiffs do not allege, however, that (i) KidKraft took any action that prompted Costco's decision, or (ii) KidKraft's alleged refusal to sell its toy kitchens to OJC had any impact on Naomi Home's ability to sell toy kitchens to Costco.

There are simply no factual allegations connecting KidKraft's alleged refusal to sell toy kitchens to OJC and Naomi Home's ability to compete.

It is of no consequence that Plaintiffs allege that KidKraft supposedly stopped selling to OJC because it was carrying the toy kitchens of a competitor (Compl. ¶¶ 34-36). Nothing in the antitrust laws requires a manufacturer—even an alleged monopolist—to sell through a distributor that has divided loyalties:

> The anti-trust laws do not prohibit a manufacturer or distributor from selecting dealers who will devote their time and energies to selling the former's products and a manufacturer is not compelled to retain dealers having divided loyalties adverse to the interests of the said manufacturer or distributor.

*Timken Roller Bearing Co. v. FTC*, 299 F.2d 839, 842 (6th Cir. 1962); *see also, e.g.*, *E-One*, 2006 WL 3320441 at *2–3 (dismissing Section 2 refusal-to-deal claim because refusing to deal with plaintiff was not a predatory or anticompetitive act since the defendant "cannot be forced to continue a relationship with a dealer who chooses to distribute products of defendant's competitor"); *Healthco*, 1989 WL 104064 at *8 ("It is ludicrous for the plaintiff to suggest that a manufacturer has an absolute and continuing duty under the antitrust laws to continue a given distributor simply because to do otherwise would harm that distributor's business.  A manufacturer's right to control the marketing of its product is nearly absolute. . . .  Even a manufacturer with monopoly power is not obliged to retain an ineffective dealer or one which has become its competitor.").

Moreover, the Complaint itself alleges that KidKraft terminated OJC's distributorship, at least in part, because OJC's sales were declining.  Compl. ¶ 33 ("In a board meeting recently the topic of Naomi Kids Brand came up and this is something I would like to talk with you about along with the decline in sales over the previous 2 years.").  Plainly, the antitrust laws do not prohibit KidKraft from terminating an ineffective distributor. *See, e.g.*, *Timken*, 299 F.2d at 842.  Far from harming competition, KidKraft's effort to develop a network of committed and effective retailers enhances interbrand competition

and ultimately benefits consumers. *See, e.g., Ricchetti v. Meister Brau, Inc.*, 431 F.2d 1211, 1214–15 (9th Cir. 1970) ("This court has previously held that a manufacturer or supplier has a legitimate interest in the quality, competence and stability of his distributors, and, if dissatisfied with a distributor, may properly sell his product to a more viable competitor. . . . Where, as here, a supplier seeks no more than a better equipped and more aggressive distributor for his product, his conduct may in fact be more beneficial than detrimental to competition, and is not condemned by either the Sherman or Clayton Acts."); *Trans Sport, Inc. v. Starter Sportswear, Inc.*, 775 F. Supp. 536, 544 (N.D.N.Y. 1991), *aff'd*, 964 F.2d 186 (2d Cir. 1992) ("The court will not countenance the disruption of this manufacturer's effective and successful distribution system just so another firm can realize additional profits for itself.").

For all of these reasons, the Court should dismiss Plaintiffs' antitrust claims because Defendants did not engage in any conduct that harmed competition.

## II. Plaintiffs' Antitrust Claims Fail As a Matter of Law Because They Fail to Allege that KidKraft Possesses Market Power.

Plaintiffs' antitrust claims should be dismissed for the additional reason that they have failed to adequately allege that KidKraft had sufficient market power to monopolize, threaten to monopolize, or harm competition in the alleged relevant market. *See, e.g., Nat'l Theatre Exhibitors, Inc. v. Charter Financial Group, Inc.*, 747 F.2d 1396, 1402 (11th Cir. 1984) (defendant's refusal to grant distribution rights to plaintiff could not be viewed as a predatory refusal to deal, because defendant lacked sufficient market power to present a dangerous probability of monopolizing market). Market power is "the power to raise prices to supra-competitive levels or . . . the power to exclude competition in the relevant market either by restricting entry of new competitors or by driving existing competitors out of the market." *American Key Corp. v. Cole Nat'l Corp.*, 762 F.2d 1569, 1581 (11th Cir. 1985). According to Plaintiffs, the relevant market is the nationwide "wholesale market for wooden play kitchens." *See* Compl. ¶¶ 17–23. Even taking Plaintiffs' market

definition at face value for purposes of this Motion, Plaintiffs have failed to offer factual allegations sufficient to show that KidKraft has market power.

The only fact that Plaintiffs allege in support of their claim of market power is that KidKraft allegedly "controls over 70% of the wooden play kitchen market in the continental United States." Compl. ¶ 13. But even assuming this alleged market share figure is true, this allegation is insufficient as a matter of law to show that KidKraft has market power. As the courts have made clear repeatedly, "[a] high percentage of market share alone does not necessarily indicate monopoly power but is, rather, *only a starting point* for determining whether monopoly power exists." *Lockheed Martin Corp. v. Boeing Co.*, 390 F. Supp. 2d 1073, 1078 (M.D. Fla. 2005) (emphasis added); *see also, e.g.*, *Crossroads Cogeneration Corp. v. Orange & Rockland Utils.*, 159 F.3d 129, 141 (3d Cir. 1998) ("Alleging market share alone is not sufficient to state a claim under the Sherman Act."). That is because a firm with an ostensibly high market share may face intense competition, such as where barriers to entry or expansion by competitors are low, or where competitors with smaller shares exert competitive pressures that prevent the exercise of monopoly power. Thus, "[e]ven if [a defendant] has a high market share, neither monopoly power nor a dangerous probability of achieving monopoly power can exist absent evidence of barriers to new entry or expansion." *Am. Prof'l Testing Serv., v. Harcourt Brace Jovanovich Legal & Prof'l Publications, Inc.*, 108 F.3d 1147, 1154 (9th Cir. 1997); *see also, e.g.*, *QSGI, Inc. v. IBM Glob. Fin.*, No. 11-80880-CIV, 2012 WL 1150402, at *2 (S.D. Fla. Mar. 14, 2012) (dismissing antitrust claim where plaintiff made "no allegations as to the structure of the alleged market," including any allegations about its own share before and after the challenged conduct, how many other competitors are in the market, how those competitors were affected by the challenged conduct, or why any harm to the plaintiff "would result in uncompetitive prices to customers").

Here, Plaintiffs have alleged nothing about the marketplace or competitive dynamics that would indicate that KidKraft has monopoly power.  They have alleged nothing about the other competitors in the marketplace, including many competitors that appear prominently in any search for "wooden toy kitchens" on Amazon.com or any other website that sells toys.  And Plaintiffs have offered no allegations suggesting that there are any barriers to entry or expansion in the sale of wooden toy kitchens that would allow KidKraft to operate free from competition.

Moreover, Plaintiffs have offered no factual allegations that could plausibly suggest that KidKraft has somehow achieved, maintained, or threatened to achieve monopoly power as a result of its alleged decision to stop selling its wooden toy kitchens to OJC.  There are thousands of retailers of wooden toy kitchens in the marketplace.  Plaintiffs themselves allege that "KidKraft sells its products to online retailers like Amazon.com, and to brick and mortar stores like Costco, Walmart and Target."  Compl. ¶ 14.  The Complaint does not even attempt to allege facts showing that the addition or subtraction of one brand of toy kitchens sold through one small retailer has any bearing on competition in this marketplace, or could plausibly create monopoly power.  There are no such facts.  Plaintiffs' antitrust claims should be dismissed.

**III.   Plaintiffs' Sherman Act Section 1 Claims (Claims III & IV) Fail as a Matter of Law Because KidKraft Cannot Conspire with Its Majority Owner, MidOcean.**

Plaintiffs attempt to concoct a conspiracy claim by alleging that KidKraft and MidOcean agreed with one another to refuse to sell toy kitchens to OJC.  Compl. ¶¶ 31-32. But Plaintiffs' conspiracy claim fails at the threshold because they do not allege any facts showing that KidKraft and MidOcean are "entit[ies] with separate and distinct corporate interests."  *McArthur Dairy LLC v. McCowtree Bros. Dairy, Inc.*, 2011 WL 2118701, at *7 (S.D. Fla. 2011) (Cooke, J.); *see also Copperweld*, 467 U.S. at 770–71.  Nor can they allege such facts, because MidOcean is the majority owner of KidKraft.

Plaintiffs allege that MidOcean is a private equity firm, (Compl. ¶ 5), and they allege that MidOcean and KidKraft held a board meeting together (Compl. ¶ 31). Of course, KidKraft shares board meetings with this private equity firm because MidOcean owns and controls KidKraft—a fact that is widely available on the Internet.[4] Plaintiffs remain silent on this fact, but they cannot carry their pleading burden through omissions and half-truths. Instead, Plaintiffs must offer factual allegations showing that two separate companies conspired together. This they cannot do.

Because KidKraft and MidOcean share a common economic interest through MidOcean's ownership of KidKraft, they cannot violate Section 1 of the Sherman Act through concerted action or conspiracy. *Copperweld*, 467 U.S. at 771 (coordinated activity between parent and subsidiary "must be viewed as that of a single enterprise for purposes of § 1"; where a parent and subsidiary "'agree' to a course of action, there is no sudden joining of economic resources that had previously served different interests"). Thus, Plaintiffs' allegation that KidKraft reached an agreement with its majority owner at a board meeting (Compl, ¶¶ 32-34), is not actionable under Section 1 of the Sherman Act as a matter of law. *See, e.g.*, *Hood v. Tenneco Texas Life Ins. Co.*, 739 F.2d 1012, 1015 (5th Cir. 1984) (sister companies that shared a common parent "cannot conspire with their parent in violation of the Sherman Act"); *Direct Media Corp. v. Camden Tel. & Tel. Co.*, 989 F. Supp. 1211, 1217 (S.D. Ga. 1997) (parent and its majority-owned subsidiary were a single entity because the parent "manage[d] and own[ed] fifty-one percent" of the subsidiary).

Accordingly, because Plaintiffs cannot allege a violation of Section I of the Sherman Act, Claims III and IV of the Complaint should be dismissed.

---

[4] See "MidOcean Partners Announces Acquisition of KidKraft, Toy Industry Leader," (July 15, 2015), https://www.midoceanpartners.com/news-media/2015-07-15-midocean-partners-announces-acquisition-of-kidkraft-toy-industry-leader.

## IV. The Court Should Dismiss Plaintiffs' Tortious Interference Claim (Claim V) Because MidOcean Cannot Tortiously Interfere with Its Portfolio Company's Business Relationship.

Finally, Plaintiffs assert that MidOcean tortiously interfered with KidKraft's business relationship with OJC. *See* Compl. ¶¶ 75–81. Plaintiffs' tortious interference claim fails as a matter of law for three independent reasons: (1) MidOcean cannot tortiously interfere with a business relationship of its portfolio company; (2) there is no unjustified interference with that relationship; and (3) Plaintiffs do not allege an underlying tort.

Under Florida law, five elements must be established to state a claim for tortious interference of a business relationship: (1) the existence of a business relationship under which the claimant has rights, (2) the defendant's knowledge of the relationship, (3) an intentional and unjustified interference with the relationship, (4) by a third party, and (5) damage to the claimant caused by the interference. *Future Tech Int'l, Inc. v. Tae Il Media, Ltd.*, 944 F. Supp. 1538, 1569 (S.D. Fla. 1996).

"[A] cause of action for tortious interference does not exist against one who is himself a party to the business relationship allegedly interfered with." *Genet Co. v. Anheuser-Busch, Inc.*, 498 So.2d 683, 684 (Fla. 3d Dist. Ct. App. 1986) (no cause of action where defendant had an approval right over the contract allegedly interfered with). "In other words, 'the interfering defendant must be a third party, *a stranger to the business relationship*.'" *Ernie Haire Ford, Inc. v. Ford Motor Co.*, 260 F.3d 1285, 1294 (11th Cir. 2001) (emphasis added) (quoting *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 742 So.2d 381, 386 (Fla. 4th Dist. Ct. App. 1999)). Moreover, an "interfering" defendant "is not a 'stranger' . . . 'if the defendant has any beneficial or economic interest in, or control over, that relationship.'" *Hamilton v. Suntrust Mortg. Inc.*, 6 F. Supp. 3d 1312, 1320 (S.D. Fla. 2014) (quoting *Treco Intern. S.A. v. Kromka*, 706 F. Supp. 2d 1283, 1289 (S.D. Fla. 2010)); *Palm Beach Cty. Health Care Dist. v. Prof'l Med. Educ., Inc.*, 13 So.3d 1090, 1094 (Fla. 4th Dist. Ct. App. 2009) ("a defendant is not a stranger to a business relationship, and thus cannot

be held liable for tortious interference, when it has a supervisory interest in how the relationship is conducted or a potential financial interest in how a contract is performed"). Thus, an owner with direct control over a company and "a significant financial interest" in the company cannot tortiously interfere with that company's business relationship. *Volvo Aero Leasing*, 2019 WL 1142330, at *3.

As described above, MidOcean is the majority and controlling owner of KidKraft. Therefore, MidOcean is not a stranger to KidKraft's business relationships. In fact, Plaintiffs allege that MidOcean interfered with the relationship at a KidKraft board meeting. Compl. ¶¶ 31–33. Accordingly, Plaintiffs' tortious interference claim against MidOcean fails as a matter of law. *See Volvo Aero Leasing*, 2019 WL 1142330, at *3.

For the same reason, MidOcean's alleged interference with the KidKraft-OJC distributor relationship cannot be considered to be "unjustified" because MidOcean is not a stranger to the business relationship. *See Salit*, 742 So.2d at 386 ("For the interference to be unjustified, the interfering defendant must be a third party, a stranger to the business relationship.").

Further, Plaintiffs' tortious interference claim fails as a matter of law because it has not alleged any underlying tort. Where a manufacturer, such as KidKraft here, has a right to terminate an agreement with a distributor, the distributor does not have a claim for tortious interference based on the termination. *See, e.g., Prof'l Food Equip., Ltd. v. Hobart Corp.*, No. 97-1449-CIV-J-20A, 1999 WL 1044231, at *5 (M.D. Fla. Mar. 19, 1999) (defendant did not commit tort when it exercised its lawful right to terminate agreement; "as a matter of law that act cannot give rise to a claim for tortious interference with business relationships") (citing *Chipley v. Atkinson*, 23 Fla. 206, 1 So. 934, 938 (Fla. 1887)); *Networkip, LLC v. Spread Enterprises, Inc.*, 922 So. 2d 355, 358 (Fla. Dist. Ct. App. 2006) ("No cause of action for intentional interference exists which is the consequence of a rightful action.").

48474236;1

Because Plaintiffs fail to allege the necessary elements of a tortious interference claim, Claim V fails as a matter of law.

## V. The Court Should Dismiss the Complaint with Prejudice.

The Complaint should be dismissed with prejudice because any amendment would be futile. *See, e.g.*, *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (2008) ("Dismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment."); *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (dismissal with prejudice is appropriate where "amendment would be futile").

Claims I–IV cannot be saved by amendment because Plaintiffs cannot plausibly allege harm to competition resulting from KidKraft's decision to cease dealing with one retailer. In addition, Plaintiffs cannot cure Claims III–V by amendment because MidOcean majority owns and controls KidKraft, which means Plaintiffs' Claims III-V fail as a matter of law. Where, as here, even "a more carefully drafted complaint" would not save Plaintiffs' claims, the Court should dismiss the complaint with prejudice. *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002).

CASE NO. 19-cv-60341-CIV-COOKE/HUNT

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' Complaint with prejudice.

DATED: April 1, 2019

Respectfully submitted,

/s/ *Lawrence D. Silverman*
Joshua Lipton (*Pro Hac Vice* Pending)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone:    202.955.8500
Facsimile:     202.467.0539
jlipton@gibsondunn.com

Scott K. Hvidt (*Pro Hac Vice* Pending)
GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Avenue, Suite 1100
Dallas, Texas  75201-6911
Telephone:  (214) 698-3100
Facsimile:  (214) 698-3400
shvidt@gibsondunn.com

-and-

Lawrence D. Silverman, Esq.
Florida Bar Number:  7160
Email:  lawrence.silverman@akerman.com
Alexandra M. Mora, Esq.
Florida Bar Number:  052368
Email:  alexandra.mora@akerman.com
AKERMAN LLP
Three Brickell City Centre
98 Southeast Seventh Street, Suite 1100
Miami, FL  33131
Phone:  (305) 374-5600
Fax:  (305) 374-5095
**ATTORNEYS FOR DEFENDANTS**

48474236;1

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of April, 2019, a true and correct copy of the foregoing brief was served via the Court's CM/ECF System upon all counsel of record.

*/s/ Lawrence D. Silverman*

48474236;1