UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO. 0:19-cv-60341-MGC

OJ COMMERCE LLC; and
NAOMI HOME, INC.,

    *Plaintiffs*

v.

KIDKRAFT, LP; and
MID-OCEAN PARTNERS, LP

    *Defendants.*

**PLAINTIFFS' REPLY TO SUPPORT THEIR MOTION TO COMPEL
DEFENDANTS TO DE-DESIGNATE "HIGHLY CONFIDENTIAL" DOCUMENTS**

**I.**    **Defendants have failed to rebut the presumption that they indiscriminately designated 78.39% of the pages of their documents as AEO in bad faith.**

Defendants ignore the law and facts applicable to Plaintiffs' motion and attempt to reframe this discovery dispute with their own alternative "facts" and "statistics."[1] According to Defendants, everything about Plaintiffs' motion, their statistical data, and their legal arguments is supposedly "misleading." (*See* ECF 91 at 1) ("contrary to Plaintiffs' misleading motion"); *id.* at 2 ("the misleading data offered in Plaintiffs' Motion"); *id.* ("Plaintiffs attempt to mislead the Court"); *id.* ("This is misleading . . . ."); *id.* at 3 ("And it is also misleading . . . ."); *id.* ("Plaintiffs' misleading approach"). That is not true, and Defendants know it. Their tired ad hominem attacks are also particularly unpalatable in light of their recent *fabrication* of alleged evidence in support of their own pending motion to compel.[2]

---

[1] Defendants' general gripe about Plaintiffs' meet-and-confer efforts is a red herring. Defendants wanted Plaintiffs to pinpoint one-by-one which portion of what particular documents were improperly designated. But that procedure is not required where a party has designated the vast majority of their production as AEO. All that aside, it is undisputed that the parties conferred further on the phone after Plaintiffs filed their motion but to no avail.

[2] Defendants fabricated evidence that Ashley Furniture and Guidecraft allegedly terminated their business with Plaintiffs due to their "knocking off" products. (*See* ECF 92). Their recent reply inexplicably fails to address this fabrication at all. (*See* ECF 95).

1

For starters, there is nothing "misleading" about Plaintiffs asserting a general challenge against Defendants' practice of designating 78.39% of the pages of their documents as AEO. After all, the Court's Order requires the parties to designate in good faith "each page" containing alleged AEO information. (ECF 33 ¶¶5, 9). And a party "shall designate only those parts of material . . . that qualify so that other portions of the material . . . for which protection is not warranted are not swept unjustifiably within the ambit of this Stipulation."[3] *Id.* ¶10; *see McDonald Apiary, LLC v. Starrh Bees, Inc.*, 2016 WL 868185, at *1 (D. Neb. Mar. 4, 2016) ("[a]n AEO designation should only be used on a relatively small and select number of documents where a genuine threat of competitive or other injury dictates such extreme measures.").

Defendants' "suggestion that the wording of the protective order precludes any challenges except those referring to specific, 'designated' documents is also not persuasive[,]" because explicit "in the protective order and its provision for designating documents as 'confidential' or 'AEO' is a requirement of good faith*." Paradigm All., Inc. v. Celeritas Techs.*, LLC, 248 F.R.D. 598, 605 (D. Kan. 2008). Nothing precludes Plaintiffs "from asserting a lack of good faith by [Defendants] in reviewing the documents and using the AEO label to impede [Plaintiffs'] case preparation." *Id.* As this Court has explained, "if the challenging party demonstrates that the producing/designating party did not act in good faith, then it has grounds to assert a broad, blanket request for re-review and re-designation." *Procaps S.A. v. Patheon Inc.*, 2013 WL 4773433, at *8 (S.D. Fla. Sept. 4, 2013). A "lack of good faith" may be presumed where the designation percentage is "significantly greater than 50%." *Id.*

Here, based upon the Order's page-by-page metric, Plaintiffs calculated that (as of February 14th) Defendants had designated 78.39% of the pages of their documents as AEO; specifically, KidKraft had designated 74.76% (i.e. 4,961 of 6,636 pages) and Mid-Ocean had designated 99.82% (i.e. 1,123 of 1,125 pages). (ECF 84 at 2). Notably, Defendants do not dispute Plaintiffs' math. Rather, Defendants claim that the proper metric for assessing whether a presumption of bad faith arises is the percentage of individual documents

---

[3] The Court's Order contains a provision regarding "Objections" to confidentiality designations. (*See* ECF 33 ¶27). But it also provides that "[t]his paragraph does not relate to proceedings related to violations of this Stipulation." *Id.*

2

designated as AEO, which they contend was 47% as of February 14th.[4] (ECF 91 at 2-3). In so doing, Defendants overlook a key substantive point underlying Plaintiffs' motion. Irrespective of whether a party may designate on a document-by-document basis, the relevant metric for assessing the final result of those designations and the corresponding burdens on the opposing party is the proportion of information that has been restricted from the litigants—i.e., the total page counts. For example, parties could agree to designate document-by-document in good faith, yet the final result could evidence bad faith, undue burden, and/or improper designations if the vast majority of pages ended up AEO.[5]

But that is not the only flaw in Defendants' argument. They also contend that a document-by-document metric is the proper yardstick because the parties purportedly orally agreed to "confidentiality designations on a document-by-document basis, not a page-by-page basis." *Id.* While the parties did previously confer about the propriety of Defendants' designations with respect to *specific* interrogatory answers and other *discrete* documents, the parties' routine discovery call did not—and could not—result in a blanket modification of the Court's Order, which may only be modified "*by written stipulation of the Parties as approved by an order of the Court*." (ECF 33 ¶33; emphasis added). If Defendants were sincere about modifying the Order due to their alleged burden of designating AEO information on a page-by-page basis, Defendants could have filed a motion or proposed a joint motion for Plaintiffs' consideration. But Defendants did neither and instead proceeded to cloak the vast majority of their discovery under the AEO veil.

Additionally, Defendants' attempt to claim an "undue burden" in designating their documents on a page-by-page basis rings hollow. *See Procaps S.A. v. Patheon Inc.,* 2015 WL 4430955, at *7 (S.D. Fla. July 20, 2015) ("'the alleged burden imposed by a high volume

---

[4] Defendants argue that Plaintiffs have not cited cases "in which any party has ever been sanctioned where it had two attorneys review every document and then designated less than half of its documents as Highly Confidential." (ECF 91 at 2). Defendants miss the point. The issue is not the *quantity* of attorneys conducting the review, but rather the *quality* of the review.
[5] As one example, a party could designate only 10 out of 100 documents AEO (*i.e.* 10%). But a page count would reveal whether the process and result were reasonable. If the 10 AEO documents were 100 pages each, while the 90 undesignated documents were 1 page each, the result would be 1000 out of 1090 pages of information being AEO (91%). The page-count metric—and not the document metric—is most relevant to an analysis of whether the AEO designation had been overused or otherwise misapplied.

production does not provide the producing party or its counsel free reign to choose a given designation and ignore the Court's order pertaining to that designation'") (quoting *Brown v. Tellermate Holdings Ltd.*, 2014 WL 2987051, at *22 (S.D. Ohio July 1, 2014), *adopted as modified*, 2015 WL 4742686 (S.D. Ohio Aug. 11, 2015)). Plaintiffs' prior discussions with defense counsel were premised upon the reasonable expectation that the AEO designation would be sparingly used, if at all. Yet Defendants now seek to exploit their prior alleged "undue burden" to persuade this Court to "'improperly shift[] the cost of review[ing] of confidentiality' to [Plaintiffs]." *Procaps*, 2015 WL 4430955 at *7. "[T]he consequences of the over-designation, regardless of why it happened, should not fall on the party (i.e., [Plaintiffs]) who did nothing wrong." *Id.*

In sum, now that the statistics show Defendants have abused the AEO designation, Defendants should be compelled to de-designate their alleged AEO documents to "Confidential" or, at a minimum, re-review their confidentiality designations in good faith on a page-by-page basis—as required by the Order they proposed and agreed to. *See id.* at *9 ("There is ample legal authority to support the remedy of allowing [the challenging party] to use all the documents designated from the forensic production as highly confidential, subject to [the designating party's] good faith re-designation, on a specific, document-by-document basis, by Thursday, July 30 . . . .").

II. **Defendants have not met their evidentiary burden of showing their alleged harm from disclosure "with a particular and specific demonstration of fact."**

Plaintiffs have also asserted specific challenges against certain documents cited in their motion and Defendants' interrogatory answers. (*See* ECF 84 at 4-5). In response, Defendants argue that their burden of showing "the alleged harm it will suffer from any disclosure 'with a particular and specific demonstration of fact,'" *Procaps*, 2015 WL 4430955 at *6, has not been triggered, because Plaintiffs allegedly never conferred with Defendants about any *specific* documents. This argument is perplexing, given Defendants' response claims that Plaintiffs didn't confer about their *general* challenge to Defendants' designations—only their *specific* challenges to documents. (ECF 91 at 1). It also exemplifies the difficulty of conferring in good faith with Defendants – as every meet-and-confer is a "gotcha" trap waiting to be sprung later.

Nevertheless, Defendants attached to their response "Appendix A," which—in an uninspired attempt to circumvent the Court's 5-page limit—contains approximately *seven*

4

*single-spaced pages* of additional legal argument. (*See* ECF 91-2). This patent circumvention should be struck. But even if the Court allows it to stand, the appendix (which consists solely of unsupported assertions by counsel) is still insufficient to carry Defendants' evidentiary burden of showing the requisite harm. This is because "the question of whether competitive harm would result from the disclosure of these types of documents to a competitor is a factual issue," which courts must decide "on the basis of evidence." *Brown*, 2014 WL 2987051 at *22.

Yet Defendants have not submitted *any evidence* to support their counsel's conclusory allegations of harm in their appendix. Without such evidence, there is no basis for the Court to uphold any of the specific AEO designations challenged in Plaintiffs' motion. *See Evanston Ins. Co. v. Republic Properties, Inc.*, 2017 WL 3723613, at *4 (M.D. Fla. June 15, 2017) (rejecting argument that disclosing "pricing information that encompasses how [a non-party] classifies risks, calculates premiums, and compensates brokers" would cause irreparable harm if disclosed to a competitor, "because [the non-party] does not support any of its assertions through affidavits, declarations, or other evidence supporting the same"). Nor have Defendants made any "effort to redesignate a single page of the[ir] documents." *Brown*, 2014 WL 2987051 at *22. Instead, Defendants prefer to shift the heavy burden of scrutinizing their AEO designations to Plaintiffs and the Court. "That is not how this is supposed to work." (ECF 91 at 1). Finally, even if Defendants had submitted sufficient evidence, they have wholly failed to distinguish the caselaw cited in the motion which demonstrates that a competitor's data over 2 years old should not be designated AEO, or shown how the disclosure of 2-years old data places KidKraft at an unfair disadvantage in the marketplace.

Given Defendants' abuse of the AEO designation, and their utter failure to meet their evidentiary burden to uphold their designations, Defendants should be compelled to de-designate the AEO documents cited in the motion to "Confidential." To the extent the Court thinks this goes too far, at a minimum, the Court should require Defendants to de-designate any documents 2-years or older to to "Confidential," and for any alleged AEO document that's under 2 years old, Defendants should be required to produce a "Confidentiality Log" providing all reasons why each page warrants an AEO designation.

      Respectfully submitted,

      **ROCHE CYRULNIK FREEDMAN LLP**

By: */s/ Velvel Devin Freedman*
  Velvel (Devin) Freedman
  Florida Bar No. 99762
  **ROCHE CYRULNIK FREEDMAN LLP**
  200 South Biscayne Boulevard
  Suite 5500
  Miami, Florida 33131
  vel@rochefreedman.com

  Shlomo Y. Hecht, P.A.
  Florida Bar No.: 127144
  11651 Interchange Cir S
  Miramar, FL 33025
  Phone: 954-861-0025
  Fax: 615-413-6404
  Email: sam@hechtlawpa.com

  Mark A. Schweikert
  Florida Bar No. 70555
  **SCHWEIKERT LAW PLLC**
  1111 Biscayne Blvd., Suite 1550
  Miami, Florida 33131
  (305) 926-9452
  mark@schweikertlaw.com

  *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 2, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

      *s/ Velvel (Devin) Freedman*
      VELVEL (DEVIN) FREEDMAN