UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO. 0:19-cv-60341-MGC

OJ COMMERCE LLC; and
NAOMI HOME, INC.,

    *Plaintiffs*

v.

KIDKRAFT, LP; and
MID-OCEAN PARTNERS, LP

    *Defendants.*

## PLAINTIFFS' REPLY TO SUPPORT THEIR MOTION TO COMPEL DOCUMENT CUSTODIANS AND DISCOVERY RESPONSES

**I. Defendants' objections to including all KidKraft's board members as *document custodians* should be overruled.**

    Defendants' response betrays their obstructionist tactic of exerting exclusive control over the means and methods of searching KidKraft's board members' highly-relevant data for responsive information—*independent* of the parties' agreed-upon electronically stored information (ESI) protocol for searching their *document custodians'* data. Instead of simply applying the parties' agreed-upon search terms to all the board members' custodial data, Defendants offer to conduct their own so-called "reasonable search" for documents relating to claims and defenses at issue in this case. (ECF 93 at 2).

    As supposed justification, Defendants leapfrog to the conclusion that adhering to the parties' ESI protocol with respect to these witnesses' data would "simply result in a search of their individual shopping experiences." *Id.* at 2, n.1. This self-serving conclusion is not only sheer speculation, but also illogical. As Plaintiffs' explained in their motion, it is highly likely that these board members will have unique information relevant to the claims at issue. (ECF No 88 at 2). This includes information concerning not only the critical November 2016 board meeting, but also any prior or subsequent communications by, to, or amongst the board members concerning KidKraft's general strategy of maintaining its market power over the market for wooden toy kitchens, including the termination of its business relations with OJC

1

and the blacklisting of NH with other retailers. There is simply no good reason to discard the parties' painstakingly-negotiated ESI protocol in lieu of a unilateral, undefined, and uncontrolled "search" of these witnesses' data by Defendants.

As for Defendants' alleged burden, "a party seeking to avoid discovery on a burdensomeness argument must substantiate that position with detailed affidavits or other evidence establishing an undue burden.'" *Lincoln Nat'l Life Ins. Co. v. Griffin*, 2009 WL 10668503, at *4 (S.D. Fla. Sept. 14, 2009). Yet there is not a shred of evidence in the record to support Defendants' conclusory allegation that utilizing the parties' ESI protocol with respect to these particular board members (but not others) "would result in a tremendous and unnecessary burden," which Plaintiffs should "pay for." (ECF 93 at 3). Without the requisite evidence, there is no legal basis to sustain Defendants' undue burden objection. *See, e.g.*, *Waziry v. HR Club Mgmt., LLC*, 13-60333-CIV-ROSENBAUM/HUNT, 2013 WL 12009696, at *1 (S.D. Fla. Oct. 7, 2013) ("Further, boilerplate objections such as 'overly broad, unduly burdensome, irrelevant and not reasonably calculated to lead to discovery of admissible evidence,' *without specific facts supporting same*, are simply conclusory assertions.") (emphasis added). Defendants' objections should be overruled.

## II. Defendants' objections to including all Mid-Ocean's deal team members as *document custodians* should be overruled.

Defendants' objections to including all Mid-Ocean's deal team members as *document* custodians should be overruled for the same reasons set forth in Section I. All the deal team members, particularly the junior members (Gilbert and Loeffler), are key witnesses likely to have information highly relevant to the claims at issue. After all, the junior members are likely the Mid-Ocean employees who were responsible for analyzing the market data regarding KidKraft's sales of wooden toy kitchens, and which led to the conclusion that KidKraft "owns," "dominates," and "does not have a meaningful direct competitor in larger wooden kitchens." (ECF 88-1 at MOP104, 106, 131, 139). Again, there is simply no good reason to cast aside the parties' agreed-upon ESI protocol in lieu of a unilateral, undefined, and uncontrolled "search" by Defendants. Lastly, insofar as Defendants claim that adhering to the parties' ESI protocol with respect to all of Mid-Ocean's deal team members would be a "waste of resources" or unduly burdensome, no record evidence exists to support Defendants'

2

conclusory allegation. *See Lincoln Nat'l Life Ins. Co.*, 2009 WL 10668503 at *4. Their objections should be overruled.

### III. Defendants should be compelled to supplement their deficient and outdated discovery responses.

**ROG#1.** Defendants should be compelled to supplement their *seven-months old* answer to this interrogatory, which seeks the percentage of wooden toy kitchens sold by KidKraft in the US for each year between 2015 and 2018. Defendants claim they will "supplement" their answer once they have received some outstanding subpoena responses. (ECF 93 at 4). Plaintiffs have already been waiting over seven months for Defendants to supplement their answer, while the looming May 21, 2020 discovery deadline draws closer and closer. Defendants also completely ignore the fact that it's extremely unlikely that a private equity firm (like Mid-Ocean) would have paid multimillions to acquire KidKraft—based upon its own conclusions that KidKraft "owns," "dominates," and "does not have a meaningful direct competitor in larger wooden kitchens"—*unless there was reliable data supporting these conclusions*. Accordingly, Defendants should be compelled to supplement their answer to provide the specific information requested, and to produce the documents and communications related thereto,[1] *by a date certain*, such as within 5 days of the order on the motion.

**ROG#2**. Defendants should be compelled to supplement their *seven-months old* answer to this interrogatory, which essentially seeks information about any communications Defendants have had with any resellers and manufacturers about Plaintiffs. Defendants respond that their answer is complete, because they are purportedly unaware of responsive information. (ECF 93 at 5). Defendants also feign outrage at Plaintiffs' allegation that, after KidKraft terminated its business relations with OJC, Costco declined to carry and sell NH's less expensive wooden toy kitchens because Costco was afraid of jeopardizing its relationship with KidKraft. *Id.* According to Defendants, the fact that Costco has provided two declarations "stating that KidKraft never threatened Costco" means that assertion must be

---

[1] ROG #1 also asks Defendants to "identify all data or other evidence supporting" their market share percentages. RFP#8, for its part, requests "documents and communications that relate to or reference market share of the wooden toy kitchen market." Plaintiffs thus seek to compel Defendants to identify and produce such information as part of their motion.

3

taken as *gospel*.² *Id.* No, it does not. That's not how facts are established at trial. Rather, contrary to the declaration, OJC's CEO will testify about his personal communications with Costco, which will create a factual issue for the jury to decide based upon the witnesses' credibility or other evidence. Not to mention, the interrogatory itself is not limited to only "threats"—as Defendants disingenuously contend—but rather seeks information about "every reseller and manufacture that you have communicated with about OJC or [NH] along with an explanation detailing the time of, reasons for, and content of, that communication." (ECF 88-2 at 3). Defendants should be compelled to fully answer this interrogatory as written or submit verified responses stating no responsive materials exist.

**ROG#3.** Defendants should be compelled to supplement their *seven-months old* answer to this interrogatory, which asks Defendants to "state whether you have ever conveyed (expressly or implicitly) to any reseller that you would either (i) stop doing business with them, (ii) limit doing business with them, or that (iii) another adverse consequence would occur, if they were to carry a competitor's product." (ECF 88-2 at 4). Once again, Defendants respond that their answer is complete, because they are purportedly unaware of responsive information. (ECF 93 at 5). Defendants also take issue with Plaintiffs challenging their unilateral limitation of the interrogatory as pertaining only to "wooden toy kitchens." *Id.* While Defendants' counsel did represent in August 2019 that Defendants' answer would be the same "even if the request is expanded to include any competitors' product," (ECF 93-4 at 12), Defendants' counsel is not a fact witness. Nor is that what Defendants' *seven-months old* sworn answer says. Defendants should be compelled to supplement their answer to this interrogatory as written or submit verified responses stating no responsive materials exist.

**RFP #41**. Defendants should be compelled to produce information responsive to this request, which seeks "[o]ne copy of all organizational charts or other documents showing the organization of your business, including, but not limited to, membership of your board of directors." Defendants claim they have fully responded by regurgitating the same deficient information dismantled in Plaintiffs' motion. Yes, it is true that Defendants have identified

---

² It's no wonder why Costco would take such a position in response to a third-party subpoena, especially given KidKraft "owns," "dominates," and "does not have a meaningful direct competitor in larger wooden kitchens." Costco clearly has a motive to "play nice" with KidKraft, especially given what happened to Plaintiffs.

4

Daniel Penn, their preferred star witness, as being "primarily responsible for the Kidkraft business." (ECF 93 at 6). But Defendants have not identified who at Mid-Ocean had "secondary" responsibility, much less any other involvement with KidKraft. Nor is the request limited to documents only identifying Mid-Ocean personnel who had some involvement with KidKraft. Rather, the request seeks a *complete* picture of how Mid-Ocean is organized and managed so that Plaintiffs may make informed discovery decisions and prove their conspiracy claims. Defendants should be compelled to produce documents sufficient to provide such *complete* information.

Respectfully submitted,

**ROCHE CYRULNIK FREEDMAN LLP**

By: */s/ Mark A. Schweikert*
Velvel (Devin) Freedman
Florida Bar No. 99762
**ROCHE CYRULNIK FREEDMAN LLP**
200 South Biscayne Boulevard
Suite 5500
Miami, Florida 33131
vel@rochefreedman.com

Shlomo Y. Hecht, P.A.
Florida Bar No.: 127144
11651 Interchange Cir S
Miramar, FL 33025
Phone: 954-861-0025
Fax: 615-413-6404
Email: sam@hechtlawpa.com

Mark A. Schweikert
Florida Bar No. 70555
**SCHWEIKERT LAW PLLC**
1111 Biscayne Blvd., Suite 1550
Miami, Florida 33131
(305) 926-9452
mark@schweikertlaw.com

*Attorneys for Plaintiffs*

5

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 4, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Mark A. Schweikert*
MARK A. SCHWEIKERT
