```
 1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF FLORIDA
 2
                      CASE NO. 19-CV-60341-MGC
 3
     OJ COMMERCE LLC,
 4                                        Miami, Florida
                  Plaintiff(s),
 5                                        November 18, 2019
             vs.
 6
     KIDKRAFT, INC.,
 7
                  Defendant(s).     Pages 1 - 38
 8   ------------------------------------------------------------

 9                        MOTION HEARING
               BEFORE THE HONORABLE MARCIA G. COOKE
10                  UNITED STATES DISTRICT JUDGE

11   APPEARANCES:

12   FOR THE PLAINTIFF(S):  SHLOMO Y. HECHT
                            Shlomo Y. Hecht, P.A.
13                          3076 N. Commerce Parkway
                            Miramar, FL 33025
14                          sam@hechtlawpa.com

15
                            DEVIN FREEDMAN
16                          Roche Cyrulnik Freedman, LLP
                            200 S. Biscayne Boulevard
17                          Suite 5500
                            Miami, FL 33131
18                          vel@rcfllp.com

19

20

21

22

23

24

25
```

```
 1    FOR THE DEFENDANT(S):   LAWRENCE D. SILVERMAN
                              Akerman LLP
 2                            Three Brickell City Centre
                              98 SE 7th Street, Suite 1100
 3                            Miami, FL 33131
                              lawrence.silverman@akerman.com
 4
                              JOSHUA LIPTON
 5                            Gibson, Dunn & Crutcher, LLP
                              1050 Connecticut Avenue, N.W.
 6                            Washington, D.C. 20036
                              jlipton@gibsondunn.com
 7
                              SCOTT K. HVIDT
 8                            Gibson, Dunn & Crutcher, LLP
                              2100 McKinney Avenue
 9                            Dallas, TX 75201
                              shvidt@gibsondunn.com
10
      REPORTED BY:            Jill M. Wells, RPR, CRR, CSR
11                            Official Court Reporter
                              400 N. Miami Avenue, Suite 08S27
12                            Miami, Florida 33128
                              jill_wells@flsd.uscourts.gov
13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1   (Case called to order of the court at 10:34 a.m.)

 2             THE COURT:  Calling OJ Commerce v. KidKraft.

 3             Appearing on behalf the plaintiff

 4             MR. FREEDMAN:  Vel Freedman with Roche Freedman, your

 5   Honor.

 6             MR. HECHT:  Schlomo Hecht, general counsel for OJ

 7   Commerce.

 8             THE COURT:  Appearing on behalf of KidKraft.

 9             MR. LIPTON:  Josh Lipton with Gibson Dunn.

10             MR. HVIDT:  Scott Hvidt with Gibson Dunn.

11             MR. SILVERMAN:  Lawrence Silverman from Akerman.

12             THE COURT:  Spectators may be seated.

13             Today's hearing is on defendant's motion to dismiss

14   Docket Entry 15.  Who is going to start for the defendant?

15             MR. LIPTON:  I will, your Honor.  Josh Lipton.

16             THE COURT:  You may proceed, sir.

17             MR. LIPTON:  Thank you, your Honor.  Good morning,

18   your Honor, may it please the court.  I represent the

19   defendants KidKraft and MidOcean Partners.

20             Your Honor, this is a textbook case for dismissal

21   under Rule 12(b)(6).  You could accept every allegation in the

22   complaint as true, and there is no viable claim here.

23             Of course we don't agree with every fact alleged in

24   the complaint, but for purposes of this motion we can spot them

25   to every fact alleged in the complaint, and there is still no
```

1    viable claim.

2          The starting point in this antitrust case, just like

3    any other case, is what did the defendant do.  A plaintiff

4    doesn't stay in an antitrust case just by alleging that the

5    defendant has a large market share or even that it's a

6    monopolist.

7          To have a viable antitrust claim the plaintiff has to

8    allege that the defendant engaged in anticompetitive conduct,

9    and the plaintiff has to allege that the anticompetitive

10   conduct caused harm to competition.

11         There is a rule in antitrust cases.  The plaintiff has

12   to show harm to competition, not just harm to a competitor.

13   It's not enough for the plaintiff to allege that it has lost

14   money because of the defendant's conduct.  Instead, the

15   plaintiff has to show that the defendant engaged in

16   anticompetitive conduct that harmed competition in the market

17   as a whole.

18         So with that framework, we go to the starting point.

19   What does the complaint allege that KidKraft did?

20         THE COURT:  So let's start.  The issue is their

21   allegation is that these wooden play kitchens require specialty

22   facilities, right?

23         MR. LIPTON:  I am sorry?

24         THE COURT:  The wooden play kitchens, that's what this

25   is about, wooden play kitchens?

1          MR. LIPTON:  Correct, your Honor.

2          THE COURT:  And that you have created barriers to have

3     other people make wooden play kitchens, right?

4          MR. LIPTON:  Well, that's not correct, your Honor.

5     There is no allegation in the complaint that KidKraft has

6     created any barriers to entry in the market or that there are

7     any barriers to entry at all.  That's actually one of the key

8     failings in the complaint.

9          THE COURT:  How did they not allege that?

10         MR. LIPTON:  There's no factual allegation in the

11    complaint that KidKraft did anything to block any manufacturer

12    of wooden play kitchens to enter the market.

13         The only action alleged in the complaint, the only

14    conduct by KidKraft, is that KidKraft terminated one of its

15    retailers, OJ Commerce.  So that's a really key issue in the

16    complaint.

17         The plaintiffs are OJ Commerce, which is a retailer of

18    wooden toy kitchens, and other products, and Naomi Home, which

19    is an affiliated company, that they allege manufactures wooden

20    play kitchens that are trying to compete with KidKraft.

21         So the allegation, the conduct alleged in the

22    complaint -- and this is absolutely critical -- the conduct

23    alleged in the complaint, the only action by KidKraft is an

24    allegation that KidKraft terminated one of its retailers, OJ

25    Commerce.

1          So the first question from an antitrust perspective

2     is, is it an antitrust violation for a supplier to terminate

3     one of its distributors.

4          THE COURT:  Have you refused -- when I say "you," your

5     client -- refused to deal with any retailers that carry Naomi

6     Home kitchen?

7          MR. LIPTON:  The only allegation in the complaint --

8          THE COURT:  Does the complaint state that, that you

9     have refused to deal with any retailers that carries the Naomi

10    Home kitchen?

11         MR. LIPTON:  The only allegation in the complaint is

12    that KidKraft terminated OJ Commerce, one of many of its

13    resellers of kitchens.

14         THE COURT:  So that allegation is not in the

15    complaint, that you have refused to deal with any retailer that

16    carries the Naomi Home kitchen?

17         MR. LIPTON:  Correct.

18         THE COURT:  That's not in the complaint?

19         THE DEFENSE:  That's not in the complaint.  That's in

20    their motion to dismiss.  They argue that.  They argue -- they

21    say KidKraft refused to deal with any retailers anywhere that

22    carried Naomi Home kitchens.  They argue that in the motion to

23    dismiss.  That is absolutely not in the complaint, and that's

24    one of the key failings in the complaint.

25         So one of the core points, your Honor, is it is not an

1    antitrust violation for a supplier of products to terminate one

2    of its distributors.  And this is an issue that comes up over

3    and over in the antitrust laws.  It's fairly frequent that it

4    comes up that a distributor that's terminated by one of its

5    suppliers will turn around and file a lawsuit against the

6    supplier.  And they often claim --

7              THE COURT:  Is there Eleventh Circuit law that states

8    that if a competitor blocks the most efficient distribution

9    channels, the ones necessary to be an effective competitor,

10   that that would allow an antitrust claim to survive?  That

11   isn't Eleventh Circuit law?

12             MR. LIPTON:  Are you referring to the *McWane* case,

13   your Honor?

14             THE COURT:  Yes, I am.

15             MR. LIPTON:  So the facts in *McWane* were that the

16   large incumbent suppliers of a case involving pipes -- it was a

17   case that came out of the FTC -- the facts in that case were

18   that *McWane* entered into contracts with all of its retailers --

19   and this is a critical fact -- it entered into contracts with

20   all of its retailers that were essentially exclusive dealing

21   contracts.

22             So *McWane* said if you, a retailer, carry any other

23   suppliers' pipes, we are not going to pay you rebates or we are

24   not going to supply you.  So when a couple of other retailers

25   carried competitors' pipes, *McWane* cut them off.

1          THE COURT:  Was *McWane* on a motion to dismiss or a

2     motion for summary judgment?

3          MR. LIPTON:  That came out of a case that came out of

4     the FTC so it was slightly different posture.  The FTC made

5     findings of fact, and then it went up to the Eleventh Circuit.

6     Let me focus on the key difference from *McWane* and this case.

7          In *McWane*, the facts, whether it's allegations here or

8     the facts found by the FTC there, the facts were that *McWane*

9     went out to all of the retailers in the market and entered into

10    these contracts with all of the retailers.  There actually were

11    findings of fact in that case that that excluded the

12    competitor, prevented the competing pipe supplier from getting

13    access to retailers.

14         The only allegation here is that KidKraft terminated

15    one reseller, OJ Commerce.  And they allege in the complaint --

16    they allege -- this is right in the complaint -- they allege

17    KidKraft supplies to Walmart and Target and eBay and Amazon,

18    and they sell through a nationwide retail network.  In fact,

19    KidKraft has thousands of resellers.  The only allegation here

20    is that KidKraft stopped selling to one distributor.

21         This is not *McWane* where they went out to all of their

22    resellers and put in exclusive contracts with everyone and

23    prevented them from getting in the market, and there is no

24    allegation in this complaint that Naomi Home could not sell its

25    kitchens to any retailers in the market.  There is no

1    allegation they are blocked from anybody, even OJ Commerce.

2    Naomi Home is affiliated with OJ Commerce.  They can continue

3    to sell through them or Walmart or Target or Amazon or any

4    other reseller.

5         So that is an absolutely critical failing in this

6    complaint, and it's a critical distinguishing factor between

7    this case and *McWane*.

8         The facts of this case, your Honor, are like the

9    dozens of cases in which a terminated distributor claims that

10   its supplier has violated the antitrust laws for cutting them

11   off.

12        In those cases, your Honor, it is unanimous in the

13   courts, absolutely unanimous, that the courts hold that it is

14   not an antitrust violation for a supplier to terminate its

15   distributor.

16        THE COURT:  In those cases where they have unanimously

17   said that, what was the procedural posture?

18        MR. LIPTON:  It's at all stages, your Honor.

19   Sometimes it's summary judgment, sometimes it's a motion to

20   dismiss, sometimes it's up at the Supreme Court later in the

21   case, but in those cases it really is at all stages.

22        THE COURT:  What seems to happen is that there is some

23   allowance to allow a full development of the facts, that we are

24   here on this preliminary matter on allegations, and the

25   allegations are that you are -- and I am generalizing this --

1    "you," meaning your client -- are blocking avenues for

2    distribution, and by blocking avenues for distribution, if

3    that's the allegation, that may be seen as an antitrust

4    violation.

5          MR. LIPTON:  Your Honor, that is not in the complaint.

6    There is no allegation in the complaint that KidKraft took any

7    action to block any channel of distribution for Naomi Home to

8    sell its kitchens.  That is absolutely not in the complaint.

9          Your Honor, if they had come in with a complaint with

10   plausible, factual allegations that showed that KidKraft was

11   blocking channels of distribution and Naomi Home couldn't bring

12   its products to market, then that would be a different case

13   than what they have alleged here.  There is not a fact

14   anywhere --

15         THE COURT:  What about the issue with Costco?  Did I

16   misread that?

17         MR. LIPTON:  Let me read you what they have written

18   about Costco.  I think that's important.  So this is

19   Paragraph 38 of the complaint.

20         They say:  "After the termination" -- that's after

21   KidKraft terminated OJ Commerce -- "Costco declined Naomi

22   Home's offer to sell its wooden play kitchens at a very

23   competitive price expressly stating that it could not

24   jeopardize its relationship with KidKraft by carrying Naomi

25   Home's competing products."

1          So they say Costco told them that they didn't want to

2    terminate their relationship with KidKraft by carrying Naomi

3    Home.  That's very carefully worded to avoid saying that

4    KidKraft actually did anything because there are no such facts,

5    and they know it.

6          THE COURT:  Well, maybe the issue is there are no such

7    facts that they are ready to present now, but given the

8    opportunity for adequate discovery they will be able to point

9    to a specific thing.

10         All a complaint requires are reasonable allegations

11   not made in whole cloth, right?

12         MR. LIPTON:  I think you put your finger right on it,

13   your Honor.

14         THE COURT:  What about the tortious interference

15   claim?

16         MR. LIPTON:  May I answer the last question, your

17   Honor, quickly?  I think you put your finger right on it.

18         *Twombly*, which was an antitrust case on a motion to

19   dismiss stage up at the Supreme Court, *Twombly* says that a

20   plaintiff must allege plausible factual allegations to get them

21   past the motion to dismiss.

22         We can speculate about what a plaintiff might allege

23   in some circumstances about what a defendant might have done,

24   but in this case, on this motion, the plaintiffs don't get to

25   go to discovery on what someone might allege.  They only get to

1    go to discovery if they actually allege facts about something

2    that KidKraft did.  The only thing they allege that KidKraft

3    did is they terminated a distributor.

4         Your Honor, if I may read you one sentence.  This is

5    from the Fifth Circuit before it split from the Eleventh

6    Circuit.  This is in the *Wilson* case, 510 F.2d at 988.  Here is

7    what the Fifth Circuit said:  "The situation before us is

8    simply a distributor's" -- like KidKraft -- "simply a

9    distributor's refusal to deal with a retailer, and it therefore

10   lacks any antitrust overtones."

11        And that is one of many, many cases that hold very

12   clearly that a distributor has a right to deal or not deal with

13   whomever it pleases, and there are only very limited exceptions

14   to that rule.  And that's the only action that's alleged here.

15        So I think, your Honor, the questions you are asking

16   are exactly the right questions, and they draw out a key

17   failing in the complaint.  The only action alleged here is

18   terminating a distributor.  There is no action by KidKraft

19   alleged anywhere in the complaint that it did anything to cut

20   off any channel of distribution for Naomi Home.

21        Along those lines, OJ Commerce, the distributor that

22   was terminated -- Naomi Home can absolutely sell through OJ

23   Commerce.  They are affiliated.  They have the same owner.  He

24   is sitting right here.  If Naomi Home wants to sell through OJ

25   Commerce, it sells through OJ Commerce.

1       There is nothing that KidKraft not selling its toy

2   kitchens to OJ Commerce that prevents Naomi Home from selling

3   its kitchens.  Where in the complaint is there any allegation

4   that Naomi Home is less able to sell its wooden toy kitchens

5   unless OJ Commerce is retailing KidKraft's toy kitchens?  It

6   doesn't make sense.

7       Naomi Home is a manufacturer of toy kitchens.  It

8   doesn't need OJ Commerce to retail KidKraft toy kitchens in

9   order for Naomi Home to sell toy kitchens.

10      So, your Honor, you point to the *McWane* case, and

11  that's a case with a different fact pattern, and if they had

12  factual allegations that KidKraft had cut off channels of

13  distribution, then we wouldn't be talking about *McWane*, and we

14  would be talking about a different case.

15      I am sorry, your Honor, you were going to ask about

16  the tortious interference claim.

17      THE COURT:  Yes.  That was the other claim that you

18  are asking the court to dismiss?

19      MR. LIPTON:  Yes, your Honor.  So tortious

20  interference -- that's a tortious interference claim that's

21  against MidOcean Partners.  MidOcean Partners is a private

22  equity fund that owns KidKraft.  So as a matter of law they

23  allege that MidOcean Partners tortiously interfered with the

24  contract between KidKraft and OJ Commerce.

25      As a matter of law, a company like MidOcean Partners

1    that owns another company cannot be held to have tortiously

2    interfered with business dealings of its wholly owned company.

3         The *Volvo Aero Leasing* case, which came out earlier

4    this year we cite in our papers, the rule under Florida law is

5    that a company cannot be held to have tortiously interfered

6    with another company's business dealings if it's not a stranger

7    to the relationship.  And a company that owns and has control

8    over another company, as MidOcean Partners does for KidKraft,

9    is not a stranger to the relationship.  In this case, it's a

10   private equity fund and it's a portfolio company.  MidOcean is

11   not a stranger to the relationship; therefore, it cannot be

12   held to have tortiously interfered.

13        The other element that they fail on is that there is

14   nothing tortious about KidKraft terminating its relationship

15   with a distributor.  KidKraft has a right to terminate the

16   relationship with a distributor.  So when it did so, there was

17   nothing tortious about that action, your Honor.

18        THE COURT:  Thank you.

19        Counsel for the plaintiffs.

20        MR. FREEDMAN:  Good morning, your Honor.  Vel Freedman

21   for the plaintiff.  I neglected to tell you earlier that Jacob

22   Weiss, the owner of OJ Commerce and Naomi Home, is here in the

23   court today.

24        Your Honor, I wanted to start off this argument just

25   highlighting some of the key sentences of the complaint that I

1   think might be able to clear up --

2           THE COURT:  I'd appreciate that because the defendant

3   is basically saying there are no facts in the complaint that

4   can support these sort of allegations à la *McWane*.

5           MR. FREEDMAN:  So, your Honor, I am not sure this is

6   more in chronological than importance order, but at

7   Paragraph 13:  Defendant KidKraft controls over 70 percent of

8   the wooden play kitchen market in the continental United States

9   and that it has maintained that monopoly power illegally by

10  leveraging it to exclude competition.

11          If the court goes to paragraph --

12          THE COURT:  But they would say that's an allegation,

13  not a fact.  So what would be the fact that you have that

14  supports that allegation?

15          MR. FREEDMAN:  37 of the complaint, it starts off:

16  "After the termination Naomi Home" -- and this gets to the

17  Costco story that your Honor picked up on earlier, so I'd like

18  to read the entire Costco story, not just one little sentence

19  of it.

20          "After the termination Naomi Home was no longer under

21  pressure to avoid selling its wooden play kitchens to retailers

22  besides OJ Commerce."

23          If the court remembers, the complaint lays out a story

24  where OJ Commerce is selling these kitchens, and KidKraft tells

25  it you can no longer sell these kitchens.  If you sell this

1    competing kitchen, we are going to cut you off.

2              THE COURT:  They tell who?

3              MR. FREEDMAN:  Actually, you know what, let me start

4    from the beginning, then I will go through the allegations of

5    the complaint.  The complaint sets out a pretty simple,

6    straightforward story.

7              THE COURT:  I understand the legal allegations.

8              MR. FREEDMAN:  No, the factual.

9              THE COURT:  What I am looking for are the factual

10   things that -- listen, we all understand that things change in

11   the course of litigation, and that may not be, and that's why

12   we have a motion for summary judgment, what's actually proven.

13   But what are the facts in the complaint that make out an

14   allegation of this domination in the marketplace through sort

15   of ham-handling the dealers?

16             MR. FREEDMAN:  So the first example of this conduct is

17   in OJ Commerce itself.  So OJ Commerce forms a relationship

18   with KidKraft in September of 2011, and it begins selling

19   KidKraft's wooden toy kitchens.  It does so for two, three

20   years.

21             2013 Naomi Home begins making a competing kitchen, and

22   OJ Commerce, the retailer, is now selling both Naomi Home

23   kitchens and KidKraft kitchens.

24             KidKraft finds out about this, calls OJ Commerce and

25   says you can't sell that competing kitchen; if you sell that

```
 1    competing kitchen, we are going to cut you off from all our
 2    products, which is an attempt to stop distribution channels.
 3         OJ Commerce kind of backs up a little bit.  This is
 4    key allegation, one of the factual allegations.  In response to
 5    this threat Naomi Home dials back its production of kitchens
 6    into the marketplace - less output.
 7         The Jacobs case from the Eleventh Circuit --
 8         THE COURT:  Based upon this threat you are saying the
 9    fact is that what Naomi Home did is said we no longer have a
10    distribution channel so we have to tone back our manufacturing,
11    because even if we make it, we can't sell it.
12         MR. FREEDMAN:  That's right, and so they knew that --
13    because it's the same owner they tried to kind of fly under the
14    radar and remain a little, small competitor that KidKraft
15    wouldn't really want to squash, but they realize that they
16    couldn't.  And the complaint says this.
17         They couldn't go out to retailers, they did not go to
18    retailers like Costco or other, you know, BJs and other places
19    because they thought if KidKraft gets wind that they are doing
20    this, they are going to put the kibosh on OJ Commerce, and OJ
21    Commerce will lose its ability to sell KidKraft kitchens.
22         THE COURT:  Do you say that in the complaint?
23         MR. FREEDMAN:  Yes, your Honor.  Let me find it for
24    you.  That's Paragraph 29.
25         "Despite KidKraft's monopoly power, OJC and Naomi Home
```

1    did not immediately and completely bow to the" -- let me get to

2    the relevant part.

3            THE COURT:  Counsel, slow down.

4            MR. FREEDMAN:  Sorry, I have got to get to the

5    relevant part.  My mind -- my mouth is going faster than my

6    head.

7            THE COURT:  Take your time.

8            MR. FREEDMAN:  Here.

9            "Nevertheless, Naomi Home did take a number of actions

10   in response to KidKraft threats.

11           "First, it scaled back production of current Naomi

12   Home wooden play kitchen models so as not to compete too

13   heavily with KidKraft;

14           "Second, it stopped trying to design and produce

15   additional models so that KidKraft would not become concerned

16   that Naomi Home was competing across many different models;

17           "Third, Naomi Home did not approach any other

18   retailers to sell its kitchens as it knew such attempts would

19   be futile due to KidKraft's threats.

20           "No retailer would risk terminating their relationship

21   with KidKraft, and Naomi Home believed that KidKraft would not

22   feel threatened if Naomi Home stayed away from KidKraft's

23   largest customer base, i.e., retailers."

24           Then the complaint goes on to say that this works for

25   some time, but then KidKraft catches on again to what's going

1    on.

2           Your Honor, this is key because, as the court has

3    pointed out many times during Mr. Lipton's oral argument, the

4    Eleventh Circuit and other circuits have said time and time

5    again motions to dismiss are heavily disfavored in antitrust

6    cases because the evidence of the misconduct is held by the

7    conspirators, and you need discovery to get it.

8           Now, you have an obligation to put forward facts, but

9    most of the evidence is there.  Your Honor, this case has some

10   of the best evidence of antitrust conduct I have ever seen.

11   There is literally a smoking gun email in November -- on

12   November 23, 2016.

13           THE COURT:  What paragraph in the complaint?

14           MR. FREEDMAN:  Thirty-three, your Honor, and

15   Exhibit A.

16           THE COURT:  All right.

17           MR. FREEDMAN:  KidKraft employee, Mr. Daniel Barr,

18   emails Mr. Jacob Weiss, and he says, and I am going to quote,

19   "In a board meeting recently the topic of the Naomi Home kids

20   brand came up, and this is something I would like to talk with

21   you about along with the decline in sales over the previous two

22   years."

23           So he says your competing kitchen got brought up in

24   our board meeting, and the fact that our sales have dropped

25   because of it came up in our board meeting, I want to talk to

1    you about that.

2         And then the next paragraph of the complaint, 34,

3    says, "Mr. Barr called that same day and explained that

4    MidOcean and KidKraft were concerned about the competition from

5    Naomi Home.  Mr. Barr informed OJ Commerce that they needed to

6    discontinue selling the entire Naomi Home line, and that if

7    they did not, KidKraft would refuse to deal with OJ Commerce in

8    any way."

9         And then if you go down to 35, plaintiff did not stop

10   selling; 36, KidKraft fulfilled the threat and cut OJ Commerce

11   off to try to stop it from being a distribution channel for

12   Naomi Home; and then comes the Costco story, 37.  "After the

13   termination Naomi Home was no longer under pressure to avoid

14   selling its wooden play kitchens to retailers besides OJ

15   Commerce.  Nevertheless" -- this is factual -- "it was unable

16   to do so because retailers feared that if they carried Naomi

17   Home's kitchens, KidKraft would refuse to deal with them too."

18        That's just like *McWane,* your Honor, where *McWane,*

19   which held a monopoly in the domestic pipefittings market,

20   entered into exclusive dealings with the people that were

21   buying the fittings in order to keep its competitor, Star, out

22   of the market because the people that were buying these

23   fittings were scared that if they get cut off from *McWane,* the

24   massive 2000-pound gorilla -- KidKraft in this case -- they

25   would be unable to compete, they would be unable to do their

```
 1    job.  So they couldn't risk taking products from Star; they had

 2    to take from McWane.  Same allegation here.

 3          And then 38:  For example, after the termination

 4    Costco declined Naomi Home's offer to sell it wooden play

 5    kitchens at a very competitive price expressly stating it could

 6    not jeopardize its relationship with KidKraft by carrying Naomi

 7    Home's competing products.  These are factual allegations.

 8          Mr. Lipton says they didn't say that Naomi Home sent

 9    an email to KidKraft -- to Costco and told them, hey, you

10    better not carry that product.  Well, that's true, but that's

11    because we don't have discovery yet, your Honor.

12          What we do have is KidKraft emailing Naomi Home and OJ

13    Commerce telling them you better stop selling that or I am

14    going to cut you off, and then us not selling it, and them

15    cutting us off, and then another retailer telling us that they

16    cannot take our products because if they do, they could get cut

17    off.  That is plausible.  That is what we need to do on a

18    motion to dismiss in an antitrust claim.

19          Now, I need to get into discovery, and I will prove

20    that this happens, or I won't, and if I won't, that's what a

21    motion for summary judgment is for.  But I have said enough to

22    get past a motion to dismiss and into discovery in this case.

23          THE COURT:  What about the issue of the tortious

24    interference claim?

25          MR. FREEDMAN:  Your Honor, with the tortious
```

1    interference claim the defendant is right in that normally

2    somebody who is not a stranger to the business relationship has

3    a privilege to interfere under Florida law.  So the logic

4    being, if you are part of your own business relationship, you

5    can't -- you can't tortiously interfere with your own business

6    relationship.

7            KidKraft says that MidOcean is its majority

8    shareholder and therefore it has an interest in the contract,

9    and therefore the agreement between the two of them to cut off

10   OJ Commerce and stop Naomi Home is privileged; they are allowed

11   to do it.

12           Normally that's true except Florida law has an

13   important exception to this privilege to interfere.  That's in

14   the *Making Ends Meet* case and the *Hamilton* case where you have

15   a privilege to interfere, but that interference cannot be

16   undertaken in bad faith and it cannot be taken through improper

17   means.

18           In the *Making Ends Meet* case it was if you have -- the

19   defendant had a privilege to approve a lease or disapprove a

20   lease, and he said I have a privilege, I am entitled to approve

21   this lease, but the court said that because he was exercising

22   that right in bad faith he could still be held liable for

23   tortious interference.

24           The *Hamilton* case was a forced place insurance case

25   where a bank had teamed up with a third party to maximize its

1    profits from force placed insurance in an inappropriate manner,

2    and they defended a tortious interference claim saying the same

3    thing, we are a party to this transaction, we have a privilege

4    under Florida law to interfere, but the courts said no, even

5    though you do have a privilege to interfere.  Just like

6    KidKraft, you exercised that privilege in bad faith and

7    maliciously, and therefore -- with conspiratorial motives, and

8    therefore you still could be liable for tortious interference.

9          THE COURT:  So even though you have a privilege to

10   interfere, if the interfere is on something different or in

11   some other way other than a straight-up business transaction

12   and is done in bad faith or with malice, the courts look on

13   that exception?

14         MR. FREEDMAN:  Exactly, and here plaintiffs allege --

15         THE COURT:  What would be the allegation of bad faith

16   or malice?

17         MR. FREEDMAN:  Anti-competitive conduct here.

18         THE COURT:  What factually would be the conduct?

19         MR. FREEDMAN:  An agreement between MidOcean Partners

20   and KidKraft to exclude Naomi Home kitchens from the

21   marketplace, which is --

22         THE COURT:  Would that not be an appropriate thing for

23   two business entities to do to, to say, listen, we want to be

24   the 900-pound gorilla in the room, and we are going to make

25   sure that we make the best little wooden kitchen that we can,

```
 1    and kick these other guys out of the marketplace?

 2              MR. FREEDMAN:  I think there are two -- I think it's a

 3    good point.  I think there are two issues.  One is I think that

 4    remains a factual issue that can't be resolved in the motion to

 5    dismiss.  What were their motives?  And that's common in

 6    antitrust cases where you allege anticompetitive conduct, there

 7    is a business justification put forward, and the plaintiffs

 8    have to show it's pretextual.

 9              So we need discovery to see if there was really let's

10    just get them out or let's try to be competitive.

11              I think the bigger issue with that, though, with that

12    is that would be fine if KidKraft was a monopolist.  And this

13    is the Aspen Skiing line of cases, the refusal to deal line of

14    cases.

15              KidKraft makes a big deal out of the fact that a

16    distributor can work with whatever retailer it wants.  The

17    court picked up on the fact that a lot of those cases are

18    summary judgment, past factual develop, but there is another

19    issue with it.

20              There are all the general rule that you are able to

21    sell to anyone you want.  That is the general rule.  It's true,

22    but the Supreme Court has made it very clear that there are

23    limits.  You are not able to just sell whoever you want if you

24    are a monopoly.  If you are a monopoly and you have a prior

25    business relationship and you stop that prior business
```

1  relationship based on anticompetitive reasons, then you can be

2  liable for a refusal to deal case under *Aspen Skiing*.

3          The Eleventh Circuit has taken that further in the

4  *Morris* case and in the *Duty Free of Americas* case, and it says

5  anticompetitive intent is the linchpin here for this analysis.

6          The plaintiff has --

7          THE COURT:  Anticompetitive intent sufficient to

8  overcome the privilege.

9          MR. FREEDMAN:  So that's how it bleeds together, your

10 Honor.  The tortious interference claim will rise and fall with

11 the antitrust claim.

12         If plaintiffs can show that the conduct was a

13 violation of the antitrust laws, then the agreement between

14 them was in bad faith.  If they can't show that the conduct was

15 a violation of the antitrust claims, then MidOcean would have a

16 privilege to interfere.  And that's why plaintiff says you

17 can't resolve it now, we have to first have a shot at our

18 antitrust claim.

19         If we can prove our antitrust claim, we can prove our

20 tortious interference claim because that demonstrates the bad

21 faith sufficient to overcome the privilege.

22         THE COURT:  Would you agree or disagree that if I were

23 to find in your favor at this time on the antitrust claim, that

24 I could later -- could later still find against you on the

25 tortious interference claim?

1          MR. FREEDMAN:  Yes, your Honor.

2          THE COURT:  So you do admit that there may be -- that

3   you may -- that there may come a time when you might be able to

4   sustain one and not the other?

5          MR. FREEDMAN:  That's true, your Honor.

6          THE COURT:  But you can't sustain tortious

7   interference without the antitrust claim?

8          MR. FREEDMAN:  That's exactly right.

9          THE COURT:  And that one, if the antitrust fails,

10  tortious interference fails?

11         MR. FREEDMAN:  That's right.

12         THE COURT:  But you could have a situation where you

13  might be able to proceed on the antitrust but not be able to

14  proceed on tortious interference?

15         MR. FREEDMAN:  Correct.  If MidOcean could show some

16  pro-competitive justification or a lack of bad faith or a good

17  faith intent on their part, it would potentially still subject

18  KidKraft to antitrust liability as a monopolist under Section 2

19  of the Sherman Act but allow MidOcean out under the privilege

20  and foreclose the door through with bad faith.  It would close

21  that door, that's possible.

22         THE COURT:  Thank you, sir.

23         Any response, counsel?

24         MR. LIPTON:  Yes, please, your Honor.

25         I think Mr. Freedman actually proved my case on the

1    motion to dismiss.  Your Honor, you asked him, as appropriately

2    you should, where does it allege in the complaint what KidKraft

3    did?  Where does it allege that KidKraft went out and cut off

4    channels of distribution like in *McWane?*

5         And I want to walk quickly through each of the

6    paragraphs that Mr. Freedman pointed to.

7         First is Paragraph 13 where they allege in boilerplate

8    fashion that KidKraft maintained monopoly power illegally by

9    leveraging it to exclude competition.  That's a conclusion, not

10   a factual allegation.

11        THE COURT:  So you disagree with the facts that

12   counsel just read on the record?

13        MR. LIPTON:  I want to go through them one by one very

14   quickly.

15        He pointed you to Paragraph 29.  Paragraph 29 tells us

16   a story about Naomi Home's actions, not KidKraft's actions.  In

17   Paragraph 29 they say Naomi Home pulled back on competition

18   essentially as an invitation to collude to KidKraft.  They

19   wanted to pull back, and they wanted KidKraft to stop

20   competing.  That's an invitation to collude that KidKraft

21   properly declined.  That's not cutting off channels of

22   distribution.

23        They pointed you to paragraphs -- and we will

24   acknowledge these should be assumed true for purposes of this

25   complaint -- they pointed to paragraphs where KidKraft cut off

```
 1    its distributor, OJ Commerce.

 2           They have alleged that for purposes of this complaint.

 3    We will assume that they are true, but here is the key point,

 4    your Honor, that is KidKraft terminating one distributor.  And

 5    that plays into the cases, all of the cases that say a

 6    manufacturer has a right to terminate a distributor.

 7           And there is a key point about cutting off OJ

 8    Commerce.  When you are KidKraft and you terminate your

 9    distribution relationship with OJ Commerce, that does not

10    prevent Naomi Home from selling its kitchens to OJ Commerce

11    because the same owner owns both companies.  So that's not

12    cutting off a channel of distribution.

13           And then the third thing they point to, your Honor, is

14    there are two paragraphs about Costco, and I read you one of

15    them, Mr. Freedman read the other.  Neither of those paragraphs

16    talks about any action by KidKraft.

17           To get past a motion to dismiss they have to have

18    factual allegations about actions by KidKraft other than

19    terminating a relationship with one of its distributors because

20    the cases say over and over, and we quoted this in our briefs,

21    that over and over that a manufacturer terminating a

22    distribution relationship with a retailer is not an antitrust

23    violation.

24           In fact, the cases say it is ludicrous -- ludicrous --

25    to say that it is an antitrust violation for a manufacturer to
```

1   terminate a relationship with a distributor even when they

2   allege the manufacturer is a monopolist, and even when they

3   allege that that retailer is trying to become its competitor.

4   We quoted the *HealthCo* case, your Honor, to that point.

5            So at this motion to dismiss stage they have to have

6   factual allegations of conduct by KidKraft, some action that

7   KidKraft took other than cutting off OJ Commerce.

8            Mr. Freedman walked through the factual allegations in

9   the complaint.  None of them point to any action by KidKraft

10   other than terminating OJ Commerce which is not an antitrust

11   violation.

12            Your Honor, on the bad faith point, I think you asked

13   exactly the right question, which is the complaint doesn't

14   allege anything about fad faith by MidOcean Partners.  And we

15   cited the *PCB Partnership* case, 549 So. 2d 738, for the

16   proposition that even boilerplate allegations of malicious or

17   willful or bad faith conduct don't get you past a motion to

18   dismiss, and they don't have any allegations about any conduct

19   by MidOcean that was taken in bad faith.  So that's another

20   failing in their complaint.

21            I'd be happy to speak to the *Aspen Skiing* case unless

22   you are comfortable with that.

23            THE COURT:  I am fine.

24            MR. LIPTON:  Thank you, your Honor.

25            THE COURT:  You know, and I think even now when we

1    look on what *Twombly* brought us, it wasn't no allegations.  The

2    plaintiff in this case has laid them out, and they have

3    basically said that what has happened here is the threats in

4    the market in this case, that defendants had a monopoly on the

5    market, they threatened OJC, and they ultimately terminated

6    their contract.  The other distributors observed this, and they

7    stopped dealing with Naomi Home.  That's the essence of it.

8            Now, whether this plays out three months from now,

9    four months from now, however discovery goes, that may be it,

10    but I also can't ignore that antitrust cases are factually

11    intensive, and they should at least be allowed to make the

12    record based upon the facts in this complaint.

13            So as to the issues under the antitrust violations

14    defendant's motion is denied.

15            I think the plaintiff was quite honest.  His tortious

16    interference claim was going to rise and fall on the antitrust

17    claim.  If he doesn't make out an antitrust claim and can't

18    show actual malice, it falls.

19            So the defendant's motion to dismiss plaintiff's

20    complaint is denied.  Thank you very much, all.

21            For the record that was Docket Entry 15.

22              (Proceedings adjourned at 11:11 a.m.)

23

24

25

C E R T I F I C A T E


        I hereby certify that the foregoing is an accurate

transcription of the proceedings in the above-entitled matter.



March 5, 2020           /s/ Jill M. Felicetti
                        Jill M. Felicetti, RPR, CRR, CSR
                        Official Court Reporter
                        400 N. Miami Avenue
                        Miami, Florida 33128
                        jill_felicetti@flsd.uscourts.gov

MR. FREEDMAN: [24]  3/4 14/20 15/5
15/15 16/3 16/8 16/16 17/12 17/23 18/4
18/8 19/14 19/17 21/25 23/14 23/17
23/19 24/2 25/9 26/1 26/5 26/8 26/11
26/15
MR. HECHT: [1]  3/6
MR. HVIDT: [1]  3/10
MR. LIPTON: [22]  3/9 3/15 3/17 4/23
5/1 5/4 5/10 6/7 6/11 6/17 7/12 7/15 8/3
9/18 10/5 10/17 11/12 11/16 13/19 26/24
27/13 29/24
MR. SILVERMAN: [1]  3/11
THE COURT: [48]
THE DEFENSE: [1]  6/19

/
/s [1]  31/7

0
08S27 [1]  2/11

1
1050 [1]  2/5
10:34 [1]  3/1
1100 [1]  2/2
11:11 [1]  30/22
12 [1]  3/21
13 [2]  15/7 27/7
15 [2]  3/14 30/21
18 [1]  1/5
19-CV-60341-MGC [1]  1/2

2
200 [1]  1/16
2000-pound [1]  20/24
20036 [1]  2/6
2011 [1]  16/18
2013 [1]  16/21
2016 [1]  19/12
2019 [1]  1/5
2020 [1]  31/7
2100 [1]  2/8
23 [1]  19/12
29 [4]  17/24 27/15 27/15 27/17
2d [1]  29/15

3
3076 [1]  1/13
33025 [1]  1/13
33128 [2]  2/12 31/9
33131 [2]  1/17 2/3
34 [1]  20/2
35 [1]  20/9
36 [1]  20/10
37 [2]  15/15 20/12
38 [3]  1/7 10/19 21/3

4
400 [2]  2/11 31/8

5
510 [1]  12/6
549 [1]  29/15
5500 [1]  1/17

7
70 percent [1]  15/7
738 [1]  29/15
75201 [1]  2/9

7th [1]  2/2
9
900-pound [1]  23/24
98 [1]  2/2
988 [1]  12/6

A
a.m [2]  3/1 30/22
ability [1]  17/21
able [8]  11/8 13/4 15/1 24/20 24/23 26/3
26/13 26/13
about [24]  4/25 10/15 10/18 11/14 11/22
11/23 12/1 13/13 13/14 13/15 14/14
14/17 16/24 19/21 20/1 20/4 21/23 27/16
28/7 28/14 28/16 28/18 29/14 29/18
above [1]  31/4
above-entitled [1]  31/4
absolutely [6]  5/22 6/23 9/5 9/13 10/8
12/22
accept [1]  3/21
access [1]  8/13
accurate [1]  31/3
acknowledge [1]  27/24
across [1]  18/16
Act [1]  26/19
action [10]  5/13 5/23 10/7 12/14 12/17
12/18 14/17 28/16 28/18
actions [4]  18/9 27/16 27/16 28/18
actual [1]  30/18
actually [7]  5/7 8/10 11/4 12/1 16/3
16/12 26/25
additional [1]  18/15
adequate [1]  11/8
adjourned [1]  30/22
admit [1]  26/2
Aero [1]  14/3
affiliated [5]  5/19 9/2 12/23
after [6]  10/20 10/20 15/16 15/20 20/12
21/3
again [2]  18/25 19/5
against [3]  7/5 13/21 25/24
agree [2]  3/23 25/22
agreement [3]  22/9 23/19 25/13
Akerman [2]  2/1 3/11
akerman.com [1]  2/3
all [15]  5/7 7/18 7/20 8/9 8/10 8/21 9/18
9/21 11/10 16/10 17/1 19/16 24/20 28/5
30/20
allegation [23]  3/21 4/21 5/5 5/10 5/21
5/24 6/7 6/11 6/14 8/14 8/19 8/24 9/1
10/3 10/6 13/3 15/12 15/14 16/14 17/4
21/2 23/15 27/10
allegations [18]  8/7 9/24 9/25 10/10
11/10 11/20 13/12 15/4 16/4 16/7 17/4
21/7 28/18 29/6 29/8 29/16 29/18 30/1
allege [23]  4/8 4/9 4/13 4/19 5/9 5/19
8/15 8/16 8/16 11/20 11/22 11/25 12/1
12/2 13/23 23/14 24/6 27/2 27/3 27/7
29/2 29/3 29/14
alleged [10]  3/23 3/25 5/13 5/21 5/23
10/13 12/14 12/17 12/19 28/2
alleging [1]  4/4
allow [3]  7/10 9/23 26/19
allowance [1]  9/23
allowed [2]  22/10 30/11
along [2]  12/21 19/21
also [1]  30/10
am [10]  4/23 7/14 9/25 13/15 15/5 16/9
19/18 21/13 22/20 29/23

Amazon [2]  8/17 9/3
Americas [1]  25/4
analysis [1]  25/5
another [6]  14/1 14/6 14/8 21/15 24/18
29/19
answer [1]  11/16
Anti [1]  23/17
Anti-competitive [1]  23/17
anticompetitive [7]  4/8 4/9 4/16 24/6
25/1 25/5 25/7
antitrust [35]
any [23]  4/3 5/6 5/7 5/11 6/5 6/9 6/15
6/21 7/22 8/25 9/3 10/6 10/7 12/10
12/20 13/8 17/20 20/8 26/23 28/16 29/9
29/18 29/18
anybody [1]  9/1
anyone [1]  24/21
anything [4]  5/11 11/4 12/19 29/14
anywhere [3]  6/21 10/14 12/19
APPEARANCES [1]  1/11
Appearing [2]  3/3 3/8
appreciate [1]  15/2
approach [1]  18/17
appropriate [1]  23/22
appropriately [1]  27/1
approve [2]  22/19 22/20
are [49]
argue [3]  6/20 6/20 6/22
argument [2]  14/24 19/3
around [1]  7/5
as [13]  3/22 4/17 10/3 13/22 13/25 14/8
18/12 18/18 19/2 26/18 27/1 27/18 30/13
ask [1]  13/15
asked [2]  27/1 29/12
asking [2]  12/15 13/18
Aspen [3]  24/13 25/2 29/21
assume [1]  28/3
assumed [1]  27/24
attempt [1]  17/2
attempts [1]  18/18
Avenue [4]  2/5 2/8 2/11 31/8
avenues [2]  10/1 10/2
avoid [3]  11/3 15/21 20/13
away [1]  18/22

B
back [5]  17/5 17/10 18/11 27/17 27/19
backs [1]  17/3
bad [12]  22/16 22/22 23/6 23/12 23/15
25/14 25/20 26/16 26/20 29/12 29/17
29/19
bank [1]  22/25
Barr [3]  19/17 20/3 20/5
barriers [3]  5/2 5/6 5/7
base [1]  18/23
based [3]  17/8 25/1 30/12
basically [2]  15/3 30/3
be [36]
because [17]  4/14 11/4 15/2 17/11 17/13
17/19 19/2 19/6 19/25 20/16 20/22 21/11
21/16 22/21 25/20 28/11 28/19
become [2]  18/15 29/3
before [3]  1/9 12/5 12/7
beginning [1]  16/4
begins [2]  16/18 16/21
behalf [2]  3/3 3/8
being [2]  20/11 22/4
believed [1]  18/21
besides [2]  15/22 20/14
best [2]  19/10 23/25

**B**

better [2]  21/10 21/13
between [5]  9/6 13/24 22/9 23/19 25/13
big [1]  24/15
bigger [1]  24/11
Biscayne [1]  1/16
bit [1]  17/3
BJs [1]  17/18
bleeds [1]  25/9
block [2]  5/11 10/7
blocked [1]  9/1
blocking [3]  10/1 10/2 10/11
blocks [1]  7/8
board [3]  19/19 19/24 19/25
boilerplate [2]  27/7 29/16
both [2]  16/22 28/11
Boulevard [1]  1/16
bow [1]  18/1
brand [1]  19/20
Brickell [1]  2/2
briefs [1]  28/20
bring [1]  10/11
brought [2]  19/23 30/1
business [10]  14/2 14/6 22/2 22/4 22/5
 23/11 23/23 24/7 24/25 24/25
buying [2]  20/21 20/22

**C**

called [2]  3/1 20/3
Calling [1]  3/2
calls [1]  16/24
came [6]  7/17 8/3 8/3 14/3 19/20 19/25
can [12]  3/24 9/2 11/22 12/22 15/4 15/25
 23/25 24/16 25/1 25/12 25/19 25/19
can't [10]  16/25 17/11 22/5 22/5 24/4
 25/14 25/17 26/6 30/10 30/17
cannot [6]  14/1 14/5 14/11 21/16 22/15
 22/16
carefully [1]  11/3
carried [3]  6/22 7/25 20/16
carries [2]  6/9 6/16
carry [3]  6/5 7/22 21/10
carrying [3]  10/24 11/2 21/6
case [43]
cases [16]  4/11 9/9 9/12 9/16 9/21 12/11
 19/6 24/6 24/13 24/14 24/17 28/5 28/5
 28/20 28/24 30/10
catches [1]  18/25
caused [1]  4/10
Centre [1]  2/2
certify [1]  31/3
change [1]  16/10
channel [5]  10/7 12/20 17/10 20/11
 28/12
channels [6]  7/9 10/11 13/12 17/2 27/4
 27/21
chronological [1]  15/6
Circuit [9]  7/7 7/11 8/5 12/5 12/6 12/7
 17/7 19/4 25/3
circuits [1]  19/4
circumstances [1]  11/23
cite [1]  14/4
cited [1]  29/15
City [1]  2/2
claim [24]  3/22 4/1 4/7 7/6 7/10 11/15
 13/16 13/17 13/20 21/18 21/24 22/1 23/2
 25/10 25/11 25/18 25/19 25/20 25/23
 25/25 26/7 30/16 30/17 30/17
claims [2]  9/9 25/15
clear [2]  15/1 24/22
clearly [1]  12/12
client [2]  6/5 10/1
close [1]  26/20
cloth [1]  11/11
collude [2]  27/18 27/20
come [2]  10/9 26/3
comes [3]  7/2 7/4 20/12
comfortable [1]  29/22
COMMERCE [42]
common [1]  24/5
companies [1]  28/11
company [8]  5/19 13/25 14/1 14/2 14/5
 14/7 14/8 14/10
company's [1]  14/6
compete [5]  5/20 18/12 20/25
competing [10]  8/12 10/25 16/1 16/21
 16/25 17/1 18/16 19/23 21/7 27/20
competition [7]  4/10 4/12 4/16 15/10
 20/4 27/9 27/17
competitive [5]  10/23 21/5 23/17 24/10
 26/16
competitor [7]  4/12 7/8 7/9 8/12 17/14
 20/21 29/3
competitors' [1]  7/25
complaint [52]
completely [1]  18/1
concerned [2]  18/15 20/4
conclusion [1]  27/9
conduct [17]  4/8 4/10 4/14 4/16 5/14
 5/21 5/22 16/16 19/10 23/17 23/18 24/6
 25/12 25/14 29/6 29/17 29/18
Connecticut [1]  2/5
conspiratorial [1]  23/7
conspirators [1]  19/7
continental [1]  15/8
continue [1]  9/2
contract [3]  13/24 22/8 30/6
contracts [5]  7/18 7/19 7/21 8/10 8/22
control [1]  14/7
controls [1]  15/7
COOKE [1]  1/9
core [1]  6/25
correct [4]  5/1 5/4 6/17 26/15
Costco [11]  10/15 10/18 10/21 11/1
 15/17 15/18 17/18 20/12 21/4 29/8 29/14
could [11]  3/21 8/24 10/23 21/5 21/16
 22/22 23/8 25/24 25/24 26/12 26/15
couldn't [4]  10/11 17/16 17/17 21/1
counsel [5]  3/6 14/19 18/3 26/23 27/12
couple [1]  7/24
course [2]  3/23 16/11
court [15]  1/1 2/11 3/1 3/18 9/20 11/19
 13/18 14/23 15/11 15/23 19/2 22/21
 24/17 24/22 31/8
courts [4]  9/13 9/13 23/4 23/12
created [2]  5/2 5/6
critical [4]  5/22 7/19 9/5 9/6
CRR [2]  2/10 31/7
Crutcher [2]  2/5 2/8
CSR [2]  2/10 31/7
current [1]  18/11
customer [1]  18/23
cut [12]  7/25 12/19 13/12 16/1 17/1
 20/10 20/23 21/14 21/16 22/9 27/3 27/25
cutting [6]  9/10 21/15 27/21 28/7 28/12
 29/7
CV [1]  1/2
Cyrulnik [1]  1/16

**D**

D.C [1]  2/6
Dallas [1]  2/9
Daniel [1]  19/17
day [1]  20/3
deal [7]  6/5 6/9 6/15 6/21 12/9 12/12
 12/12 20/7 20/17 24/13 24/15 25/2
dealers [1]  16/15
dealing [2]  7/20 30/7
dealings [3]  14/2 14/6 20/20
decline [1]  19/21
declined [3]  10/21 21/4 27/21
defendant [12]  1/7 2/1 3/14 4/3 4/5 4/8
 4/15 11/23 15/2 15/7 22/1 22/19
defendant's [4]  3/13 4/14 30/14 30/19
defendants [2]  3/19 30/4
defended [1]  23/2
demonstrates [1]  25/20
denied [2]  30/14 30/20
design [1]  18/14
Despite [1]  17/25
develop [1]  24/18
development [1]  9/23
DEVIN [1]  1/15
dials [1]  17/5
did [18]  4/3 4/19 5/9 5/11 10/15 11/4
 12/2 12/3 12/19 14/16 17/9 17/17 18/1
 18/9 18/17 20/7 20/9 27/3
didn't [2]  11/1 21/8
difference [1]  8/6
different [6]  8/4 10/12 13/11 13/14 18/16
 23/10
disagree [2]  25/22 27/11
disapprove [1]  22/19
discontinue [1]  20/6
discovery [9]  11/8 11/25 12/1 19/7 21/11
 21/19 21/22 24/9 30/9
disfavored [1]  19/5
dismiss [17]  3/13 6/20 6/23 8/1 9/20
 11/19 11/21 13/18 19/5 21/18 21/22 24/5
 27/1 28/17 29/5 29/18 30/19
dismissal [1]  3/20
distinguishing [1]  9/6
distribution [15]  7/8 10/2 10/2 10/7 10/11
 12/20 13/13 17/2 17/10 20/11 27/4 27/22
 28/9 28/12 28/22
distributor [15]  7/4 8/20 9/9 9/15 12/3
 12/12 12/18 12/21 14/15 14/16 24/16
 28/1 28/4 28/6 29/1
distributor's [2]  12/8 12/9
distributors [4]  6/3 7/2 28/19 30/6
DISTRICT [3]  1/1 1/1 1/10
do [11]  4/3 17/22 20/16 20/25 21/12
 21/16 21/17 22/11 23/5 23/23 26/2
Docket [3]  3/14 30/21
does [7]  4/19 6/8 14/8 16/19 27/2 27/3
 28/9
doesn't [5]  4/4 13/6 13/8 29/13 30/17
doing [1]  17/19
domestic [1]  20/19
domination [1]  16/14
don't [5]  3/23 11/24 21/11 29/17 29/18
done [2]  11/23 23/12
door [2]  26/20 26/21
down [2]  18/3 20/9
dozens [1]  9/9
draw [1]  12/16
dropped [1]  19/24
due [1]  18/19

## D

Dunn [4]  2/5 2/8 3/9 3/10
during [1]  19/3
Duty [1]  25/4

## E

each [1]  27/5
earlier [3]  14/3 14/21 15/17
eBay [1]  8/17
effective [1]  7/9
efficient [1]  7/8
element [1]  14/13
Eleventh [7]  7/7 7/11 8/5 12/5 17/7 19/4 25/3
email [2]  19/11 21/9
emailing [1]  21/12
emails [1]  19/18
employee [1]  19/17
Ends [2]  22/14 22/18
engaged [2]  4/8 4/15
enough [2]  4/13 21/21
enter [1]  5/12
entered [4]  7/18 7/19 8/9 20/20
entire [2]  15/18 20/6
entities [1]  23/23
entitled [2]  22/20 31/4
entry [4]  3/14 5/6 5/7 30/21
equity [1]  13/22 14/10
essence [1]  30/7
essentially [2]  7/20 27/18
even [9]  4/5 9/1 17/11 23/4 23/9 29/1 29/2 29/16 29/25
ever [1]  19/10
every [3]  3/21 3/23 3/25
everyone [1]  8/22
evidence [3]  19/6 19/9 19/10
exactly [4]  12/16 23/14 26/8 29/13
example [2]  16/16 21/3
except [1]  22/12
exception [2]  22/13 23/13
exceptions [1]  12/13
exclude [3]  15/10 23/20 27/9
excluded [1]  8/11
exclusive [3]  7/20 8/22 20/20
exercised [1]  23/6
exercising [1]  22/21
Exhibit [1]  19/15
explained [1]  20/3
expressly [2]  10/23 21/5

## F

F.2d [1]  12/6
facilities [1]  4/22
fact [15]  3/23 3/25 7/19 8/5 8/11 8/18 10/13 13/11 15/13 15/13 17/9 19/24 24/15 24/17 28/24
factor [1]  9/6
facts [15]  7/15 7/17 8/7 8/8 8/8 9/8 9/23 11/4 11/7 12/1 15/3 16/13 19/8 27/11 30/12
factual [15]  5/10 10/10 11/20 13/12 16/8 16/9 17/4 20/15 21/7 24/4 24/18 27/10 28/18 29/6 29/8
factually [2]  23/18 30/10
fad [1]  29/14
fail [1]  14/13
failing [3]  9/5 12/17 29/20
failings [2]  5/8 6/24
fails [2]  26/9 26/10
fairly [1]  7/3

faith [11]  22/16 22/22 23/6 23/12 23/15 23/14 25/21 25/16 28/17 26/20 29/12 29/14 29/17 29/19
fall [2]  25/10 30/16
falls [1]  30/18
fashion [1]  27/8
faster [1]  18/5
favor [1]  25/23
feared [1]  20/16
feel [1]  18/22
felicetti [1]  31/7 31/7 31/9
Fifth [2]  12/5 12/7
file [1]  7/5
find [3]  17/23 25/23 25/24
findings [2]  8/5 8/11
finds [1]  16/24
fine [2]  24/12 29/23
finger [2]  11/12 11/17
first [5]  6/1 16/16 18/11 25/17 27/7
fittings [2]  20/21 20/23
FL [3]  1/13 1/17 2/3
FLORIDA [8]  1/1 1/4 2/12 14/4 22/3 22/12 23/4 31/9
flsd.uscourts.gov [2]  2/12 31/9
fly [1]  17/13
focus [1]  8/6
force [1]  23/1
forced [1]  22/24
foreclose [1]  26/20
foregoing [1]  31/3
forms [1]  16/17
forward [2]  19/8 24/7
found [1]  8/8
four [1]  30/9
framework [1]  4/18
Free [1]  25/4
FREEDMAN [9]  1/15 1/16 3/4 3/4 14/20 26/25 27/6 28/15 29/8
frequent [1]  7/3
FTC [4]  7/17 8/4 8/4 8/8
fulfilled [1]  20/10
full [1]  9/23
fund [2]  13/22 14/10
further [1]  25/3
futile [1]  18/19

## G

general [3]  3/6 24/20 24/21
generalizing [1]  9/25
get [13]  11/20 11/24 11/25 18/1 18/4 19/7 20/23 21/16 21/19 21/22 24/10 28/17 29/17
gets [2]  15/16 17/19
getting [2]  8/12 8/23
Gibson [4]  2/5 2/8 3/9 3/10
gibsondunn.com [2]  2/6 2/9
given [1]  11/7
go [8]  4/18 11/25 12/1 16/4 17/17 17/17 20/9 27/13
goes [3]  15/11 18/24 30/9
going [13]  3/14 7/23 7/24 13/15 16/1 17/1 17/20 18/5 18/25 19/18 21/14 23/24 30/16
good [4]  3/17 14/20 24/3 26/16
gorilla [2]  20/24 23/24
got [2]  18/4 19/23
gun [1]  19/11
guys [1]  24/1

## H

had [7]  10/9 13/11 13/12 21/1 22/19 22/25 30/4
ham [1]  16/15
ham-handling [1]  16/15
Hamilton [2]  22/14 22/24
handling [1]  16/15
happen [1]  9/22
happened [1]  30/3
happens [1]  21/20
happy [1]  29/21
harm [3]  4/10 4/12 4/12
harmed [1]  4/16
has [24]  4/5 4/7 4/9 4/11 4/13 4/15 5/5 8/19 9/10 12/12 14/7 14/15 15/9 19/2 19/9 22/2 22/8 22/12 24/22 25/3 25/6 28/6 30/2 30/3
have [45]
he [8]  12/23 19/18 19/23 22/20 22/21 22/22 27/15 30/17
head [1]  18/6
HealthCo [1]  29/4
hearing [1]  1/9 3/13
heavily [2]  18/13 19/5
HECHT [3]  1/12 1/12 3/6
hechtlawpa.com [1]  1/14
held [6]  14/1 14/5 14/12 19/6 20/19 22/22
here [18]  3/22 8/7 8/14 8/19 9/24 10/13 12/6 12/14 12/17 12/24 14/22 18/8 21/2 23/14 23/17 25/5 28/3 30/3
hereby [1]  31/3
hey [1]  21/9
highlighting [1]  14/25
him [1]  27/1
His [1]  30/15
hold [2]  9/13 12/11
Home [43]
Home's [6]  10/22 10/25 20/17 21/4 21/7 27/16
honest [1]  30/15
Honor [43]
HONORABLE [1]  1/9
how [2]  5/9 25/9
however [1]  30/9
HVIDT [2]  2/7 3/10

## I

I'd [3]  15/2 15/17 29/21
i.e [1]  18/23
ignore [1]  30/10
illegally [2]  15/9 27/8
immediately [1]  18/1
importance [1]  15/6
important [2]  10/18 22/13
improper [2]  22/16
inappropriate [1]  23/1
INC [1]  1/6
incumbent [1]  7/16
informed [1]  20/5
Instead [1]  4/14
insurance [2]  22/24 23/1
intensive [1]  30/11
intent [3]  25/5 25/7 26/17
interest [2]  22/8
interfere [9]  22/3 22/5 22/13 22/15 23/4 23/5 23/10 23/10 25/16
interfered [4]  13/23 14/2 14/5 14/12
interference [17]  11/14 13/16 13/20 13/20 21/24 22/1 22/15 22/23 23/2 23/8

interference... [7]   25/10 25/20 25/25
 26/7 26/10 26/14 30/16
invitation [2]   27/18 27/20
involving [1]   7/16
is [116]
isn't [1]   7/11
issue [9]   4/20 5/15 7/2 10/15 11/6 21/23
 24/4 24/11 24/19
issues [2]   24/3 30/13
it [66]
it's [16]   4/5 4/13 7/3 8/7 9/6 9/18 9/19
 9/19 9/20 14/6 14/9 14/10 17/13 24/2
 24/8 24/21
its [33]
itself [1]   16/17

## J

Jacob [2]   14/21 19/18
Jacobs [1]   17/7
jeopardize [2]   10/24 21/6
jill [5]   2/10 2/12 31/7 31/7 31/9
jlipton [1]   2/6
job [1]   21/1
Josh [2]   3/9 3/15
JOSHUA [1]   2/4
JUDGE [1]   1/10
judgment [5]   8/2 9/19 16/12 21/21 24/18
just [10]   4/2 4/4 4/12 14/24 15/18 20/18
 23/5 24/10 24/23 27/12
justification [2]   24/7 26/16

## K

keep [1]   20/21
key [10]   5/7 5/15 6/24 8/6 12/16 14/25
 17/4 19/2 28/3 28/7
kibosh [1]   17/20
kick [1]   24/1
KIDKRAFT [79]
KidKraft's [6]   13/5 16/19 17/25 18/19
 18/22 27/16
kids [1]   19/19
kind [2]   17/3 17/13
kitchen [11]   6/6 6/10 6/16 15/8 16/1
 16/21 16/25 17/1 18/12 19/23 23/25
kitchens [33]
knew [2]   17/12 18/18
know [4]   11/5 16/3 17/18 29/25

## L

la [1]   15/4
lack [1]   26/16
lacks [1]   12/10
laid [1]   30/2
large [2]   4/5 7/16
largest [1]   18/23
last [1]   11/16
later [3]   9/20 25/24 25/24
law [8]   7/7 7/11 13/22 13/25 14/4 22/3
 22/12 23/4
LAWRENCE [2]   2/1 3/11
lawrence.silverman [1]   2/3
laws [3]   7/3 9/10 25/13
lawsuit [1]   7/5
lays [1]   15/23
lease [3]   22/19 22/20 22/21
Leasing [1]   14/3
least [1]   30/11
legal [1]   16/7
less [2]   13/4 17/6

let [5]   8/6 10/17 16/3 17/23 18/1
lets [3]   4/20 23/8 24/10
leveraging [2]   15/10 27/9
liability [1]   26/18
liable [3]   22/22 23/8 25/2
like [10]   4/2 9/8 12/8 13/25 15/17 17/18
 19/20 20/18 23/5 27/4
limited [1]   12/13
limits [1]   24/23
linchpin [1]   25/5
line [3]   20/6 24/13 24/13
lines [1]   12/21
LIPTON [4]   2/4 3/9 3/15 21/8
Lipton's [1]   19/3
listen [2]   16/10 23/23
literally [1]   19/11
litigation [1]   16/11
little [4]   15/18 17/3 17/14 23/25
LLC [1]   1/3
LLP [4]   1/16 2/1 2/5 2/8
logic [1]   22/3
longer [4]   15/20 15/25 17/9 20/13
look [2]   23/12 30/1
looking [1]   16/9
lose [1]   17/21
lost [1]   4/13
lot [2]   24/17
ludicrous [2]   28/24 28/24

## M

made [3]   8/4 11/11 24/22
maintained [2]   15/9 27/8
majority [1]   22/7
make [8]   5/3 13/6 16/13 17/11 23/24
 23/25 30/11 30/17
makes [1]   24/15
making [3]   16/21 22/14 22/18
malice [3]   23/12 23/16 30/18
malicious [1]   29/16
maliciously [1]   23/7
manner [1]   23/1
manufacturer [6]   5/11 13/7 28/6 28/21
 28/25 29/2
manufactures [1]   5/19
manufacturing [1]   17/10
many [5]   6/12 12/11 12/11 18/16 19/3
March [1]   31/7
MARCIA [1]   1/9
market [13]   4/5 4/16 5/6 5/12 8/9 8/23
 8/25 10/12 15/8 20/19 20/22 30/4 30/5
marketplace [4]   16/14 17/6 23/21 24/1
massive [1]   20/24
matter [4]   9/24 13/22 13/25 31/4
maximize [1]   22/25
may [4]   3/12 3/16 3/18 10/3 11/16 12/4
 16/11 26/2 26/3 26/3 30/9
maybe [1]   11/6
McKinney [1]   2/8
McWane [19]   7/12 7/15 7/18 7/22 7/25
 8/1 8/6 8/7 8/8 8/21 9/7 13/10 13/13
 15/4 20/18 20/18 20/23 21/2 27/4
me [5]   8/6 10/17 16/3 17/23 18/1
meaning [1]   10/1
means [1]   22/17
Meet [2]   22/14 22/18
meeting [3]   19/19 19/24 19/25
MGC [1]   1/2
Miami [7]   1/4 1/17 2/3 2/11 2/12 31/8
 31/9
MidOcean [15]   3/19 13/21 13/21 13/23

13/25 14/8 14/10 20/4 22/7 23/19 23/15
 23/15 26/16 29/14 29/18
might [6]   11/22 11/23 11/25 15/1 26/3
 26/13
mind [1]   18/5
Miramar [1]   1/13
misconduct [1]   19/6
misread [1]   10/16
models [3]   18/12 18/15 18/16
money [1]   4/14
monopolist [4]   4/6 24/12 26/18 29/2
monopoly [7]   15/9 17/25 20/19 24/24
 24/24 27/8 30/4
months [2]   30/8 30/9
more [1]   15/6
morning [2]   3/17 14/20
Morris [1]   25/4
most [2]   7/8 19/9
motion [22]   1/9 3/13 3/24 6/20 6/22 8/1
 8/2 9/19 11/18 11/21 11/24 16/12 21/18
 21/21 21/22 24/4 27/1 28/17 29/5 29/17
 30/14 30/19
motions [1]   19/5
motives [1]   23/7 24/5
mouth [1]   18/5
Mr [8]   19/3 20/3 20/5 21/8 26/25 27/6
 28/15 29/8
Mr. [2]   19/17 19/18
Mr. Daniel [1]   19/17
Mr. Jacob [1]   19/18
much [1]   30/20
must [1]   11/20
my [4]   18/5 18/5 18/5 26/25

## N

N.W [1]   2/5
Naomi [49]
nationwide [1]   8/18
necessary [1]   7/9
need [5]   13/8 19/7 21/17 21/19 24/9
needed [1]   20/5
neglected [1]   14/21
Neither [1]   28/15
network [1]   8/18
Nevertheless [2]   18/9 20/15
next [1]   20/2
no [20]   1/2 3/22 3/25 5/5 5/10 8/23 8/25
 10/6 11/4 11/6 12/18 15/3 15/20 15/25
 16/8 17/9 18/20 20/13 23/4 30/1
None [1]   29/9
normally [2]   22/1 22/12
not [51]
nothing [3]   13/1 14/14 14/17
November [3]   1/5 19/11 19/12
November 23 [1]   19/12
now [9]   11/7 16/22 19/8 21/19 25/17
 29/25 30/8 30/8 30/9
number [1]   18/9

## O

obligation [1]   19/8
observed [1]   30/6
off [20]   7/25 9/11 12/20 13/12 14/24
 15/15 16/1 17/1 20/11 20/23 21/14 21/15
 21/17 22/9 27/3 27/21 27/25 28/7 28/12
 29/7
offer [2]   10/22 21/4
Official [2]   2/11 31/8
often [1]   7/6
OJ [41]

## Q

OJC [2]  17/25 30/5
one [23]  5/7 5/14 5/24 6/3 6/12 6/24
  6/25 7/1 7/4 8/15 8/20 12/4 12/11 15/18
  17/4 24/3 26/4 26/9 27/13 27/13 28/4
  28/14 28/19
ones [1]  7/9
only [12]  5/13 5/13 5/23 6/7 6/11 8/14
  8/19 11/25 12/2 12/13 12/14 12/17
opportunity [1]  11/8
oral [1]  19/3
order [4]  3/1 13/9 15/6 20/21
other [21]  4/3 5/3 5/18 7/22 7/24 9/4
  13/17 14/13 17/18 17/18 18/17 19/4
  23/11 23/11 24/1 26/4 28/15 28/18 29/7
  29/10 30/6
our [11]  14/4 17/1 17/10 19/24 19/24
  19/25 21/16 25/17 25/19 25/19 28/20
out [22]  7/17 8/3 8/3 8/9 8/21 12/16 14/3
  15/23 16/5 16/13 16/24 17/17 19/3 20/21
  24/1 24/10 24/15 26/19 27/3 30/2 30/8
  30/17
output [1]  17/6
over [9]  7/2 7/3 14/8 15/7 19/21 28/20
  28/20 28/21 28/21
overcome [2]  25/8 25/21
overtones [1]  12/10
own [2]  22/4 22/5
owned [1]  14/2
owner [4]  12/23 14/22 17/13 28/11
owns [4]  13/22 14/1 14/7 28/11

## P

P.A [1]  1/12
Pages [1]  1/7
papers [1]  14/4
paragraph [10]  10/19 15/7 15/11 17/24
  19/13 20/2 27/7 27/15 27/15 27/17
Paragraph 13 [2]  15/7 27/7
Paragraph 29 [4]  17/24 27/15 27/15
  27/17
Paragraph 38 [1]  10/19
paragraphs [5]  27/6 27/23 27/25 28/14
  28/15
Parkway [1]  1/13
part [4]  18/2 18/5 22/4 26/17
Partners [8]  3/19 13/21 13/21 13/23
  13/25 14/8 23/19 29/14
Partnership [1]  29/15
party [2]  22/25 23/3
past [5]  11/21 21/22 24/18 28/17 29/17
pattern [1]  13/11
pay [1]  7/23
PCB [1]  29/15
people [3]  5/3 20/20 20/22
percent [1]  15/7
perspective [1]  6/1
picked [2]  15/17 24/17
pipe [1]  8/12
pipefittings [1]  20/19
pipes [3]  7/16 7/23 7/25
place [1]  22/24
placed [1]  23/1
places [1]  17/18
plaintiff [17]  1/4 1/12 3/3 4/3 4/7 4/9 4/11
  4/13 4/15 11/20 11/22 14/21 20/9 25/6
  25/16 30/2 30/15
plaintiff's [1]  30/19
plaintiffs [6]  5/17 11/24 14/19 23/14 24/7
  25/12
plausible [3]  10/10 11/20 21/17
play [12]  4/2 4/24 4/25 5/5 5/12 5/20
  10/22 15/8 15/21 18/12 20/14 21/4
plays [2]  28/5 30/8
please [2]  3/18 26/24
pleases [1]  12/13
point [11]  4/2 11/8 11/8 13/10 24/3 28/3
  28/7 28/13 29/4 29/9 29/12
pointed [5]  19/3 27/6 27/15 27/23 27/25
points [1]  6/25
portfolio [1]  14/10
possible [1]  26/21
posture [2]  8/4 9/17
potentially [1]  26/17
pound [2]  20/24 23/24
power [3]  15/9 17/25 27/8
preliminary [1]  9/24
present [1]  11/7
pressure [2]  15/21 20/13
pretextual [1]  24/8
pretty [1]  16/5
prevent [1]  28/10
prevented [2]  8/12 8/23
prevents [1]  13/2
previous [1]  19/21
price [2]  10/23 21/5
prior [2]  24/24 24/25
private [2]  13/21 14/7
privilege [13]  22/3 22/13 22/15 22/19
  22/20 23/3 23/5 23/6 23/9 25/8 25/16
  25/21 26/19
privileged [1]  22/10
pro [1]  26/16
pro-competitive [1]  26/16
procedural [1]  9/17
proceed [3]  3/16 26/13 26/14
proceedings [2]  30/22 31/4
produce [1]  18/14
product [1]  21/10
production [2]  17/5 18/11
products [8]  5/18 7/1 10/12 10/25 17/2
  21/1 21/7 21/16
profits [1]  23/1
properly [1]  27/21
proposition [1]  29/16
prove [3]  21/19 25/19 25/19
proved [1]  26/25
proven [1]  16/12
pull [1]  27/19
pulled [1]  27/17
purposes [3]  3/24 27/24 28/2
put [6]  8/22 11/12 11/17 17/20 19/8 24/7

## Q

question [3]  6/1 11/16 29/13
questions [2]  12/15 12/16
quickly [3]  11/17 27/5 27/14
quite [1]  30/15
quote [1]  19/18
quoted [2]  28/20 29/4

## R

radar [1]  17/14
rcflllp.com [1]  1/18
read [6]  10/17 12/4 15/18 27/12 28/14
  28/15
ready [1]  11/7
realize [1]  17/15
really [4]  5/15 9/21 17/15 24/9
reasonable [1]  11/10

reasons [1]  25/1
rebates [1]  7/23
recently [1]  19/19
record [3]  27/12 30/12 30/21
referring [1]  7/12
refusal [3]  12/9 24/13 25/2
refuse [2]  20/7 20/17
refused [5]  6/4 6/5 6/9 6/15 6/21
relationship [19]  10/24 11/2 14/7 14/9
  14/11 14/14 14/16 16/17 18/20 21/6 22/2
  22/4 22/6 24/25 25/1 28/9 28/19 28/22
  29/1
relevant [2]  18/2 18/5
remain [1]  17/14
remains [1]  24/4
remembers [1]  15/23
REPORTED [2]  2/10
Reporter [2]  2/11 31/8
represent [1]  3/18
require [1]  4/21
requires [1]  11/10
reseller [2]  8/15 9/4
resellers [3]  6/13 8/19 8/22
resolve [1]  25/17
resolved [1]  24/4
response [3]  17/4 18/10 26/23
retail [2]  8/18 13/8
retailer [5]  5/17 6/15 7/22 12/9 16/22
  18/20 21/15 24/16 28/22 29/3
retailers [19]  5/15 5/24 6/5 6/9 6/21 7/18
  7/20 7/24 8/9 8/10 8/13 8/25 15/21
  17/17 17/18 18/18 18/23 20/14 20/16
retailing [1]  13/5
right [18]  4/22 5/3 8/16 11/11 11/12
  11/17 12/12 12/16 12/24 14/15 17/12
  19/16 22/1 22/22 26/8 26/11 28/6 29/13
rise [2]  25/10 30/16
risk [2]  18/20 21/1
Roche [2]  1/16 3/4
room [1]  23/24
RPR [2]  2/10 31/7
rule [6]  3/21 4/11 12/14 14/4 24/20
  24/21

## S

said [10]  7/22 9/17 12/7 17/9 19/4 21/21
  22/20 22/21 23/4 30/3
sales [2]  19/21 19/24
sam [1]  1/14
same [6]  12/23 17/13 20/3 21/2 23/2
  28/11
say [14]  5/4 6/21 10/20 11/1 15/12 17/22
  18/24 21/8 23/23 27/17 28/5 28/20 28/24
  28/25
saying [4]  11/3 15/3 17/8 23/2
says [10]  11/19 16/25 17/16 19/18 19/23
  20/3 21/8 22/7 25/4 25/16
scaled [1]  18/11
scared [1]  20/23
Schlomo [1]  3/6
SCOTT [2]  2/7 3/10
SE [1]  2/2
seated [1]  3/12
Second [1]  18/14
Section [1]  26/18
see [1]  24/9
seems [1]  9/22
seen [2]  10/3 19/10
sell [19]  8/18 8/24 9/3 10/8 10/22 12/22
  12/24 13/4 13/9 15/25 15/25 16/25 16/25

**S**
sell... [6]  17/11 17/21 18/18 21/4 24/21 24/23
selling [13]  8/20 13/1 13/2 15/21 15/24 16/18 16/22 20/6 20/10 20/14 21/13 21/14 28/10
sells [1]  12/25
sense [1]  13/6
sent [1]  21/8
sentence [2]  12/4 15/18
sentences [1]  14/25
September [1]  16/18
sets [1]  16/5
share [1]  4/5
shareholder [1]  22/8
Sherman [1]  26/19
SHLOMO [2]  1/12 1/12
shot [1]  25/17
should [3]  27/2 27/24 30/11
show [7]  4/12 4/15 24/8 25/12 25/14 26/15 30/18
showed [1]  10/10
shvidt [1]  2/9
SILVERMAN [2]  2/1 3/11
simple [1]  16/5
simply [2]  12/8 12/8
sir [2]  3/16 26/22
sitting [1]  12/24
situation [2]  12/7 26/12
Skiing [3]  24/13 25/2 29/21
slightly [1]  8/4
slow [1]  18/3
small [1]  17/14
smoking [1]  19/11
so [45]
some [8]  9/22 11/23 14/25 18/25 19/9 23/11 26/15 29/6
somebody [1]  22/2
someone [1]  11/25
something [3]  12/1 19/20 23/10
sometimes [3]  9/19 9/19 9/20
sorry [3]  4/23 13/15 18/4
sort [2]  15/4 16/14
SOUTHERN [1]  1/1
speak [1]  29/21
specialty [1]  4/21
specific [1]  11/9
Spectators [1]  3/12
speculate [1]  11/22
split [1]  12/5
spot [1]  3/24
squash [1]  17/15
stage [2]  11/19 29/5
stages [2]  9/18 9/21
Star [2]  20/21 21/1
start [4]  3/14 4/20 14/24 16/3
starting [2]  4/2 4/18
starts [1]  15/15
state [1]  6/8
states [4]  1/1 1/10 7/7 15/8
stating [2]  10/23 21/5
stay [1]  4/4
stayed [1]  18/22
still [5]  3/25 22/22 23/8 25/24 26/17
stop [7]  17/2 20/9 20/11 21/13 22/10 24/25 27/19
stopped [3]  8/20 18/14 30/7
story [6]  15/17 15/18 15/23 16/6 20/12 27/16

straight [1]  23/11
straight-up [1]  23/11
straightforward [1]  16/6
stranger [4]  14/6 14/9 14/11 22/2
Street [1]  2/2
subject [1]  26/17
such [3]  11/4 11/6 18/18
sufficient [2]  25/7 25/21
Suite [1]  1/17 2/2 2/11
summary [5]  8/2 9/19 16/12 21/21 24/18
supplier [6]  6/2 7/1 7/6 8/12 9/10 9/14
suppliers [2]  7/5 7/16
suppliers' [1]  7/23
supplies [1]  8/17
supply [1]  7/24
support [1]  15/4
supports [1]  15/14
Supreme [3]  9/20 11/19 24/22
sure [2]  15/5 23/25
survive [1]  7/10
sustain [2]  26/4 26/6

**T**
take [4]  18/7 18/9 21/2 21/16
taken [3]  22/16 25/3 29/19
taking [1]  21/1
talk [2]  19/20 19/25
talking [2]  13/13 13/14
talks [1]  28/16
Target [2]  8/17 9/3
teamed [1]  22/25
tell [2]  14/21 16/2
telling [2]  21/13 21/15
tells [2]  15/24 27/15
terminate [8]  6/2 7/1 9/14 11/2 14/15 28/6 28/8 29/1
terminated [10]  5/14 5/24 6/12 7/4 8/14 9/9 10/21 12/3 12/22 30/5
terminating [7]  12/18 14/14 18/20 28/4 28/19 28/21 29/10
termination [6]  10/20 15/16 15/20 20/13 21/3
textbook [1]  3/20
than [7]  10/13 15/6 18/5 23/11 28/18 29/7 29/10
Thank [5]  3/17 14/18 26/22 29/24 30/20
that [198]
that's [41]
their [10]  4/20 6/20 8/21 11/2 18/20 20/25 24/5 26/17 29/20 30/6
them [18]  3/24 7/25 8/23 9/3 9/10 11/1 11/20 20/17 21/9 21/13 21/14 22/9 24/10 25/14 27/13 28/15 29/9 30/2
then [16]  8/5 10/12 13/13 16/4 18/24 18/25 20/2 20/9 20/12 21/3 21/14 21/15 25/1 25/13 25/15 28/13
there [35]
There's [1]  5/10
therefore [6]  12/9 14/11 22/8 22/9 23/7 23/8
these [9]  4/21 8/10 15/4 15/24 15/25 20/22 21/7 24/1 27/24
they [79]
thing [5]  11/9 12/2 23/3 23/22 28/13
things [2]  16/10 16/10
think [14]  10/18 11/12 11/17 12/15 15/1 24/2 24/2 24/3 24/3 24/11 26/25 29/12 29/25 30/15
third [3]  18/17 22/25 28/13
Thirty [1]  19/14

Thirty-three [1]  19/14
this [58]
those [6]  9/12 9/16 9/21 12/21 24/17 28/15
though [3]  23/5 23/9 24/11
thought [1]  17/19
thousands [1]  8/19
threat [3]  17/5 17/8 20/10
threatened [2]  18/22 30/5
threats [3]  18/10 18/19 30/3
three [4]  2/2 16/19 19/14 30/8
through [12]  8/18 9/3 12/22 12/24 12/25 16/4 16/14 22/16 26/20 27/5 27/13 29/8
time [6]  18/7 18/25 19/4 19/4 25/23 26/3
times [1]  19/3
today [1]  14/23
Today's [1]  3/13
together [1]  25/9
told [2]  11/1 21/9
tone [1]  17/10
too [8]  18/12 20/17
took [2]  10/6 29/7
topic [1]  19/19
tortious [18]  11/14 13/16 13/19 13/20 14/14 14/17 21/23 21/25 22/23 23/2 23/8 25/10 25/20 25/25 26/6 26/10 26/14 30/15
tortiously [5]  13/23 14/1 14/5 14/12 22/5
toy [8]  5/18 13/1 13/4 13/5 13/7 13/8 13/9 16/19
transaction [2]  23/3 23/11
transcription [1]  31/4
tried [1]  17/13
true [7]  3/22 21/10 22/12 24/21 26/5 27/24 28/3
try [2]  20/11 24/10
trying [3]  5/20 18/14 29/3
turn [1]  7/5
two [7]  16/19 19/21 22/9 23/23 24/2 24/3 28/14
Twombly [3]  11/18 11/19 30/1
TX [1]  2/9

**U**
ultimately [1]  30/5
unable [3]  20/15 20/25 20/25
unanimous [2]  9/12 9/13
unanimously [1]  9/16
under [11]  3/21 14/4 15/20 17/13 20/13 22/3 23/4 25/2 26/18 26/19 30/13
understand [2]  16/7 16/10
undertaken [1]  22/16
UNITED [3]  1/1 1/10 15/8
unless [2]  13/5 29/21
up [14]  7/2 7/4 8/5 9/20 11/19 15/1 15/17 17/3 19/20 19/23 19/25 22/25 23/11 24/17
upon [2]  17/8 30/12
us [6]  12/7 21/14 21/15 21/15 27/15 30/1

**V**
vel [3]  1/18 3/4 14/20
very [8]  10/22 11/3 12/11 12/13 21/5 24/22 27/13 30/20
viable [3]  3/22 4/1 4/7
violated [1]  9/10
violation [6]  6/2 7/1 9/14 10/4 25/13 25/15 28/23 28/25 29/11
violations [1]  30/13
Volvo [1]  14/3

**V**

vs [1]  1/5

**W**

walk [1]  27/5
walked [1]  29/8
Walmart [2]  8/17 9/3
want [8]  11/1 17/15 19/25 23/23 24/21
24/23 27/5 27/13
wanted [3]  14/24 27/19 27/19
wants [2]  12/24 24/16
was [25]  7/16 8/1 8/4 9/17 10/10 11/18
12/22 13/17 14/16 15/20 18/16 20/13
20/15 22/18 22/21 22/24 24/9 24/12
25/12 25/14 25/14 29/19 30/15 30/16
30/21
Washington [1]  2/6
wasn't [1]  30/1
way [2]  20/8 23/11
we [37]
Weiss [2]  14/22 19/18
Well [3]  5/4 11/6 21/10
wells [2]  2/10 2/12
went [4]  8/5 8/9 8/21 27/3
were [12]  7/15 7/17 7/20 8/8 8/10 13/15
20/4 20/20 20/22 20/23 24/5 25/22
what [29]  4/3 4/19 4/24 9/17 9/22 10/13
10/15 10/17 11/14 11/22 11/23 11/25
12/7 15/13 16/3 16/9 16/13 17/9 19/13
21/12 21/17 21/20 21/23 23/15 23/18
24/5 27/2 30/1 30/3
what's [2]  16/12 18/25
whatever [1]  24/16
when [8]  6/4 7/24 14/16 26/3 28/8 29/1
29/2 29/25
where [13]  8/21 9/16 13/3 15/24 20/18
22/14 22/25 24/6 26/12 27/2 27/3 27/7
27/25
whether [2]  8/7 30/8
which [10]  5/17 5/18 9/9 11/18 14/3 17/2
20/19 23/21 29/10 29/13
who [3]  3/14 16/2 22/2
whoever [1]  24/23
whole [2]  4/17 11/11
wholly [1]  14/2
whomever [1]  12/13
why [2]  16/11 25/16
will [9]  3/15 7/5 11/8 16/4 17/21 21/19
25/10 27/23 28/3
willful [1]  29/17
Wilson [1]  12/6
wind [1]  17/19
without [1]  26/7
won't [2]  21/20 21/20
wooden [16]  4/21 4/24 4/25 5/3 5/12
5/18 5/19 10/22 13/4 15/8 15/21 16/19
18/12 20/14 21/4 23/25
worded [1]  11/3
work [1]  24/16
works [1]  18/24
would [22]  7/10 10/12 13/14 15/12 15/13
18/15 18/18 18/20 18/21 19/20 20/7
20/17 20/25 20/25 23/15 23/18 23/22
24/12 25/15 25/22 26/17 26/20
wouldn't [2]  13/13 17/15
written [1]  10/17

**Y**

year [1]  14/4
years [2]  16/20 19/22

Yes [6]  7/14 13/17 13/19 17/23 26/1
26/24
yet [1]  21/11
you [87]
your [53]