UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 0:19-CV-60341-MGC/HUNT

OJ COMMERCE LLC,
and NAOMI HOME, INC.,

    Plaintiffs,

v.

KIDKRAFT, INC., and
MIDOCEAN PARTNERS, L.P.,

    Defendants.
_____/

## PLAINTIFFS' MOTION TO CONTINUE THE TRIAL DATE AND EXTEND THE PRETRIAL DEADLINES

Pursuant to Federal Rules of Civil Procedure 6(b) and 16(b)(4), Plaintiffs OJ Commerce LLC ("OJ Commerce") and Naomi Home, Inc. ("Naomi Home") (collectively "Plaintiffs"), respectfully move for a continuance of the November 9, 2020 trial date and a 4-month extension of the remaining pre-trial deadlines, including the May 21, 2020 discovery deadline, due to the unprecedented and extraordinary complications caused by the ongoing Coronavirus (COVID-19) pandemic, as well as outstanding discovery issues unique to this case. A proposed order including a chart with the current and proposed new deadlines is attached hereto as **Exhibit A**.

### INTRODUCTION

This is a complex antitrust case between competitors in the toy industry, which began last year in February 2019. Presently, trial is scheduled for November 9, 2020;[1] fact discovery must be completed by May 21, 2020; dispositive motions must be filed by May 28, 2020; the parties' staggered expert disclosures begin on June 4, 2020; and expert discovery must be completed by July 2, 2020. (ECF 73). Plaintiffs understand that, under normal circumstances, the Court would be reluctant to continue the trial date and extend the remaining pretrial deadlines; however, as explained below, these are hardly "normal" circumstances. First, the

---

[1] Calendar Call is set for November 4, 2020. (ECF 73 at 1).

global COVID-19 pandemic has created unprecedented and extraordinary complications and logistical challenges for Plaintiffs to meet the current schedule, which was set before the pandemic's onset. Second, Plaintiffs' difficulty with meeting the current pre-trial deadlines has been exacerbated by outstanding discovery issues in this case. This includes the Court's March 30th order finding Defendants' designation of 78.39%[2] of the pages in the document production as "Attorneys Eyes Only" was "high," and ordering Defendants to re-review the propriety of their AEO designations; importantly, the Court's order expressly allows Plaintiffs to further dispute Defendants' AEO designations through the meet-and-confer process and, if necessary, a discovery motion. (ECF No. 119 at 3). There are also numerous outstanding responses to pre-pandemic third-party subpoenas seeking essential information. And no depositions have been taken by either party, let alone scheduled to date. Accordingly, Plaintiffs respectfully submit that there are "compelling circumstance" warranting a continuance of the trial and providing good cause to extend the pre-trial deadlines, as set forth in Exhibit A.

The parties have conferred on the relief requested herein. In light of the unprecedented circumstances, Defendants would agree to an extension of the discovery deadline by 60 days solely for depositions. Nonetheless, Defendants oppose any extension of any other deadlines, because depositions are "the only discovery activity that cannot practicably be completed within the current discovery deadline because of COVID-19." Defendants are wrong. The effects of COVID-19 do not distinguish deposition deadlines from document discovery, expert discovery, dispositive motions, pretrial activities, or other litigation tasks. The effects of COVID-19 permeate every aspect of litigation, including routine and mundane tasks. The children of parties, attorneys, paralegals, and third-party witnesses and subpoena recipients are not in school, affecting the schedules of everyone involved in litigation. The normal employees, resources, and protocols of large corporations are not in place, which delays the compiling and production of data in response to subpoenas. Printing and mailing courtesy copies, subpoenas, or other papers are normally simple tasks handled by office services and a USPS, UPS, or FedEx pickup. Now, in light of stay-at-home orders and social distancing

---

[2] As of the filing of Plaintiffs' motion on February 14, 2020, Defendants had designated 78.39% of their production as Highly Confidential. (ECF 84 at 1). As of the March 23, 2020 telephonic hearing on Plaintiffs' motion, Defendants designation rate had risen to 81.93%.

guidelines, it is a dangerous, if not outright prohibited, to ask a law firm employee to travel to a print shop or mailing service. Plaintiffs and other litigants are certainly adapting, but it is incorrect for Defendants to suggest that COVID-19 affects only depositions.

## BACKGROUND

Defendant Kidkraft, Inc. ("KidKraft") is an admitted monopolist that "owns," "dominates," and "does not have a meaningful direct competitor in [the market for] larger wooden [toy] kitchens." (ECF 90-1 at MOP104, 106, 131, 139); *id.* at MOP110 (KidKraft's "Strengths" include its "Market Share: Product category market leadership/dominance (girl & boy 'activity play')."). After acquiring KidKraft in 2015, MidOcean Partners, L.P. ("MidOcean"), a private equity company, conspired with KidKraft to illegally maintain its lucrative market power. At a November 2016 board meeting, Defendants discussed how OJ Commerce, "a KidKraft retailer, was selling a competing wooden play kitchen manufactured by Naomi Home." (ECF 1 at ¶32).

Shortly thereafter, on November 23, 2016, Daniel Barr, KidKraft's former "Inside Sales Key Account Manager," sent OJ Commerce's CEO an email foreshadowing KidKraft's illegal anticompetitive conduct:

> Listen I wanted to reach out and see if we could set up a time to chat. As you are probably aware KidKraft was purchased by the private equity group MidOcean Partners earlier this year.
>
> In a board meeting recently the topic of the Naomi Kids Brand came up and this is something I would like to talk with you about along with the decline in sales over the previous 2 years.

(ECF No. 1-1). That same day, Barr called and threatened that if OJ Commerce didn't stop selling Naomi Homes' competing products, KidKraft would cut all ties with OJ Commerce. (ECF No. 1 at ¶34). Two days later, KidKraft ceased fulfilling OJ Commerce's customers orders. *Id.* at ¶36. Adding insult to injury, KidKraft then leaned upon its other loyal (or fearful) retailers to blacklist Naomi Homes' competing products. *Id.* at ¶¶37-38.

In February 2019, Plaintiffs filed a five-count complaint against Defendants to remedy their illegal and anticompetitive conduct in violation of federal antitrust and state law. After, Plaintiffs filed their Complaint, Defendants moved for extension of time to respond, which the Court granted. (ECF 8 & 10). On April 1, 2019, Defendants filed a motion to dismiss the Complaint for purportedly failing to state a claim. (ECF 15). On May 2, 2019, Defendants

moved to stay discovery pending a ruling on their motion to dismiss, which the Court denied. (ECF 18 & 20). On November 19, 2019, after a hearing on Defendants' motion to dismiss, the Court denied Defendants' motion. (ECF 49).

## ARGUMENT

This Court has broad discretion in managing its cases, including pre-trial activities, such as discovery and scheduling. *Chrysler Int'l Corp. v. Chenaly*, 280 F.3d 1358, 1360 (11th Cir. 2002) (citation omitted). Modifying the pre-trial schedule requires a showing of "good cause." Fed. R. Civ. P. 16(b)(4). A continuance of the trial date, however, "will be granted only on a showing of compelling circumstance." (ECF 73 at 4).

    **I.    The unprecedented and extraordinary complications caused by the ongoing COVID-19 pandemic are "compelling circumstances" providing good cause to continue the trial date and extend the remaining pretrial deadlines.**

"[A] global pandemic caused by the COVID-19 virus has spread across the world and has caused extensive logistical problems for businesses on a nationwide scale, including courts throughout the nation." *Kleiman v. Wright*, 2020 WL 1472087, at *1-2 (S.D. Fla. Mar. 25, 2020). As of March 13, 2020, both the federal and Florida governments had declared a public health emergency due to the coronavirus, which is ongoing. *See* State of Florida, Executive Order 20-52;[3] COVID-19 Declaration of Emergency Directive 002.[4] Both governments have also implemented extraordinary measures in an effort to mitigate the effect of the viral outbreak sweeping the nation, including "social distancing" and "stay at home" mandates. *See, e.g.*, *State of Florida Executive Order Number 20-91*[5] (Mar. 20, 2020) (ordering, among other things, that "all persons in Florida shall limit their movements and interactions outside of their home to only those necessary to obtain or provide essential services or conduct essential activities").

---

[3] *See* https://www.flgov.com/wp-content/uploads/orders/2020/EO_20-52.pdf (last visited Apr. 11, 2020).
[4] *See* https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/ (last visited Apr. 11, 2020).
[5] *See* https://www.flgov.com/wp-content/uploads/orders/2020/EO_20-91-compressed.pdf (last visited Apr. 11, 2020).

Courts have likewise implemented extraordinary measures in an effort to curtail the pandemic. *See e.g.*, *In re Comprehensive COVID-19 Emergency Measures for the Florida State Courts*,[6] Fla. Admin. Order No. AOSC20-23 (Apr. 6, 2020) (Florida Supreme Court ordering the continued suspension of all jury trials, and reiterating that courts shall reschedule, postpone, or cancel all non-essential proceedings). Recently, on April 3, 2020, the Chief Judge of this District issued an order that further extended the continuance of all jury trials until July 6, 2020, at the earliest. *See* S.D. Fla. Admin. Order 2020-24 ¶2.[7] The U.S. Supreme Court has ordered that "motions for extensions of time . . . will ordinarily be granted by the Clerk as a matter of course if the grounds for the application are difficulties relating to COVID-19 and if the length of the extension requested is reasonable under the circumstances." Order List: 589 U.S.[8] As one court has aptly explained, "[o]ur nation is confronting a crisis that has disrupted our daily lives and the normal operations of businesses, law firms, government institutions, and other enterprises in unprecedented ways." *Statement from the Court of Chancery Concerning Supreme Court Administrative Order No. 3*[9] (Mar. 23, 2020). "The reality is that many hearings and case schedules will have to be adjusted, perhaps multiple times." *Id.*

This case's schedule is no exception. The ongoing COVID-19 pandemic has created unprecedented and extraordinary complications and logistical challenges for Plaintiffs to meet the current trial schedule, which was set before the pandemic's onset. All of the law firms representing Plaintiffs, as well as their vendors, have closed their offices and cancelled business travel and in-person meetings indefinitely. While Plaintiffs, their counsel, and support staff have endeavored to continue "business as usual" by working remotely, the reality is that the availability of videoconferences and other technology has not been a cure-all for the unprecedented and extraordinary challenges posed by the pandemic. *See, e.g.*, *Kleiman*, 2020 WL 147208 at *1-2 (granting motion to extend deadlines for depositions of

---

[6] *See* https://www.floridasupremecourt.org/content/download/633282/7195631/AOSC20-23.pdf
(last visited Apr. 11, 2020).
[7] *See* https://web.flsd.uscourts.gov/uploads/adminOrders/2020/2020-24.pdf (last visited Apr. 11, 2020).
[8] *See* https://www.supremecourt.gov/orders/courtorders/031920zr_d1o3.pdf (last visited Apr. 11, 2020).
[9] *See* https://courts.delaware.gov/rules/pdf/Chancery-Stmt-re-Admin-Order.pdf (last visited Apr. 11, 2020).

expert and fact witnesses, given "the present difficulties of working remotely with limited staff and resources against the COVID-19 backdrop"); *Garcia-Navarro v. Hogar La Bella Union, Inc.*, 2020 WL 1698965, at *4 (D.P.R. Apr. 7, 2020) (granting defendant's motion to extend the deadline for plaintiff to inspect claims files "for a period of thirty days after the current lockdown in Puerto Rico due to the COVID-19 pandemic is lifted"); *Life Time, Inc. v Cherrish Corp.*, 2020 U.S. Dist. LEXIS 52685, at *9 (D. Minn. Mar. 26, 2020) (granting defendant's requests for extension of scheduling order deadlines, because the "extensions are appropriate, particularly in light of the delays that will inevitably arise as a result of the COVID-19 pandemic"); *Redding v. Grifith*, 2020 U.S. Dist. LEXIS 52256, at *5-6 (W.D. Wash. Mar. 24, 2020) (granting a 60-day continuance "of all deadlines in this matter," including the June 3, 2020 trial date, "in light of the unprecedented public health emergency posed by COVID-19").

    **II.    The fact that (1) the Court recently ordered Defendants to re-review their "Attorneys Eyes Only" designations, (2) numerous responses to third-party subpoenas are outstanding, and (3) no depositions have been taken provides good cause to continue the trial date and extend the remaining pretrial deadlines.**

Exacerbating Plaintiffs' difficulty with meeting the current pretrial deadlines, including the May 21st fact discovery deadline, are pending discovery issues unique to this case. This includes the Court's recent March 30th order finding Defendants' designation of 78.39% of the pages in the document production as "Attorneys Eyes Only" was "high," and ordering Defendants to re-review the propriety of their AEO designations. (ECF No. 119 at 3). As explained in Plaintiffs' motion, by designating the vast majority of their document production as "Attorneys Eyes Only," Defendants have severely prejudiced Plaintiffs' due process rights, including their right to meaningfully participate in the discovery of evidence relevant to the claims and defenses at issue. *See, e.g.*, *Martinez v. City of Ogden*, 2009 WL 424785, at *3 (D. Utah Feb. 18, 2009) ("Defendants' request to keep information from Plaintiff [by designating documents Attorneys Eyes Only] implicates Plaintiff's due process rights to have a full and fair opportunity to litigate," because "[a] party may be bound by litigation only if the party has had a 'full and fair opportunity' to litigate the claim or issue," and "[r]estrictions on a litigant's access to information that may constitute or lead to evidence and arguments may severely hamper the litigant's participation") (citations omitted);

*McDonald Apiary, LLC v. Starrh Bees, Inc.*, 2016 WL 868185, at *1 (D. Neb. Mar. 4, 2016) (same).

Among other consequences, Defendants' abuse of the "Attorneys Eyes Only" designation has "forced Plaintiffs to rely solely on their counsel to review virtually all of the evidence relevant to the parties' claims and defenses, and deprived counsel of their clients' superior factual knowledge, expertise, and input in preparing this case for trial." (ECF 84 at 3); *see, e.g.*, *McDonald Apiary, LLC*, 2016 WL 868185, at *1 (explaining that an "Attorneys Eyes Only" designation "is a drastic remedy given its impact on the party entitled to the information, in that it prevents a party from reviewing documents with counsel, . . . hamper[s] the ability of the party to present his or her case[,]" and renders "discovery and trial preparation[s] . . . significantly more difficult and expensive when an attorney cannot make a complete disclosure of relevant facts to a client"); *Ragland v. Blue Cross Blue Shield of N. Dakota*, 2013 WL 3776495, at *1 (D.N.D. June 25, 2013) (explaining that "limiting disclosure of discovery to the attorneys . . . is a drastic remedy" because "it limits the ability of the receiving party to view the relevant evidence, fully discuss it with counsel, and make intelligent litigation decisions," and "limits the ability of a party to provide needed assistance to counsel") (citations omitted). This is not an accident. This is gamesmanship.[10] And this form of gamesmanship has severely impaired Plaintiffs and their counsel's ability to complete their discovery obligations and prepare this matter for trial.

Ultimately, the Court agreed with Plaintiffs that Defendants' designation percentage "is high" and, on March 30th, issued an order granting Plaintiffs' motion:

> Defendants are ordered to have their team go through the production of documents and de-designate documents that should not be listed as highly confidential. If the Parties continue to have objections to the designation of documents, the Parties must submit specific contentions of the designation to each other. If those specific contentions cannot be resolved, the Parties must obtain permission from Chambers to file a motion to compel regarding the specific contention.

---

[10] Plaintiffs submit that Defendants' conduct of designating 78.39% of their production as "Attorneys Eyes Only" is "a thinly veiled effort to handcuff Plaintiffs' ability to prosecute their case and force Plaintiffs to seek near-constant judicial intervention, while running out the clock on the May 21, 2020 discovery deadline." (ECF 84 at 3).

(ECF 119 at 3). On April 8, 2020, Defendants advised that their "re-review" of their "Attorneys Eyes Only" designations was complete, and that their document vendor would be re-producing the documents once the technical steps are completed. On the evening of Friday, April 10, Defendants purportedly produced the re-designated documents, but Plaintiffs have not had sufficient time to confirm the propriety of the re-designations. Similarly, on March 24, 2020, Plaintiffs withdrew their motion to compel based upon Defendants' agreement to produce certain documents. (ECF 118). Yet Defendants first purported to produce those documents on Friday, April 10, and Plaintiffs have not had sufficient time to confirm the sufficiency of that production.

Further, it has just come to light that Defendants failed to provide full organizational charts in response to Plaintiffs RFP leading Plaintiff to just recently uncover (from document production) seven custodians that should be added to the discovery process.[11] In other words, despite the impending discovery deadline of May 21, 2020, *which is less than six weeks away*, Plaintiffs still do not have a copy of the documents Defendants agreed to produce. Due to Defendants' delay in producing documents with *proper* confidentiality designations, Plaintiffs have not been able to even begin collaboratively analyzing the vast majority of Defendants' documents with their clients, pursuing any follow-up discovery, or making informed decisions about which specific witnesses to depose with which exhibits. Nor have Plaintiffs had any opportunity to review the propriety of Defendants' "new" designations in their recent court-ordered document production, which may require further conferrals between the parties or additional court intervention pursuant to the Court's order. *See* (ECF 119 at 3). Accordingly, it could still be months before the dispute over Defendants' misconduct of designating 78.39% of their production as "Attorneys Eyes Only" is resolved, and the resulting prejudice to Plaintiffs is finally cured. For this reason alone, the Court should find that good cause exists to grant Plaintiffs' request for a continuance of the trial and the extension of the pre-trial deadlines.

---

[11] Plaintiffs initially asked for 14 additional custodians. After a meet and confer, however, and in an effort to compromise and conserve judicial resources, Plaintiffs reduced this request to 7 custodians. Defendants, however, are refusing to add these custodians, demanding instead that Plaintiffs agree to limit the request to 3 custodians and promise not to request any additional custodians.

Compounding Plaintiffs' difficulty in meeting the current pretrial deadlines is the fact that crucial discovery is incomplete, and has been effectively derailed due to the pandemic, including depositions and critical third-party discovery. Indeed, to date, neither party has taken or scheduled a single deposition. Although Plaintiffs proactively sought to preempt this problem, Defendants refused to cooperate. For example, back in January 2020, before the onset of the pandemic, Plaintiffs' counsel proposed that the parties begin formulating a tentative global schedule for the parties' respective depositions in light of the May 21st discovery deadline. The idea was to block-off time on everyone's calendars, so that the parties, their counsel, and the witnesses could plan accordingly. But Defendants' counsel declined Plaintiffs' proposal as premature, given the status of the parties' document productions at that time. Then, on April 6, 2020, *approximately 6 weeks before the May 21st discovery deadline*, Defendants' counsel asked Plaintiffs' counsel to propose potential deposition dates of four witnesses; Defendants' counsel also advised that they would be sending a notice of topics for a Rule 30(b)(6) corporate representative deposition later that week, which Defendants ultimately provided on April 14, 2020 after meeting and conferring on this motion.

Like Defendants, Plaintiffs also intend to depose Defendants' corporate representatives and some of their current and former employees. But Plaintiffs have not yet formally requested potential deposition dates, because they are uncertain as to which specific witnesses they would like to depose or with which exhibits, given Defendants' excessive AEO designations have severely delayed and frustrated Plaintiffs' counsel's ability to collaborate with their clients. In fact, April 14, 2020 was the first time Defendants proposed topics for the corporate representative depositions. To date, no depositions been taken. The parties have not agreed to the dates for the depositions noticed by Defendants on April 14, and no other depositions have been scheduled. For these additional reasons, Plaintiffs respectfully submit that good cause exists to grant this motion for continuance of the trial and the extension of the pre-trial deadlines.[12] *See, e.g.*, *Libutan v. MGM Grand Hotel LLC*, 2020 WL 1434440, at *2 (D. Nev. Mar. 24, 2020) ("[T]he unavailability of witnesses and documents due to the closure of [the defendant's hotel] will significantly infringe on both parties' ability to 'meaningfully

---

[12] Even under normal circumstances, coordinating a schedule for numerous depositions with counsel and the witnesses, preparing the witnesses to testify, and completing the depositions would be a herculean challenge, given the limited time remaining for discovery.

participate in the discovery process,' which is an appropriate basis for staying proceedings.") (citation omitted); *Ensminger v. Credit Law Ctr., LLC*, 2020 WL 1697248, at *1 (D. Kan. Apr. 7, 2020) (granting motion to extend expert disclosure and discovery deadlines "[t]o account for both the possibility of supplemental discovery and the uncertainty of rescheduling depositions during the pandemic"); *Shelby v. Lakeview Loan Servicing, LLC*, 2020 WL 1697244, at *1 (E.D. Mich. Apr. 7, 2020) (granting motion to extend the discovery and dispositive motion deadlines by 90 days, since "a deposition of a key witness has been delayed because of the ongoing COVID-19 pandemic"); *C.W. by & through F.W. v. NCL (Bahamas) Ltd.*, 2020 WL 1492904, at *1 (S.D. Fla. Mar. 21, 2020) ("Is it reasonable to require defense counsel to prepare the 30(b)(6) witness for a deposition while complying with the social distancing standard of ten feet? Absolutely not.").

Aside from depositions, the parties also have not yet completed critical third-party discovery. Although both parties have served numerous subpoenas on third parties, both parties are awaiting some responses. For example, Defendants contend they cannot answer one of Plaintiffs' interrogatories, which seeks critical information relevant to the analysis of Defendants' market share, because "Defendants have subpoenaed 17 third-parties seeking information relevant to this inquiry, but have received responses from 10, and *are still awaiting responses from significant third parties, including Amazon and Walmart (the largest toy retailers in the U.S.).*" (ECF 93 at 3) (emphasis added). Plaintiffs are in the same boat. They too have subpoenaed information essential to the claims and defenses at issue from numerous third parties, including Amazon, Walmart, and Target, but have not yet received productions.

Under normal circumstances, third-party retailers can face challenges in compiling and producing years of sales data for specific products like wooden toy kitchens. The pandemic has only exacerbated those issues, where large retailers understandably face strains in their legal and non-legal departments. Thus, although Plaintiffs—and likely, Defendants—are coordinating with critical third parties like Amazon, Target, and Walmart—there are understandable delays in important document productions, which, in turn, will inform the need for any additional documentary discovery and depositions. Without complete responses to the interrogatory and to the subpoenas, Plaintiffs cannot make an informed evaluation of the further discovery that is needed, and cannot otherwise prepare this case for trial. For these additional reasons, Plaintiffs respectfully submit that good cause exists to grant this motion

for continuance of the trial and the extension of the pre-trial deadlines. *See, e.g.*, *Bryant v. Boyd*, 2020 U.S. Dist. LEXIS 53618, at *3 (E.D. Mo. Mar. 27, 2020) (granting motion to stay "imminent" discovery deadline, because "[t]he breadth of discovery in this case is substantial, and the Covid-19 pandemic will only compound the difficulty the parties have experienced obtaining discovery"); *C.W. by & through F.W. v. NCL (Bahamas) Ltd.*, 2020 WL 1492904, at *1 (S.D. Fla. Mar. 21, 2020) ("Is it rational to expect defense counsel to enlist assistance from cruise ship attorneys and other employees (e.g., to track down documents and information) to adequately prepare the corporate representative when the entire cruise ship industry is on lockdown and thousands of employees have been let go? Of course not.").

To be sure, Plaintiffs have gone above and beyond to comply with discovery obligations. Defendants (i) issued approximately 40% more requests for production than Plaintiffs, (ii) requested approximately 100% more keyword strings than Plaintiffs, and (iii) requested nearly 50% of Plaintiffs' employees as custodians. Yet Defendants have produced ~87% less pages than Plaintiffs – another issue which will need to be resolved between the parties (or if impossible, by the Court).

WHEREFORE, Plaintiffs respectfully request that the Court grant this motion and issue an order continuing the trial date and extending the remaining pretrial deadlines, as proposed in Exhibit A hereto.

## S.D. FLA. L.R. 7.1 CERTIFICATION

Plaintiffs' counsel has conferred with Defendants' counsel by telephone in a good faith effort to resolve the issues raised in the motion but were unable to reach a resolution. After conferring, Defendants stated the following:

> Defendants agree in part to Plaintiffs' proposed extension but do not consent to the full relief requested. Defendants would agree to an extension of the discovery deadline by 60 days solely for depositions, because that is the only discovery activity that cannot practically be completed within the current discovery deadline because of COVID-19. Defendants oppose an extension for any other discovery activities. Discovery has been underway for nearly a year, the deadline for written discovery is approaching within a few days, and the discovery cutoff is just over five weeks away. The parties should be near completion of all discovery activities, and there is thus no basis to extend the schedule to allow for additional months of document discovery, written discovery, more motions to compel, and so forth.

Respectfully submitted,

**ROCHE CYRULNIK FREEDMAN LLP**

By: */s/ Velvel Devin Freedman*
Velvel (Devin) Freedman
Florida Bar No. 99762
Constantine Economides
Florida Bar No. 118177
**ROCHE CYRULNIK FREEDMAN LLP**
200 South Biscayne Boulevard
Suite 5500
Miami, Florida 33131
vel@rcfllp.com
ceconomides@rcfllp.com

Mark A. Schweikert
Florida Bar No. 70555
**SCHWEIKERT LAW PLLC**
1111 Biscayne Blvd., Suite 1550
Miami, Florida 33131
(305) 926-9452
mark@schweikertlaw.com

Shlomo Y. Hecht, P.A.
Florida Bar No.: 127144
11651 Interchange Cir S
Miramar, FL 33025
Phone: 954-861-0025
Fax: 615-413-6404
Email: sam@hechtlawpa.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 14, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Mark A. Schweikert*
MARK A. SCHWEIKERT