# COMPOSITE EXHIBIT C

# SCHWEIKERT LAW

1111 Brickell Avenue, Suite 1550 | Miami, Florida 33131 | T: (305) 926-9452

Mark A. Schweikert, Esq.
mark@schweikertlaw.com

June 6, 2020

**VIA EMAIL ONLY**

Joshua Lipton, Esq.
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306

Re:     MidOcean Partners IV, LP's Responses to Plaintiffs' Requests for Admission and
        KidKraft, Inc.'s Responses to Plaintiffs' Requests for Admission, dated May 21, 2020

Dear Josh:

I am writing to explain the deficiencies in your clients' responses to our requests for admissions pursuant to Federal Rule of Civil Procedure 37(c)(2).  Please advise as to your availability for a meet-and-confer call next week.

### KidKraft, Inc.'s Responses to Requests for Admission

REQUEST FOR ADMISSION 1: Admit that KidKraft is not aware of any manufacturer of wooden toy kitchens that, at any time from September 2011 to the date hereof, had a greater market share than KidKraft for wooden toy kitchen sales in the continental United States.
RESPONSE TO REQUEST FOR ADMISSION 1: KidKraft does not have information about every manufacturer's sales at all times during the relevant time period, and therefore denies Request No. 1.

**Evasive and inadequate, the RFA does not ask about every manufacturer's sales, only those of which KK is aware.**

REQUEST FOR ADMISSION 2: Admit that KidKraft is not aware of any manufacturer of wooden toy kitchens that, at any time from September 2011 to the date hereof, sold more wooden toy kitchens in the continental United States annually than KidKraft.
RESPONSE TO REQUEST FOR ADMISSION 2: KidKraft lacks knowledge and information to admit or deny this Request. KidKraft has made a reasonable inquiry and the information it knows or can readily obtain is insufficient to enable it to admit or deny, because KidKraft does not know how many wooden toy kitchens every manufacturer in the continental United States sold on an annual basis for each point in the relevant period.

**Evasive and inadequate, same as no. 1.**

# SCHWEIKERT LAW

1111 Brickell Avenue, Suite 1550 | Miami, Florida 33131 | T: (305) 926-9452

REQUEST FOR ADMISSION 3: Admit that KidKraft is not aware of any manufacturer of wooden toy kitchens that, at any time from September 2011 to the date hereof, received more annual revenue than KidKraft from wooden toy kitchen sales in the continental United States.

RESPONSE TO REQUEST FOR ADMISSION 3: KidKraft lacks knowledge and information to admit or deny this Request. KidKraft has made a reasonable inquiry and the information it knows or can readily obtain is insufficient to enable it to admit or deny, because KidKraft does not know every competitor's annual revenue from wooden toy kitchens sold in the continental United States for each point in the relevant period.

**Evasive and inadequate, same as no. 1.**

REQUEST FOR ADMISSION 4: Admit that KidKraft is and has been since at least September 2011, the leading manufacturer of wooden toy kitchens in the continental United States. 3

RESPONSE TO REQUEST FOR ADMISSION 4: KidKraft objects to Request No. 4 as vague and ambiguous to the extent that the term "leading manufacturer" is not defined and is a vague and ambiguous term. KidKraft therefore denies Request No. 4.

**Evasive and inadequate, the term "leading manufacturer" is not vague or ambiguous.**

REQUEST FOR ADMISSION 6: Admit that, prior to November 25, 2016, KidKraft did not adopt an internal policy to limit its market share for wooden toy kitchens in the continental United States.

RESPONSE TO REQUEST FOR ADMISSION 6: Request No. 6 is confusing and incoherent, and KidKraft therefore objects to the Request and denies the Request on that basis.

**Evasive and inadequate, this RFA plainly asks whether KK adopted such an internal policy, Plaintiffs are entitled to a straight response.**

REQUEST FOR ADMISSION 7: Admit that, as of November 25, 2016 and through the date hereof, KidKraft possessed at least a 20% share of wooden toy kitchen sales in the continental United States.

RESPONSE TO REQUEST FOR ADMISSION 7: KidKraft objects to Request No. 7 as vague and ambiguous to the extent that Plaintiffs do not specify the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which KidKraft is to measure the share, or whether the share is to be calculated by units sold or dollars sold. Moreover, KidKraft does not have access to share data on a daily basis, and as such cannot admit or deny a request to specify its share on a particular date (in this case, November 25, 2016). Additionally, KidKraft objects to Request No. 7 as confusing in that it asks for share of sale calculation on a "continental United States" basis, and not on a domestic basis. KidKraft does not keep share data on a continental United States basis and it would be overly burdensome and extremely costly for KidKraft to calculate its "continental United States" share sales even if it was able to determine the variables on which Plaintiffs would like for KidKraft to calculate the information to answer Request No. 7.

**Evasive and inadequate, the term "20% share is not vague or ambiguous, and Plaintiffs are not required to specify "annual basis, monthly basis, weekly basis, aggregate basis, or daily basis," or whether "the share is to be calculated by units sold or dollars sold," to get a straight answer to this RFA. And, even if defendant only has data on a "domestic basis" and not on**

SCHWEIKERT LAW

1111 Brickell Avenue, Suite 1550 | Miami, Florida 33131 | T: (305) 926-9452

**a "continental United States" basis, that data is adequate for defendant to provide a straight response to this RFA.**

REQUEST FOR ADMISSION 8: Admit that, as of November 25, 2016 and through the date hereof, KidKraft possessed at least a 30% share of wooden toy kitchen sales in the continental United States.

RESPONSE TO REQUEST FOR ADMISSION 8: KidKraft objects to Request No. 8 as vague and ambiguous to the extent that Plaintiffs do not specify the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which KidKraft is to measure the share, or whether the share is to be calculated by units sold or dollars sold. Moreover, KidKraft does not have access to share data on a daily basis, and as such cannot admit or deny a request to specify its share on a particular date (in this case, November 25, 2016). Additionally, KidKraft objects to Request No. 8 as confusing in that it asks for share of sale calculation on a "continental United States" basis, and not on a domestic basis. KidKraft does not keep share data on a continental United States basis and it would be overly burdensome and extremely costly for KidKraft to calculate its "continental United States" share sales even if it was able to determine the variables on which Plaintiffs would like for KidKraft to calculate the information to answer Request No. 8.

**Evasive and inadequate, the term "30% share is not vague or ambiguous, and Plaintiffs are not required to specify "annual basis, monthly basis, weekly basis, aggregate basis, or daily basis," or whether "the share is to be calculated by units sold or dollars sold," to get a straight answer to this RFA. And, even if defendant only has data on a "domestic basis" and not on a "continental United States" basis, that data is adequate for defendant to provide a straight response to this RFA.**

REQUEST FOR ADMISSION 9: Admit that, as of November 25, 2016 and through the date hereof, KidKraft possessed at least a 40% share of wooden toy kitchen sales in the continental United States.

RESPONSE TO REQUEST FOR ADMISSION 9: KidKraft objects to Request No. 9 as vague and ambiguous to the extent that Plaintiffs do not specify the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which KidKraft is to measure the share, or whether the share is to be calculated by units sold or dollars sold. Moreover, KidKraft does not have access to share data on a daily basis, and as such cannot admit or deny a request to specify its share on a particular date (in this case, November 25, 2016). Additionally, KidKraft objects to Request No. 9 as confusing in that it asks for share of sale calculation on a "continental United States" basis, and not on a domestic basis. KidKraft does not keep share data on a continental United States basis and it would be overly burdensome and extremely costly for KidKraft to calculate its "continental United States" share sales even if it was able to determine the variables on which Plaintiffs would like for KidKraft to calculate the information to answer Request No. 9.

**Evasive and inadequate, the term "40% share is not vague or ambiguous, and Plaintiffs are not required to specify "annual basis, monthly basis, weekly basis, aggregate basis, or daily basis," or whether "the share is to be calculated by units sold or dollars sold," to get a straight answer to this RFA. And, even if defendant only has data on a "domestic basis" and not on a "continental United States" basis, that data is adequate for defendant to provide a straight response to this RFA.**

# SCHWEIKERT LAW

1111 Brickell Avenue, Suite 1550 | Miami, Florida 33131 | T: (305) 926-9452

REQUEST FOR ADMISSION 10: Admit that, as of November 25, 2016 and through the date hereof, KidKraft possessed at least a 50% share of wooden toy kitchen sales in the continental United States.

RESPONSE TO REQUEST FOR ADMISSION 10: KidKraft objects to Request No. 10 as vague and ambiguous to the extent that Plaintiffs do not specify the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which KidKraft is to measure the share, or whether the share is to be calculated by units sold or dollars sold. Moreover, KidKraft does not have access to share data on a daily basis, and as such cannot admit or deny a request to specify its share on a particular date (in this case, November 25, 2016). Additionally, KidKraft objects to Request No. 10 as confusing in that it asks for share of sale calculation on a "continental United States" basis, and not on a domestic basis. KidKraft does not keep share data on a continental United States basis and it would be overly burdensome and extremely costly for KidKraft to calculate its "continental United States" share sales even if it was able to determine the variables on which Plaintiffs would like for KidKraft to calculate the information to answer Request No. 10.

**Evasive and inadequate, the term "50% share is not vague or ambiguous, and Plaintiffs are not required to specify "annual basis, monthly basis, weekly basis, aggregate basis, or daily basis," or whether "the share is to be calculated by units sold or dollars sold," to get a straight answer to this RFA. And, even if defendant only has data on a "domestic basis" and not on a "continental United States" basis, that data is adequate for defendant to provide a straight response to this RFA.**

REQUEST FOR ADMISSION 11: Admit that, as of November 25, 2016 and through the date hereof, KidKraft possessed at least a 60% share of wooden toy kitchen sales in the continental United States.

RESPONSE TO REQUEST FOR ADMISSION 11: KidKraft objects to Request No. 11 as vague and ambiguous to the extent that Plaintiffs do not specify the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which KidKraft is to measure the share, or whether the share is to be calculated by units sold or dollars sold. Moreover, KidKraft does not have access to share data on a daily basis, and as such cannot admit or deny a request to specify its share on a particular date (in this case, November 25, 2016). Additionally, KidKraft objects to Request No. 11 as confusing in that it asks for share of sale calculation on a "continental United States" basis, and not on a domestic basis. KidKraft does not keep share data on a continental United States basis and it would be overly burdensome and extremely costly for KidKraft to 6 calculate its "continental United States" share sales even if it was able to determine the variables on which Plaintiffs would like for KidKraft to calculate the information to answer Request No. 11.

**Evasive and inadequate, the term "60% share is not vague or ambiguous, and Plaintiffs are not required to specify "annual basis, monthly basis, weekly basis, aggregate basis, or daily basis," or whether "the share is to be calculated by units sold or dollars sold," to get a straight answer to this RFA. And, even if defendant only has data on a "domestic basis" and not on a "continental United States" basis, that data is adequate for defendant to provide a straight response to this RFA.**

# SCHWEIKERT LAW

1111 Brickell Avenue, Suite 1550 | Miami, Florida 33131 | T: (305) 926-9452

REQUEST FOR ADMISSION 12: Admit that, as of November 25, 2016 and through the date hereof, KidKraft possessed at least a 70% share of wooden toy kitchen sales in the continental United States.

RESPONSE TO REQUEST FOR ADMISSION 12: KidKraft objects to Request No. 12 as vague and ambiguous to the extent that Plaintiffs do not specify the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which KidKraft is to measure the share, or whether the share is to be calculated by units sold or dollars sold. Moreover, KidKraft does not have access to share data on a daily basis, and as such cannot admit or deny a request to specify its share on a particular date (in this case, November 25, 2016). Additionally, KidKraft objects to Request No. 12 as confusing in that it asks for share of sale calculation on a "continental United States" basis, and not on a domestic basis. KidKraft does not keep share data on a continental United States basis and it would be overly burdensome and extremely costly for KidKraft to calculate its "continental United States" share sales even if it was able to determine the variables on which Plaintiffs would like for KidKraft to calculate the information to answer Request No. 12.

**Evasive and inadequate, the term "70% share is not vague or ambiguous, and Plaintiffs are not required to specify "annual basis, monthly basis, weekly basis, aggregate basis, or daily basis," or whether "the share is to be calculated by units sold or dollars sold," to get a straight answer to this RFA. And, even if defendant only has data on a "domestic basis" and not on a "continental United States" basis, that data is adequate for defendant to provide a straight response to this RFA.**

REQUEST FOR ADMISSION 14: Admit that Melissa & Doug produces wooden toy kitchens but not plastic toy kitchens.

RESPONSE TO REQUEST FOR ADMISSION 14: KidKraft lacks knowledge and information to admit or deny this Request. KidKraft has made a reasonable inquiry and the information it knows or can readily obtain is insufficient to enable it to admit or deny because it does not know for certain that Melissa & Doug has not produced plastic toy kitchens.

**Evasive and inadequate, defendant cannot avoid responding because it does not know "for certain." It must give a straight response to the best of its knowledge after reasonable inquiry.**

REQUEST FOR ADMISSION 15: Admit that Hape produces wooden toy kitchens but not plastic toy kitchens.

RESPONSE TO REQUEST FOR ADMISSION 15: KidKraft lacks knowledge and information to admit or deny this Request. KidKraft has made a reasonable inquiry and the information it knows or can readily obtain is insufficient to enable it to admit or deny because it does not know for certain that Hape has not produced plastic toy kitchens.

**Evasive and inadequate, defendant cannot avoid responding because it does not know "for certain." It must give a straight response to the best of its knowledge after reasonable inquiry.**

REQUEST FOR ADMISSION 20: Admit wooden toy kitchens generally sell at a higher price than plastic toy kitchens.

## SCHWEIKERT LAW

1111 Brickell Avenue, Suite 1550 | Miami, Florida 33131 | T: (305) 926-9452

RESPONSE TO REQUEST FOR ADMISSION 20: KidKraft objects to Request No. 20 as vague and ambiguous as the term "generally" is unclear, ambiguous, and undefined. Therefore, KidKraft denies.

**Evasive and inadequate, the term "generally" is not vague or ambiguous.**

REQUEST FOR ADMISSION 22: Admit that KidKraft has document(s) showing that a consumer who has purchased a wooden toy kitchen and wishes to purchase a second toy kitchen, is likely to purchase a second wooden toy kitchen and not a plastic toy kitchen.
RESPONSE TO REQUEST FOR ADMISSION 22: KidKraft objects to Request No. 22 as vague and ambiguous as the terms "a consumer," "showing," and "is likely" are unclear, ambiguous, and undefined. Therefore, KidKraft denies.

**Evasive and inadequate, the terms "a consumer," "showing," and "is likely" are not unclear or ambiguous, and Plaintiffs are entitled to a straight response.**

REQUEST FOR ADMISSION 23: Admit there are barriers to entry for new manufacturers of wooden toy kitchens.
RESPONSE TO REQUEST FOR ADMISSION 23: KidKraft objects to Request No. 23 as vague and ambiguous as the term "barriers to entry" is unclear, ambiguous, and undefined. Therefore, KidKraft denies.

**Evasive and inadequate, the term "barriers to entry" is not unclear or ambiguous, and Plaintiffs are entitled to a straight response.**

REQUEST FOR ADMISSION 27: Admit that, from the time KidKraft first learned that NH was selling a wooden toy kitchen to November 26, 2016, KidKraft was not aware of any changes that NH made to the designs of its wooden toy kitchens that made them more similar to KidKraft's wooden toy kitchens.
RESPONSE TO REQUEST FOR ADMISSION 27: KidKraft admits that from the time KidKraft first learned that NH was selling a wooden toy kitchen, it was aware that NH's wooden toy kitchen was a knock-off of KidKraft's toy kitchen.

**Evasive, non-responsive, and inadequate, the response does not address whether KK was "aware of any changes," and Plaintiffs are entitled to a straight response to this RFA.**

REQUEST FOR ADMISSION 43: Admit that, prior to terminating its relationship with OJC, KidKraft never sent a demand letter or cease and desist letter to OJC or NH accusing OJC or NH of counterfeiting, knocking off, or copying KidKraft's wooden toy kitchens.
RESPONSE TO REQUEST FOR ADMISSION 43: KidKraft objects to Request No. 43 as vague and ambiguous as the terms "demand letter" and "cease and desist letter" are unclear, ambiguous, and undefined. Therefore, KidKraft denies.

**Evasive and inadequate, the terms "demand letter" and "cease and desist letter" are not unclear or ambiguous, and Plaintiffs are entitled to a straight response.**

REQUEST FOR ADMISSION 45: Admit that, prior to terminating its relationship with OJC, KidKraft never obtained a legal opinion as to whether KidKraft had viable intellectual property claims against NH arising from NH's manufacturing of wooden toy kitchens.

RESPONSE TO REQUEST FOR ADMISSION 45: KidKraft objects to Request No. 45 as it improperly seeks privileged information. On the basis of that objection, KidKraft denies this Request.

**Evasive and inadequate, the RFA does not ask about the substance of any legal opinion, just whether one exists, and that is not privileged.**

REQUEST FOR ADMISSION 48: Admit that, from 2011 to November 25, 2016, OJC's purchases and sales of KidKraft wooden toy kitchens had yielded net profits, as opposed to net losses, for KidKraft.

RESPONSE TO REQUEST FOR ADMISSION 48: KidKraft objects to Request No. 48 as vague and ambiguous as to what "net profits" and "net losses" means as those terms are not defined. KidKraft denies Request No. 48.

**Evasive and inadequate, the terms "net profits" and "net losses" are not unclear or ambiguous, and Plaintiffs are entitled to a straight response.**

REQUEST FOR ADMISSION 49: Admit that, during the year prior to November 25, 2016, OJC's purchases and sales of KidKraft wooden toy kitchens had yielded net profits, as opposed to net losses, for KidKraft.

RESPONSE TO REQUEST FOR ADMISSION 49: KidKraft objects to Request No. 49 as vague and ambiguous as to what "net profits" and "net losses" means as those terms are not defined. KidKraft denies Request No. 49.

**Evasive and inadequate, the terms "net profits" and "net losses" are not unclear or ambiguous, and Plaintiffs are entitled to a straight response.**

REQUEST FOR ADMISSION 53: Admit that, when KidKraft terminated its business relationship with OJC, KidKraft's business relationship with OJC was not KidKraft's least profitable business relationship reseller of KidKraft's wooden toy kitchens.

RESPONSE TO REQUEST FOR ADMISSION 53: KidKraft objects to Request No. 53 as vague and ambiguous because the term "profitable business relationship reseller" is vague, unclear, and not defined.

**Evasive and inadequate, the term "profitable business relationship reseller" is not vague or ambiguous, and Plaintiffs are entitled to a straight response.**

REQUEST FOR ADMISSION 54: Admit that, when KidKraft terminated its business relationship with OJC, OJC was in the top 20% of KidKraft's customers as measured by dollars paid.

RESPONSE TO REQUEST FOR ADMISSION 54: KidKraft objects to Request No. 54 as vague and ambiguous to the extent that Plaintiffs do not specify the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which KidKraft is to measure KidKraft's customers. KidKraft also objects to this Request as the term "customer" is not defined herein, nor

in the discovery requests referenced in Plaintiffs' Requests for Admission as definition sources. KidKraft, therefore, applies the definition of "KidKraft customer" Plaintiffs used in their Second Request for Interrogatories to KidKraft dated December 7, 2019. KidKraft denies Request No. 54.

**Evasive, unresponsive, and inadequate. The request is not vague or ambiguous, and Plaintiffs are not required to specify "the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which KidKraft is to measure KidKraft's customers." Moreover, the defined term "KidKraft Customer" (with the word "Customer") in upper case is not the same as "KidKraft's customers" as used in this RFA, and KK may not base its response on the definition of Kidkraft Customer, which is limited to customers who have spent over $100,000 a year on wooden toy kitchens.**

REQUEST FOR ADMISSION 55: Admit that, when KidKraft terminated its business relationship with OJC, OJC was in the top 20% of KidKraft's customers as measured by units sold.
RESPONSE TO REQUEST FOR ADMISSION 55: KidKraft objects to Request No. 55 as vague and ambiguous to the extent that Plaintiffs do not specify the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which KidKraft is to measure KidKraft's customers. KidKraft also objects to this Request as the term "customer" is not defined herein, nor in the discovery requests referenced in Plaintiffs' Requests for Admission as definition sources. KidKraft, therefore, applies the definition of "KidKraft customer" Plaintiffs used in their Second Request for Interrogatories to KidKraft dated December 7, 2019. KidKraft denies Request No. 55.

**Evasive, unresponsive, and inadequate. The request is not vague or ambiguous, and Plaintiffs are not required to specify "the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which KidKraft is to measure KidKraft's customers." Moreover, the defined term "KidKraft Customer" (with the word "Customer") in upper case is not the same as "KidKraft's customers" as used in this RFA, and KK may not base its response on the definition of Kidkraft Customer, which is limited to customers who have spent over $100,000 a year on wooden toy kitchens.**

REQUEST FOR ADMISSION 56: Admit that, when KidKraft terminated its business relationship with OJC, OJC was in the top 10% of KidKraft's customers as measured by dollars paid.
RESPONSE TO REQUEST FOR ADMISSION 56: KidKraft objects to Request No. 56 as vague and ambiguous to the extent that Plaintiffs do not specify the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which KidKraft is to measure KidKraft's customers. KidKraft also objects to this Request as the term "KidKraft customer" is not defined herein, nor in the discovery requests referenced in Plaintiffs' Requests for Admission as definition sources. KidKraft, therefore, applies the definition of "KidKraft customer" Plaintiffs used in their Second Request for Interrogatories to KidKraft dated December 7, 2019. KidKraft denies Request No. 56.

**Evasive, unresponsive, and inadequate. The request is not vague or ambiguous, and Plaintiffs are not required to specify "the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which KidKraft is to measure KidKraft's customers." Moreover, the defined term "KidKraft Customer" (with the word "Customer") in upper case is not the same as "KidKraft's customers" as used in this RFA, and KK may not base**

its response on the definition of Kidkraft Customer, which is limited to customers who have **spent over $100,000 a year on wooden toy kitchens.**

REQUEST FOR ADMISSION 57: Admit that, when KidKraft terminated its business relationship with OJC, OJC was in the top 10% of KidKraft's customers as measured by units sold.
RESPONSE TO REQUEST FOR ADMISSION 57: KidKraft objects to Request No. 57 as vague and ambiguous to the extent that Plaintiffs do not specify the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which KidKraft is to measure KidKraft's customers. KidKraft also objects to this Request as the term "KidKraft customer" is not defined herein, nor in the discovery requests referenced in Plaintiffs' Requests for Admission as definition sources. KidKraft, therefore, applies the definition of "KidKraft customer" Plaintiffs used in their Second Request for Interrogatories to KidKraft dated December 7, 2019. KidKraft denies Request No. 57.

**Evasive, unresponsive, and inadequate. The request is not vague or ambiguous, and Plaintiffs are not required to specify "the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which KidKraft is to measure KidKraft's customers." Moreover, the defined term "KidKraft Customer" (with the word "Customer") in upper case is not the same as "KidKraft's customers" as used in this RFA, and KK may not base its response on the definition of Kidkraft Customer, which is limited to customers who have spent over $100,000 a year on wooden toy kitchens.**

REQUEST FOR ADMISSION 58: Admit that, when KidKraft terminated its business relationship with OJC, OJC was one of KidKraft's top 20 customers as measured by dollars paid.
RESPONSE TO REQUEST FOR ADMISSION 58: KidKraft objects to Request No. 58 as vague and ambiguous to the extent that Plaintiffs do not specify the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which KidKraft is to measure KidKraft's customers. KidKraft also objects 16 to this Request as the term KidKraft customer is not defined herein, nor in the discovery requests referenced in Plaintiffs' Requests for Admission as definition sources. KidKraft, therefore, applies the definition of "KidKraft customer" Plaintiffs used in their Second Request for Interrogatories to KidKraft dated December 7, 2019. KidKraft denies Request No. 58.

**Evasive, unresponsive, and inadequate. The request is not vague or ambiguous, and Plaintiffs are not required to specify "the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which KidKraft is to measure KidKraft's customers." Moreover, the defined term "KidKraft Customer" (with the word "Customer") in upper case is not the same as "KidKraft's customers" as used in this RFA, and KK may not base its response on the definition of Kidkraft Customer, which is limited to customers who have spent over $100,000 a year on wooden toy kitchens.**

REQUEST FOR ADMISSION 59: Admit that, when KidKraft terminated its business relationship with OJC, OJC was one of KidKraft's top 20 customers as measured by units sold.
RESPONSE TO REQUEST FOR ADMISSION 59: KidKraft objects to Request No. 59 as vague and ambiguous to the extent that Plaintiffs do not specify the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which KidKraft is to measure KidKraft's

## SCHWEIKERT LAW

1111 Brickell Avenue, Suite 1550 | Miami, Florida 33131 | T: (305) 926-9452

customers. KidKraft also objects to this Request as the term KidKraft customer is not defined herein, nor in the discovery requests referenced in Plaintiffs' Requests for Admission as definition sources. KidKraft, therefore, applies the definition of "KidKraft customer" Plaintiffs used in their Second Request for Interrogatories to KidKraft dated December 7, 2019. KidKraft denies Request No. 59.

**Evasive, unresponsive, and inadequate. The request is not vague or ambiguous, and Plaintiffs are not required to specify "the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which KidKraft is to measure KidKraft's customers." Moreover, the defined term "KidKraft Customer" (with the word "Customer") in upper case is not the same as "KidKraft's customers" as used in this RFA, and KK may not base its response on the definition of Kidkraft Customer, which is limited to customers who have spent over $100,000 a year on wooden toy kitchens.**

REQUEST FOR ADMISSION 60: Admit that, when KidKraft terminated its business relationship with OJC, OJC was one of KidKraft's top 25 customers as measured by dollars paid.

RESPONSE TO REQUEST FOR ADMISSION 60: KidKraft objects to Request No. 60 as vague and ambiguous to the extent that Plaintiffs do not specify the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which KidKraft is to measure KidKraft's customers. KidKraft also objects to this Request as the term KidKraft customer is not defined herein, nor in the discovery requests referenced in Plaintiffs' Requests for Admission as definition sources. KidKraft, therefore, applies the definition of "KidKraft customer" Plaintiffs used in their Second Request for Interrogatories to KidKraft dated December 7, 2019. KidKraft denies Request No. 60. 17

**Evasive, unresponsive, and inadequate. The request is not vague or ambiguous, and Plaintiffs are not required to specify "the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which KidKraft is to measure KidKraft's customers." Moreover, the defined term "KidKraft Customer" (with the word "Customer") in upper case is not the same as "KidKraft's customers" as used in this RFA, and KK may not base its response on the definition of Kidkraft Customer, which is limited to customers who have spent over $100,000 a year on wooden toy kitchens.**

REQUEST FOR ADMISSION 61: Admit that, when KidKraft terminated its business relationship with OJC, OJC was one of KidKraft's top 25 customers as measured by units sold.

RESPONSE TO REQUEST FOR ADMISSION 61: KidKraft objects to Request No. 61 as vague and ambiguous to the extent that Plaintiffs do not specify the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which KidKraft is to measure KidKraft's customers. KidKraft also objects to this Request as the term KidKraft customer is not defined herein, nor in the discovery requests referenced in Plaintiffs' Requests for Admission as definition sources. KidKraft, therefore, applies the definition of "KidKraft customer" Plaintiffs used in their Second Request for Interrogatories to KidKraft dated December 7, 2019. KidKraft denies Request No. 61.

**Evasive, unresponsive, and inadequate. The request is not vague or ambiguous, and Plaintiffs are not required to specify "the time period (annual basis, monthly basis, weekly basis,**

# SCHWEIKERT LAW

1111 Brickell Avenue, Suite 1550 | Miami, Florida 33131 | T: (305) 926-9452

**aggregate basis, or daily basis) over which KidKraft is to measure KidKraft's customers." Moreover, the defined term "KidKraft Customer" (with the word "Customer") in upper case is not the same as "KidKraft's customers" as used in this RFA, and KK may not base its response on the definition of Kidkraft Customer, which is limited to customers who have spent over $100,000 a year on wooden toy kitchens.**

REQUEST FOR ADMISSION 62: Admit that, when KidKraft terminated its business relationship with OJC, OJC was one of KidKraft's top 30 customers as measured by dollars paid.

RESPONSE TO REQUEST FOR ADMISSION 62: KidKraft objects to Request No. 62 as vague and ambiguous to the extent that Plaintiffs do not specify the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which KidKraft is to measure KidKraft's customers. KidKraft also objects to this Request as the term KidKraft customer is not defined herein, nor in the discovery requests referenced in Plaintiffs' Requests for Admission as definition sources. KidKraft, therefore, applies the definition of "KidKraft customer" Plaintiffs used in their Second Request for Interrogatories to KidKraft dated December 7, 2019. KidKraft denies Request No. 62.

**Evasive, unresponsive, and inadequate. The request is not vague or ambiguous, and Plaintiffs are not required to specify "the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which KidKraft is to measure KidKraft's customers." Moreover, the defined term "KidKraft Customer" (with the word "Customer") in upper case is not the same as "KidKraft's customers" as used in this RFA, and KK may not base its response on the definition of Kidkraft Customer, which is limited to customers who have spent over $100,000 a year on wooden toy kitchens.**

REQUEST FOR ADMISSION 63: Admit that, when KidKraft terminated its business relationship with OJC, OJC was one of KidKraft's top 30 customers as measured by units sold.

RESPONSE TO REQUEST FOR ADMISSION 63: KidKraft objects to Request No. 63 as vague and ambiguous to the extent that Plaintiffs do not specify the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which KidKraft is to measure KidKraft's customers. KidKraft also objects to this Request as the term KidKraft customer is not defined herein, nor in the discovery requests referenced in Plaintiffs' Requests for Admission as definition sources. KidKraft, therefore, applies the definition of "KidKraft customer" Plaintiffs used in their Second Request for Interrogatories to KidKraft dated December 7, 2019. KidKraft denies Request No. 63.

**Evasive, unresponsive, and inadequate. The request is not vague or ambiguous, and Plaintiffs are not required to specify "the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which KidKraft is to measure KidKraft's customers." Moreover, the defined term "KidKraft Customer" (with the word "Customer") in upper case is not the same as "KidKraft's customers" as used in this RFA, and KK may not base its response on the definition of Kidkraft Customer, which is limited to customers who have spent over $100,000 a year on wooden toy kitchens.**

REQUEST FOR ADMISSION 64: Admit that, after KidKraft terminated its business relationship with OJC, Kidkraft continued business relationships with at least one other seller or reseller whose

11

SCHWEIKERT LAW

1111 Brickell Avenue, Suite 1550 | Miami, Florida 33131 | T: (305) 926-9452

purchases and sales with KidKraft had yielded lower annual net profits than those yielded by KidKraft's former relationship with OJC.

RESPONSE TO REQUEST FOR ADMISSION 64: KidKraft objects to Request No. 64 as vague and ambiguous as to what "net profits" means as that term is not defined. KidKraft denies Request No. 64.

**Evasive and inadequate, the term "net profits" is not vague or ambiguous.**

REQUEST FOR ADMISSION 65: Admit that, after KidKraft terminated its business relationship with OJC, Kidkraft continued business relationships with over 10 other seller or reseller whose purchases and sales with KidKraft had yielded lower annual net profits than those yielded by KidKraft's former relationship with OJC.

RESPONSE TO REQUEST FOR ADMISSION 65: KidKraft objects to Request No. 65 as vague and ambiguous as to what "net profits" means as that term is not defined. KidKraft denies Request No. 65.

**Evasive and inadequate, the term "net profits" is not vague or ambiguous.**

REQUEST FOR ADMISSION 69: Admit that KidKraft and MidOcean were separate entities as of November 25, 2016.

RESPONSE TO REQUEST FOR ADMISSION 69: KidKraft objects to Request No. 69 as vague and ambiguous as the term "separate entities" is unclear, ambiguous and undefined. Therefore, KidKraft denies this Request.

**Evasive and inadequate, the term "separate entities" is not vague or ambiguous.**

REQUEST FOR ADMISSION 76: Admit that, after MidOcean acquired a stake in KidKraft, MidOcean and KidKraft have entered into contracts to which both MidOcean and KidKraft are listed as separate parties.

RESPONSE TO REQUEST FOR ADMISSION 76: KidKraft objects to Request No. 76 as outside the bounds of Federal Rules of Civil Procedure as it seeks information irrelevant to the issues and facts in this case. Deny.

**Evasive, inadequate, and non-objectionable. The information is perfectly relevant as it tends to show that KK and MOP are separate entities within the meaning of antitrust law.**

REQUEST FOR ADMISSION 83: Admit KidKraft wants its market share for wooden toy kitchen sales to increase.

RESPONSE TO REQUEST FOR ADMISSION 83: KidKraft objects to Request No. 83 as vague and ambiguous and incomplete. Therefore, KidKraft denies.

**There is nothing vague, ambiguous, or incomplete about this RFA and Plaintiffs are entitled to a straight, non-evasive answer.**

SCHWEIKERT LAW
1111 Brickell Avenue, Suite 1550 | Miami, Florida 33131 | T: (305) 926-9452

REQUEST FOR ADMISSION 87: Admit that KidKraft has never terminated a business relationship with a retailer, seller or reseller other than OJC on the grounds of alleged sale of knock-offs.

RESPONSE TO REQUEST FOR ADMISSION 87: KidKraft objects to Request No. 87 as confusing as KidKraft did not terminate OJC "on the grounds of alleged sale of knock-offs." KidKraft terminated OJC, in part, because it and its co-owned supplier created and sold their own knock-off of KidKraft's product. KidKraft is not aware of another retailer or reseller that has engaged in such actions.

**Evasive, inadequate, and unresponsive. This RFA does not go to why OJC was terminated or why anyone else was terminated for "such actions." It seeks to determine whether KK has terminated anyone else "on the grounds of alleged sale of knock-offs," and Plaintiffs are entitled to a straight response.**

REQUEST FOR ADMISSION 88: Admit that KidKraft has reviewed the designs and features of toy wooden kitchens manufactured by or for its competitors as a source of potential ideas or inspiration for improving its own products.

RESPONSE TO REQUEST FOR ADMISSION 88: KidKraft objects to Request No. 88 as it is vague and ambiguous as the term "reviewed the potential ideas or inspiration for improving its own products" is undefined, ambiguous, and confusing. KidKraft further objects to Request No. 88 as outside the bounds of Federal Rules of Civil Procedure as it seeks information irrelevant to the issues and facts in this case. On each of those bases, KidKraft denies the Request. Furthermore, to the extent Plaintiffs are asking whether KidKraft has knocked off products of others in the manner that Plaintiffs knocked off KidKraft's products, KidKraft denies the Request.

**Evasive, inadequate, and non-objectionable. The term "reviewed the potential ideas or inspiration for improving its own products" is not vague or ambiguous. This RFA seeks information that is perfectly relevant to this case, as it would allow the fact-finder to compare the conduct of the parties in determining the validity of KK's claim that Plaintiffs were selling "knock-offs." This RFA does not ask "whether KidKraft has knocked off products of others in the manner that Plaintiffs knocked off KidKraft's products," and Plaintiffs are entitled to a straight response to the actual request.**

REQUEST FOR ADMISSION 89: Admit that KidKraft actively reviews the designs and features of toy wooden kitchens manufactured by or for its competitors as a source of potential ideas or inspiration for improving its own products.

RESPONSE TO REQUEST FOR ADMISSION 89: KidKraft objects to Request No. 89 as it is vague and ambiguous as the terms "actively reviews" and "potential ideas or inspiration for improving its own products" are confusing. KidKraft objects to Request No. 89 as outside the bounds of Federal Rules of Civil Procedure as it seeks information irrelevant to the issues and facts in this case. Furthermore, to the extent Plaintiffs are asking whether KidKraft has knocked off products of others in the manner that Plaintiffs knocked off KidKraft's products, KidKraft denies the Request.

**Evasive, inadequate, and non-objectionable. The terms "actively reviews" and "potential ideas or inspiration for improving its own products" are not vague, ambiguous, or confusing,**

13

**and Plaintiffs are entitled to a straight response. This RFA seeks information that is perfectly relevant to this case, as it would allow the fact-finder to compare the conduct of the parties in determining the validity of KK's claim that Plaintiffs were selling "knock-offs." This RFA does not ask "whether KidKraft has knocked off products of others in the manner that Plaintiffs knocked off KidKraft's products," and Plaintiffs are entitled to a straight response to the actual request.**

REQUEST FOR ADMISSION 90: Admit that KidKraft has used designs and features it first saw in wooden toy kitchens manufactured by, or for, its competitors in its own products.

RESPONSE TO REQUEST FOR ADMISSION 90: KidKraft objects to Request No. 90 as outside the bounds of Federal Rules of Civil Procedure as it seeks information irrelevant to the issues and facts in this case. Furthermore, to the extent Plaintiffs are asking whether KidKraft has knocked off products of others in the manner that Plaintiffs knocked off KidKraft's products, KidKraft denies the Request.

**Evasive, inadequate, and non-objectionable. This RFA seeks information that is perfectly relevant to this case, as it would allow the fact-finder to compare the conduct of the parties in determining the validity of KK's claim that Plaintiffs were selling "knock-offs." This RFA does not ask "whether KidKraft has knocked off products of others in the manner that Plaintiffs knocked off KidKraft's products," and Plaintiffs are entitled to a straight response to the actual request.**

REQUEST FOR ADMISSION 93: Admit that KidKraft's dominant share of the market for wooden toy kitchens was a factor in MidOcean's decision to acquire an equity stake in KidKraft.

RESPONSE TO REQUEST FOR ADMISSION 93: KidKraft objects to the Request No. 93 as vague and ambiguous as the term "dominant share" is undefined and confusing. KidKraft further objects to Request No. 93 as a request that should be asked of MidOcean Partners IV, L.P., not KidKraft.

**Evasive and inadequate, the term "dominant share" is not vague, ambiguous, or confusing. And KK must provide a straight response regardless of whether MOP has the same or better knowledge.**

REQUEST FOR ADMISSION 94: Admit that the perceived difficulties facing then-current or future competitors in challenging KidKraft's dominant share of the market for wooden toy kitchens was a factor in MidOcean's decision to acquire an equity stake in KidKraft.

RESPONSE TO REQUEST FOR ADMISSION 94: KidKraft objects to the Request No. 94 as vague and ambiguous as the terms "perceived difficulties facing then-current or future competitors" and "dominant share" are undefined and confusing. KidKraft further objects to Request No. 94 as a request that should be asked of MidOcean Partners IV, L.P., not KidKraft.

**Evasive and inadequate, the terms "perceived difficulties facing then-current or future competitors" and "dominant share" are not vague, ambiguous, or confusing. And KK must provide a straight response regardless of whether MOP has the same or better knowledge.**

REQUEST FOR ADMISSION 99: Admit that Guidecraft's claims against OJC were dismissed.

SCHWEIKERT LAW

1111 Brickell Avenue, Suite 1550 | Miami, Florida 33131 | T: (305) 926-9452

RESPONSE TO REQUEST FOR ADMISSION 99: KidKraft objects to Request No. 99 as it is vague and ambiguous as the term "dismissed" is ambiguous and confusing. Therefore, KidKraft denies.

**Evasive and inadequate, the term "dismissed" is not vague, ambiguous, or confusing.**

REQUEST FOR ADMISSION 100: Admit that MidOcean regularly reviews the competitive position and market share of KidKraft and its other portfolio companies.

RESPONSE TO REQUEST FOR ADMISSION 100: KidKraft objects to the Request No. 100 as vague and ambiguous as the terms "regularly reviews," "competitive position," and "market share" are undefined, ambiguous, and confusing. KidKraft further objects to Request No. 100 as a request that should be asked of MidOcean Partners IV, L.P., not KidKraft. Therefore, KidKraft denies.

**Evasive and inadequate, the terms "regularly reviews," "competitive position," and "market share" are not vague, ambiguous, or confusing. And KK must provide a straight response regardless of whether MOP has the same or better knowledge.**

REQUEST FOR ADMISSION 101: Admit that MidOcean regularly reviews how KidKraft and its other portfolio companies are responding to any threats to their market share posed by their competitors.

RESPONSE TO REQUEST FOR ADMISSION 101: KidKraft objects to the Request No. 101 as vague and ambiguous as the terms "regularly reviews" and "responding to any threats to their market share" are undefined, ambiguous, and confusing. KidKraft further objects to Request No. 101 as a request that should be asked of MidOcean Partners IV, L.P., not KidKraft. Therefore, KidKraft denies.

**Evasive and inadequate, the terms "regularly reviews" and "responding to any threats to their market share" are not vague, ambiguous, or confusing. And KK must provide a straight response regardless of whether MOP has the same or better knowledge.**

REQUEST FOR ADMISSION 102: Admit that MidOcean regularly shares (whether directly or via board designees) with management of KidKraft and its other portfolio companies its own views as to how those portfolio companies should be maintaining their competitive position and responding to the actions of their competitors.

RESPONSE TO REQUEST FOR ADMISSION 102: KidKraft objects to the Request No. 102 as vague and ambiguous as the terms "regularly shares" and "maintaining their competitive position and responding to the actions of their competitors" are undefined, ambiguous, and confusing. KidKraft further objects to Request No. 102 as a request that should be asked of MidOcean Partners IV, L.P., not KidKraft. Therefore, KidKraft denies.

**Evasive and inadequate, the terms "regularly shares" and "maintaining their competitive position and responding to the actions of their competitors" are not vague, ambiguous, or confusing. And KK must provide a straight response regardless of whether MOP has the same or better knowledge.**

# SCHWEIKERT LAW

1111 Brickell Avenue, Suite 1550 | Miami, Florida 33131 | T: (305) 926-9452

REQUEST FOR ADMISSION 103: Admit that the management of KidKraft and MidOcean's other portfolio companies regularly share (whether directly or via board designees) with MidOcean their views as to how to maintain their competitive position and respond to the actions of their competitors.

RESPONSE TO REQUEST FOR ADMISSION 103: KidKraft objects to the Request No. 103 as vague and ambiguous as the terms "regularly share" and "maintain their competitive position and respond to the actions of their competitors" are undefined, ambiguous, and confusing. KidKraft further objects to Request No. 102 as a request that should be asked of MidOcean Partners IV, L.P., not KidKraft. On those bases, KidKraft denies the Request.

**Evasive and inadequate, the terms "regularly share" and "maintain their competitive position and respond to the actions of their competitors" are not vague, ambiguous, or confusing. And KK must provide a straight response regardless of whether MOP has the same or better knowledge.**

REQUEST FOR ADMISSION 105: Admit you have no documents prior to December 2016 showing that Kidkraft considered potential claims, demands, or causes of action against OJC or NH for infringement, knocking off, counterfeiting, misappropriating, stealing, or otherwise copying any product of KidKraft.

RESPONSE TO REQUEST FOR ADMISSION 105: KidKraft objects to Request No. 105 as it improperly seeks information protected by the attorney-client privilege and work product doctrine. Therefore, KidKraft denies.

**Evasive and inadequate. This RFA only seeks to determine whether KK has any such documents, not the substance thereof, and such information is not privileged. Moreover, such documents are not necessarily privileged.**

REQUEST FOR ADMISSION 110: Admit that all documents labeled with the bates KKI prefix are true and correct copies of a document maintained by you in the ordinary course of business.

RESPONSE TO REQUEST FOR ADMISSION 110: KidKraft objects to the blanket request in Request No. 110 as an improper request to admit the genuineness of a document that does not comply with Fed. R. Civ. P. 36(a)(2). KidKraft denies this Request.

**Evasive and inadequate, the RFA asks for admission of purely factual information that defendant must admit or deny. Moreover, there is nothing "improper" about using RFAs to authenticate documents. These are KK's own documents produced in this litigation, and KK knows or can easily determine whether they are true and correct.**

REQUEST FOR ADMISSION 111: Admit that wooden toy kitchens are better for the environment than plastic toy kitchens.

RESPONSE TO REQUEST FOR ADMISSION 111: KidKraft objects to Request No. 111 as vague and ambiguous as the term "better for the environment" is undefined, ambiguous, and confusing. On that basis, KidKraft denies.

**Evasive and inadequate, the term "better for the environment" is not vague, ambiguous, or confusing.**

16

SCHWEIKERT LAW

1111 Brickell Avenue, Suite 1550 | Miami, Florida 33131 | T: (305) 926-9452

REQUEST FOR ADMISSION 112: Admit that wooden toy kitchens are more aesthetically pleasing than plastic toy kitchens.
RESPONSE TO REQUEST FOR ADMISSION 112: KidKraft objects to Request No. 112 as vague and ambiguous as the term "aesthetically pleasing" is undefined, ambiguous, and confusing. On that basis, KidKraft denies.

**Evasive and inadequate, the term "aesthetically pleasing" is not vague, ambiguous, or confusing.**

REQUEST FOR ADMISSION 113: Admit that wooden toy kitchens are safer than plastic toy kitchens.
RESPONSE TO REQUEST FOR ADMISSION 113: KidKraft objects to Request No. 113 as vague and ambiguous as the term "safer" is undefined, ambiguous, and confusing. On that basis, KidKraft denies.

**Evasive and inadequate, the term "safer" is not vague, ambiguous, or confusing.**

REQUEST FOR ADMISSION 119: Admit Costco is an important customer for Kidkraft.
RESPONSE TO REQUEST FOR ADMISSION 119: KidKraft objects to Request No. 119 as vague and ambiguous as it does not define the term "important customer." KidKraft further objects to Request No. 119 as it does not refer to any period of time to assess the Request. Therefore, KidKraft denies this Request.

**Evasive and inadequate, the term "important customer" is not vague, ambiguous, or confusing. Plaintiffs are not required to specify any period of time. KK's response may specify the time periods when Costco was or was not such a customer.**

REQUEST FOR ADMISSION 120: Admit Costco is one of KidKraft's biggest customers.
RESPONSE TO REQUEST FOR ADMISSION 120: KidKraft objects to Request No. 120 as vague and ambiguous as it does not define the term "biggest customer" or the metric that should be used to so calculate. KidKraft objects to Request No. 120 as it does not refer to any period of time to assess the Request. Therefore, KidKraft denies this Request.

**Evasive and inadequate, the term "biggest customer" is not vague, ambiguous, or confusing. Plaintiffs are not required to specify any period of time. KK's response may specify the time periods when Costco was or was not such a customer.**

SCHWEIKERT LAW
1111 Brickell Avenue, Suite 1550 | Miami, Florida 33131 | T: (305) 926-9452

**MidOcean's ("MOP") Responses to Requests for Admission**

REQUEST FOR ADMISSION 1: Admit that MidOcean is not aware of any manufacturer of wooden toy kitchens that, at any time from September 2011 to the date hereof, had a greater market share than KidKraft for wooden toy kitchen sales in the United States.

RESPONSE TO REQUEST FOR ADMISSION 1: MidOcean does not have information about every manufacturer's sales at all times during the relevant time period, and therefore denies Request No. 1.

**Evasive and inadequate, the RFA does not ask about every manufacturer's sales, only those of which MOP is aware.**

REQUEST FOR ADMISSION 2: Admit that MidOcean is not aware of any manufacturer of wooden toy kitchens that, at any time from September 2011 to the date hereof, sold more wooden toy kitchens in the United States annually than KidKraft.

RESPONSE TO REQUEST FOR ADMISSION 2: MidOcean lacks knowledge and information to admit or deny this Request. MidOcean has made a reasonable inquiry and the information it knows or can readily obtain is insufficient to enable it to admit or deny because MidOcean does not know how many wooden toy kitchens every competitor has sold in the United States for each point in the relevant period.

**Evasive and inadequate, same as no. 1.**

REQUEST FOR ADMISSION 3: Admit that MidOcean is not aware of any manufacturer of wooden toy kitchens that, at any time from September 2011 to the date hereof, received more annual revenue than KidKraft from wooden toy kitchen sales in the United States.

RESPONSE TO REQUEST FOR ADMISSION 3: MidOcean lacks knowledge and information to admit or deny this Request. MidOcean has made a reasonable inquiry and the information it knows or can readily obtain is insufficient to enable it to admit or deny because MidOcean does not know every competitor's annual revenue from wooden toy kitchens sold in the United States for each point in the relevant period.

**Evasive and inadequate, same as no. 1.**

REQUEST FOR ADMISSION 4: Admit that KidKraft is and has been since at least September 2011 the leading manufacturer of wooden toy kitchens in the United States.

RESPONSE TO REQUEST FOR ADMISSION 4: MidOcean objects to Request No. 4 as vague and ambiguous to the extent that the term "leading manufacturer" is not defined and is a vague and ambiguous term. MidOcean therefore denies Request No. 4.

**Evasive and inadequate, the term "leading manufacturer" is not vague or ambiguous.**

REQUEST FOR ADMISSION 6: Admit that, prior to November 25, 2016, KidKraft did not adopt an internal policy to limit its market share for wooden toy kitchens in the United States.

## SCHWEIKERT LAW

1111 Brickell Avenue, Suite 1550 | Miami, Florida 33131 | T: (305) 926-9452

RESPONSE TO REQUEST FOR ADMISSION 6: Request No. 6 is confusing and incoherent, and MidOcean therefore objects to the Request and denies the Request on that basis.

**Evasive and inadequate, this RFA plainly asks whether MOP adopted such an internal policy, Plaintiffs are entitled to a straight response.**

REQUEST FOR ADMISSION 7: Admit that, as of November 25, 2016 and through the date hereof, KidKraft possessed at least a 20% share of wooden toy kitchen sales in the continental United States.

RESPONSE TO REQUEST FOR ADMISSION 7: MidOcean objects to Request No. 7 as vague and ambiguous to the extent that Plaintiffs do not specify the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which MidOcean is to measure the share, or whether the share is to be calculated by units sold or dollars sold. Moreover, MidOcean does not have access to share data on a daily basis, and as such, cannot admit or deny a request to specify KidKraft's share on a particular date (in this case, November 25, 2016). Additionally, MidOcean objects to Request No. 7 as confusing in that it asks for share of sale calculation on a "continental United States" basis, and not on a domestic basis. MidOcean is not aware of share data on a continental United States basis and it would be overly burdensome and extremely costly for MidOcean to calculate KidKraft's "continental United States" share sales even if it was able 4 to determine the variables on which Plaintiffs would like for MidOcean to calculate the information to answer Request No. 7.

**Evasive and inadequate, the term "20% share is not vague or ambiguous, and OJC is not required to specify "annual basis, monthly basis, weekly basis, aggregate basis, or daily basis," or whether "the share is to be calculated by units sold or dollars sold," to get a straight answer to this RFA. And, even if defendant only has data on a "domestic basis" and not on a "continental United States" basis, that data is adequate for defendant to provide a straight response to this RFA.**

 REQUEST FOR ADMISSION 8: Admit that, as of November 25, 2016 and through the date hereof, KidKraft possessed at least a 30% share of wooden toy kitchen sales in the continental United States.

RESPONSE TO REQUEST FOR ADMISSION 8: MidOcean objects to Request No. 8 as vague and ambiguous to the extent that Plaintiffs do not specify the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which MidOcean is to measure the share, or whether the share is to be calculated by units sold or dollars sold. Moreover, MidOcean does not have access to share data on a daily basis, and as such, cannot admit or deny a request to specify KidKraft's share on a particular date (in this case, November 25, 2016). Additionally, MidOcean objects to Request No. 8 as confusing in that it asks for share of sale calculation on a "continental United States" basis, and not on a domestic basis. MidOcean is not aware of share data on a continental United States basis and it would be overly burdensome and extremely costly for MidOcean to calculate KidKraft's "continental United States" share sales even if it was able to determine the variables on which Plaintiffs would like for MidOcean to calculate the information to answer Request No. 8.

**Same as no. 7.**

SCHWEIKERT LAW

1111 Brickell Avenue, Suite 1550 | Miami, Florida 33131 | T: (305) 926-9452

REQUEST FOR ADMISSION 9: Admit that, as of November 25, 2016 and through the date hereof, KidKraft possessed at least a 40% share of wooden toy kitchen sales in the continental United States.

RESPONSE TO REQUEST FOR ADMISSION 9: MidOcean objects to Request No. 9 as vague and ambiguous to the extent that Plaintiffs do not specify the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which MidOcean is to measure the share, or whether the share is to be calculated by units sold or dollars sold. Moreover, MidOcean does not have access to share data on a daily basis, and as such, cannot admit or deny a request to specify KidKraft's share on a particular date (in this case, November 25, 2016). Additionally, MidOcean objects to Request No. 9 as confusing in that it asks for share of sale calculation on a "continental United States" basis, and not on a domestic basis. MidOcean is not aware of share data on a continental United States basis and it would be overly burdensome and extremely costly for 5 MidOcean to calculate KidKraft's "continental United States" share sales even if it was able to determine the variables on which Plaintiffs would like for MidOcean to calculate the information to answer Request No. 9.

**Same as no. 7.**

REQUEST FOR ADMISSION 10: Admit that, as of November 25, 2016 and through the date hereof, KidKraft possessed at least a 50% share of wooden toy kitchen sales in the continental United States.

RESPONSE TO REQUEST FOR ADMISSION 10: MidOcean objects to Request No. 10 as vague and ambiguous to the extent that Plaintiffs do not specify the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which MidOcean is to measure the share, or whether the share is to be calculated by units sold or dollars sold. Moreover, MidOcean does not have access to share data on a daily basis, and as such, cannot admit or deny a request to specify KidKraft's share on a particular date (in this case, November 25, 2016). Additionally, MidOcean objects to Request No. 10 as confusing in that it asks for share of sale calculation on a "continental United States" basis, and not on a domestic basis. MidOcean is not aware of share data on a continental United States basis and it would be overly burdensome and extremely costly for MidOcean to calculate KidKraft's "continental United States" share sales even if it was able to determine the variables on which Plaintiffs would like for MidOcean to calculate the information to answer Request No. 10.

**Same as no. 7.**

REQUEST FOR ADMISSION 11: Admit that, as of November 25, 2016 and through the date hereof, KidKraft possessed at least a 60% share of wooden toy kitchen sales in the continental United States.

RESPONSE TO REQUEST FOR ADMISSION 11: MidOcean objects to Request No. 11 as vague and ambiguous to the extent that Plaintiffs do not specify the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which MidOcean is to measure the share, or whether the share is to be calculated by units sold or dollars sold. Moreover, MidOcean does not have access to share data on a daily basis, and as such, cannot admit or deny a request to specify KidKraft's share on a particular date (in this case, November 25, 2016). Additionally, MidOcean

## SCHWEIKERT LAW

1111 Brickell Avenue, Suite 1550 | Miami, Florida 33131 | T: (305) 926-9452

objects to Request No. 11 as confusing in that it asks for share of sale calculation on a "continental United States" basis, and not on a domestic basis. MidOcean is not aware of share data on a 6 continental United States basis and it would be overly burdensome and extremely costly for MidOcean to calculate KidKraft's "continental United States" share sales even if it was able to determine the variables on which Plaintiffs would like for MidOcean to calculate the information to answer Request No. 11.

**Same as no. 7.**

REQUEST FOR ADMISSION 12: Admit that, as of November 25, 2016 and through the date hereof, KidKraft possessed at least a 70% share of wooden toy kitchen sales in the continental United States.

RESPONSE TO REQUEST FOR ADMISSION 12: MidOcean objects to Request No. 12 as vague and ambiguous to the extent that Plaintiffs do not specify the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which MidOcean is to measure the share, or whether the share is to be calculated by units sold or dollars sold. Moreover, MidOcean does not have access to share data on a daily basis, and as such, cannot admit or deny a request to specify KidKraft's share on a particular date (in this case, November 25, 2016). Additionally, MidOcean objects to Request No. 12 as confusing in that it asks for share of sale calculation on a "continental United States" basis, and not on a domestic basis. MidOcean is not aware of share data on a continental United States basis and it would be overly burdensome and extremely costly for MidOcean to calculate KidKraft's "continental United States" share sales even if it was able to determine the variables on which Plaintiffs would like for MidOcean to calculate the information to answer Request No. 12.

**Same as no. 7.**

REQUEST FOR ADMISSION 14: Admit that Melissa & Doug produces wooden toy kitchens but not plastic toy kitchens.

RESPONSE TO REQUEST FOR ADMISSION 14: MidOcean lacks knowledge and information to admit or deny this Request. MidOcean has made a reasonable inquiry and the information it knows or can readily obtain is insufficient to enable it to admit or deny because it does not know for certain that Melissa & Doug has not produced plastic toy kitchens.

**Evasive and inadequate, defendant cannot avoid responding because it does not know "for certain." It must give a straight response to the best of its knowledge after reasonable inquiry.**

REQUEST FOR ADMISSION 15: Admit that Hape produces wooden toy kitchens but not plastic toy kitchens.

RESPONSE TO REQUEST FOR ADMISSION 15: MidOcean lacks knowledge and information to admit or deny this Request. MidOcean has made a reasonable inquiry and the information it knows or can readily obtain is insufficient to enable it to admit or deny because it does not know for certain that Hape has not produced plastic toy kitchens.

SCHWEIKERT LAW

1111 Brickell Avenue, Suite 1550 | Miami, Florida 33131 | T: (305) 926-9452

**Evasive and inadequate, defendant cannot avoid responding because it does not know "for certain." It must give a straight response to the best of its knowledge after reasonable inquiry.**

REQUEST FOR ADMISSION 20: Admit wooden toy kitchens typically sell at a higher price than otherwise similar plastic toy kitchens.
RESPONSE TO REQUEST FOR ADMISSION 20: MidOcean objects to Request No. 20 as vague and ambiguous as the term "typically" is unclear, ambiguous, and undefined. Therefore, MidOcean denies.

**Evasive and inadequate, the term "typically" is not unclear or ambiguous, and Plaintiffs are entitled to a straight response.**

REQUEST FOR ADMISSION 21: Admit that there are barriers to entry for new manufacturers of wooden toy kitchens.
RESPONSE TO REQUEST FOR ADMISSION 21: MidOcean objects to Request No. 21 as vague and ambiguous as the term "barriers to entry" is unclear, ambiguous, and undefined. Therefore, MidOcean denies.

**Evasive and inadequate, the term "barriers to entry" is not unclear or ambiguous, and Plaintiffs are entitled to a straight response.**

REQUEST FOR ADMISSION 22: Admit that KidKraft, between September 2011 and the date hereof, has sold wooden toy kitchens to at least one retailer that sells only KidKraft wooden toy kitchens.
RESPONSE TO REQUEST FOR ADMISSION 22: MidOcean objects to Request No. 22 because it is not in possession of information regarding the products sold by every retailer to which KidKraft has sold toy kitchens at all times since September 2011. Subject to that objection, MidOcean is not aware of any retailer that sells KidKraft wooden toy kitchens and no other products. On that basis, MidOcean denies the Request.

**Evasive and inadequate, this RFA plainly does not refer to retailers that sell "KidKraft wooden toy kitchens and no other products." And the RFA refers to "at least one retailer," not to "every retailer."**

REQUEST FOR ADMISSION 23: Admit that KidKraft at all times between September 2011 and the date hereof, has sold wooden toy kitchens to at least one retailer that sells only KidKraft wooden toy kitchens.
RESPONSE TO REQUEST FOR ADMISSION 23: MidOcean objects to Request No. 23 because it is not in possession of information regarding the products sold by every retailer to which KidKraft has sold toy kitchens at all times since September 2011. Subject to that objection, MidOcean is not aware of any retailer that sells KidKraft wooden toy kitchens and no other products. On that basis, MidOcean denies the Request.

**Same as no. 22.**

# SCHWEIKERT LAW

1111 Brickell Avenue, Suite 1550 | Miami, Florida 33131 | T: (305) 926-9452

REQUEST FOR ADMISSION 27: Admit that, prior to terminating its relationship with OJC, KidKraft never obtained a legal opinion as to whether KidKraft had viable intellectual property claims against NH arising from NH's manufacturing of wooden toy kitchens.

RESPONSE TO REQUEST FOR ADMISSION 27: MidOcean objects to Request No. 27 as a request that should be asked of KidKraft, Inc., not MidOcean. MidOcean objects to Request No. 27 as it improperly seeks privileged information. On the basis of those objections, MidOcean denies this Request.

**Evasive and inadequate, the RFA does not ask about the substance of any legal opinion, just whether one exists, and that is not privileged.**

REQUEST FOR ADMISSION 29: Admit that, from 2011 to November 25, 2016, OJC's purchases and sales of KidKraft wooden toy kitchens had yielded net profits, as opposed to net losses, for KidKraft.

RESPONSE TO REQUEST FOR ADMISSION 29: MidOcean objects to Request No. 29 as vague and ambiguous as to what "net profits" and "net losses" means as those terms are ambiguous and are not defined. MidOcean denies Request No. 29.

**Evasive and inadequate, the terms "net profits" and "net losses" are not vague or ambiguous.**

REQUEST FOR ADMISSION 30: Admit that, during the year prior to November 25, 2016, OJC's purchases and sales of KidKraft wooden toy kitchens had yielded net profits, as opposed to net losses, for KidKraft.

RESPONSE TO REQUEST FOR ADMISSION 30: MidOcean objects to Request No. 30 as vague and ambiguous as to what "net profits" and "net losses" means as those terms are ambiguous and are not defined. KidKraft denies Request No. 30.

**Same as no. 29.**

REQUEST FOR ADMISSION 35: Admit that KidKraft and MidOcean are and were as of November 25, 2016 separate entities.

RESPONSE TO REQUEST FOR ADMISSION 35: MidOcean objects to Request No. 35 as vague and ambiguous as the term "separate entities" is unclear, ambiguous and undefined. Therefore, MidOcean denies this Request on that basis.

**Evasive and inadequate, the term "separate entities" is not vague or ambiguous.**

REQUEST FOR ADMISSION 42: Admit that, after MidOcean acquired a stake in KidKraft, MidOcean and KidKraft have entered into contracts to which both MidOcean and KidKraft are listed as separate parties.

RESPONSE TO REQUEST FOR ADMISSION 42: MidOcean objects to Request No. 42 as outside the bounds of Federal Rules of Civil Procedure as it seeks information irrelevant to the issues and facts in this case. Deny.

**Evasive, inadequate, and non-objectionable. The information is perfectly relevant as it tends to show that KK and MOP are separate entities within the meaning of antitrust law.**

## SCHWEIKERT LAW

1111 Brickell Avenue, Suite 1550 | Miami, Florida 33131 | T: (305) 926-9452

REQUEST FOR ADMISSION 52: Admit that KidKraft's dominant share of the market for wooden toy kitchens was a factor in MidOcean's decision to acquire an equity stake in KidKraft.

RESPONSE TO REQUEST FOR ADMISSION 52: MidOcean objects to Request No. 52 as vague and ambiguous as the term "dominant share" is undefined and confusing. MidOcean denies Request No. 52.

**Evasive and inadequate, the term "dominant share" is not vague or ambiguous.**

REQUEST FOR ADMISSION 53: Admit that the perceived difficulties facing then-current or future competitors in challenging KidKraft's dominant share of the market for wooden toy kitchens was a factor in MidOcean's decision to acquire an equity stake in KidKraft.

RESPONSE TO REQUEST FOR ADMISSION 53: MidOcean objects to Request No. 53 as vague and ambiguous as the terms "perceived difficulties facing then-current or future competitors" and "dominant share" are undefined and confusing. MidOcean denies Request No. 53.

**Evasive and inadequate, the terms "perceived difficulties facing then-current or future competitors" and "dominant share" are not vague or ambiguous.**

REQUEST FOR ADMISSION 55: Admit that MidOcean regularly reviews the competitive position and market share of KidKraft and its other portfolio companies.

RESPONSE TO REQUEST FOR ADMISSION 55: MidOcean objects to Request No. 55 as vague and ambiguous as the terms "regularly reviews," "competitive position," and "market share" are undefined, ambiguous, and confusing. MidOcean admits that it reviews the performance of KidKraft and its other portfolio companies.

**Evasive and inadequate, the terms "regularly reviews," "competitive position," and "market share" are not vague or ambiguous.**

REQUEST FOR ADMISSION 56: Admit that MidOcean regularly reviews KidKraft and its other portfolio companies are responding to any threats to their market share posed by their competitors.

RESPONSE TO REQUEST FOR ADMISSION 56: MidOcean objects to Request No. 56 as vague and ambiguous as the terms "regularly reviews," "threats," and "market share" are undefined, ambiguous, and confusing. MidOcean admits that it reviews the competitive performance of KidKraft and its other portfolio companies.

**Evasive and inadequate, the terms "regularly reviews," "threats," and "market share" are not vague or ambiguous.**

REQUEST FOR ADMISSION 57: Admit that MidOcean regularly shares (whether directly or via board designees) with management of KidKraft and its other portfolio companies its own views as to how those portfolio companies should be maintaining their competitive position and responding to the actions of their competitors.

RESPONSE TO REQUEST FOR ADMISSION 57: MidOcean objects to the Request No. 57 as vague and ambiguous as the terms "regularly shares," "views," and "maintaining their competitive position" are undefined, ambiguous, and confusing. MidOcean admits that it shares its views with

# SCHWEIKERT LAW

1111 Brickell Avenue, Suite 1550 | Miami, Florida 33131 | T: (305) 926-9452

KidKraft's management as to how to improve KidKraft's performance, but it denies that it is involved in day-to-day business decisions of KidKraft.

**Evasive and inadequate, the terms "regularly shares," "views," and "maintaining their competitive position" are not vague or ambiguous.**

REQUEST FOR ADMISSION 58: Admit that the management of KidKraft and MidOcean's other portfolio companies regularly share (whether directly or via board designees) with MidOcean their views as to how to maintain their competitive position and respond to the actions of their competitors.

RESPONSE TO REQUEST FOR ADMISSION 58: MidOcean objects to the Request No. 58 as vague and ambiguous as the terms "regularly share," "views," and "maintain their competitive position" are undefined, ambiguous, and confusing. MidOcean admits that KidKraft's management shares its views with MidOcean as to how to improve KidKraft's performance.

**Same as no. 57.**

REQUEST FOR ADMISSION 59: Admit that all documents labeled with the bates MOP prefix are true and correct copies of a document maintained by you in the ordinary course of business.

RESPONSE TO REQUEST FOR ADMISSION 59: MidOcean objects to Request No. 59 as an improper way to authenticate documents for admission into the record and is inconsistent with the requirements of Fed. R. Civ. P. 36(a)(2).

**Evasive and inadequate, the RFA asks for admission of purely factual information that defendant must admit or deny. Moreover, there is nothing "improper" about using RFAs to authenticate documents. These are MOP's own documents produced in this litigation, and MOP knows or can easily determine whether they are true and correct.**

REQUEST FOR ADMISSION 64: Admit MidOcean wants KidKraft's market share for wooden toy kitchen sales to increase.

RESPONSE TO REQUEST FOR ADMISSION 64: MidOcean objects to Request No. 83 as vague and ambiguous and incomplete. Therefore, MidOcean denies.

**Evasive and inadequate. The RFA is not vague, ambiguous, or incomplete, and defendant must provide a straight response.**

Please provide your availability for a call to discuss these deficiencies.

Very truly yours,

*/s/ Mark A. Schweikert*

25

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Tel 202.955.8500
www.gibsondunn.com

Joshua Lipton
Direct: +1 202.955.8226
Fax: +1 202.530.9536
JLipton@gibsondunn.com

June 10, 2020

VIA ELECTRONIC MAIL

Velvel (Devin) Freedman
Constantine Economides
Roche Cyrulnik Freedman LLP
Southeast Financial Center
200 S Biscayne Blvd., Suite 5500
Miami, FL 33131

Mark Schweikert, Esq.
Schweikert Law
1111 Brickell Avenue, Suite 1500
Miami, FL 33131

Re:     Responses and Objections to Requests for Admission

Dear Counsel:

We are writing in response to your June 6, 2020 Letter regarding Defendants' May 21, 2020 Responses and Objections to Plaintiffs' Requests for Admission. We are also writing to raise a number of deficiencies in Plaintiffs' May 21, 2020 Responses and Objections to Defendants' Requests for Admission.

## Plaintiffs' Comments Regarding Defendants' Responses and Objections to Plaintiffs' Requests for Admission

Pursuant to Federal Rules of Civil Procedure 26 and 36, KidKraft, Inc. (KidKraft) and MidOcean Partners IV, L.P. ("MidOcean) (collectively, "Defendants") responded in good faith to a total of 185 Requests for Admissions (RFAs) from Plaintiffs. For many of the requests, Defendants admitted or denied, and for many others Defendants complied with Rule 36(d) by qualifying an answer or answering/denying only a part of question as appropriate. Many of your requests, however, were vague, confusing, and/or ambiguous, often hinging on undefined terms that could be subject to multiple interpretations. In a number of cases, your requests appeared to be deliberately ambiguous, in an effort to obtain an admission based on ambiguous phrasing so you could subsequently claim there is an admission on a point that you likely know Defendants would not admit. Nonetheless, Defendants responded in good faith to all 185 RFAs to the best of their abilities, including responding to the substance of questions wherever

**GIBSON DUNN**

June 10, 2020
Page 2

possible and, when required, asserting specific objections to Plaintiffs' requests including details as to why Defendants objected to the request. In sum, Defendants fully complied with their Rule 26 and Rule 36 obligations.

Your June 6 Letter does not indicate anything to the contrary. In a number of instances, you take issue with responses where Defendants answered the RFA in full. It is unclear what more you claim is required. In most other cases, you simply raise disagreements with Defendants' objections and answers without specifying how or in what way the response or objection violates the federal rules. Defendants raised legitimate objections and questions with a number of Plaintiffs' RFA's, and yet you made no effort to define any undefined terms or provide any clarity where Defendants expressed confusion or a lack of clarity. Similarly, Plaintiffs do not make any effort to provide time periods for the RFAs that require a time period to answer. And while Plaintiffs criticize Defendants for "lacking knowledge and information" needed to answer certain RFAs, those answers are perfectly appropriate when, as here, Defendants lacked knowledge and information needed after a good faith investigation to answer the RFA.

One problem that runs throughout a number of your RFAs is that you are asking Defendants to admit facts, when it is not clear from your Request precisely which facts you are asking Defendants to admit. In these instances, it is clearly appropriate for Defendants to decline to admit or deny such Requests. And in doing so, we provided detailed explanations for the terms or phrases that gave rise to the ambiguity or confusion. There is nothing improper about objecting to an RFA, qualifying an answer or answering only a part of an RFA where in good faith, as here, it is required. In your letter, you made no effort to clarify or define any of the terms or ambiguities that gave rise to Defendants' objections.

Nonetheless, we have taken the time to respond to each of Plaintiffs' comments regarding Defendants' responses and objections to Plaintiffs' RFAs. *See* Exhibit A. If Plaintiffs still require the need to meet and confer further, we are available to meet and confer with them at a mutually agreeable time. Or, if you would like to provide us with clarifications or further information, we will review the information when you provide it.

### **Plaintiffs' Deficient Responses to Defendants' Requests for Admission**

In contrast to Defendants, Plaintiffs did not respond in good faith to all of Defendants' RFAs. Accordingly, as Plaintiffs throw around unwarranted accusations regarding Defendants' responses, Defendants request that Plaintiffs review their own deficient Responses to Defendants' RFAs and supplement those responses accordingly.

First, in a number of instances, Plaintiffs changed the wording of the Request and then answered a question that is different than what was asked. We request that Plaintiffs amend their responses to address the RFAs as written. For example, RFA No. 26 asks about

**GIBSON DUNN**

June 10, 2020
Page 3

"knocking off" KidKraft products, but you changed the question and responded regarding whether OJC considered "counterfeiting" KidKraft products.  Similarly, in response to RFA Nos. 27–29, you responded regarding whether Naomi Home considered "counterfeiting" the KidKraft Vintage Kitchen, Corner Kitchen, and dollhouses, when the RFAs asked whether Naomi Home considered "selling" a kitchen or dollhouse "based on" those KidKraft products. Again, by changing the words of KidKraft's Request and responding regarding whether OJC or Naomi Home considered "counterfeiting" these products—which was not asked in the Request—you are being evasive in your Responses to avoid the actual Requests.  As you are well aware, KidKraft believed Naomi Home was knocking-off its toy kitchen, not selling a counterfeit.  To the extent Plaintiffs need a definition for the word "knockoff," Defendants provide the following definition:  a knockoff is "a product that copies or imitates the physical appearance of another product or makes tweaks to an existing product, but which does not copy the brand name, copyright, or logo of a trademark."  Based on that definition, Defendants request that Plaintiffs amend immediately their Response to every RFA to which they changed the word "knockoff" to the word "counterfeit" before answering.  *See* RFA Nos. 26–29, 37–38.

Second, your Responses to RFA Nos. 100–04 are shockingly disingenuous.  When asked to admit specific statements relating to Jacob Weiss's purported communications with Shannon Lord at Costco—an allegation that is contained in your *Complaint*, testified under oath in your Interrogatory Responses, and repeated throughout your pleadings—you, for the first time, state that you "lack sufficient knowledge or information" in order to "definitively conclude" that Jacob Weiss, in fact, spoke to Shannon Lord at Costco.  After repeatedly and consistently claiming that Jacob Weiss spoke to Shannon Lord as the only basis for your contentions that KidKraft threatened Costco, your refusal to respond directly to these RFAs does not appear to be in good faith.  Please amend your answers to RFA Nos. 100–04 immediately.

Third, several of Plaintiffs' responses to Defendants' RFAs are contradicted by the testimony of Plaintiffs' Rule 30(b)(6) witness.  For example, RFA No. 34 asks Plaintiffs to admit that a supplier may terminate a reseller for knocking off its product. Yet, in Plaintiffs' Response, they answer a different Request than was asked.  Rather than admit what Plaintiffs' Rule 30(b)(6) deponent later admitted, you denied that a "supplier can never face liability for terminating a reseller"—which was not the Request asked.  In fact, your 30(b)(6) deponent admitted that, "[I]f somebody was knocking off Naomi Home products, I wouldn't do business with them for three years and then[n] figure out that I . . . wanted to end the relationship," (30(b)(6) Dep. at 287:18–24), "[I]f somebody . . . was knocking off . . . that would not be somebody that I want to do business with," (*Id.* at 288:11–19), and "I just do not do business with somebody that takes my product and puts his label on it."  (*Id.* at 288:25–289:1).  These statements demonstrate that, by denying this Request and refusing to answer the Request as asked, you are intentionally avoiding answering the legitimate RFAs posed.  Similarly, your

**GIBSON DUNN**

June 10, 2020
Page 4


30(b)(6) deponent contradicted your Responses on several other occasions, including RFA Nos. 24, 57, 112, 117.  Please promptly amend these responses.

Fourth, Plaintiffs wrongfully evaded answering a number of other Requests based on contrived objections to commonly used terms—including terms utilized in Plaintiffs' own discovery requests.  For example, Plaintiffs objected to terms such as "necessary," "prevented," "based on," "knocking off," "copying," "relied," "consumers," "business reasons," and "low barriers."  *See* RFA Nos. 13, 15–20, 30, 34, 54, 55, 56, 57.  Once again, by continuously asserting that commonly used terms—often used by you in your own requests—are ambiguous, you avoid answering legitimate RFAs for which Defendants are entitled to a good-faith response.

In sum, Defendants request that Plaintiffs amend their inadequate Responses to Defendants' Requests for Admission and let Defendants know when they are available to meet and confer.

Sincerely,

*Joshua Lipton*

Joshua Lipton

## **Exhibit A – Defendants' Responses to Plaintiffs' Comments Regarding Defendants' Responses and Objections to Plaintiffs Requests for Admission**

REQUEST FOR ADMISSION 1: Admit that KidKraft is not aware of any manufacturer of wooden toy kitchens that, at any time from September 2011 to the date hereof, had a greater market share than KidKraft for wooden toy kitchen sales in the continental United States.

RESPONSE TO REQUEST FOR ADMISSION 1:  KidKraft does not have information about every manufacturer's sales at all times during the relevant time period, and therefore denies Request No. 1.

**Evasive and inadequate, the RFA does not ask about every manufacturer's sales, only those of which KK is aware.**

**KidKraft maintains its denial to this Request because it does not know every toy kitchen manufacturer's sales at all times, which is a necessary fact required to answer the question as to whether it is aware that a manufacturer of wooden toy kitchens had a greater market share than KidKraft.**

REQUEST FOR ADMISSION 2:  Admit that KidKraft is not aware of any manufacturer of wooden toy kitchens that, at any time from September 2011 to the date hereof, sold more wooden toy kitchens in the continental United States annually than KidKraft.

RESPONSE TO REQUEST FOR ADMISSION 2:  KidKraft lacks knowledge and information to admit or deny this Request. KidKraft has made a reasonable inquiry and the information it knows or can readily obtain is insufficient to enable it to admit or deny, because KidKraft does not know how many wooden toy kitchens every manufacturer in the continental United States sold on an annual basis for each point in the relevant period.

**Evasive and inadequate, same as no. 1.**

**Consistent with its discovery obligations, KidKraft maintains that it "lack[s] knowledge or information" sufficient to admit or deny this request.  Fed. R. Civ. P. 36(a)(4).  KidKraft does not have information regarding "any manufacturer" at "any time" to admit or deny this Request.**

REQUEST FOR ADMISSION 3:  Admit that KidKraft is not aware of any manufacturer of wooden toy kitchens that, at any time from September 2011 to the date hereof, received more annual revenue than KidKraft from wooden toy kitchen sales in the continental United States.

RESPONSE TO REQUEST FOR ADMISSION 3:  KidKraft lacks knowledge and information to admit or deny this Request. KidKraft has made a reasonable inquiry and the information it knows or can readily obtain is insufficient to enable it to admit or deny, because KidKraft does not know every competitor's annual revenue from wooden toy kitchens sold in the continental United States for each point in the relevant period.

**Evasive and inadequate, same as no. 1.**

**Consistent with its discovery obligations, KidKraft maintains that it "lack[s] knowledge or information" sufficient to admit or deny this request. Fed. R. Civ. P. 36(a)(4). KidKraft does not have information regarding "any manufacturer" at "any time" to admit or deny this Request.**

REQUEST FOR ADMISSION 4: Admit that KidKraft is and has been since at least September 2011, the leading manufacturer of wooden toy kitchens in the continental United States.
RESPONSE TO REQUEST FOR ADMISSION 4: KidKraft objects to Request No. 4 as vague and ambiguous to the extent that the term "leading manufacturer" is not defined and is a vague and ambiguous term. KidKraft therefore denies Request No. 4.

**Evasive and inadequate, the term "leading manufacturer" is not vague or ambiguous.**

**KidKraft maintains its denial to this Request given that the term "leading manufacturer" is so vague and ambiguous such that KidKraft cannot respond to the substance of this Request without knowing what the substance means. The term "leading manufacturer" could mean any number of different things—for example, it could mean the largest, or fastest growing, or most innovative, or any number of subjective criteria. Notably, Plaintiffs fail to clarify what this term means in responding to this objection and thus KidKraft remains unable to provide a further response.**

REQUEST FOR ADMISSION 6: Admit that, prior to November 25, 2016, KidKraft did not adopt an internal policy to limit its market share for wooden toy kitchens in the continental United States.
RESPONSE TO REQUEST FOR ADMISSION 6: Request No. 6 is confusing and incoherent, and KidKraft therefore objects to the Request and denies the Request on that basis.

**Evasive and inadequate, this RFA plainly asks whether KK adopted such an internal policy, Plaintiffs are entitled to a straight response.**

**KidKraft maintains its denial to this Request given that the reference to "adopt[ing] an internal policy to limit [KidKraft's] market share" is confusing and incoherent such that KidKraft cannot know how to respond to the substance of this Request without knowing what the substance means. Plaintiffs fail to clarify what this Request seeks in responding to this objection and thus KidKraft remains unable to provide a further response.**

REQUEST FOR ADMISSION 7: Admit that, as of November 25, 2016 and through the date hereof, KidKraft possessed at least a 20% share of wooden toy kitchen sales in the continental United States.
RESPONSE TO REQUEST FOR ADMISSION 7: KidKraft objects to Request No. 7 as vague and ambiguous to the extent that Plaintiffs do not specify the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which KidKraft is to measure the share, or whether the share is to be calculated by units sold or dollars sold. Moreover, KidKraft does not have access to share data on a daily basis, and as such cannot admit or deny a request to specify its share on a particular date (in this case, November 25, 2016). Additionally, KidKraft objects to Request No. 7 as confusing in that it asks for share of sale calculation on a "continental United States" basis, and not on a domestic basis. KidKraft does not keep share data on a continental

United States basis and it would be overly burdensome and extremely costly for KidKraft to calculate its "continental United States" share sales even if it was able to determine the variables on which Plaintiffs would like for KidKraft to calculate the information to answer Request No. 7.

**Evasive and inadequate, the term "20% share is not vague or ambiguous, and Plaintiffs are not required to specify "annual basis, monthly basis, weekly basis, aggregate basis, or daily basis," or whether "the share is to be calculated by units sold or dollars sold," to get a straight answer to this RFA. And, even if defendant only has data on a "domestic basis" and not on a "continental United States" basis, that data is adequate for defendant to provide a straight response to this RFA.**

<span style="color:red">KidKraft maintains its objection to this Request on the ground that KidKraft cannot answer the question where Plaintiffs do not provide KidKraft any information as to whether the question is asked on an "annual basis, monthly basis, weekly basis, aggregate basis, or daily basis."  Plaintiffs fail to clarify what this means in responding to this objection and thus KidKraft remains unable to provide a further response.  To the extent Plaintiffs are seeking share information available to Defendants, Defendants refer Plaintiffs to the detailed response and explanation they have provided on this subject.</span>

REQUEST FOR ADMISSION 8: Admit that, as of November 25, 2016 and through the date hereof, KidKraft possessed at least a 30% share of wooden toy kitchen sales in the continental United States.

RESPONSE TO REQUEST FOR ADMISSION 8: KidKraft objects to Request No. 8 as vague and ambiguous to the extent that Plaintiffs do not specify the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which KidKraft is to measure the share, or whether the share is to be calculated by units sold or dollars sold. Moreover, KidKraft does not have access to share data on a daily basis, and as such cannot admit or deny a request to specify its share on a particular date (in this case, November 25, 2016). Additionally, KidKraft objects to Request No. 8 as confusing in that it asks for share of sale calculation on a "continental United States" basis, and not on a domestic basis. KidKraft does not keep share data on a continental United States basis and it would be overly burdensome and extremely costly for KidKraft to calculate its "continental United States" share sales even if it was able to determine the variables on which Plaintiffs would like for KidKraft to calculate the information to answer Request No. 8.

**Evasive and inadequate, the term "30% share is not vague or ambiguous, and Plaintiffs are not required to specify "annual basis, monthly basis, weekly basis, aggregate basis, or daily basis," or whether "the share is to be calculated by units sold or dollars sold," to get a straight answer to this RFA. And, even if defendant only has data on a "domestic basis" and not on a "continental United States" basis, that data is adequate for defendant to provide a straight response to this RFA.**

<span style="color:red">KidKraft maintains its objection to this Request on the ground that KidKraft cannot answer the question where Plaintiffs do not provide KidKraft any information as to whether the question is asked on an "annual basis, monthly basis, weekly basis, aggregate</span>

**basis, or daily basis." Plaintiffs fail to clarify what this means in responding to this objection and thus KidKraft remains unable to provide a further response.  To the extent Plaintiffs are seeking share information available to Defendants, Defendants refer Plaintiffs to the detailed response and explanation they have provided on this subject.**

REQUEST FOR ADMISSION 9: Admit that, as of November 25, 2016 and through the date hereof, KidKraft possessed at least a 40% share of wooden toy kitchen sales in the continental United States.

RESPONSE TO REQUEST FOR ADMISSION 9: KidKraft objects to Request No. 9 as vague and ambiguous to the extent that Plaintiffs do not specify the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which KidKraft is to measure the share, or whether the share is to be calculated by units sold or dollars sold. Moreover, KidKraft does not have access to share data on a daily basis, and as such cannot admit or deny a request to specify its share on a particular date (in this case, November 25, 2016). Additionally, KidKraft objects to Request No. 9 as confusing in that it asks for share of sale calculation on a "continental United States" basis, and not on a domestic basis. KidKraft does not keep share data on a continental United States basis and it would be overly burdensome and extremely costly for KidKraft to calculate its "continental United States" share sales even if it was able to determine the variables on which Plaintiffs would like for KidKraft to calculate the information to answer Request No. 9.

**Evasive and inadequate, the term "40% share is not vague or ambiguous, and Plaintiffs are not required to specify "annual basis, monthly basis, weekly basis, aggregate basis, or daily basis," or whether "the share is to be calculated by units sold or dollars sold," to get a straight answer to this RFA. And, even if defendant only has data on a "domestic basis" and not on a "continental United States" basis, that data is adequate for defendant to provide a straight response to this RFA.**

**KidKraft maintains its objection to this Request on the ground that KidKraft cannot answer the question where Plaintiffs do not provide KidKraft any information as to whether the question is asked on an "annual basis, monthly basis, weekly basis, aggregate basis, or daily basis." Plaintiffs fail to clarify what this means in responding to this objection and thus KidKraft remains unable to provide a further response.  To the extent Plaintiffs are seeking share information available to Defendants, Defendants refer Plaintiffs to the detailed response and explanation they have provided on this subject.**

REQUEST FOR ADMISSION 10: Admit that, as of November 25, 2016 and through the date hereof, KidKraft possessed at least a 50% share of wooden toy kitchen sales in the continental United States.

RESPONSE TO REQUEST FOR ADMISSION 10: KidKraft objects to Request No. 10 as vague and ambiguous to the extent that Plaintiffs do not specify the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which KidKraft is to measure the share, or whether the share is to be calculated by units sold or dollars sold. Moreover, KidKraft does not have access to share data on a daily basis, and as such cannot admit or deny a request to specify its share on a particular date (in this case, November 25, 2016). Additionally, KidKraft objects to Request No. 10 as confusing in that it asks for share of sale calculation on a "continental United

States" basis, and not on a domestic basis. KidKraft does not keep share data on a continental United States basis and it would be overly burdensome and extremely costly for KidKraft to calculate its "continental United States" share sales even if it was able to determine the variables on which Plaintiffs would like for KidKraft to calculate the information to answer Request No. 10.

**Evasive and inadequate, the term "50% share is not vague or ambiguous, and Plaintiffs are not required to specify "annual basis, monthly basis, weekly basis, aggregate basis, or daily basis," or whether "the share is to be calculated by units sold or dollars sold," to get a straight answer to this RFA. And, even if defendant only has data on a "domestic basis" and not on a "continental United States" basis, that data is adequate for defendant to provide a straight response to this RFA.**

<span style="color:red">**KidKraft maintains its objection to this Request on the ground that KidKraft cannot answer the question where Plaintiffs do not provide KidKraft any information as to whether the question is asked on an "annual basis, monthly basis, weekly basis, aggregate basis, or daily basis."  Plaintiffs fail to clarify what this means in responding to this objection and thus KidKraft remains unable to provide a further response.  To the extent Plaintiffs are seeking share information available to Defendants, Defendants refer Plaintiffs to the detailed response and explanation they have provided on this subject.**</span>

REQUEST FOR ADMISSION 11: Admit that, as of November 25, 2016 and through the date hereof, KidKraft possessed at least a 60% share of wooden toy kitchen sales in the continental United States.
RESPONSE TO REQUEST FOR ADMISSION 11: KidKraft objects to Request No. 11 as vague and ambiguous to the extent that Plaintiffs do not specify the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which KidKraft is to measure the share, or whether the share is to be calculated by units sold or dollars sold. Moreover, KidKraft does not have access to share data on a daily basis, and as such cannot admit or deny a request to specify its share on a particular date (in this case, November 25, 2016). Additionally, KidKraft objects to Request No. 11 as confusing in that it asks for share of sale calculation on a "continental United States" basis, and not on a domestic basis. KidKraft does not keep share data on a continental United States basis and it would be overly burdensome and extremely costly for KidKraft to calculate its "continental United States" share sales even if it was able to determine the variables on which Plaintiffs would like for KidKraft to calculate the information to answer Request No. 11.

**Evasive and inadequate, the term "60% share is not vague or ambiguous, and Plaintiffs are not required to specify "annual basis, monthly basis, weekly basis, aggregate basis, or daily basis," or whether "the share is to be calculated by units sold or dollars sold," to get a straight answer to this RFA. And, even if defendant only has data on a "domestic basis" and not on a "continental United States" basis, that data is adequate for defendant to provide a straight response to this RFA.**

<span style="color:red">**KidKraft maintains its objection to this Request on the ground that KidKraft cannot answer the question where Plaintiffs do not provide KidKraft any information as to whether the question is asked on an "annual basis, monthly basis, weekly basis, aggregate basis, or daily basis."  Plaintiffs fail to clarify what this means in responding to this objection and thus KidKraft remains unable to provide a further response.  To the extent Plaintiffs**</span>

**are seeking share information available to Defendants, Defendants refer Plaintiffs to the detailed response and explanation they have provided on this subject.**

REQUEST FOR ADMISSION 12: Admit that, as of November 25, 2016 and through the date hereof, KidKraft possessed at least a 70% share of wooden toy kitchen sales in the continental United States.

RESPONSE TO REQUEST FOR ADMISSION 12: KidKraft objects to Request No. 12 as vague and ambiguous to the extent that Plaintiffs do not specify the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which KidKraft is to measure the share, or whether the share is to be calculated by units sold or dollars sold. Moreover, KidKraft does not have access to share data on a daily basis, and as such cannot admit or deny a request to specify its share on a particular date (in this case, November 25, 2016). Additionally, KidKraft objects to Request No. 12 as confusing in that it asks for share of sale calculation on a "continental United States" basis, and not on a domestic basis. KidKraft does not keep share data on a continental United States basis and it would be overly burdensome and extremely costly for KidKraft to calculate its "continental United States" share sales even if it was able to determine the variables on which Plaintiffs would like for KidKraft to calculate the information to answer Request No. 12.

**Evasive and inadequate, the term "70% share is not vague or ambiguous, and Plaintiffs are not required to specify "annual basis, monthly basis, weekly basis, aggregate basis, or daily basis," or whether "the share is to be calculated by units sold or dollars sold," to get a straight answer to this RFA. And, even if defendant only has data on a "domestic basis" and not on a "continental United States" basis, that data is adequate for defendant to provide a straight response to this RFA.**

**KidKraft maintains its objection to this Request on the ground that KidKraft cannot answer the question where Plaintiffs do not provide KidKraft any information as to whether the question is asked on an "annual basis, monthly basis, weekly basis, aggregate basis, or daily basis." Plaintiffs fail to clarify what this means in responding to this objection and thus KidKraft remains unable to provide a further response. To the extent Plaintiffs are seeking share information available to Defendants, Defendants refer Plaintiffs to the detailed response and explanation they have provided on this subject.**

REQUEST FOR ADMISSION 14: Admit that Melissa & Doug produces wooden toy kitchens but not plastic toy kitchens.

RESPONSE TO REQUEST FOR ADMISSION 14: KidKraft lacks knowledge and information to admit or deny this Request. KidKraft has made a reasonable inquiry and the information it knows or can readily obtain is insufficient to enable it to admit or deny because it does not know for certain that Melissa & Doug has not produced plastic toy kitchens.

**Evasive and inadequate, defendant cannot avoid responding because it does not know "for certain." It must give a straight response to the best of its knowledge after reasonable inquiry.**

**Consistent with its discovery obligations, KidKraft maintains that it "lack[s] knowledge or information" sufficient to admit or deny this request. Fed. R. Civ. P. 36(a)(4). KidKraft is**

**unable to sufficiently assess whether Melissa & Doug has produced plastic toy kitchens at any given time.**

REQUEST FOR ADMISSION 15: Admit that Hape produces wooden toy kitchens but not plastic toy kitchens.

RESPONSE TO REQUEST FOR ADMISSION 15: KidKraft lacks knowledge and information to admit or deny this Request. KidKraft has made a reasonable inquiry and the information it knows or can readily obtain is insufficient to enable it to admit or deny because it does not know for certain that Hape has not produced plastic toy kitchens.

**Evasive and inadequate, defendant cannot avoid responding because it does not know "for certain." It must give a straight response to the best of its knowledge after reasonable inquiry.**

**Consistent with its discovery obligations, KidKraft maintains that it "lack[s] knowledge or information" sufficient to admit or deny this request.  Fed. R. Civ. P. 36(a)(4).  KidKraft is unable to sufficiently assess whether Hape has produced plastic toy kitchens at any given time.**

REQUEST FOR ADMISSION 20: Admit wooden toy kitchens generally sell at a higher price than plastic toy kitchens.

RESPONSE TO REQUEST FOR ADMISSION 20: KidKraft objects to Request No. 20 as vague and ambiguous as the term "generally" is unclear, ambiguous, and undefined. Therefore, KidKraft denies.

**Evasive and inadequate, the term "generally" is not vague or ambiguous.**

**KidKraft maintains its denial to this Request given that the term "generally," particularly as it is used in this context, is so vague and ambiguous that KidKraft cannot know how to respond to the substance of this Request without knowing what the substance means.  Plaintiffs fail to clarify what this term means in responding to this objection and thus KidKraft remains unable to provide a further response.**

REQUEST FOR ADMISSION 22: Admit that KidKraft has document(s) showing that a consumer who has purchased a wooden toy kitchen and wishes to purchase a second toy kitchen, is likely to purchase a second wooden toy kitchen and not a plastic toy kitchen.

RESPONSE TO REQUEST FOR ADMISSION 22: KidKraft objects to Request No. 22 as vague and ambiguous as the terms "a consumer," "showing," and "is likely" are unclear, ambiguous, and undefined. Therefore, KidKraft denies.

**Evasive and inadequate, the terms "a consumer," "showing," and "is likely" are not unclear or ambiguous, and Plaintiffs are entitled to a straight response.**

**KidKraft maintains its denial to this Request given that the phrasing of this Request is so vague and ambiguous that KidKraft cannot know how to respond to the substance of this Request without knowing what the substance means.  Plaintiffs fail to clarify what these**

terms mean in responding to this objection and thus KidKraft remains unable to provide a further response.

REQUEST FOR ADMISSION 23: Admit there are barriers to entry for new manufacturers of wooden toy kitchens.
RESPONSE TO REQUEST FOR ADMISSION 23: KidKraft objects to Request No. 23 as vague and ambiguous as the term "barriers to entry" is unclear, ambiguous, and undefined. Therefore, KidKraft denies.

**Evasive and inadequate, the term "barriers to entry" is not unclear or ambiguous, and Plaintiffs are entitled to a straight response.**

This Request appears to be deliberately ambiguous, as Plaintiffs appear to be intentionally avoiding asking about whether there are any barriers to entry that are economically or legally meaningful.  To the extent Plaintiffs are asking about whether there are any economically or legally meaningful barriers, there are none.  But Plaintiffs appear to be asking an intentionally ambiguous question in order to distort the record.  KidKraft is not required to provide an answer to a deliberately vague and ambiguous with a key term that is not defined.  Accordingly, KidKraft maintains its denial to this Request given that the term "barriers to entry" is so vague and ambiguous that KidKraft cannot know how to respond to the substance of this Request without knowing what the substance means.  Plaintiffs fail to clarify what this term means in responding to this objection and thus KidKraft remains unable to provide a further response.

REQUEST FOR ADMISSION 27: Admit that, from the time KidKraft first learned that NH was selling a wooden toy kitchen to November 26, 2016, KidKraft was not aware of any changes that NH made to the designs of its wooden toy kitchens that made them more similar to KidKraft's wooden toy kitchens.
RESPONSE TO REQUEST FOR ADMISSION 27: KidKraft admits that from the time KidKraft first learned that NH was selling a wooden toy kitchen, it was aware that NH's wooden toy kitchen was a knock-off of KidKraft's toy kitchen.

**Evasive, non-responsive, and inadequate, the response does not address whether KK was "aware of any changes," and Plaintiffs are entitled to a straight response to this RFA.**

KidKraft maintains that its answer fairly responds to the substance of this Request.

REQUEST FOR ADMISSION 43: Admit that, prior to terminating its relationship with OJC, KidKraft never sent a demand letter or cease and desist letter to OJC or NH accusing OJC or NH of counterfeiting, knocking off, or copying KidKraft's wooden toy kitchens.
RESPONSE TO REQUEST FOR ADMISSION 43: KidKraft objects to Request No. 43 as vague and ambiguous as the terms "demand letter" and "cease and desist letter" are unclear, ambiguous, and undefined. Therefore, KidKraft denies.

**Evasive and inadequate, the terms "demand letter" and "cease and desist letter" are not unclear or ambiguous, and Plaintiffs are entitled to a straight response.**

**KidKraft maintains its denial to this Request given that the terms "demand letter" and "cease and desist letter" are so vague and ambiguous that KidKraft cannot know how to respond to the substance of this Request without knowing what the substance means. Plaintiffs fail to clarify what these terms mean in responding to this objection and thus KidKraft remains unable to provide a further response.**

REQUEST FOR ADMISSION 45: Admit that, prior to terminating its relationship with OJC, KidKraft never obtained a legal opinion as to whether KidKraft had viable intellectual property claims against NH arising from NH's manufacturing of wooden toy kitchens.

RESPONSE TO REQUEST FOR ADMISSION 45: KidKraft objects to Request No. 45 as it improperly seeks privileged information. On the basis of that objection, KidKraft denies this Request.

**Evasive and inadequate, the RFA does not ask about the substance of any legal opinion, just whether one exists, and that is not privileged.**

**KidKraft maintains its denial on the basis that whether it obtained a legal opinion on this subject is privileged information.**

REQUEST FOR ADMISSION 48: Admit that, from 2011 to November 25, 2016, OJC's purchases and sales of KidKraft wooden toy kitchens had yielded net profits, as opposed to net losses, for KidKraft.

RESPONSE TO REQUEST FOR ADMISSION 48: KidKraft objects to Request No. 48 as vague and ambiguous as to what "net profits" and "net losses" means as those terms are not defined. KidKraft denies Request No. 48.

**Evasive and inadequate, the terms "net profits" and "net losses" are not unclear or ambiguous, and Plaintiffs are entitled to a straight response.**

**KidKraft maintains its denial to this Request given that the terms "net profits" and "net losses" are so vague and ambiguous that KidKraft cannot know how to respond to the substance of this Request without knowing what the substance means. For example, there are a range of factors that could go into an assessment of the "net" profitability of a particular relationship, including revenues, cost of goods sold, administrative costs, impacts on brand, impacts on consumer perception, impacts on reputation, and a range of other factors. Plaintiffs fail to clarify what these terms mean in responding to this objection and thus KidKraft remains unable to provide a further response.**

REQUEST FOR ADMISSION 49: Admit that, during the year prior to November 25, 2016, OJC's purchases and sales of KidKraft wooden toy kitchens had yielded net profits, as opposed to net losses, for KidKraft.

RESPONSE TO REQUEST FOR ADMISSION 49: KidKraft objects to Request No. 49 as vague and ambiguous as to what "net profits" and "net losses" means as those terms are not defined. KidKraft denies Request No. 49.

**Evasive and inadequate, the terms "net profits" and "net losses" are not unclear or ambiguous, and Plaintiffs are entitled to a straight response.**

**KidKraft maintains its denial to this Request given that the terms "net profits" and "net losses" are so vague and ambiguous that KidKraft cannot know how to respond to the substance of this Request without knowing what the substance means. For example, there are a range of factors that could go into an assessment of the "net" profitability of a particular relationship, including revenues, cost of goods sold, administrative costs, impacts on brand, impacts on consumer perception, impacts on reputation, and a range of other factors. Plaintiffs fail to clarify what these terms mean in responding to this objection and thus KidKraft remains unable to provide a further response.**

REQUEST FOR ADMISSION 53: Admit that, when KidKraft terminated its business relationship with OJC, KidKraft's business relationship with OJC was not KidKraft's least profitable business relationship reseller of KidKraft's wooden toy kitchens.

RESPONSE TO REQUEST FOR ADMISSION 53: KidKraft objects to Request No. 53 as vague and ambiguous because the term "profitable business relationship reseller" is vague, unclear, and not defined.

**Evasive and inadequate, the term "profitable business relationship reseller" is not vague or ambiguous, and Plaintiffs are entitled to a straight response.**

**KidKraft maintains its objection to this Request on the ground that "profitable business relationship reseller" is vague and ambiguous. Plaintiffs fail to clarify what this term means in responding to this objection and thus KidKraft remains unable to provide a further response.**

REQUEST FOR ADMISSION 54: Admit that, when KidKraft terminated its business relationship with OJC, OJC was in the top 20% of KidKraft's customers as measured by dollars paid.

RESPONSE TO REQUEST FOR ADMISSION 54: KidKraft objects to Request No. 54 as vague and ambiguous to the extent that Plaintiffs do not specify the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which KidKraft is to measure KidKraft's customers. KidKraft also objects to this Request as the term "customer" is not defined herein, nor in the discovery requests referenced in Plaintiffs' Requests for Admission as definition sources. KidKraft, therefore, applies the definition of "KidKraft customer" Plaintiffs used in their Second Request for Interrogatories to KidKraft dated December 7, 2019. KidKraft denies Request No. 54.

**Evasive, unresponsive, and inadequate. The request is not vague or ambiguous, and Plaintiffs are not required to specify "the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which KidKraft is to measure KidKraft's customers." Moreover, the defined term "KidKraft Customer" (with the word "Customer") in upper case is not the same as "KidKraft's customers" as used in this RFA, and KK may not base its response on the definition of Kidkraft Customer, which is limited to customers who have spent over $100,000 a year on wooden toy kitchens.**

**KidKraft maintains its objection to this Request on the ground that KidKraft cannot answer the question where Plaintiffs do not provide KidKraft any information as to whether the question is asked on an "annual basis, monthly basis, weekly basis, aggregate basis, or daily basis." Plaintiffs fail to clarify what this term means in responding to this objection and thus KidKraft remains unable to provide a further response. Additionally, Plaintiffs directed Defendants to apply definitions used in prior discovery requests, so Defendants applied the definition of the term "KidKraft customer" that Plaintiffs previously defined. To the extent Plaintiffs wanted Defendants to use a different definition here, they should have so specified. Indeed, the fact that Plaintiffs now apparently want Defendants to use a different definition for the same words that they previously defined in other discovery requests (but still without defining the term) merely serves to underscore the ambiguity in this Request.**

REQUEST FOR ADMISSION 55: Admit that, when KidKraft terminated its business relationship with OJC, OJC was in the top 20% of KidKraft's customers as measured by units sold.

RESPONSE TO REQUEST FOR ADMISSION 55: KidKraft objects to Request No. 55 as vague and ambiguous to the extent that Plaintiffs do not specify the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which KidKraft is to measure KidKraft's customers. KidKraft also objects to this Request as the term "customer" is not defined herein, nor in the discovery requests referenced in Plaintiffs' Requests for Admission as definition sources. KidKraft, therefore, applies the definition of "KidKraft customer" Plaintiffs used in their Second Request for Interrogatories to KidKraft dated December 7, 2019. KidKraft denies Request No. 55.

**Evasive, unresponsive, and inadequate. The request is not vague or ambiguous, and Plaintiffs are not required to specify "the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which KidKraft is to measure KidKraft's customers." Moreover, the defined term "KidKraft Customer" (with the word "Customer") in upper case is not the same as "KidKraft's customers" as used in this RFA, and KK may not base its response on the definition of Kidkraft Customer, which is limited to customers who have spent over $100,000 a year on wooden toy kitchens.**

**KidKraft maintains its objection to this Request on the ground that KidKraft cannot answer the question where Plaintiffs do not provide KidKraft any information as to whether the question is asked on an "annual basis, monthly basis, weekly basis, aggregate basis, or daily basis." Plaintiffs fail to clarify what this means in responding to this objection and thus KidKraft remains unable to provide a further response. Additionally, Plaintiffs directed Defendants to apply definitions used in prior discovery requests, so Defendants applied the definition of the term "KidKraft customer" that Plaintiffs previously defined. To the extent Plaintiffs wanted Defendants to use a different definition here, they should have so specified. Indeed, the fact that Plaintiffs now apparently want Defendants to use a different definition for the same words that they previously defined in other discovery requests (but still without defining the term) merely serves to underscore the ambiguity in this Request.**

REQUEST FOR ADMISSION 56: Admit that, when KidKraft terminated its business relationship with OJC, OJC was in the top 10% of KidKraft's customers as measured by dollars paid.

RESPONSE TO REQUEST FOR ADMISSION 56: KidKraft objects to Request No. 56 as vague and ambiguous to the extent that Plaintiffs do not specify the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which KidKraft is to measure KidKraft's customers. KidKraft also objects to this Request as the term "KidKraft customer" is not defined herein, nor in the discovery requests referenced in Plaintiffs' Requests for Admission as definition sources. KidKraft, therefore, applies the definition of "KidKraft customer" Plaintiffs used in their Second Request for Interrogatories to KidKraft dated December 7, 2019. KidKraft denies Request No. 56.

**Evasive, unresponsive, and inadequate. The request is not vague or ambiguous, and Plaintiffs are not required to specify "the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which KidKraft is to measure KidKraft's customers." Moreover, the defined term "KidKraft Customer" (with the word "Customer") in upper case is not the same as "KidKraft's customers" as used in this RFA, and KK may not base its response on the definition of KidKraft Customer, which is limited to customers who have spent over $100,000 a year on wooden toy kitchens.**

**KidKraft maintains its objection to this Request on the ground that KidKraft cannot answer the question where Plaintiffs do not provide KidKraft any information as to whether the question is asked on an "annual basis, monthly basis, weekly basis, aggregate basis, or daily basis." Plaintiffs fail to clarify what this means in responding to this objection and thus KidKraft remains unable to provide a further response. Additionally, Plaintiffs directed Defendants to apply definitions used in prior discovery requests, so Defendants applied the definition of the term "KidKraft customer" that Plaintiffs previously defined. To the extent Plaintiffs wanted Defendants to use a different definition here, they should have so specified. Indeed, the fact that Plaintiffs now apparently want Defendants to use a different definition for the same words that they previously defined in other discovery requests (but still without defining the term) merely serves to underscore the ambiguity in this Request.**

REQUEST FOR ADMISSION 57: Admit that, when KidKraft terminated its business relationship with OJC, OJC was in the top 10% of KidKraft's customers as measured by units sold.

RESPONSE TO REQUEST FOR ADMISSION 57: KidKraft objects to Request No. 57 as vague and ambiguous to the extent that Plaintiffs do not specify the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which KidKraft is to measure KidKraft's customers. KidKraft also objects to this Request as the term "KidKraft customer" is not defined herein, nor in the discovery requests referenced in Plaintiffs' Requests for Admission as definition sources. KidKraft, therefore, applies the definition of "KidKraft customer" Plaintiffs used in their Second Request for Interrogatories to KidKraft dated December 7, 2019. KidKraft denies Request No. 57.

**Evasive, unresponsive, and inadequate. The request is not vague or ambiguous, and Plaintiffs are not required to specify "the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which KidKraft is to measure KidKraft's customers." Moreover, the defined term "KidKraft Customer" (with the word "Customer") in upper case is not the same as "KidKraft's customers" as used in this RFA, and KK may not base**

its response on the definition of Kidkraft Customer, which is limited to customers who have spent over $100,000 a year on wooden toy kitchens.

**KidKraft maintains its objection to this Request on the ground that KidKraft cannot answer the question where Plaintiffs do not provide KidKraft any information as to whether the question is asked on an "annual basis, monthly basis, weekly basis, aggregate basis, or daily basis." Plaintiffs fail to clarify what this means in responding to this objection and thus KidKraft remains unable to provide a further response. Additionally, Plaintiffs directed Defendants to apply definitions used in prior discovery requests, so Defendants applied the definition of the term "KidKraft customer" that Plaintiffs previously defined. To the extent Plaintiffs wanted Defendants to use a different definition here, they should have so specified. Indeed, the fact that Plaintiffs now apparently want Defendants to use a different definition for the same words that they previously defined in other discovery requests (but still without defining the term) merely serves to underscore the ambiguity in this Request.**

REQUEST FOR ADMISSION 58: Admit that, when KidKraft terminated its business relationship with OJC, OJC was one of KidKraft's top 20 customers as measured by dollars paid.

RESPONSE TO REQUEST FOR ADMISSION 58: KidKraft objects to Request No. 58 as vague and ambiguous to the extent that Plaintiffs do not specify the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which KidKraft is to measure KidKraft's customers. KidKraft also objects 16 to this Request as the term KidKraft customer is not defined herein, nor in the discovery requests referenced in Plaintiffs' Requests for Admission as definition sources. KidKraft, therefore, applies the definition of "KidKraft customer" Plaintiffs used in their Second Request for Interrogatories to KidKraft dated December 7, 2019. KidKraft denies Request No. 58.

**Evasive, unresponsive, and inadequate. The request is not vague or ambiguous, and Plaintiffs are not required to specify "the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which KidKraft is to measure KidKraft's customers." Moreover, the defined term "KidKraft Customer" (with the word "Customer") in upper case is not the same as "KidKraft's customers" as used in this RFA, and KK may not base its response on the definition of Kidkraft Customer, which is limited to customers who have spent over $100,000 a year on wooden toy kitchens.**

**KidKraft maintains its objection to this Request on the ground that KidKraft cannot answer the question where Plaintiffs do not provide KidKraft any information as to whether the question is asked on an "annual basis, monthly basis, weekly basis, aggregate basis, or daily basis." Plaintiffs fail to clarify what this means in responding to this objection and thus KidKraft remains unable to provide a further response. Additionally, Plaintiffs directed Defendants to apply definitions used in prior discovery requests, so Defendants applied the definition of the term "KidKraft customer" that Plaintiffs previously defined. To the extent Plaintiffs wanted Defendants to use a different definition here, they should have so specified. Indeed, the fact that Plaintiffs now apparently want Defendants to use a different definition for the same words that they previously defined in other discovery**

**requests (but still without defining the term) merely serves to underscore the ambiguity in this Request.**

REQUEST FOR ADMISSION 59: Admit that, when KidKraft terminated its business relationship with OJC, OJC was one of KidKraft's top 20 customers as measured by units sold.

RESPONSE TO REQUEST FOR ADMISSION 59: KidKraft objects to Request No. 59 as vague and ambiguous to the extent that Plaintiffs do not specify the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which KidKraft is to measure KidKraft's customers. KidKraft also objects to this Request as the term KidKraft customer is not defined herein, nor in the discovery requests referenced in Plaintiffs' Requests for Admission as definition sources. KidKraft, therefore, applies the definition of "KidKraft customer" Plaintiffs used in their Second Request for Interrogatories to KidKraft dated December 7, 2019. KidKraft denies Request No. 59.

**Evasive, unresponsive, and inadequate. The request is not vague or ambiguous, and Plaintiffs are not required to specify "the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which KidKraft is to measure KidKraft's customers." Moreover, the defined term "KidKraft Customer" (with the word "Customer") in upper case is not the same as "KidKraft's customers" as used in this RFA, and KK may not base its response on the definition of Kidkraft Customer, which is limited to customers who have spent over $100,000 a year on wooden toy kitchens.**

**KidKraft maintains its objection to this Request on the ground that KidKraft cannot answer the question where Plaintiffs do not provide KidKraft any information as to whether the question is asked on an "annual basis, monthly basis, weekly basis, aggregate basis, or daily basis." Plaintiffs fail to clarify what this means in responding to this objection and thus KidKraft remains unable to provide a further response. Additionally, Plaintiffs directed Defendants to apply definitions used in prior discovery requests, so Defendants applied the definition of the term "KidKraft customer" that Plaintiffs previously defined. To the extent Plaintiffs wanted Defendants to use a different definition here, they should have so specified. Indeed, the fact that Plaintiffs now apparently want Defendants to use a different definition for the same words that they previously defined in other discovery requests (but still without defining the term) merely serves to underscore the ambiguity in this Request.**

REQUEST FOR ADMISSION 60: Admit that, when KidKraft terminated its business relationship with OJC, OJC was one of KidKraft's top 25 customers as measured by dollars paid.

RESPONSE TO REQUEST FOR ADMISSION 60: KidKraft objects to Request No. 60 as vague and ambiguous to the extent that Plaintiffs do not specify the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which KidKraft is to measure KidKraft's customers. KidKraft also objects to this Request as the term KidKraft customer is not defined herein, nor in the discovery requests referenced in Plaintiffs' Requests for Admission as definition sources. KidKraft, therefore, applies the definition of "KidKraft customer" Plaintiffs used in their Second Request for Interrogatories to KidKraft dated December 7, 2019. KidKraft denies Request No. 60.

**Evasive, unresponsive, and inadequate. The request is not vague or ambiguous, and Plaintiffs are not required to specify "the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which KidKraft is to measure KidKraft's customers." Moreover, the defined term "KidKraft Customer" (with the word "Customer") in upper case is not the same as "KidKraft's customers" as used in this RFA, and KK may not base its response on the definition of Kidkraft Customer, which is limited to customers who have spent over $100,000 a year on wooden toy kitchens.**

<span style="color:red">**KidKraft maintains its objection to this Request on the ground that KidKraft cannot answer the question where Plaintiffs do not provide KidKraft any information as to whether the question is asked on an "annual basis, monthly basis, weekly basis, aggregate basis, or daily basis." Plaintiffs fail to clarify what this means in responding to this objection and thus KidKraft remains unable to provide a further response. Additionally, Plaintiffs directed Defendants to apply definitions used in prior discovery requests, so Defendants applied the definition of the term "KidKraft customer" that Plaintiffs previously defined. To the extent Plaintiffs wanted Defendants to use a different definition here, they should have so specified. Indeed, the fact that Plaintiffs now apparently want Defendants to use a different definition for the same words that they previously defined in other discovery requests (but still without defining the term) merely serves to underscore the ambiguity in this Request.**</span>

REQUEST FOR ADMISSION 61: Admit that, when KidKraft terminated its business relationship with OJC, OJC was one of KidKraft's top 25 customers as measured by units sold.

RESPONSE TO REQUEST FOR ADMISSION 61: KidKraft objects to Request No. 61 as vague and ambiguous to the extent that Plaintiffs do not specify the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which KidKraft is to measure KidKraft's customers. KidKraft also objects to this Request as the term KidKraft customer is not defined herein, nor in the discovery requests referenced in Plaintiffs' Requests for Admission as definition sources. KidKraft, therefore, applies the definition of "KidKraft customer" Plaintiffs used in their Second Request for Interrogatories to KidKraft dated December 7, 2019. KidKraft denies Request No. 61.

**Evasive, unresponsive, and inadequate. The request is not vague or ambiguous, and Plaintiffs are not required to specify "the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which KidKraft is to measure KidKraft's customers." Moreover, the defined term "KidKraft Customer" (with the word "Customer") in upper case is not the same as "KidKraft's customers" as used in this RFA, and KK may not base its response on the definition of Kidkraft Customer, which is limited to customers who have spent over $100,000 a year on wooden toy kitchens.**

<span style="color:red">**KidKraft maintains its objection to this Request on the ground that KidKraft cannot answer the question where Plaintiffs do not provide KidKraft any information as to whether the question is asked on an "annual basis, monthly basis, weekly basis, aggregate basis, or daily basis." Plaintiffs fail to clarify what this means in responding to this objection and thus KidKraft remains unable to provide a further response. Additionally, Plaintiffs directed Defendants to apply definitions used in prior discovery requests, so Defendants**</span>

**applied the definition of the term "KidKraft customer" that Plaintiffs previously defined. To the extent Plaintiffs wanted Defendants to use a different definition here, they should have so specified.  Indeed, the fact that Plaintiffs now apparently want Defendants to use a different definition for the same words that they previously defined in other discovery requests (but still without defining the term) merely serves to underscore the ambiguity in this Request.**

REQUEST FOR ADMISSION 62: Admit that, when KidKraft terminated its business relationship with OJC, OJC was one of KidKraft's top 30 customers as measured by dollars paid.

RESPONSE TO REQUEST FOR ADMISSION 62: KidKraft objects to Request No. 62 as vague and ambiguous to the extent that Plaintiffs do not specify the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which KidKraft is to measure KidKraft's customers. KidKraft also objects to this Request as the term KidKraft customer is not defined herein, nor in the discovery requests referenced in Plaintiffs' Requests for Admission as definition sources. KidKraft, therefore, applies the definition of "KidKraft customer" Plaintiffs used in their Second Request for Interrogatories to KidKraft dated December 7, 2019. KidKraft denies Request No. 62.

**Evasive, unresponsive, and inadequate. The request is not vague or ambiguous, and Plaintiffs are not required to specify "the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which KidKraft is to measure KidKraft's customers." Moreover, the defined term "KidKraft Customer" (with the word "Customer") in upper case is not the same as "KidKraft's customers" as used in this RFA, and KK may not base its response on the definition of Kidkraft Customer, which is limited to customers who have spent over $100,000 a year on wooden toy kitchens.**

**KidKraft maintains its objection to this Request on the ground that KidKraft cannot answer the question where Plaintiffs do not provide KidKraft any information as to whether the question is asked on an "annual basis, monthly basis, weekly basis, aggregate basis, or daily basis."  Plaintiffs fail to clarify what this means in responding to this objection and thus KidKraft remains unable to provide a further response. Additionally, Plaintiffs directed Defendants to apply definitions used in prior discovery requests, so Defendants applied the definition of the term "KidKraft customer" that Plaintiffs previously defined. To the extent Plaintiffs wanted Defendants to use a different definition here, they should have so specified.  Indeed, the fact that Plaintiffs now apparently want Defendants to use a different definition for the same words that they previously defined in other discovery requests (but still without defining the term) merely serves to underscore the ambiguity in this Request.**

REQUEST FOR ADMISSION 63: Admit that, when KidKraft terminated its business relationship with OJC, OJC was one of KidKraft's top 30 customers as measured by units sold.

RESPONSE TO REQUEST FOR ADMISSION 63: KidKraft objects to Request No. 63 as vague and ambiguous to the extent that Plaintiffs do not specify the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which KidKraft is to measure KidKraft's customers. KidKraft also objects to this Request as the term KidKraft customer is not defined herein, nor in the discovery requests referenced in Plaintiffs' Requests for Admission as definition

sources. KidKraft, therefore, applies the definition of "KidKraft customer" Plaintiffs used in their Second Request for Interrogatories to KidKraft dated December 7, 2019. KidKraft denies Request No. 63.

**Evasive, unresponsive, and inadequate. The request is not vague or ambiguous, and Plaintiffs are not required to specify "the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which KidKraft is to measure KidKraft's customers." Moreover, the defined term "KidKraft Customer" (with the word "Customer") in upper case is not the same as "KidKraft's customers" as used in this RFA, and KK may not base its response on the definition of Kidkraft Customer, which is limited to customers who have spent over $100,000 a year on wooden toy kitchens.**

<span style="color:red">**KidKraft maintains its objection to this Request on the ground that KidKraft cannot answer the question where Plaintiffs do not provide KidKraft any information as to whether the question is asked on an "annual basis, monthly basis, weekly basis, aggregate basis, or daily basis." Plaintiffs fail to clarify what this means in responding to this objection and thus KidKraft remains unable to provide a further response. Additionally, Plaintiffs directed Defendants to apply definitions used in prior discovery requests, so Defendants applied the definition of the term "KidKraft customer" that Plaintiffs previously defined. To the extent Plaintiffs wanted Defendants to use a different definition here, they should have so specified. Indeed, the fact that Plaintiffs now apparently want Defendants to use a different definition for the same words that they previously defined in other discovery requests (but still without defining the term) merely serves to underscore the ambiguity in this Request.**</span>

REQUEST FOR ADMISSION 64: Admit that, after KidKraft terminated its business relationship with OJC, Kidkraft continued business relationships with at least one other seller or reseller whose purchases and sales with KidKraft had yielded lower annual net profits than those yielded by KidKraft's former relationship with OJC.

RESPONSE TO REQUEST FOR ADMISSION 64: KidKraft objects to Request No. 64 as vague and ambiguous as to what "net profits" means as that term is not defined. KidKraft denies Request No. 64.

**Evasive and inadequate, the term "net profits" is not vague or ambiguous.**

<span style="color:red">**KidKraft maintains its denial to this Request given that the term "net profits" is so vague and ambiguous that KidKraft cannot know how to respond to the substance of this Request without knowing what the substance means. For example, there are a range of factors that could go into an assessment of the "net" profitability of a particular relationship, including revenues, cost of goods sold, administrative costs, impacts on brand, impacts on consumer perception, impacts on reputation, and a range of other factors. Plaintiffs fail to clarify what this term means in responding to this objection and thus KidKraft remains unable to provide a further response.**</span>

REQUEST FOR ADMISSION 65: Admit that, after KidKraft terminated its business relationship with OJC, Kidkraft continued business relationships with over 10 other seller or reseller whose

purchases and sales with KidKraft had yielded lower annual net profits than those yielded by KidKraft's former relationship with OJC.

RESPONSE TO REQUEST FOR ADMISSION 65: KidKraft objects to Request No. 65 as vague and ambiguous as to what "net profits" means as that term is not defined. KidKraft denies Request No. 65.

**Evasive and inadequate, the term "net profits" is not vague or ambiguous.**

**KidKraft maintains its denial to this Request given that the term "net profits" is so vague and ambiguous that KidKraft cannot know how to respond to the substance of this Request without knowing what the substance means.  For example, there are a range of factors that could go into an assessment of the "net" profitability of a particular relationship, including revenues, cost of goods sold, administrative costs, impacts on brand, impacts on consumer perception, impacts on reputation, and a range of other factors.  Plaintiffs fail to clarify what this term means in responding to this objection and thus KidKraft remains unable to provide a further response.**

REQUEST FOR ADMISSION 69: Admit that KidKraft and MidOcean were separate entities as of November 25, 2016.

RESPONSE TO REQUEST FOR ADMISSION 69: KidKraft objects to Request No. 69 as vague and ambiguous as the term "separate entities" is unclear, ambiguous and undefined. Therefore, KidKraft denies this Request.

**Evasive and inadequate, the term "separate entities" is not vague or ambiguous.**

**KidKraft maintains its denial to this Request given that the term "separate entities" is so vague and ambiguous that KidKraft cannot know how to respond to the substance of this Request without knowing what the substance means.  For example, the term is unclear whether it is seeking information about whether KidKraft and MidOcean are separate legal entities, or whether they are economically unrelated entities.  In this regard, Plaintiffs' comment regarding RFA 76—a reference to "separate entities within the meaning of antitrust law"—demonstrates that Plaintiffs are well aware that there are multiple potential meanings of the phrase "separate entities."  It is thus clear that  Plaintiffs have deliberately and deceptively used vague, ambiguous, and undefined terms in their Request in an effort to distort the record.  Defendants are entitled to object to such deliberately ambiguous and deceptive Requests.  Plaintiffs fail to clarify what this term means in responding to this objection and thus KidKraft remains unable to provide a further response.**

REQUEST FOR ADMISSION 76: Admit that, after MidOcean acquired a stake in KidKraft, MidOcean and KidKraft have entered into contracts to which both MidOcean and KidKraft are listed as separate parties.

RESPONSE TO REQUEST FOR ADMISSION 76: KidKraft objects to Request No. 76 as outside the bounds of Federal Rules of Civil Procedure as it seeks information irrelevant to the issues and facts in this case. Deny.

**Evasive, inadequate, and non-objectionable. The information is perfectly relevant as it tends to show that KK and MOP are separate entities within the meaning of antitrust law.**

**<span style="color:red">KidKraft has both properly objected to the Request and denied it.  Nothing further is required.</span>**

REQUEST FOR ADMISSION 83: Admit KidKraft wants its market share for wooden toy kitchen sales to increase.
RESPONSE TO REQUEST FOR ADMISSION 83: KidKraft objects to Request No. 83 as vague and ambiguous and incomplete. Therefore, KidKraft denies.

**There is nothing vague, ambiguous, or incomplete about this RFA and Plaintiffs are entitled to a straight, non-evasive answer.**

**<span style="color:red">KidKraft maintains its denial to this Request given that the it is vague and ambiguous in its entirety that KidKraft cannot know how to respond to the substance of this Request without knowing what the substance means.  Most notably, the request is incomplete because it is omitting—apparently intentionally—the facts and circumstances that would be required to provide an answer to the Request.  For example, a company can gain market share but lose money; or it can lose market share but increase its profitability in any number of ways.  Accordingly, the information provided in the Request was incomplete, rendering the request vague and ambiguous.  Plaintiffs fail to clarify what information this Request seeks in responding to this objection and thus KidKraft remains unable to provide a further response.</span>**

REQUEST FOR ADMISSION 87: Admit that KidKraft has never terminated a business relationship with a retailer, seller or reseller other than OJC on the grounds of alleged sale of knock-offs.
RESPONSE TO REQUEST FOR ADMISSION 87: KidKraft objects to Request No. 87 as confusing as KidKraft did not terminate OJC "on the grounds of alleged sale of knock-offs." KidKraft terminated OJC, in part, because it and its co-owned supplier created and sold their own knock-off of KidKraft's product. KidKraft is not aware of another retailer or reseller that has engaged in such actions.

**Evasive, inadequate, and unresponsive. This RFA does not go to why OJC was terminated or why anyone else was terminated for "such actions." It seeks to determine whether KK has terminated anyone else "on the grounds of alleged sale of knock-offs," and Plaintiffs are entitled to a straight response.**

**<span style="color:red">KidKraft objected to the ambiguous and misleading terminology in the Request, and then responded in full to this Request.  Nothing further is required.</span>**

REQUEST FOR ADMISSION 88: Admit that KidKraft has reviewed the designs and features of toy wooden kitchens manufactured by or for its competitors as a source of potential ideas or inspiration for improving its own products.
RESPONSE TO REQUEST FOR ADMISSION 88: KidKraft objects to Request No. 88 as it is vague and ambiguous as the term "reviewed the potential ideas or inspiration for improving its

own products" is undefined, ambiguous, and confusing. KidKraft further objects to Request No. 88 as outside the bounds of Federal Rules of Civil Procedure as it seeks information irrelevant to the issues and facts in this case. On each of those bases, KidKraft denies the Request. Furthermore, to the extent Plaintiffs are asking whether KidKraft has knocked off products of others in the manner that Plaintiffs knocked off KidKraft's products, KidKraft denies the Request.

**Evasive, inadequate, and non-objectionable. The term "reviewed the potential ideas or inspiration for improving its own products" is not vague or ambiguous. This RFA seeks information that is perfectly relevant to this case, as it would allow the fact-finder to compare the conduct of the parties in determining the validity of KK's claim that Plaintiffs were selling "knock-offs." This RFA does not ask "whether KidKraft has knocked off products of others in the manner that Plaintiffs knocked off KidKraft's products," and Plaintiffs are entitled to a straight response to the actual request.**

<span style="color:red">**KidKraft maintains its denial to this Request given that the term "reviewed the potential ideas or inspiration for improving its own products" is so vague and ambiguous that KidKraft cannot know how to respond to the substance of this Request without knowing what the substance means. Further, KidKraft maintains that this Request has no relevance in this matter as KidKraft is not alleged to have knocked off any retailer and whether KidKraft looked at other products is not relevant to any issue or claim in the case. Plaintiffs fail to clarify what this term means in responding to this objection and thus KidKraft remains unable to provide a further response. Furthermore, KidKraft has responded in full to this Request to the best of its ability, in light of the ambiguity and vagueness of the Request.**</span>

REQUEST FOR ADMISSION 89: Admit that KidKraft actively reviews the designs and features of toy wooden kitchens manufactured by or for its competitors as a source of potential ideas or inspiration for improving its own products.

RESPONSE TO REQUEST FOR ADMISSION 89: KidKraft objects to Request No. 89 as it is vague and ambiguous as the terms "actively reviews" and "potential ideas or inspiration for improving its own products" are confusing. KidKraft objects to Request No. 89 as outside the bounds of Federal Rules of Civil Procedure as it seeks information irrelevant to the issues and facts in this case. Furthermore, to the extent Plaintiffs are asking whether KidKraft has knocked off products of others in the manner that Plaintiffs knocked off KidKraft's products, KidKraft denies the Request.

**Evasive, inadequate, and non-objectionable. The terms "actively reviews" and "potential ideas or inspiration for improving its own products" are not vague, ambiguous, or confusing and Plaintiffs are entitled to a straight response. This RFA seeks information that is perfectly relevant to this case, as it would allow the fact-finder to compare the conduct of the parties in determining the validity of KK's claim that Plaintiffs were selling "knock-offs." This RFA does not ask "whether KidKraft has knocked off products of others in the manner that Plaintiffs knocked off KidKraft's products," and Plaintiffs are entitled to a straight response to the actual request.**

<span style="color:red">**KidKraft maintains its denial to this Request given that the terms "actively reviews" and "potential ideas or inspiration for improving its own products" are so vague and ambiguous**</span>

**that KidKraft cannot know how to respond to the substance of this Request without knowing what the substance means.  Further, KidKraft maintains that this Request has no relevance in this matter as KidKraft is not alleged to have knocked off any retailer and whether KidKraft looked at other products is not relevant to any issue or claim in the case.  Plaintiffs fail to clarify what this term means in responding to this objection and thus KidKraft remains unable to provide a further response.  Furthermore, KidKraft has responded in full to this Request to the best of its ability, in light of the ambiguity and vagueness of the Request.**

REQUEST FOR ADMISSION 90: Admit that KidKraft has used designs and features it first saw in wooden toy kitchens manufactured by, or for, its competitors in its own products.

RESPONSE TO REQUEST FOR ADMISSION 90: KidKraft objects to Request No. 90 as outside the bounds of Federal Rules of Civil Procedure as it seeks information irrelevant to the issues and facts in this case. Furthermore, to the extent Plaintiffs are asking whether KidKraft has knocked off products of others in the manner that Plaintiffs knocked off KidKraft's products, KidKraft denies the Request.

**Evasive, inadequate, and non-objectionable. This RFA seeks information that is perfectly relevant to this case, as it would allow the fact-finder to compare the conduct of the parties in determining the validity of KK's claim that Plaintiffs were selling "knock-offs." This RFA does not ask "whether KidKraft has knocked off products of others in the manner that Plaintiffs knocked off KidKraft's products," and Plaintiffs are entitled to a straight response to the actual request.**

**KidKraft maintains that this Request has no relevance in this matter as KidKraft is not alleged to have knocked off any retailer and whether KidKraft looked at other products is not relevant to any issue or claim in the case.  In light of Plaintiffs' explanation, KidKraft further objects to this Request on the basis that the language in the Request is vague and ambiguous, because it was not clear that Plaintiffs were seeking to "compare the conduct of the parties" that is at issue in this litigation.   In any event, KidKraft has responded in full to this Request to the best of its ability.**

REQUEST FOR ADMISSION 93: Admit that KidKraft's dominant share of the market for wooden toy kitchens was a factor in MidOcean's decision to acquire an equity stake in KidKraft.

RESPONSE TO REQUEST FOR ADMISSION 93: KidKraft objects to the Request No. 93 as vague and ambiguous as the term "dominant share" is undefined and confusing. KidKraft further objects to Request No. 93 as a request that should be asked of MidOcean Partners IV, L.P., not KidKraft.

**Evasive and inadequate, the term "dominant share" is not vague, ambiguous, or confusing. And KK must provide a straight response regardless of whether MOP has the same or better knowledge.**

**KidKraft maintains its objection on the basis that the undefined term "dominant share" is so vague, ambiguous, and confusing as it is used in this Request. Plaintiffs fail to clarify what this term means in responding to this objection and thus KidKraft remains unable to provide**

**a further response. Further, KidKraft maintains its objection that this Request is improper as it seeks information regarding a decision made by MidOcean, not KidKraft.**

REQUEST FOR ADMISSION 94: Admit that the perceived difficulties facing then-current or future competitors in challenging KidKraft's dominant share of the market for wooden toy kitchens was a factor in MidOcean's decision to acquire an equity stake in KidKraft.

RESPONSE TO REQUEST FOR ADMISSION 94: KidKraft objects to the Request No. 94 as vague and ambiguous as the terms "perceived difficulties facing then-current or future competitors" and "dominant share" are undefined and confusing. KidKraft further objects to Request No. 94 as a request that should be asked of MidOcean Partners IV, L.P., not KidKraft.

**Evasive and inadequate, the terms "perceived difficulties facing then-current or future competitors" and "dominant share" are not vague, ambiguous, or confusing. And KK must provide a straight response regardless of whether MOP has the same or better knowledge.**

**KidKraft maintains its objection on the basis that the undefined terms "perceived difficulties facing then-current or future competitors" and "dominant share" are so vague and ambiguous and confusing as used in this Request. Plaintiffs fail to clarify what these terms mean in responding to this objection and thus KidKraft remains unable to provide a further response. Further, KidKraft maintains its objection that this Request is improper as it seeks information regarding a decision made by MidOcean, not KidKraft.**

REQUEST FOR ADMISSION 99: Admit that Guidecraft's claims against OJC were dismissed.

RESPONSE TO REQUEST FOR ADMISSION 99: KidKraft objects to Request No. 99 as it is vague and ambiguous as the term "dismissed" is ambiguous and confusing. Therefore, KidKraft denies.

**Evasive and inadequate, the term "dismissed" is not vague, ambiguous, or confusing.**

**KidKraft maintains its denial to this Request given that the term "dismissed" is so vague, ambiguous, and confusing as it is used in this Request such that KidKraft cannot know how to respond to the substance of this Request without knowing what the substance means. Indeed, it appears that Plaintiffs were deliberately vague in their phrasing of this question—not specifying whether the dismissal was with or without prejudice, on the merits or for some other reason such as improper venue or lack of personal jurisdiction. Plaintiffs surely know the status of their own litigation matter, so this ambiguity appears to be intentional and for the purpose of distorting the record. KidKraft is thus entitled to object to this intentionally ambiguous and misleading request. In this regard, Plaintiffs fail to clarify what this term means in responding to this objection and thus KidKraft remains unable to provide a further response.**

REQUEST FOR ADMISSION 100: Admit that MidOcean regularly reviews the competitive position and market share of KidKraft and its other portfolio companies.

RESPONSE TO REQUEST FOR ADMISSION 100: KidKraft objects to the Request No. 100 as vague and ambiguous as the terms "regularly reviews," "competitive position," and "market share"

are undefined, ambiguous, and confusing. KidKraft further objects to Request No. 100 as a request that should be asked of MidOcean Partners IV, L.P., not KidKraft. Therefore, KidKraft denies.

**Evasive and inadequate, the terms "regularly reviews," "competitive position," and "market share" are not vague, ambiguous, or confusing. And KK must provide a straight response regardless of whether MOP has the same or better knowledge.**

**KidKraft maintains its denial to this Request given that the terms "regularly reviews," "competitive position," and "market share" are so vague, ambiguous, and confusing as used in this Request such that KidKraft cannot know how to respond to the substance of this Request without knowing what the substance means.  Plaintiffs fail to clarify what this term means in responding to this objection and thus KidKraft remains unable to provide a further response. Further, KidKraft maintains its objection that this Request is improper as it seeks information regarding the activities of MidOcean, not KidKraft.**

REQUEST FOR ADMISSION 101: Admit that MidOcean regularly reviews how KidKraft and its other portfolio companies are responding to any threats to their market share posed by their competitors.

RESPONSE TO REQUEST FOR ADMISSION 101: KidKraft objects to the Request No. 101 as vague and ambiguous as the terms "regularly reviews" and "responding to any threats to their market share" are undefined, ambiguous, and confusing. KidKraft further objects to Request No. 101 as a request that should be asked of MidOcean Partners IV, L.P., not KidKraft. Therefore, KidKraft denies.

**Evasive and inadequate, the terms "regularly reviews" and "responding to any threats to their market share" are not vague, ambiguous, or confusing. And KK must provide a straight response regardless of whether MOP has the same or better knowledge.**

**KidKraft maintains its denial to this Request given that the terms "regularly reviews" and "responding to any threats to their market share" are so vague, ambiguous, and confusing as used in this Request such that KidKraft cannot know how to respond to the substance of this Request without knowing what the substance means.  Plaintiffs fail to clarify what these terms mean in responding to this objection and thus KidKraft remains unable to provide a further response. Further, KidKraft maintains its objection that this Request is improper as it seeks information regarding the activities of MidOcean, not KidKraft.**

REQUEST FOR ADMISSION 102: Admit that MidOcean regularly shares (whether directly or via board designees) with management of KidKraft and its other portfolio companies its own views as to how those portfolio companies should be maintaining their competitive position and responding to the actions of their competitors.

RESPONSE TO REQUEST FOR ADMISSION 102: KidKraft objects to the Request No. 102 as vague and ambiguous as the terms "regularly shares" and "maintaining their competitive position and responding to the actions of their competitors" are undefined, ambiguous, and confusing. KidKraft further objects to Request No. 102 as a request that should be asked of MidOcean Partners IV, L.P., not KidKraft. Therefore, KidKraft denies.

**Evasive and inadequate, the terms "regularly shares" and "maintaining their competitive position and responding to the actions of their competitors" are not vague, ambiguous, or confusing. And KK must provide a straight response regardless of whether MOP has the same or better knowledge.**

<span style="color:red">**KidKraft maintains its denial to this Request given that the terms "regularly shares" and "maintaining their competitive position and responding to the actions of their competitors" are so vague, ambiguous, and confusing as used in this Request such that KidKraft cannot know how to respond to the substance of this Request without knowing what the substance means. Plaintiffs fail to clarify what these terms mean in responding to this objection and thus KidKraft remains unable to provide a further response. Further, KidKraft maintains its objection that this Request is improper as it seeks information regarding the activities of MidOcean, not KidKraft.**</span>

REQUEST FOR ADMISSION 103: Admit that the management of KidKraft and MidOcean's other portfolio companies regularly share (whether directly or via board designees) with MidOcean their views as to how to maintain their competitive position and respond to the actions of their competitors.

RESPONSE TO REQUEST FOR ADMISSION 103: KidKraft objects to the Request No. 103 as vague and ambiguous as the terms "regularly share" and "maintain their competitive position and respond to the actions of their competitors" are undefined, ambiguous, and confusing. KidKraft further objects to Request No. 102 as a request that should be asked of MidOcean Partners IV, L.P., not KidKraft. On those bases, KidKraft denies the Request.

**Evasive and inadequate, the terms "regularly share" and "maintain their competitive position and respond to the actions of their competitors" are not vague, ambiguous, or confusing. And KK must provide a straight response regardless of whether MOP has the same or better knowledge.**

<span style="color:red">**KidKraft maintains its denial to this Request given that the terms "regularly share" and "maintain their competitive position and respond to the actions of their competitors" are so vague, ambiguous, and confusing as used in this Request such that KidKraft cannot know how to respond to the substance of this Request without knowing what the substance means. Plaintiffs fail to clarify what these terms mean in responding to this objection and thus KidKraft remains unable to provide a further response. Further, KidKraft maintains its objection that this Request is improper as it seeks information regarding the activities of MidOcean, not KidKraft.**</span>

REQUEST FOR ADMISSION 105: Admit you have no documents prior to December 2016 showing that Kidkraft considered potential claims, demands, or causes of action against OJC or NH for infringement, knocking off, counterfeiting, misappropriating, stealing, or otherwise copying any product of KidKraft.

RESPONSE TO REQUEST FOR ADMISSION 105: KidKraft objects to Request No. 105 as it improperly seeks information protected by the attorney-client privilege and work product doctrine. Therefore, KidKraft denies.

24

**Evasive and inadequate. This RFA only seeks to determine whether KK has any such documents, not the substance thereof, and such information is not privileged. Moreover, such documents are not necessarily privileged.**

**KidKraft maintains its denial on the basis that whether KidKraft has any such documents "showing that KidKraft considered potential claims, demands, or causes of action against OJC or NH for infringement, knocking off, counterfeiting, misappropriating, stealing, or otherwise copying any product of KidKraft" is privileged information.**

REQUEST FOR ADMISSION 110: Admit that all documents labeled with the bates KKI prefix are true and correct copies of a document maintained by you in the ordinary course of business.
RESPONSE TO REQUEST FOR ADMISSION 110: KidKraft objects to the blanket request in Request No. 110 as an improper request to admit the genuineness of a document that does not comply with Fed. R. Civ. P. 36(a)(2). KidKraft denies this Request.

**Evasive and inadequate, the RFA asks for admission of purely factual information that defendant must admit or deny. Moreover, there is nothing "improper" about using RFAs to authenticate documents. These are KK's own documents produced in this litigation, and KK knows or can easily determine whether they are true and correct.**

**KidKraft maintains its denial on the basis that this Request is an improper way to establish the genuineness of a document for purposes of admission.  Further, KidKraft answered the request fully with a denial.**

REQUEST FOR ADMISSION 111: Admit that wooden toy kitchens are better for the environment than plastic toy kitchens.
RESPONSE TO REQUEST FOR ADMISSION 111: KidKraft objects to Request No. 111 as vague and ambiguous as the term "better for the environment" is undefined, ambiguous, and confusing. On that basis, KidKraft denies.

**Evasive and inadequate, the term "better for the environment" is not vague, ambiguous, or confusing.**

**KidKraft maintains its denial to this Request given that the term "better for the environment" is so vague, ambiguous, and confusing as used in this Request, as well as the criteria that Plaintiffs maintain should be considered in making a relative judgment about which product is "better for the environment," such that KidKraft cannot know how to respond to the substance of this Request without knowing what the substance means. Plaintiffs fail to clarify what this term means in responding to this objection and thus KidKraft remains unable to provide a further response.**

REQUEST FOR ADMISSION 112: Admit that wooden toy kitchens are more aesthetically pleasing than plastic toy kitchens.
RESPONSE TO REQUEST FOR ADMISSION 112: KidKraft objects to Request No. 112 as vague and ambiguous as the term "aesthetically pleasing" is undefined, ambiguous, and confusing. On that basis, KidKraft denies.

**Evasive and inadequate, the term "aesthetically pleasing" is not vague, ambiguous, or confusing.**

**KidKraft maintains its denial to this Request given that the term "aesthetically pleasing" is so vague, ambiguous, and confusing as used in this Request, as well as the criteria that Plaintiffs maintain should be considered in making a relative judgment about which product is "more aesthetically pleasing,"  such that KidKraft cannot know how to respond to the substance of this Request without knowing what the substance means.  Plaintiffs fail to clarify what this term means in responding to this objection and thus KidKraft remains unable to provide a further response.**

REQUEST FOR ADMISSION 113: Admit that wooden toy kitchens are safer than plastic toy kitchens.
RESPONSE TO REQUEST FOR ADMISSION 113: KidKraft objects to Request No. 113 as vague and ambiguous as the term "safer" is undefined, ambiguous, and confusing. On that basis, KidKraft denies.

**Evasive and inadequate, the term "safer" is not vague, ambiguous, or confusing.**

**KidKraft maintains its denial to this Request given that the term "safer" is so vague, ambiguous, and confusing as used in this Request, as well as the criteria that Plaintiffs maintain should be considered in making a relative judgment about which product is "safer,"  such that KidKraft cannot know how to respond to the substance of this Request without knowing what the substance means.  Plaintiffs fail to clarify what this term means in responding to this objection and thus KidKraft remains unable to provide a further response.**

REQUEST FOR ADMISSION 119: Admit Costco is an important customer for Kidkraft.
RESPONSE TO REQUEST FOR ADMISSION 119: KidKraft objects to Request No. 119 as vague and ambiguous as it does not define the term "important customer." KidKraft further objects to Request No. 119 as it does not refer to any period of time to assess the Request. Therefore, KidKraft denies this Request.

**Evasive and inadequate, the term "important customer" is not vague, ambiguous, or confusing. Plaintiffs are not required to specify any period of time. KK's response may specify the time periods when Costco was or was not such a customer.**

**KidKraft maintains its denial to this Request given that the use of the undefined term "important customer" and the lack of any period of time render this Request so vague, ambiguous, and confusing in its entirety such that KidKraft cannot know how to respond to the substance of this Request without knowing what the substance means.  Furthermore, depending on the criteria that Plaintiffs wish to include in assessing whether Costco was an "important customer for KidKraft," the time period is highly relevant, because Costco's status as a KidKraft customer changed dramatically from year to year, including multiple years in the relevant period in which Costco did not carry any KidKraft toy kitchens in its**

**stores.  Plaintiffs fail to clarify what this Request means in responding to this objection and thus KidKraft remains unable to provide a further response.**

REQUEST FOR ADMISSION 120: Admit Costco is one of KidKraft's biggest customers.
RESPONSE TO REQUEST FOR ADMISSION 120: KidKraft objects to Request No. 120 as vague and ambiguous as it does not define the term "biggest customer" or the metric that should be used to so calculate. KidKraft objects to Request No. 120 as it does not refer to any period of time to assess the Request. Therefore, KidKraft denies this Request.

**Evasive and inadequate, the term "biggest customer" is not vague, ambiguous, or confusing. Plaintiffs are not required to specify any period of time. KK's response may specify the time periods when Costco was or was not such a customer.**

**KidKraft maintains its denial to this Request given that the use of the undefined term "biggest customer" and the lack of any period of time render this Request so vague, ambiguous, and confusing in its entirety such that KidKraft cannot know how to respond to the substance of this Request without knowing what the substance means.  Plaintiffs fail to clarify what this Request means in responding to this objection and thus KidKraft remains unable to provide a further response.  Furthermore, depending on the criteria that Plaintiffs wish to include in assessing whether Costco was an "important customer for KidKraft," the time period is highly relevant, because Costco's status as a KidKraft customer changed dramatically from year to year, including multiple years in the relevant period in which Costco did not carry any KidKraft toy kitchens in its stores.**

### MidOcean's ("MOP") Support to Its Responses to Requests for Admission

REQUEST FOR ADMISSION 1: Admit that MidOcean is not aware of any manufacturer of wooden toy kitchens that, at any time from September 2011 to the date hereof, had a greater market share than KidKraft for wooden toy kitchen sales in the United States.
RESPONSE TO REQUEST FOR ADMISSION 1: MidOcean does not have information about every manufacturer's sales at all times during the relevant time period, and therefore denies Request No. 1.

**Evasive and inadequate, the RFA does not ask about every manufacturer's sales, only those of which MOP is aware.**

**MidOcean maintains its denial to this Request because it does not know every toy kitchen manufacturer's sales at all times, which is a necessary fact required to answer the question as to whether it is aware that a manufacturer of wooden toy kitchens had a greater market share than KidKraft.**

REQUEST FOR ADMISSION 2: Admit that MidOcean is not aware of any manufacturer of wooden toy kitchens that, at any time from September 2011 to the date hereof, sold more wooden toy kitchens in the United States annually than KidKraft.
RESPONSE TO REQUEST FOR ADMISSION 2: MidOcean lacks knowledge and information to admit or deny this Request. MidOcean has made a reasonable inquiry and the information it knows or can readily obtain is insufficient to enable it to admit or deny because MidOcean does

not know how many wooden toy kitchens every competitor has sold in the United States for each point in the relevant period.

**Evasive and inadequate, same as no. 1.**

**Consistent with its discovery obligations, MidOcean maintains that it "lack[s] knowledge or information" sufficient to admit or deny this request. Fed. R. Civ. P. 36(a)(4). MidOcean is unable to sufficiently assess its awareness regarding "any manufacturer" at "any time" to admit or deny this Request.**

REQUEST FOR ADMISSION 3: Admit that MidOcean is not aware of any manufacturer of wooden toy kitchens that, at any time from September 2011 to the date hereof, received more annual revenue than KidKraft from wooden toy kitchen sales in the United States.
RESPONSE TO REQUEST FOR ADMISSION 3: MidOcean lacks knowledge and information to admit or deny this Request. MidOcean has made a reasonable inquiry and the information it knows or can readily obtain is insufficient to enable it to admit or deny because MidOcean does not know every competitor's annual revenue from wooden toy kitchens sold in the United States for each point in the relevant period.

**Evasive and inadequate, same as no. 1.**

**Consistent with its discovery obligations, MidOcean maintains that it "lack[s] knowledge or information" sufficient to admit or deny this request. Fed. R. Civ. P. 36(a)(4). MidOcean is unable to sufficiently assess its awareness regarding "any manufacturer" at "any time" to admit or deny this Request.**

REQUEST FOR ADMISSION 4: Admit that KidKraft is and has been since at least September 2011 the leading manufacturer of wooden toy kitchens in the United States.
RESPONSE TO REQUEST FOR ADMISSION 4: MidOcean objects to Request No. 4 as vague and ambiguous to the extent that the term "leading manufacturer" is not defined and is a vague and ambiguous term. MidOcean therefore denies Request No. 4.

**Evasive and inadequate, the term "leading manufacturer" is not vague or ambiguous.**

**MidOcean maintains its denial to this Request given that the term "leading manufacturer" is so vague and ambiguous such that MidOcean cannot respond to the substance of this Request without knowing what the substance means. The term "leading manufacturer" could mean any number of different things—for example, it could mean the largest, or fastest growing, or most innovative, or any number of subjective criteria. Notably, Plaintiffs fail to clarify what this term means in responding to this objection and thus MidOcean remains unable to provide a further response.**

REQUEST FOR ADMISSION 6: Admit that, prior to November 25, 2016, KidKraft did not adopt an internal policy to limit its market share for wooden toy kitchens in the United States.
RESPONSE TO REQUEST FOR ADMISSION 6: Request No. 6 is confusing and incoherent, and MidOcean therefore objects to the Request and denies the Request on that basis.

**Evasive and inadequate, this RFA plainly asks whether MOP adopted such an internal policy, Plaintiffs are entitled to a straight response.**

**MidOcean maintains its denial to this Request given that the reference to "adopt[ing] an internal policy to limit [KidKraft's] market share" is confusing and incoherent such that MidOcean cannot know how to respond to the substance of this Request without knowing what the substance means. Plaintiffs fail to clarify what this Request seeks in responding to this objection and thus MidOcean remains unable to provide a further response.**

REQUEST FOR ADMISSION 7: Admit that, as of November 25, 2016 and through the date hereof, KidKraft possessed at least a 20% share of wooden toy kitchen sales in the continental United States.

RESPONSE TO REQUEST FOR ADMISSION 7: MidOcean objects to Request No. 7 as vague and ambiguous to the extent that Plaintiffs do not specify the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which MidOcean is to measure the share, or whether the share is to be calculated by units sold or dollars sold. Moreover, MidOcean does not have access to share data on a daily basis, and as such, cannot admit or deny a request to specify KidKraft's share on a particular date (in this case, November 25, 2016). Additionally, MidOcean objects to Request No. 7 as confusing in that it asks for share of sale calculation on a "continental United States" basis, and not on a domestic basis. MidOcean is not aware of share data on a continental United States basis and it would be overly burdensome and extremely costly for MidOcean to calculate KidKraft's "continental United States" share sales even if it was able 4 to determine the variables on which Plaintiffs would like for MidOcean to calculate the information to answer Request No. 7.

**Evasive and inadequate, the term "20% share is not vague or ambiguous, and OJC is not required to specify "annual basis, monthly basis, weekly basis, aggregate basis, or daily basis," or whether "the share is to be calculated by units sold or dollars sold," to get a straight answer to this RFA. And, even if defendant only has data on a "domestic basis" and not on a "continental United States" basis, that data is adequate for defendant to provide a straight response to this RFA.**

**MidOcean maintains its objection to this Request on the ground that MidOcean cannot answer the question where Plaintiffs do not provide MidOcean any information as to whether the question is asked on an "annual basis, monthly basis, weekly basis, aggregate basis, or daily basis." Plaintiffs fail to clarify what this means in responding to this objection and thus MidOcean remains unable to provide a further response. To the extent Plaintiffs are seeking share information available to Defendants, Defendants refer Plaintiffs to the detailed response and explanation they have provided on this subject.**

REQUEST FOR ADMISSION 8: Admit that, as of November 25, 2016 and through the date hereof, KidKraft possessed at least a 30% share of wooden toy kitchen sales in the continental United States.

RESPONSE TO REQUEST FOR ADMISSION 8: MidOcean objects to Request No. 8 as vague and ambiguous to the extent that Plaintiffs do not specify the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which MidOcean is to measure the share, or whether the share is to be calculated by units sold or dollars sold. Moreover, MidOcean does

not have access to share data on a daily basis, and as such, cannot admit or deny a request to specify KidKraft's share on a particular date (in this case, November 25, 2016). Additionally, MidOcean objects to Request No. 8 as confusing in that it asks for share of sale calculation on a "continental United States" basis, and not on a domestic basis. MidOcean is not aware of share data on a continental United States basis and it would be overly burdensome and extremely costly for MidOcean to calculate KidKraft's "continental United States" share sales even if it was able to determine the variables on which Plaintiffs would like for MidOcean to calculate the information to answer Request No. 8.

**Same as no. 7.**

**MidOcean maintains its objection to this Request on the ground that MidOcean cannot answer the question where Plaintiffs do not provide MidOcean any information as to whether the question is asked on an "annual basis, monthly basis, weekly basis, aggregate basis, or daily basis." Plaintiffs fail to clarify what this means in responding to this objection and thus MidOcean remains unable to provide a further response. To the extent Plaintiffs are seeking share information available to Defendants, Defendants refer Plaintiffs to the detailed response and explanation they have provided on this subject.**

REQUEST FOR ADMISSION 9: Admit that, as of November 25, 2016 and through the date hereof, KidKraft possessed at least a 40% share of wooden toy kitchen sales in the continental United States.

RESPONSE TO REQUEST FOR ADMISSION 9: MidOcean objects to Request No. 9 as vague and ambiguous to the extent that Plaintiffs do not specify the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which MidOcean is to measure the share, or whether the share is to be calculated by units sold or dollars sold. Moreover, MidOcean does not have access to share data on a daily basis, and as such, cannot admit or deny a request to specify KidKraft's share on a particular date (in this case, November 25, 2016). Additionally, MidOcean objects to Request No. 9 as confusing in that it asks for share of sale calculation on a "continental United States" basis, and not on a domestic basis. MidOcean is not aware of share data on a continental United States basis and it would be overly burdensome and extremely costly for 5 MidOcean to calculate KidKraft's "continental United States" share sales even if it was able to determine the variables on which Plaintiffs would like for MidOcean to calculate the information to answer Request No. 9.

**Same as no. 7.**

**MidOcean maintains its objection to this Request on the ground that MidOcean cannot answer the question where Plaintiffs do not provide MidOcean any information as to whether the question is asked on an "annual basis, monthly basis, weekly basis, aggregate basis, or daily basis." Plaintiffs fail to clarify what this means in responding to this objection and thus MidOcean remains unable to provide a further response. To the extent Plaintiffs are seeking share information available to Defendants, Defendants refer Plaintiffs to the detailed response and explanation they have provided on this subject.**

REQUEST FOR ADMISSION 10: Admit that, as of November 25, 2016 and through the date hereof, KidKraft possessed at least a 50% share of wooden toy kitchen sales in the continental United States.

RESPONSE TO REQUEST FOR ADMISSION 10: MidOcean objects to Request No. 10 as vague and ambiguous to the extent that Plaintiffs do not specify the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which MidOcean is to measure the share, or whether the share is to be calculated by units sold or dollars sold. Moreover, MidOcean does not have access to share data on a daily basis, and as such, cannot admit or deny a request to specify KidKraft's share on a particular date (in this case, November 25, 2016). Additionally, MidOcean objects to Request No. 10 as confusing in that it asks for share of sale calculation on a "continental United States" basis, and not on a domestic basis. MidOcean is not aware of share data on a continental United States basis and it would be overly burdensome and extremely costly for MidOcean to calculate KidKraft's "continental United States" share sales even if it was able to determine the variables on which Plaintiffs would like for MidOcean to calculate the information to answer Request No. 10.

**Same as no. 7.**

**MidOcean maintains its objection to this Request on the ground that MidOcean cannot answer the question where Plaintiffs do not provide MidOcean any information as to whether the question is asked on an "annual basis, monthly basis, weekly basis, aggregate basis, or daily basis."  Plaintiffs fail to clarify what this means in responding to this objection and thus MidOcean remains unable to provide a further response.  To the extent Plaintiffs are seeking share information available to Defendants, Defendants refer Plaintiffs to the detailed response and explanation they have provided on this subject.**

REQUEST FOR ADMISSION 11: Admit that, as of November 25, 2016 and through the date hereof, KidKraft possessed at least a 60% share of wooden toy kitchen sales in the continental United States.

RESPONSE TO REQUEST FOR ADMISSION 11: MidOcean objects to Request No. 11 as vague and ambiguous to the extent that Plaintiffs do not specify the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which MidOcean is to measure the share, or whether the share is to be calculated by units sold or dollars sold. Moreover, MidOcean does not have access to share data on a daily basis, and as such, cannot admit or deny a request to specify KidKraft's share on a particular date (in this case, November 25, 2016). Additionally,  MidOcean objects to Request No. 11 as confusing in that it asks for share of sale calculation on a "continental United States" basis, and not on a domestic basis. MidOcean is not aware of share data on a 6 continental United States basis and it would be overly burdensome and extremely costly for MidOcean to calculate KidKraft's "continental United States" share sales even if it was able to determine the variables on which Plaintiffs would like for MidOcean to calculate the information to answer Request No. 11.

**Same as no. 7.**

**MidOcean maintains its objection to this Request on the ground that MidOcean cannot answer the question where Plaintiffs do not provide MidOcean any information as to whether the question is asked on an "annual basis, monthly basis, weekly basis, aggregate**

**basis, or daily basis." Plaintiffs fail to clarify what this means in responding to this objection and thus MidOcean remains unable to provide a further response. To the extent Plaintiffs are seeking share information available to Defendants, Defendants refer Plaintiffs to the detailed response and explanation they have provided on this subject.**

REQUEST FOR ADMISSION 12: Admit that, as of November 25, 2016 and through the date hereof, KidKraft possessed at least a 70% share of wooden toy kitchen sales in the continental United States.

RESPONSE TO REQUEST FOR ADMISSION 12: MidOcean objects to Request No. 12 as vague and ambiguous to the extent that Plaintiffs do not specify the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which MidOcean is to measure the share, or whether the share is to be calculated by units sold or dollars sold. Moreover, MidOcean does not have access to share data on a daily basis, and as such, cannot admit or deny a request to specify KidKraft's share on a particular date (in this case, November 25, 2016). Additionally, MidOcean objects to Request No. 12 as confusing in that it asks for share of sale calculation on a "continental United States" basis, and not on a domestic basis. MidOcean is not aware of share data on a continental United States basis and it would be overly burdensome and extremely costly for MidOcean to calculate KidKraft's "continental United States" share sales even if it was able to determine the variables on which Plaintiffs would like for MidOcean to calculate the information to answer Request No. 12.

**Same as no. 7.**

**MidOcean maintains its objection to this Request on the ground that MidOcean cannot answer the question where Plaintiffs do not provide MidOcean any information as to whether the question is asked on an "annual basis, monthly basis, weekly basis, aggregate basis, or daily basis." Plaintiffs fail to clarify what this means in responding to this objection and thus MidOcean remains unable to provide a further response. To the extent Plaintiffs are seeking share information available to Defendants, Defendants refer Plaintiffs to the detailed response and explanation they have provided on this subject.**

REQUEST FOR ADMISSION 14: Admit that Melissa & Doug produces wooden toy kitchens but not plastic toy kitchens.

RESPONSE TO REQUEST FOR ADMISSION 14: MidOcean lacks knowledge and information to admit or deny this Request. MidOcean has made a reasonable inquiry and the information it knows or can readily obtain is insufficient to enable it to admit or deny because it does not know for certain that Melissa & Doug has not produced plastic toy kitchens.

**Evasive and inadequate, defendant cannot avoid responding because it does not know "for certain." It must give a straight response to the best of its knowledge after reasonable inquiry.**

**Consistent with its discovery obligations, MidOcean maintains that it "lack[s] knowledge or information" sufficient to admit or deny this request. Fed. R. Civ. P. 36(a)(4). MidOcean is unable to sufficiently assess whether Melissa & Doug has produced plastic toy kitchens at any given time.**

REQUEST FOR ADMISSION 15: Admit that Hape produces wooden toy kitchens but not plastic toy kitchens.

RESPONSE TO REQUEST FOR ADMISSION 15: MidOcean lacks knowledge and information to admit or deny this Request. MidOcean has made a reasonable inquiry and the information it knows or can readily obtain is insufficient to enable it to admit or deny because it does not know for certain that Hape has not produced plastic toy kitchens.

**Evasive and inadequate, defendant cannot avoid responding because it does not know "for certain." It must give a straight response to the best of its knowledge after reasonable inquiry.**

**Consistent with its discovery obligations, MidOcean maintains that it "lack[s] knowledge or information" sufficient to admit or deny this request. Fed. R. Civ. P. 36(a)(4). MidOcean is unable to sufficiently assess whether Hape has produced plastic toy kitchens at any given time.**

REQUEST FOR ADMISSION 20: Admit wooden toy kitchens typically sell at a higher price than otherwise similar plastic toy kitchens.

RESPONSE TO REQUEST FOR ADMISSION 20: MidOcean objects to Request No. 20 as vague and ambiguous as the term "typically" is unclear, ambiguous, and undefined. Therefore, MidOcean denies.

**Evasive and inadequate, the term "typically" is not unclear or ambiguous, and Plaintiffs are entitled to a straight response.**

**MidOcean maintains its denial to this Request given that the term "generally," particularly as it is used in this context, is so vague and ambiguous that MidOcean cannot know how to respond to the substance of this Request without knowing what the substance means. Plaintiffs fail to clarify what this term means in responding to this objection and thus MidOcean remains unable to provide a further response.**

REQUEST FOR ADMISSION 21: Admit that there are barriers to entry for new manufacturers of wooden toy kitchens.

RESPONSE TO REQUEST FOR ADMISSION 21: MidOcean objects to Request No. 21 as vague and ambiguous as the term "barriers to entry" is unclear, ambiguous, and undefined. Therefore, MidOcean denies.

**Evasive and inadequate, the term "barriers to entry" is not unclear or ambiguous, and Plaintiffs are entitled to a straight response.**

**This Request appears to be deliberately ambiguous, as Plaintiffs appear to be intentionally avoiding asking about whether there are any barriers to entry that are economically or legally meaningful.   To the extent Plaintiffs are asking about whether there are any economically or legally meaningful barriers, there are none.  But Plaintiffs appear to be asking an intentionally ambiguous question in order to distort the record.  MidOcean is not required to provide an answer to a deliberately vague and ambiguous with a key term that is not defined.  Accordingly, MidOcean maintains its denial to this Request given that the**

33

**term "barriers to entry" is so vague and ambiguous that MidOcean cannot know how to respond to the substance of this Request without knowing what the substance means. Plaintiffs fail to clarify what this term means in responding to this objection and thus MidOcean remains unable to provide a further response.**

REQUEST FOR ADMISSION 22: Admit that KidKraft, between September 2011 and the date hereof, has sold wooden toy kitchens to at least one retailer that sells only KidKraft wooden toy kitchens.

RESPONSE TO REQUEST FOR ADMISSION 22: MidOcean objects to Request No. 22 because it is not in possession of information regarding the products sold by every retailer to which KidKraft has sold toy kitchens at all times since September 2011. Subject to that objection, MidOcean is not aware of any retailer that sells KidKraft wooden toy kitchens and no other products. On that basis, MidOcean denies the Request.

**Evasive and inadequate, this RFA plainly does not refer to retailers that sell "KidKraft wooden toy kitchens and no other products." And the RFA refers to "at least one retailer," not to "every retailer."**

**MidOcean denies this Request because it does not know every product sold by every retailer to which KidKraft has sold toy kitchens at all times since September 2011 which is a necessary fact required to answer the Request.  Moreover, MidOcean responded in full to this Request.**

REQUEST FOR ADMISSION 23: Admit that KidKraft at all times between September 2011 and the date hereof, has sold wooden toy kitchens to at least one retailer that sells only KidKraft wooden toy kitchens.

RESPONSE TO REQUEST FOR ADMISSION 23: MidOcean objects to Request No. 23 because it is not in possession of information regarding the products sold by every retailer to which KidKraft has sold toy kitchens at all times since September 2011. Subject to that objection, MidOcean is not aware of any retailer that sells KidKraft wooden toy kitchens and no other products. On that basis, MidOcean denies the Request.

**Same as no. 22.**

**MidOcean denies this Request because it does not know every product sold by every retailer to which KidKraft has sold toy kitchens at all times since September 2011 which is a necessary fact required to answer the Request.  Moreover, MidOcean responded in full to this Request.**

REQUEST FOR ADMISSION 27: Admit that, prior to terminating its relationship with OJC, KidKraft never obtained a legal opinion as to whether KidKraft had viable intellectual property claims against NH arising from NH's manufacturing of wooden toy kitchens.

RESPONSE TO REQUEST FOR ADMISSION 27: MidOcean objects to Request No. 27 as a request that should be asked of KidKraft, Inc., not MidOcean. MidOcean objects to Request No. 27 as it improperly seeks privileged information. On the basis of those objections, MidOcean denies this Request.

**Evasive and inadequate, the RFA does not ask about the substance of any legal opinion, just whether one exists, and that is not privileged.**

**MidOcean maintains its denial on the basis that whether it obtained a legal opinion on this subject is privileged information.**

REQUEST FOR ADMISSION 29: Admit that, from 2011 to November 25, 2016, OJC's purchases and sales of KidKraft wooden toy kitchens had yielded net profits, as opposed to net losses, for KidKraft.
RESPONSE TO REQUEST FOR ADMISSION 29: MidOcean objects to Request No. 29 as vague and ambiguous as to what "net profits" and "net losses" means as those terms are ambiguous and are not defined. MidOcean denies Request No. 29.

**Evasive and inadequate, the terms "net profits" and "net losses" are not vague or ambiguous.**

**MidOcean maintains its denial to this Request given that the terms "net profits" and "net losses" are so vague and ambiguous that MidOcean cannot know how to respond to the substance of this Request without knowing what the substance means. For example, there are a range of factors that could go into an assessment of the "net" profitability of a particular relationship, including revenues, cost of goods sold, administrative costs, impacts on brand, impacts on consumer perception, impacts on reputation, and a range of other factors. Plaintiffs fail to clarify what these terms mean in responding to this objection and thus MidOcean remains unable to provide a further response.**

REQUEST FOR ADMISSION 30: Admit that, during the year prior to November 25, 2016, OJC's purchases and sales of KidKraft wooden toy kitchens had yielded net profits, as opposed to net losses, for KidKraft.
RESPONSE TO REQUEST FOR ADMISSION 30: MidOcean objects to Request No. 30 as vague and ambiguous as to what "net profits" and "net losses" means as those terms are ambiguous and are not defined. KidKraft denies Request No. 30.

**Same as no. 29.**

**MidOcean maintains its denial to this Request given that the terms "net profits" and "net losses" are so vague and ambiguous that MidOcean cannot know how to respond to the substance of this Request without knowing what the substance means. For example, there are a range of factors that could go into an assessment of the "net" profitability of a particular relationship, including revenues, cost of goods sold, administrative costs, impacts on brand, impacts on consumer perception, impacts on reputation, and a range of other factors. Plaintiffs fail to clarify what these terms mean in responding to this objection and thus MidOcean remains unable to provide a further response.**

REQUEST FOR ADMISSION 35: Admit that KidKraft and MidOcean are and were as of November 25, 2016 separate entities.
RESPONSE TO REQUEST FOR ADMISSION 35: MidOcean objects to Request No. 35 as vague and ambiguous as the term "separate entities" is unclear, ambiguous and undefined. Therefore, MidOcean denies this Request on that basis.

35

**Evasive and inadequate, the term "separate entities" is not vague or ambiguous.**

**MidOcean maintains its denial to this Request given that the term "separate entities" is so vague and ambiguous that MidOcean cannot know how to respond to the substance of this Request without knowing what the substance means.  For example, the term is unclear whether it is seeking information about whether KidKraft and MidOcean are separate legal entities, or whether they are economically unrelated entities.  In this regard, Plaintiffs' comment regarding RFA 76—a reference to "separate entities within the meaning of antitrust law"—demonstrates that Plaintiffs are well aware that there are multiple potential meanings of the phrase "separate entities."  It is thus clear that  Plaintiffs have deliberately and deceptively used vague, ambiguous, and undefined terms in their Request in an effort to distort the record.  Defendants are entitled to object to such deliberately ambiguous and deceptive Requests.  Plaintiffs fail to clarify what this term means in responding to this objection and thus MidOcean remains unable to provide a further response.**

REQUEST FOR ADMISSION 42: Admit that, after MidOcean acquired a stake in KidKraft, MidOcean and KidKraft have entered into contracts to which both MidOcean and KidKraft are listed as separate parties.
RESPONSE TO REQUEST FOR ADMISSION 42: MidOcean objects to Request No. 42 as outside the bounds of Federal Rules of Civil Procedure as it seeks information irrelevant to the issues and facts in this case. Deny.

**Evasive, inadequate, and non-objectionable. The information is perfectly relevant as it tends to show that KK and MOP are separate entities within the meaning of antitrust law.**

**MidOcean has both properly objected to the Request and denied it.  Nothing further is required.**

REQUEST FOR ADMISSION 52: Admit that KidKraft's dominant share of the market for wooden toy kitchens was a factor in MidOcean's decision to acquire an equity stake in KidKraft.
RESPONSE TO REQUEST FOR ADMISSION 52: MidOcean objects to Request No. 52 as vague and ambiguous as the term "dominant share" is undefined and confusing. MidOcean denies Request No. 52.

**Evasive and inadequate, the term "dominant share" is not vague or ambiguous.**

**MidOcean maintains its objection on the basis that the undefined term "dominant share" is so vague, ambiguous, and confusing as it is used in this Request. Plaintiffs fail to clarify what this term means in responding to this objection and thus MidOcean remains unable to provide a further response.**

REQUEST FOR ADMISSION 53: Admit that the perceived difficulties facing then-current or future competitors in challenging KidKraft's dominant share of the market for wooden toy kitchens was a factor in MidOcean's decision to acquire an equity stake in KidKraft.

RESPONSE TO REQUEST FOR ADMISSION 53: MidOcean objects to Request No. 53 as vague and ambiguous as the terms "perceived difficulties facing then-current or future competitors" and "dominant share" are undefined and confusing. MidOcean denies Request No. 53.

**Evasive and inadequate, the terms "perceived difficulties facing then-current or future competitors" and "dominant share" are not vague or ambiguous.**

<span style="color:red">**MidOcean maintains its objection on the basis that the undefined terms "perceived difficulties facing then-current or future competitors" and "dominant share" are so vague and ambiguous and confusing as used in this Request. Plaintiffs fail to clarify what these terms mean in responding to this objection and thus MidOcean remains unable to provide a further response.**</span>

REQUEST FOR ADMISSION 55: Admit that MidOcean regularly reviews the competitive position and market share of KidKraft and its other portfolio companies.
RESPONSE TO REQUEST FOR ADMISSION 55: MidOcean objects to Request No. 55 as vague and ambiguous as the terms "regularly reviews," "competitive position," and "market share" are undefined, ambiguous, and confusing. MidOcean admits that it reviews the performance of KidKraft and its other portfolio companies.

**Evasive and inadequate, the terms "regularly reviews," "competitive position," and "market share" are not vague or ambiguous.**

<span style="color:red">**MidOcean maintains its denial to this Request given that the terms "regularly reviews," "competitive position," and "market share" are so vague, ambiguous, and confusing as used in this Request such that MidOcean cannot know how to respond to the substance of this Request without knowing what the substance means. Plaintiffs fail to clarify what this term means in responding to this objection and thus MidOcean remains unable to provide a further response. Moreover, MidOcean responded in full to this Request.**</span>

REQUEST FOR ADMISSION 56: Admit that MidOcean regularly reviews KidKraft and its other portfolio companies are responding to any threats to their market share posed by their competitors.
RESPONSE TO REQUEST FOR ADMISSION 56: MidOcean objects to Request No. 56 as vague and ambiguous as the terms "regularly reviews," "threats," and "market share" are undefined, ambiguous, and confusing. MidOcean admits that it reviews the competitive performance of KidKraft and its other portfolio companies.

**Evasive and inadequate, the terms "regularly reviews," "threats," and "market share" are not vague or ambiguous.**

<span style="color:red">**MidOcean maintains its denial to this Request given that the terms "regularly reviews" and "responding to any threats to their market share" are so vague, ambiguous, and confusing as used in this Request such that MidOcean cannot know how to respond to the substance of this Request without knowing what the substance means. Plaintiffs fail to clarify what these terms mean in responding to this objection and thus MidOcean remains unable to provide a further response. Moreover, MidOcean responded in full to this Request.**</span>

REQUEST FOR ADMISSION 57: Admit that MidOcean regularly shares (whether directly or via board designees) with management of KidKraft and its other portfolio companies its own views as to how those portfolio companies should be maintaining their competitive position and responding to the actions of their competitors.

RESPONSE TO REQUEST FOR ADMISSION 57: MidOcean objects to the Request No. 57 as vague and ambiguous as the terms "regularly shares," "views," and "maintaining their competitive position" are undefined, ambiguous, and confusing. MidOcean admits that it shares its views with KidKraft's management as to how to improve KidKraft's performance, but it denies that it is involved in day-to-day business decisions of KidKraft.

**Evasive and inadequate, the terms "regularly shares," "views," and "maintaining their competitive position" are not vague or ambiguous.**

**MidOcean maintains its denial to this Request given that the terms "regularly shares" and "maintaining their competitive position and responding to the actions of their competitors" are so vague, ambiguous, and confusing as used in this Request such that MidOcean cannot know how to respond to the substance of this Request without knowing what the substance means. Plaintiffs fail to clarify what these terms mean in responding to this objection and thus MidOcean remains unable to provide a further response. Moreover, MidOcean responded in full to this Request.**

REQUEST FOR ADMISSION 58: Admit that the management of KidKraft and MidOcean's other portfolio companies regularly share (whether directly or via board designees) with MidOcean their views as to how to maintain their competitive position and respond to the actions of their competitors.

RESPONSE TO REQUEST FOR ADMISSION 58: MidOcean objects to the Request No. 58 as vague and ambiguous as the terms "regularly share," "views," and "maintain their competitive position" are undefined, ambiguous, and confusing. MidOcean admits that KidKraft's management shares its views with MidOcean as to how to improve KidKraft's performance.

**Same as no. 57.**

**MidOcean maintains its denial to this Request given that the terms "regularly share" and "maintain their competitive position and respond to the actions of their competitors" are so vague, ambiguous, and confusing as used in this Request such that MidOcean cannot know how to respond to the substance of this Request without knowing what the substance means. Plaintiffs fail to clarify what these terms mean in responding to this objection and thus MidOcean remains unable to provide a further response. Moreover, MidOcean responded in full to this Request.**

REQUEST FOR ADMISSION 59: Admit that all documents labeled with the bates MOP prefix are true and correct copies of a document maintained by you in the ordinary course of business.

RESPONSE TO REQUEST FOR ADMISSION 59: MidOcean objects to Request No. 59 as an improper way to authenticate documents for admission into the record and is inconsistent with the requirements of Fed. R. Civ. P. 36(a)(2).

38

**Evasive and inadequate, the RFA asks for admission of purely factual information that defendant must admit or deny. Moreover, there is nothing "improper" about using RFAs to authenticate documents. These are MOP's own documents produced in this litigation, and MOP knows or can easily determine whether they are true and correct.**

**MidOcean maintains its denial on the basis that this Request is an improper way to establish the genuineness of a document for purposes of admission.  Further, MidOcean answered the request fully with a denial.**

REQUEST FOR ADMISSION 64: Admit MidOcean wants KidKraft's market share for wooden toy kitchen sales to increase.
RESPONSE TO REQUEST FOR ADMISSION 64: MidOcean objects to Request No. 83 as vague and ambiguous and incomplete. Therefore, MidOcean denies.

**Evasive and inadequate. The RFA is not vague, ambiguous, or incomplete, and defendant must provide a straight response.**

**MidOcean maintains its denial to this Request given that it is so vague and ambiguous in its entirety that MidOcean cannot know how to respond to the substance of this Request without knowing what the substance means.  Most notably, the request is incomplete because it is omitting—apparently intentionally—the facts and circumstances that would be required to provide an answer to the Request.  For example, a company can gain market share but lose money; or it can lose market share but increase its profitability in any number of ways.  Accordingly, the information provided in the Request was incomplete, rendering the request vague and ambiguous.  Plaintiffs fail to clarify what information this Request seeks in responding to this objection and thus MidOcean remains unable to provide a further response.**

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-CV-60341-CIV-COOKE/HUNT

OJ COMMERCE LLC; and
NAOMI HOME, INC.,

     Plaintiffs,

v.

KIDKRAFT, INC.; and
MIDOCEAN PARTNERS IV, L.P.,

     Defendants.

_____/

### KIDKRAFT, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS OJ COMMERCE LLC AND NAOMI HOME, INC.'S REQUESTS FOR ADMISSION FOR KIDKRAFT, INC.

  Pursuant to Federal Rules of Civil Procedure 26 and 36 and the Local Rules of the United States District Court for the Southern District of Florida, KidKraft, Inc. ("KidKraft"), by and through its attorneys, hereby submits the following Responses and Objections to Plaintiffs' Requests for Admission for KidKraft, Inc.

### INTRODUCTORY STATEMENT

  KidKraft provides these responses based upon the information reasonably available to it at this time.  Its investigation is ongoing.  Accordingly, KidKraft reserves the right to modify, amend, or supplement these responses as additional information becomes available through discovery and/or further investigation.

  By serving these responses, KidKraft does not concede the relevance, materiality, or admissibility of any of the information described or suggested herein.  Nor does KidKraft waive:  (a) any claim for privilege or work-product protection, (b) any objections to the discoverability of admissibility of documents, (c) any other exemptions from disclosure or discovery, or (d) any claims of confidentiality or any rights or obligations pursuant to any protective orders concerning the production of documents.  These Responses and Objections are not to be interpreted as a waiver of KidKraft's right to object to any information as irrelevant or inadmissible in this action or any other action.

RESPONSES TO REQUESTS FOR ADMISSION

REQUEST FOR ADMISSION 1:

Admit that KidKraft is not aware of any manufacturer of wooden toy kitchens that, at any time from September 2011 to the date hereof, had a greater market share than KidKraft for wooden toy kitchen sales in the continental United States.

RESPONSE TO REQUEST FOR ADMISSION 1:

KidKraft does not have information about every manufacturer's sales at all times during the relevant time period, and therefore denies Request No. 1.

REQUEST FOR ADMISSION 2:

Admit that KidKraft is not aware of any manufacturer of wooden toy kitchens that, at any time from September 2011 to the date hereof, sold more wooden toy kitchens in the continental United States annually than KidKraft.

RESPONSE TO REQUEST FOR ADMISSION 2:

KidKraft lacks knowledge and information to admit or deny this Request.  KidKraft has made a reasonable inquiry and the information it knows or can readily obtain is insufficient to enable it to admit or deny, because KidKraft does not know how many wooden toy kitchens every manufacturer in the continental United States sold on an annual basis for each point in the relevant period.

REQUEST FOR ADMISSION 3:

Admit that KidKraft is not aware of any manufacturer of wooden toy kitchens that, at any time from September 2011 to the date hereof, received more annual revenue than KidKraft from wooden toy kitchen sales in the continental United States.

RESPONSE TO REQUEST FOR ADMISSION 3:

KidKraft lacks knowledge and information to admit or deny this Request.  KidKraft has made a reasonable inquiry and the information it knows or can readily obtain is insufficient to enable it to admit or deny, because KidKraft does not know every competitor's annual revenue from wooden toy kitchens sold in the continental United States for each point in the relevant period.

REQUEST FOR ADMISSION 4:

Admit that KidKraft is and has been since at least September 2011, the leading manufacturer of wooden toy kitchens in the continental United States.

RESPONSE TO REQUEST FOR ADMISSION 4:

KidKraft objects to Request No. 4 as vague and ambiguous to the extent that the term "leading manufacturer" is not defined and is a vague and ambiguous term. KidKraft therefore denies Request No. 4.

REQUEST FOR ADMISSION 5:

Admit that KidKraft, from September 2011 to the date hereof, has intended to maximize its market share for wooden toy kitchen sales in the continental United States.

RESPONSE TO REQUEST FOR ADMISSION 5:

Deny.

REQUEST FOR ADMISSION 6:

Admit that, prior to November 25, 2016, KidKraft did not adopt an internal policy to limit its market share for wooden toy kitchens in the continental United States.

RESPONSE TO REQUEST FOR ADMISSION 6:

Request No. 6 is confusing and incoherent, and KidKraft therefore objects to the Request and denies the Request on that basis.

REQUEST FOR ADMISSION 7:

Admit that, as of November 25, 2016 and through the date hereof, KidKraft possessed at least a 20% share of wooden toy kitchen sales in the continental United States.

RESPONSE TO REQUEST FOR ADMISSION 7:

KidKraft objects to Request No. 7 as vague and ambiguous to the extent that Plaintiffs do not specify the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which KidKraft is to measure the share, or whether the share is to be calculated by units sold or dollars sold. Moreover, KidKraft does not have access to share data on a daily basis, and as such cannot admit or deny a request to specify its share on a particular date (in this case, November 25, 2016). Additionally, KidKraft objects to Request No. 7 as confusing in that it asks for share of sale calculation on a "continental United States" basis, and not on a domestic basis. KidKraft does not keep share data on a continental United States basis and it would be overly burdensome and extremely costly for KidKraft to calculate its "continental United States" share sales even if it was able to determine the variables on which Plaintiffs would like for KidKraft to calculate the information to answer Request No. 7.

REQUEST FOR ADMISSION 8:

Admit that, as of November 25, 2016 and through the date hereof, KidKraft possessed at least a 30% share of wooden toy kitchen sales in the continental United States.

RESPONSE TO REQUEST FOR ADMISSION 8:

KidKraft objects to Request No. 8 as vague and ambiguous to the extent that Plaintiffs do not specify the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which KidKraft is to measure the share, or whether the share is to be calculated by units sold or dollars sold. Moreover, KidKraft does not have access to share data on a daily basis, and as such cannot admit or deny a request to specify its share on a particular date (in this case, November 25, 2016). Additionally, KidKraft objects to Request No. 8 as confusing in that it asks for share of sale calculation on a "continental United States" basis, and not on a domestic basis. KidKraft does not keep share data on a continental United States basis and it would be overly burdensome and extremely costly for KidKraft to calculate its "continental United States" share sales even if it was able to determine the variables on which Plaintiffs would like for KidKraft to calculate the information to answer Request No. 8.

REQUEST FOR ADMISSION 9:

Admit that, as of November 25, 2016 and through the date hereof, KidKraft possessed at least a 40% share of wooden toy kitchen sales in the continental United States.

RESPONSE TO REQUEST FOR ADMISSION 9:

KidKraft objects to Request No. 9 as vague and ambiguous to the extent that Plaintiffs do not specify the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which KidKraft is to measure the share, or whether the share is to be calculated by units sold or dollars sold. Moreover, KidKraft does not have access to share data on a daily basis, and as such cannot admit or deny a request to specify its share on a particular date (in this case, November 25, 2016). Additionally, KidKraft objects to Request No. 9 as confusing in that it asks for share of sale calculation on a "continental United States" basis, and not on a domestic basis. KidKraft does not keep share data on a continental United States basis and it would be overly burdensome and extremely costly for KidKraft to calculate its "continental United States" share sales even if it was able to determine the variables on which Plaintiffs would like for KidKraft to calculate the information to answer Request No. 9.

REQUEST FOR ADMISSION 10:

Admit that, as of November 25, 2016 and through the date hereof, KidKraft possessed at least a 50% share of wooden toy kitchen sales in the continental United States.

RESPONSE TO REQUEST FOR ADMISSION 10:

KidKraft objects to Request No. 10 as vague and ambiguous to the extent that Plaintiffs do not specify the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which KidKraft is to measure the share, or whether the share is to be calculated by units sold or dollars sold. Moreover, KidKraft does not have access to share data on a daily basis, and as such cannot admit or deny a request to specify its share on a particular date (in this case, November 25, 2016). Additionally, KidKraft objects to Request No. 10 as confusing in that it asks for share of sale calculation on a "continental United States" basis, and not on a domestic basis. KidKraft does not keep share data on a continental United States basis and it would be overly burdensome and extremely costly for KidKraft to calculate its "continental United States" share sales even if it was able to determine the variables on which Plaintiffs would like for KidKraft to calculate the information to answer Request No. 10.

REQUEST FOR ADMISSION 11:

Admit that, as of November 25, 2016 and through the date hereof, KidKraft possessed at least a 60% share of wooden toy kitchen sales in the continental United States.

RESPONSE TO REQUEST FOR ADMISSION 11:

KidKraft objects to Request No. 11 as vague and ambiguous to the extent that Plaintiffs do not specify the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which KidKraft is to measure the share, or whether the share is to be calculated by units sold or dollars sold. Moreover, KidKraft does not have access to share data on a daily basis, and as such cannot admit or deny a request to specify its share on a particular date (in this case, November 25, 2016). Additionally, KidKraft objects to Request No. 11 as confusing in that it asks for share of sale calculation on a "continental United States" basis, and not on a domestic basis. KidKraft does not keep share data on a continental United States basis and it would be overly burdensome and extremely costly for KidKraft to

calculate its "continental United States" share sales even if it was able to determine the variables on which Plaintiffs would like for KidKraft to calculate the information to answer Request No. 11.

REQUEST FOR ADMISSION 12:

Admit that, as of November 25, 2016 and through the date hereof, KidKraft possessed at least a 70% share of wooden toy kitchen sales in the continental United States.

RESPONSE TO REQUEST FOR ADMISSION 12:

KidKraft objects to Request No. 12 as vague and ambiguous to the extent that Plaintiffs do not specify the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which KidKraft is to measure the share, or whether the share is to be calculated by units sold or dollars sold. Moreover, KidKraft does not have access to share data on a daily basis, and as such cannot admit or deny a request to specify its share on a particular date (in this case, November 25, 2016). Additionally, KidKraft objects to Request No. 12 as confusing in that it asks for share of sale calculation on a "continental United States" basis, and not on a domestic basis. KidKraft does not keep share data on a continental United States basis and it would be overly burdensome and extremely costly for KidKraft to calculate its "continental United States" share sales even if it was able to determine the variables on which Plaintiffs would like for KidKraft to calculate the information to answer Request No. 12.

REQUEST FOR ADMISSION 13:

Admit that KidKraft does not manufacture or sell plastic toy kitchens.

RESPONSE TO REQUEST FOR ADMISSION 13:

Admit.

REQUEST FOR ADMISSION 14:

Admit that Melissa & Doug produces wooden toy kitchens but not plastic toy kitchens.

RESPONSE TO REQUEST FOR ADMISSION 14:

KidKraft lacks knowledge and information to admit or deny this Request. KidKraft has made a reasonable inquiry and the information it knows or can readily obtain is insufficient to enable it to admit or deny because it does not know for certain that Melissa & Doug has not produced plastic toy kitchens.

REQUEST FOR ADMISSION 15:

Admit that Hape produces wooden toy kitchens but not plastic toy kitchens.

RESPONSE TO REQUEST FOR ADMISSION 15:

KidKraft lacks knowledge and information to admit or deny this Request.  KidKraft has made a reasonable inquiry and the information it knows or can readily obtain is insufficient to enable it to admit or deny because it does not know for certain that Hape has not produced plastic toy kitchens.

REQUEST FOR ADMISSION 16:

Admit that Teamson produces wooden toy kitchens but not plastic toy kitchens.

RESPONSE TO REQUEST FOR ADMISSION 16:

Admit.

REQUEST FOR ADMISSION 17:

Admit that Ikea produces wooden toy kitchens but not plastic toy kitchens.

RESPONSE TO REQUEST FOR ADMISSION 17:

Admit.

REQUEST FOR ADMISSION 18:

Admit that Jupiter produces wooden toy kitchens but not plastic toy kitchens.

RESPONSE TO REQUEST FOR ADMISSION 18:

Admit.

REQUEST FOR ADMISSION 19:

Admit that wooden toy kitchens have advantages over plastic toy kitchens.

RESPONSE TO REQUEST FOR ADMISSION 19:

KidKraft objects to Request No. 19 as vague and ambiguous as the term "advantages" is unclear, ambiguous, and not defined.  In addition, the Request is unclear because it does not specify whether it is seeking information about net advantages – that is, whether the sum of any advantages outweighs any disadvantages.  Subject to that objection, KidKraft admits that wooden toy kitchens have certain advantages over plastic toy kitchens but also certain disadvantages in comparison to plastic toy kitchens.

REQUEST FOR ADMISSION 20:

Admit wooden toy kitchens generally sell at a higher price than plastic toy kitchens.

RESPONSE TO REQUEST FOR ADMISSION 20:

KidKraft objects to Request No. 20 as vague and ambiguous as the term "generally" is unclear, ambiguous, and undefined.  Therefore, KidKraft denies.

REQUEST FOR ADMISSION 21:

Admit that KidKraft is aware that a consumer who has purchased a wooden toy kitchen and wishes to purchase a second toy kitchen, is likely to purchase a second wooden toy kitchen and not a plastic toy kitchen.

RESPONSE TO REQUEST FOR ADMISSION 21:

Deny.

REQUEST FOR ADMISSION 22:

Admit that KidKraft has document(s) showing that a consumer who has purchased a wooden toy kitchen and wishes to purchase a second toy kitchen, is likely to purchase a second wooden toy kitchen and not a plastic toy kitchen.

RESPONSE TO REQUEST FOR ADMISSION 22:

KidKraft objects to Request No. 22 as vague and ambiguous as the terms "a consumer," "showing," and "is likely" are unclear, ambiguous, and undefined.  Therefore, KidKraft denies.

REQUEST FOR ADMISSION 23:

Admit there are barriers to entry for new manufacturers of wooden toy kitchens.

RESPONSE TO REQUEST FOR ADMISSION 23:

KidKraft objects to Request No. 23 as vague and ambiguous as the term "barriers to entry" is unclear, ambiguous, and undefined.  Therefore, KidKraft denies.

REQUEST FOR ADMISSION 24:

Admit that, at least 1 year prior to terminating its relationship with OJC, KidKraft knew that NH was selling a wooden toy kitchen.

RESPONSE TO REQUEST FOR ADMISSION 24:

Admit.

REQUEST FOR ADMISSION 25:

Admit that, prior to terminating its relationship with OJC, KidKraft knew that OJC was selling NH's wooden toy kitchens.

RESPONSE TO REQUEST FOR ADMISSION 25:

    Admit.

REQUEST FOR ADMISSION 26:

    Admit that, prior to terminating its relationship with OJC, KidKraft knew that NH and OJC had the same owners.

RESPONSE TO REQUEST FOR ADMISSION 26:

    Admit.

REQUEST FOR ADMISSION 27:

    Admit that, from the time KidKraft first learned that NH was selling a wooden toy kitchen to November 26, 2016, KidKraft was not aware of any changes that NH made to the designs of its wooden toy kitchens that made them more similar to KidKraft's wooden toy kitchens.

RESPONSE TO REQUEST FOR ADMISSION 27:

    KidKraft admits that from the time KidKraft first learned that NH was selling a wooden toy kitchen, it was aware that NH's wooden toy kitchen was a knock-off of KidKraft's toy kitchen.

REQUEST FOR ADMISSION 28:

    Admit that Teamson has sold wooden toy kitchens that are "knock-offs" of KidKraft's designs.

RESPONSE TO REQUEST FOR ADMISSION 28:

    Admit.

REQUEST FOR ADMISSION 29:

    Admit that Teamson has sold wooden toy kitchens you have referred to as "knock-offs."

RESPONSE TO REQUEST FOR ADMISSION 29:

    Admit.

REQUEST FOR ADMISSION 30:

    Admit that KidKraft has taken no enforcement action against Teamson with respect to its alleged "knock-offs" of KidKraft's designs.

RESPONSE TO REQUEST FOR ADMISSION 30:

    Admit.

REQUEST FOR ADMISSION 31:

Admit that Jupiter has sold wooden toy kitchens that are "knock-offs" of KidKraft's designs.

RESPONSE TO REQUEST FOR ADMISSION 31:

Admit.

REQUEST FOR ADMISSION 32:

Admit that Jupiter has sold wooden toy kitchens you have referred to as "knock-offs."

RESPONSE TO REQUEST FOR ADMISSION 32:

Admit.

REQUEST FOR ADMISSION 33:

Admit that KidKraft has taken no enforcement action against Jupiter with respect to its alleged "knock-offs" of KidKraft's designs.

RESPONSE TO REQUEST FOR ADMISSION 33:

Admit.

REQUEST FOR ADMISSION 34:

Admit that Melissa and Doug has sold wooden toy kitchens that are "knock-offs" of KidKraft's designs.

RESPONSE TO REQUEST FOR ADMISSION 34:

Admit.

REQUEST FOR ADMISSION 35:

Admit that Melissa and Doug has sold wooden toy kitchens you have referred to as "knock-offs."

RESPONSE TO REQUEST FOR ADMISSION 35:

Admit.

REQUEST FOR ADMISSION 36:

Admit that KidKraft has taken no enforcement action against Melissa and Doug with respect to its alleged "knock-offs" of KidKraft's designs.

RESPONSE TO REQUEST FOR ADMISSION 36:

Admit.

REQUEST FOR ADMISSION 37:

Admit that Ikea has sold wooden toy kitchens that are "knock-offs" of KidKraft's designs.

RESPONSE TO REQUEST FOR ADMISSION 37:

Deny.

REQUEST FOR ADMISSION 38:

Admit that Ikea has sold wooden toy kitchens you have referred to as "knock-offs."

RESPONSE TO REQUEST FOR ADMISSION 38:

Deny.

REQUEST FOR ADMISSION 39:

Admit that KidKraft has taken no enforcement action against Ikea with respect to its alleged "knock-offs" of KidKraft's designs.

RESPONSE TO REQUEST FOR ADMISSION 39:

Admit that KidKraft has taken no enforcement action against Ikea for any reason.

REQUEST FOR ADMISSION 40:

Admit that Hape has sold wooden toy kitchens that are "knock-offs" of KidKraft's designs.

RESPONSE TO REQUEST FOR ADMISSION 40:

Deny.

REQUEST FOR ADMISSION 41:

Admit that Hape has sold wooden toy kitchens you have referred to as "knock-offs."

RESPONSE TO REQUEST FOR ADMISSION 41:

Deny.

REQUEST FOR ADMISSION 42:

Admit that KidKraft has taken no enforcement action against Hape with respect to its alleged "knock-offs" of KidKraft's designs.

RESPONSE TO REQUEST FOR ADMISSION 42:

Admit that KidKraft has taken no enforcement action against Hape for any reason.

REQUEST FOR ADMISSION 43:

Admit that, prior to terminating its relationship with OJC, KidKraft never sent a demand letter or cease and desist letter to OJC or NH accusing OJC or NH of counterfeiting, knocking off, or copying KidKraft's wooden toy kitchens.

RESPONSE TO REQUEST FOR ADMISSION 43:

KidKraft objects to Request No. 43 as vague and ambiguous as the terms "demand letter" and "cease and desist letter" are unclear, ambiguous, and undefined.  Therefore, KidKraft denies.

REQUEST FOR ADMISSION 44:

Admit that, prior to terminating its relationship with OJC, KidKraft never filed suit against OJC or NH accusing OJC or NH of counterfeiting, knocking off, or copying KidKraft's wooden toy kitchens.

RESPONSE TO REQUEST FOR ADMISSION 44:

Admit.

REQUEST FOR ADMISSION 45:

Admit that, prior to terminating its relationship with OJC, KidKraft never obtained a legal opinion as to whether KidKraft had viable intellectual property claims against NH arising from NH's manufacturing of wooden toy kitchens.

RESPONSE TO REQUEST FOR ADMISSION 45:

KidKraft objects to Request No. 45 as it improperly seeks privileged information.  On the basis of that objection, KidKraft denies this Request.

REQUEST FOR ADMISSION 46:

Admit that, prior to terminating its relationship with OJC, KidKraft never obtained an engineering report regarding the similarities or differences between any KidKraft wooden toy kitchen and NH wooden toy kitchen.

RESPONSE TO REQUEST FOR ADMISSION 46:

Admit.

REQUEST FOR ADMISSION 47:

Admit that, prior to terminating its relationship with OJC, KidKraft never received a complaint from a seller, reseller, or other customer regarding confusion between a KidKraft wooden toy kitchen and NH wooden toy kitchen.

RESPONSE TO REQUEST FOR ADMISSION 47:

Deny.

REQUEST FOR ADMISSION 48:

Admit that, from 2011 to November 25, 2016, OJC's purchases and sales of KidKraft wooden toy kitchens had yielded net profits, as opposed to net losses, for KidKraft.

RESPONSE TO REQUEST FOR ADMISSION 48:

KidKraft objects to Request No. 48 as vague and ambiguous as to what "net profits" and "net losses" means as those terms are not defined.  KidKraft denies Request No. 48.

REQUEST FOR ADMISSION 49:

Admit that, during the year prior to November 25, 2016, OJC's purchases and sales of KidKraft wooden toy kitchens had yielded net profits, as opposed to net losses, for KidKraft.

RESPONSE TO REQUEST FOR ADMISSION 49:

KidKraft objects to Request No. 49 as vague and ambiguous as to what "net profits" and "net losses" means as those terms are not defined.  KidKraft denies Request No. 49.

REQUEST FOR ADMISSION 50:

Admit that in November 2016, KidKraft terminated its business relationship with OJC.

RESPONSE TO REQUEST FOR ADMISSION 50:

Admit.

REQUEST FOR ADMISSION 51:

Admit that prior to November 2016 KidKraft told OJC that if it did not stop selling NH's wooden toy kitchens its business relationship with OJC would be in jeopardy.

RESPONSE TO REQUEST FOR ADMISSION 51:

KidKraft admits that prior to November 2016 KidKraft told OJC that if it did not stop knocking-off KidKraft's wooden toy kitchens its business relationship with OJC would be in jeopardy.  To the extent the Request refers to any toy kitchens other than knock-offs of KidKraft's toy kitchens, the Request is denied.

REQUEST FOR ADMISSION 52:

Admit that KidKraft never told OJC prior to KidKraft's termination of their business relationship that KidKraft was considering terminating that relationship on any grounds other than OJC's sale of NH's wooden toy kitchens.

13

RESPONSE TO REQUEST FOR ADMISSION 52:

Deny.

REQUEST FOR ADMISSION 53:

Admit that, when KidKraft terminated its business relationship with OJC, KidKraft's business relationship with OJC was not KidKraft's least profitable business relationship reseller of KidKraft's wooden toy kitchens.

RESPONSE TO REQUEST FOR ADMISSION 53:

KidKraft objects to Request No. 53 as vague and ambiguous because the term "profitable business relationship reseller" is vague, unclear, and not defined.

REQUEST FOR ADMISSION 54:

Admit that, when KidKraft terminated its business relationship with OJC, OJC was in the top 20% of KidKraft's customers as measured by dollars paid.

RESPONSE TO REQUEST FOR ADMISSION 54:

KidKraft objects to Request No. 54 as vague and ambiguous to the extent that Plaintiffs do not specify the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which KidKraft is to measure KidKraft's customers.  KidKraft also objects to this Request as the term "customer" is not defined herein, nor in the discovery requests referenced in Plaintiffs' Requests for Admission as definition sources.  KidKraft, therefore, applies the definition of "KidKraft customer" Plaintiffs used in their Second Request for Interrogatories to KidKraft dated December 7, 2019.  KidKraft denies Request No. 54.

REQUEST FOR ADMISSION 55:

Admit that, when KidKraft terminated its business relationship with OJC, OJC was in the top 20% of KidKraft's customers as measured by units sold.

RESPONSE TO REQUEST FOR ADMISSION 55:

KidKraft objects to Request No. 55 as vague and ambiguous to the extent that Plaintiffs do not specify the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which KidKraft is to measure KidKraft's customers.  KidKraft also objects to this Request as the term "customer" is not defined herein, nor in the discovery requests referenced in Plaintiffs' Requests for Admission as definition sources.  KidKraft, therefore, applies the definition of "KidKraft customer" Plaintiffs used in their Second Request for Interrogatories to KidKraft dated December 7, 2019.  KidKraft denies Request No. 55.

REQUEST FOR ADMISSION 56:

      Admit that, when KidKraft terminated its business relationship with OJC, OJC was in the top 10% of KidKraft's customers as measured by dollars paid.

RESPONSE TO REQUEST FOR ADMISSION 56:

      KidKraft objects to Request No. 56 as vague and ambiguous to the extent that Plaintiffs do not specify the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which KidKraft is to measure KidKraft's customers. KidKraft also objects to this Request as the term "KidKraft customer" is not defined herein, nor in the discovery requests referenced in Plaintiffs' Requests for Admission as definition sources.  KidKraft, therefore, applies the definition of "KidKraft customer" Plaintiffs used in their Second Request for Interrogatories to KidKraft dated December 7, 2019.  KidKraft denies Request No. 56.

REQUEST FOR ADMISSION 57:

      Admit that, when KidKraft terminated its business relationship with OJC, OJC was in the top 10% of KidKraft's customers as measured by units sold.

RESPONSE TO REQUEST FOR ADMISSION 57:

      KidKraft objects to Request No. 57 as vague and ambiguous to the extent that Plaintiffs do not specify the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which KidKraft is to measure KidKraft's customers.  KidKraft also objects to this Request as the term "KidKraft customer" is not defined herein, nor in the discovery requests referenced in Plaintiffs' Requests for Admission as definition sources.  KidKraft, therefore, applies the definition of "KidKraft customer" Plaintiffs used in their Second Request for Interrogatories to KidKraft dated December 7, 2019.  KidKraft denies Request No. 57.

REQUEST FOR ADMISSION 58:

      Admit that, when KidKraft terminated its business relationship with OJC, OJC was one of KidKraft's top 20 customers as measured by dollars paid.

RESPONSE TO REQUEST FOR ADMISSION 58:

      KidKraft objects to Request No. 58 as vague and ambiguous to the extent that Plaintiffs do not specify the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which KidKraft is to measure KidKraft's customers.  KidKraft also objects

to this Request as the term KidKraft customer is not defined herein, nor in the discovery requests referenced in Plaintiffs' Requests for Admission as definition sources.  KidKraft, therefore, applies the definition of "KidKraft customer" Plaintiffs used in their Second Request for Interrogatories to KidKraft dated December 7, 2019.  KidKraft denies Request No. 58.

REQUEST FOR ADMISSION 59:

    Admit that, when KidKraft terminated its business relationship with OJC, OJC was one of KidKraft's top 20 customers as measured by units sold.

RESPONSE TO REQUEST FOR ADMISSION 59:

    KidKraft objects to Request No. 59 as vague and ambiguous to the extent that Plaintiffs do not specify the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which KidKraft is to measure KidKraft's customers.  KidKraft also objects to this Request as the term KidKraft customer is not defined herein, nor in the discovery requests referenced in Plaintiffs' Requests for Admission as definition sources.  KidKraft, therefore, applies the definition of "KidKraft customer" Plaintiffs used in their Second Request for Interrogatories to KidKraft dated December 7, 2019.  KidKraft denies Request No. 59.

REQUEST FOR ADMISSION 60:

    Admit that, when KidKraft terminated its business relationship with OJC, OJC was one of KidKraft's top 25 customers as measured by dollars paid.

RESPONSE TO REQUEST FOR ADMISSION 60:

    KidKraft objects to Request No. 60 as vague and ambiguous to the extent that Plaintiffs do not specify the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which KidKraft is to measure KidKraft's customers. KidKraft also objects to this Request as the term KidKraft customer is not defined herein, nor in the discovery requests referenced in Plaintiffs' Requests for Admission as definition sources.  KidKraft, therefore, applies the definition of "KidKraft customer" Plaintiffs used in their Second Request for Interrogatories to KidKraft dated December 7, 2019.  KidKraft denies Request No. 60.

REQUEST FOR ADMISSION 61:

Admit that, when KidKraft terminated its business relationship with OJC, OJC was one of KidKraft's top 25 customers as measured by units sold.

RESPONSE TO REQUEST FOR ADMISSION 61:

KidKraft objects to Request No. 61 as vague and ambiguous to the extent that Plaintiffs do not specify the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which KidKraft is to measure KidKraft's customers. KidKraft also objects to this Request as the term KidKraft customer is not defined herein, nor in the discovery requests referenced in Plaintiffs' Requests for Admission as definition sources. KidKraft, therefore, applies the definition of "KidKraft customer" Plaintiffs used in their Second Request for Interrogatories to KidKraft dated December 7, 2019. KidKraft denies Request No. 61.

REQUEST FOR ADMISSION 62:

Admit that, when KidKraft terminated its business relationship with OJC, OJC was one of KidKraft's top 30 customers as measured by dollars paid.

RESPONSE TO REQUEST FOR ADMISSION 62:

KidKraft objects to Request No. 62 as vague and ambiguous to the extent that Plaintiffs do not specify the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which KidKraft is to measure KidKraft's customers. KidKraft also objects to this Request as the term KidKraft customer is not defined herein, nor in the discovery requests referenced in Plaintiffs' Requests for Admission as definition sources. KidKraft, therefore, applies the definition of "KidKraft customer" Plaintiffs used in their Second Request for Interrogatories to KidKraft dated December 7, 2019. KidKraft denies Request No. 62.

REQUEST FOR ADMISSION 63:

Admit that, when KidKraft terminated its business relationship with OJC, OJC was one of KidKraft's top 30 customers as measured by units sold.

RESPONSE TO REQUEST FOR ADMISSION 63:

KidKraft objects to Request No. 63 as vague and ambiguous to the extent that Plaintiffs do not specify the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which KidKraft is to measure KidKraft's customers. KidKraft also objects

to this Request as the term KidKraft customer is not defined herein, nor in the discovery requests referenced in Plaintiffs' Requests for Admission as definition sources. KidKraft, therefore, applies the definition of "KidKraft customer" Plaintiffs used in their Second Request for Interrogatories to KidKraft dated December 7, 2019. KidKraft denies Request No. 63.

REQUEST FOR ADMISSION 64:

Admit that, after KidKraft terminated its business relationship with OJC, Kidkraft continued business relationships with at least one other seller or reseller whose purchases and sales with KidKraft had yielded lower annual net profits than those yielded by KidKraft's former relationship with OJC.

RESPONSE TO REQUEST FOR ADMISSION 64:

KidKraft objects to Request No. 64 as vague and ambiguous as to what "net profits" means as that term is not defined. KidKraft denies Request No. 64.

REQUEST FOR ADMISSION 65:

Admit that, after KidKraft terminated its business relationship with OJC, Kidkraft continued business relationships with over 10 other seller or reseller whose purchases and sales with KidKraft had yielded lower annual net profits than those yielded by KidKraft's former relationship with OJC.

RESPONSE TO REQUEST FOR ADMISSION 65:

KidKraft objects to Request No. 65 as vague and ambiguous as to what "net profits" means as that term is not defined. KidKraft denies Request No. 65.

REQUEST FOR ADMISSION 66:

Admit that, prior to KidKraft's termination of its business relationship with OJC, KidKraft had discussed with MidOcean (including via MidOcean's designees on KidKraft's board) OJC's sale of NH's wooden toy kitchens.

RESPONSE TO REQUEST FOR ADMISSION 66:

Deny.

REQUEST FOR ADMISSION 67:

Admit that, prior to November 25, 2016, KidKraft did not know of any dispute between OJC or NH and Guidecraft.

RESPONSE TO REQUEST FOR ADMISSION 67:

KidKraft admits that it was not aware of a dispute between OJC or NH and Guidecraft as of November 25, 2016, but KidKraft was aware that OJC and NH were knocking off products of other suppliers in the market as of November 25, 2016 when KidKraft terminated  its relationship with OJC.

REQUEST FOR ADMISSION 68:

Admit that, prior to November 25, 2016, KidKraft did not know of any dispute between OJC or NH and Ashley Furniture.

RESPONSE TO REQUEST FOR ADMISSION 68:

KidKraft admits that it was not aware of a dispute between OJC or NH and Ashley Furniture as of November 25, 2016, but KidKraft was aware that OJC and NH were knocking off products of other suppliers in the market as of November 25, 2016 when KidKraft terminated its relationship with OJC.

REQUEST FOR ADMISSION 69:

Admit that KidKraft and MidOcean were separate entities as of November 25, 2016.

RESPONSE TO REQUEST FOR ADMISSION 69:

KidKraft objects to Request No. 69 as vague and ambiguous as the term "separate entities" is unclear, ambiguous and undefined.  Therefore, KidKraft denies this Request.

REQUEST FOR ADMISSION 70:

Admit that KidKraft has and had as of November 25, 2016 officers or directors that are not officers or directors of MidOcean.

RESPONSE TO REQUEST FOR ADMISSION 70:

Admit.

REQUEST FOR ADMISSION 71:

Admit that MidOcean does not own 100% of KidKraft.

RESPONSE TO REQUEST FOR ADMISSION 71:

Admit.

REQUEST FOR ADMISSION 72:

Admit that one or more director on KidKraft's board, both as of November 25, 2016 and since then, was designated by a beneficial owner or owners of KidKraft other than MidOcean.

RESPONSE TO REQUEST FOR ADMISSION 72:

Admit.

REQUEST FOR ADMISSION 73:

Admit that, after MidOcean acquired a stake in KidKraft, KidKraft did not seek approval from MidOcean for every business decision made by KidKraft.

RESPONSE TO REQUEST FOR ADMISSION 73:

Admit.

REQUEST FOR ADMISSION 74:

Admit that, after MidOcean acquired a stake in KidKraft, MidOcean has entered into contracts to which KidKraft is not a party.

RESPONSE TO REQUEST FOR ADMISSION 74:

Admit.

REQUEST FOR ADMISSION 75:

Admit that, after MidOcean acquired a stake in KidKraft, KidKraft has entered into contracts to which MidOcean is not a party.

RESPONSE TO REQUEST FOR ADMISSION 75:

Admit.

REQUEST FOR ADMISSION 76:

Admit that, after MidOcean acquired a stake in KidKraft, MidOcean and KidKraft have entered into contracts to which both MidOcean and KidKraft are listed as separate parties.

RESPONSE TO REQUEST FOR ADMISSION 76:

KidKraft objects to Request No. 76 as outside the bounds of Federal Rules of Civil Procedure as it seeks information irrelevant to the issues and facts in this case.  Deny.

REQUEST FOR ADMISSION 77:

Admit that KidKraft expected that losing the ability to sell KidKraft wooden toy kitchens would be economically costly to OJC.

RESPONSE TO REQUEST FOR ADMISSION 77:

Deny.

REQUEST FOR ADMISSION 78:

Admit that KidKraft anticipated that OJC's desire to maintain its business relationship with KidKraft might motivate OJC to discontinue selling NH wooden toy kitchens if KidKraft demanded that it do so.

RESPONSE TO REQUEST FOR ADMISSION 78:

Deny.

REQUEST FOR ADMISSION 79:

Admit that KidKraft expected that any discontinuation by OJC of the sale of NH wooden toy kitchens would be economically costly to NH.

RESPONSE TO REQUEST FOR ADMISSION 79:

Deny.

REQUEST FOR ADMISSION 80:

Admit that KidKraft expected that any decision by a given retailer, seller, or reseller to sell NH wooden toy kitchens in addition to KidKraft wooden toy kitchens would result in lost wooden kitchen sales for KidKraft.

RESPONSE TO REQUEST FOR ADMISSION 80:

Deny.

REQUEST FOR ADMISSION 81:

Admit KidKraft wanted NH to stop competing with Kidkraft.

RESPONSE TO REQUEST FOR ADMISSION 81:

Deny.

REQUEST FOR ADMISSION 82:

Admit KidKraft wanted OJC to stop competing with Kidkraft.

RESPONSE TO REQUEST FOR ADMISSION 82:

Deny.

REQUEST FOR ADMISSION 83:

Admit KidKraft wants its market share for wooden toy kitchen sales to increase.

RESPONSE TO REQUEST FOR ADMISSION 83:

KidKraft objects to Request No. 83 as vague and ambiguous and incomplete.  Therefore, KidKraft denies.

REQUEST FOR ADMISSION 84:

Admit that KidKraft expected that any decision by a given retailer, seller, or reseller to sell NH wooden toy kitchens in addition to KidKraft wooden toy kitchens would result in increased wooden kitchen sales for NH.

RESPONSE TO REQUEST FOR ADMISSION 84:

Deny.

REQUEST FOR ADMISSION 85:

Admit that both before and after November 2016 NH was a competitor of KidKraft in the sale of wooden toy kitchens.

RESPONSE TO REQUEST FOR ADMISSION 85:

KidKraft objects to Request No. 85 as vague and ambiguous as the term "competitor of KidKraft in the sale of wooden toy kitchens" is unclear, ambiguous and undefined. NH was a competitor of KidKraft for the sale of wooden toy kitchens in some situations, but not for all situations. Therefore, KidKraft denies.

REQUEST FOR ADMISSION 86:

Admit that OJC's continued sales of NH wooden toy kitchens was a factor in the decision to terminate KidKraft's business relationship with OJC.

RESPONSE TO REQUEST FOR ADMISSION 86:

Deny, to the extent the Request seeks to imply that KidKraft terminated OJC for the sale of NH toy kitchens other than knock-offs of KidKraft products.

REQUEST FOR ADMISSION 87:

Admit that KidKraft has never terminated a business relationship with a retailer, seller or reseller other than OJC on the grounds of alleged sale of knock-offs.

RESPONSE TO REQUEST FOR ADMISSION 87:

KidKraft objects to Request No. 87 as confusing as KidKraft did not terminate OJC "on the grounds of alleged sale of knock-offs." KidKraft terminated OJC, in part, because it and its co-owned supplier created and sold their own knock-off of KidKraft's product. KidKraft is not aware of another retailer or reseller that has engaged in such actions.

REQUEST FOR ADMISSION 88:

Admit that KidKraft has reviewed the designs and features of toy wooden kitchens manufactured by or for its competitors as a source of potential ideas or inspiration for improving its own products.

RESPONSE TO REQUEST FOR ADMISSION 88:

KidKraft objects to Request No. 88 as it is vague and ambiguous as the term "reviewed the potential ideas or inspiration for improving its own products" is undefined, ambiguous, and confusing.  KidKraft further objects to Request No. 88 as outside the bounds of Federal Rules of Civil Procedure as it seeks information irrelevant to the issues and facts in this case. On each of those bases, KidKraft denies the Request.  Furthermore, to the extent Plaintiffs are asking whether KidKraft has knocked off products of others in the manner that Plaintiffs knocked off KidKraft's products, KidKraft denies the Request.

REQUEST FOR ADMISSION 89:

Admit that KidKraft actively reviews the designs and features of toy wooden kitchens manufactured by or for its competitors as a source of potential ideas or inspiration for improving its own products.

RESPONSE TO REQUEST FOR ADMISSION 89:

KidKraft objects to Request No. 89 as it is vague and ambiguous as the terms "actively reviews" and "potential ideas or inspiration for improving its own products" are confusing. KidKraft objects to Request No. 89 as outside the bounds of Federal Rules of Civil Procedure as it seeks information irrelevant to the issues and facts in this case.  Furthermore, to the extent Plaintiffs are asking whether KidKraft has knocked off products of others in the manner that Plaintiffs knocked off KidKraft's products, KidKraft denies the Request.

REQUEST FOR ADMISSION 90:

Admit that KidKraft has used designs and features it first saw in wooden toy kitchens manufactured by, or for, its competitors in its own products.

RESPONSE TO REQUEST FOR ADMISSION 90:

KidKraft objects to Request No. 90 as outside the bounds of Federal Rules of Civil Procedure as it seeks information irrelevant to the issues and facts in this case.  Furthermore, to the extent Plaintiffs are asking whether KidKraft has knocked off products of others in the manner that Plaintiffs knocked off KidKraft's products, KidKraft denies the Request.

REQUEST FOR ADMISSION 91:

Admit that the actual or potential termination of KidKraft's business relationship with OJC was discussed at KidKraft board meetings attended by some or all of MidOcean's designees on the KidKraft board.

RESPONSE TO REQUEST FOR ADMISSION 91:

Deny.

REQUEST FOR ADMISSION 92:

Admit that OJC's sale of NH wooden toy kitchens was discussed at KidKraft board meetings attended by some or all of MidOcean's designees on the KidKraft board.

RESPONSE TO REQUEST FOR ADMISSION 92:

Deny.

REQUEST FOR ADMISSION 93:

Admit that KidKraft's dominant share of the market for wooden toy kitchens was a factor in MidOcean's decision to acquire an equity stake in KidKraft.

RESPONSE TO REQUEST FOR ADMISSION 93:

KidKraft objects to the Request No. 93 as vague and ambiguous as the term "dominant share" is undefined and confusing.  KidKraft further objects to Request No. 93 as a request that should be asked of MidOcean Partners IV, L.P., not KidKraft.

REQUEST FOR ADMISSION 94:

Admit that the perceived difficulties facing then-current or future competitors in challenging KidKraft's dominant share of the market for wooden toy kitchens was a factor in MidOcean's decision to acquire an equity stake in KidKraft.

RESPONSE TO REQUEST FOR ADMISSION 94:

KidKraft objects to the Request No. 94 as vague and ambiguous as the terms "perceived difficulties facing then-current or future competitors" and "dominant share" are undefined and confusing.  KidKraft further objects to Request No. 94 as a request that should be asked of MidOcean Partners IV, L.P., not KidKraft.

REQUEST FOR ADMISSION 95:

Admit that a retailer, seller, or reseller that offers wooden toy kitchens but does not offer KidKraft's wooden toy kitchens will be at a competitive disadvantage to its competitors that do offer KidKraft's wooden toy kitchens.

RESPONSE TO REQUEST FOR ADMISSION 95:

Deny.

REQUEST FOR ADMISSION 96:

Admit that Costco is one of the three highest-volume resellers of wooden toy kitchens in the United States.

RESPONSE TO REQUEST FOR ADMISSION 96:

Deny.

REQUEST FOR ADMISSION 97:

Admit that Costco is one of the three highest-volume resellers of KidKraft wooden toy kitchens in the United States.

RESPONSE TO REQUEST FOR ADMISSION 97:

Deny.

REQUEST FOR ADMISSION 98:

Admit that Guidecraft has failed to prosecute its alleged claims against NH and/or OJC.

RESPONSE TO REQUEST FOR ADMISSION 98:

The requested facts are in Plaintiffs' possession, and Plaintiffs have failed to produce the discovery sought by Defendants in relation to Guidecraft.  Accordingly, KidKraft lacks knowledge and information to respond to this Request and denies the Request on that basis.

REQUEST FOR ADMISSION 99:

Admit that Guidecraft's claims against OJC were dismissed.

RESPONSE TO REQUEST FOR ADMISSION 99:

KidKraft objects to Request No. 99 as it is vague and ambiguous as the term "dismissed" is ambiguous and confusing.  Therefore, KidKraft denies.

REQUEST FOR ADMISSION 100:

Admit that MidOcean regularly reviews the competitive position and market share of KidKraft and its other portfolio companies.

RESPONSE TO REQUEST FOR ADMISSION 100:

KidKraft objects to the Request No. 100 as vague and ambiguous as the terms "regularly reviews," "competitive position," and "market share" are undefined, ambiguous, and

confusing.  KidKraft further objects to Request No. 100 as a request that should be asked of MidOcean Partners IV, L.P., not KidKraft.  Therefore, KidKraft denies.

REQUEST FOR ADMISSION 101:

Admit that MidOcean regularly reviews how KidKraft and its other portfolio companies are responding to any threats to their market share posed by their competitors.

RESPONSE TO REQUEST FOR ADMISSION 101:

KidKraft objects to the Request No. 101 as vague and ambiguous as the terms "regularly reviews" and "responding to any threats to their market share" are undefined, ambiguous, and confusing.  KidKraft further objects to Request No. 101 as a request that should be asked of MidOcean Partners IV, L.P., not KidKraft.  Therefore, KidKraft denies.

REQUEST FOR ADMISSION 102:

Admit that MidOcean regularly shares (whether directly or via board designees) with management of KidKraft and its other portfolio companies its own views as to how those portfolio companies should be maintaining their competitive position and responding to the actions of their competitors.

RESPONSE TO REQUEST FOR ADMISSION 102:

KidKraft objects to the Request No. 102 as vague and ambiguous as the terms "regularly shares" and "maintaining their competitive position and responding to the actions of their competitors" are undefined, ambiguous, and confusing.  KidKraft further objects to Request No. 102 as a request that should be asked of MidOcean Partners IV, L.P., not KidKraft.  Therefore, KidKraft denies.

REQUEST FOR ADMISSION 103:

Admit that the management of KidKraft and MidOcean's other portfolio companies regularly share (whether directly or via board designees) with MidOcean their views as to how to maintain their competitive position and respond to the actions of their competitors.

RESPONSE TO REQUEST FOR ADMISSION 103:

KidKraft objects to the Request No. 103 as vague and ambiguous as the terms "regularly share" and "maintain their competitive position and respond to the actions of their competitors" are undefined, ambiguous, and confusing.  KidKraft further objects to Request No. 102 as a request that should be asked of MidOcean Partners IV, L.P., not KidKraft.  On those bases, KidKraft denies the Request.

REQUEST FOR ADMISSION 104:

Admit that during pre-litigation negotiations about potentially resuming the business relationship between KidKraft and OJC, KidKraft never demanded that OJC discontinue selling any alleged knockoffs as a condition of resuming the relationship.

RESPONSE TO REQUEST FOR ADMISSION 104:

KidKraft objects to Request No. 104 as an improper discovery request that seeks information protected by Federal Rule of Evidence 408 because it specifically seeks information about discussions between the parties to settle a pending lawsuit.  KidKraft further objects to Request No. 104 to the extent that it seeks KidKraft's interpretation of the settlement positions of either party, because that improperly intrudes upon KidKraft's litigation strategy and seeks information protected by the attorney-client privilege and work product doctrine.

REQUEST FOR ADMISSION 105:

Admit you have no documents prior to December 2016 showing that Kidkraft considered potential claims, demands, or causes of action against OJC or NH for infringement, knocking off, counterfeiting, misappropriating, stealing, or otherwise copying any product of KidKraft.

RESPONSE TO REQUEST FOR ADMISSION 105:

KidKraft objects to Request No. 105 as it improperly seeks information protected by the attorney-client privilege and work product doctrine.  Therefore, KidKraft denies.

REQUEST FOR ADMISSION 106:

Admit that you have no documents showing Kidkraft terminated a customer that was not OJC for copying or knocking off KidKraft's products.

RESPONSE TO REQUEST FOR ADMISSION 106:

KidKraft objects to Request No. 106 on the basis that the premise of the question is flawed as KidKraft is not aware of any other customer copying or knocking of KidKraft's products.

REQUEST FOR ADMISSION 107:

Admit you have no documents prior to December 2016 showing any of your customers or potential customers were confused about whether a wooden toy kitchen was from KidKraft or NH.

RESPONSE TO REQUEST FOR ADMISSION 107:

Deny.

REQUEST FOR ADMISSION 108:

Admit you unilaterally terminated the business relationship between you and OJC.

RESPONSE TO REQUEST FOR ADMISSION 108:

Admit.

REQUEST FOR ADMISSION 109:

Admit that during the negotiations between OJC and Kidkraft prior to the filing of this action that involved reestablishing a business relationship between KidKraft and OJC, KidKraft never conditioned the reestablishment of a business relationship on OJC discontinuing the sale of any alleged copies or knockoffs of KidKraft products.

RESPONSE TO REQUEST FOR ADMISSION 109:

KidKraft objects to Request No. 109 as an improper discovery request that seeks information protected by Federal Rule of Evidence 408 because it specifically seeks information about discussions between the parties to settle a pending lawsuit.  KidKraft further objects to Request No. 109 to the extent that it seeks KidKraft's interpretation of the settlement positions of either party, because that improperly intrudes upon KidKraft's litigation strategy and seeks information protected by the attorney-client privilege and work product doctrine.

REQUEST FOR ADMISSION 110:

Admit that all documents labeled with the bates KKI prefix are true and correct copies of a document maintained by you in the ordinary course of business.

RESPONSE TO REQUEST FOR ADMISSION 110:

KidKraft objects to the blanket request in Request No. 110 as an improper request to admit the genuineness of a document that does not comply with Fed. R. Civ. P. 36(a)(2). KidKraft denies this Request.

REQUEST FOR ADMISSION 111:

Admit that wooden toy kitchens are better for the environment than plastic toy kitchens.

RESPONSE TO REQUEST FOR ADMISSION 111:

KidKraft objects to Request No. 111 as vague and ambiguous as the term "better for the environment" is undefined, ambiguous, and confusing.  On that basis, KidKraft denies.

REQUEST FOR ADMISSION 112:

Admit that wooden toy kitchens are more aesthetically pleasing than plastic toy kitchens.

RESPONSE TO REQUEST FOR ADMISSION 112:

KidKraft objects to Request No. 112 as vague and ambiguous as the term "aesthetically pleasing" is undefined, ambiguous, and confusing.  On that basis, KidKraft denies.

REQUEST FOR ADMISSION 113:

Admit that wooden toy kitchens are safer than plastic toy kitchens.

RESPONSE TO REQUEST FOR ADMISSION 113:

KidKraft objects to Request No. 113 as vague and ambiguous as the term "safer" is undefined, ambiguous, and confusing.  On that basis, KidKraft denies.

REQUEST FOR ADMISSION 114:

Admit you shut off inventory feeds for Target due to low retail pricing.

RESPONSE TO REQUEST FOR ADMISSION 114:

Deny.

REQUEST FOR ADMISSION 115:

Admit that Amazon complained about the fact that retailers were selling Kidkraft kitchens at prices that were too low.

RESPONSE TO REQUEST FOR ADMISSION 115:

Deny.

REQUEST FOR ADMISSION 116:

Admit that Costco informed Michael Drobnis that it would not purchase Naomi Home's Naomi Kids Gourmet Play Kitchen in February 2017.

RESPONSE TO REQUEST FOR ADMISSION 116:

Admit.

REQUEST FOR ADMISSION 117:

Admit that Costco told Michael Drobnis that it would not purchase Naomi Home's Naomi Kids Gourmet Play Kitchen in February 2017 because "the category was already filled."  See OJC00700400.

RESPONSE TO REQUEST FOR ADMISSION 117:

The Request accurately characterizes the document cited, but KidKraft was not party to that conversation and therefore lacks information to admit or deny the Request.

REQUEST FOR ADMISSION 118:

Admit the category referred to in 117 above was "filled" by Kidkraft's kitchens.

RESPONSE TO REQUEST FOR ADMISSION 118:

Deny.

REQUEST FOR ADMISSION 119:

Admit Costco is an important customer for Kidkraft.

RESPONSE TO REQUEST FOR ADMISSION 119:

KidKraft objects to Request No. 119 as vague and ambiguous as it does not define the term "important customer." KidKraft further objects to Request No. 119 as it does not refer to any period of time to assess the Request. Therefore, KidKraft denies this Request.

REQUEST FOR ADMISSION 120:

Admit Costco is one of KidKraft's biggest customers.

RESPONSE TO REQUEST FOR ADMISSION 120:

KidKraft objects to Request No. 120 as vague and ambiguous as it does not define the term "biggest customer" or the metric that should be used to so calculate. KidKraft objects to Request No. 120 as it does not refer to any period of time to assess the Request. Therefore, KidKraft denies this Request.

REQUEST FOR ADMISSION 121:

Admit Kidkraft discussed NH kitchens with other retailers.

RESPONSE TO REQUEST FOR ADMISSION 121:

Deny.

DATED:  May 21, 2020

Respectfully submitted,

/s/ Joshua Lipton
Joshua Lipton (*Pro Hac Vice*)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone:    202.955.8500
Facsimile:     202.467.0539
jlipton@gibsondunn.com

Scott K. Hvidt (*Pro Hac Vice*)
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, Texas  75201
Telephone:  (214) 698-3100
Facsimile:  (214) 698-3400
shvidt@gibsondunn.com

-and-

Lawrence D. Silverman, Esq.
Florida Bar Number:  7160
Email:  lawrence.silverman@akerman.com
Alexandra M. Mora, Esq.
Florida Bar Number:  052368
Email:  alexandra.mora@akerman.com
AKERMAN LLP
Three Brickell City Centre
98 Southeast Seventh Street
Suite 1100
Miami, FL 33131
Phone:  (305) 374-5600
Fax:  (305) 374-5095

ATTORNEYS FOR DEFENDANTS

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 21st day of May, 2020, a true and correct copy of the foregoing was served via e-mail upon all counsel of record.

/s/ Joshua Lipton
Joshua Lipton

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-CV-60341-CIV-COOKE/HUNT

OJ COMMERCE LLC; and
NAOMI HOME, INC.,

                 Plaintiffs,

v.

KIDKRAFT, INC.; and
MIDOCEAN PARTNERS IV, L.P.,

                 Defendants.

_____/

## MIDOCEAN PARTNERS IV, L.P.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS OJ COMMERCE LLC AND NAOMI HOME, INC.'S REQUESTS FOR ADMISSION FOR MIDOCEAN PARTNERS IV, L.P.

Pursuant to Federal Rules of Civil Procedure 26 and 36 and the Local Rules of the United States District Court for the Southern District of Florida, MidOcean Partners IV, L.P. ("MidOcean"), by and through its attorneys, hereby submits the following Responses and Objections to Plaintiffs' Requests for Admission for MidOcean Partners IV, L.P.

## INTRODUCTORY STATEMENT

MidOcean provides these responses based upon the information reasonably available to them at this time. Its investigation is ongoing. Accordingly, MidOcean reserves the right to modify, amend, or supplement these responses as additional information becomes available through discovery and/or further investigation.

By serving these responses, MidOcean does not concede the relevance, materiality, or admissibility of any of the information described or suggested herein. Nor does MidOcean waive: (a) any claim for privilege or work-product protection, (b) any objections to the discoverability of admissibility of documents, (c) any other exemptions from disclosure or discovery, or (d) any claims of confidentiality or any rights or obligations pursuant to any protective orders concerning the production of documents. These Responses and Objections are not to be interpreted as a waiver of MidOcean's right to object to any information as irrelevant or inadmissible in this action or any other action.

## RESPONSES TO REQUESTS FOR ADMISSIONS

REQUEST FOR ADMISSION 1:

Admit that MidOcean is not aware of any manufacturer of wooden toy kitchens that, at any time from September 2011 to the date hereof, had a greater market share than KidKraft for wooden toy kitchen sales in the United States.

RESPONSE TO REQUEST FOR ADMISSION 1:

MidOcean does not have information about every manufacturer's sales at all times during the relevant time period, and therefore denies Request No. 1.

REQUEST FOR ADMISSION 2:

Admit that MidOcean is not aware of any manufacturer of wooden toy kitchens that, at any time from September 2011 to the date hereof, sold more wooden toy kitchens in the United States annually than KidKraft.

RESPONSE TO REQUEST FOR ADMISSION 2:

MidOcean lacks knowledge and information to admit or deny this Request. MidOcean has made a reasonable inquiry and the information it knows or can readily obtain is insufficient to enable it to admit or deny because MidOcean does not know how many wooden toy kitchens every competitor has sold in the United States for each point in the relevant period.

REQUEST FOR ADMISSION 3:

Admit that MidOcean is not aware of any manufacturer of wooden toy kitchens that, at any time from September 2011 to the date hereof, received more annual revenue than KidKraft from wooden toy kitchen sales in the United States.

RESPONSE TO REQUEST FOR ADMISSION 3:

MidOcean lacks knowledge and information to admit or deny this Request. MidOcean has made a reasonable inquiry and the information it knows or can readily obtain is insufficient to enable it to admit or deny because MidOcean does not know every competitor's annual revenue from wooden toy kitchens sold in the United States for each point in the relevant period.

REQUEST FOR ADMISSION 4:

Admit that KidKraft is and has been since at least September 2011 the leading manufacturer of wooden toy kitchens in the United States.

2

RESPONSE TO REQUEST FOR ADMISSION 4:

MidOcean objects to Request No. 4 as vague and ambiguous to the extent that the term "leading manufacturer" is not defined and is a vague and ambiguous term. MidOcean therefore denies Request No. 4.

REQUEST FOR ADMISSION 5:

Admit that KidKraft, from the time of MidOcean's equity investment in it to the date hereof, has intended to maximize its market share for wooden toy kitchen sales in the United States.

RESPONSE TO REQUEST FOR ADMISSION 5:

Deny.

REQUEST FOR ADMISSION 6:

Admit that, prior to November 25, 2016, KidKraft did not adopt an internal policy to limit its market share for wooden toy kitchens in the United States.

RESPONSE TO REQUEST FOR ADMISSION 6:

Request No. 6 is confusing and incoherent, and MidOcean therefore objects to the Request and denies the Request on that basis.

REQUEST FOR ADMISSION 7:

Admit that, as of November 25, 2016 and through the date hereof, KidKraft possessed at least a 20% share of wooden toy kitchen sales in the continental United States.

RESPONSE TO REQUEST FOR ADMISSION 7:

MidOcean objects to Request No. 7 as vague and ambiguous to the extent that Plaintiffs do not specify the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which MidOcean is to measure the share, or whether the share is to be calculated by units sold or dollars sold. Moreover, MidOcean does not have access to share data on a daily basis, and as such, cannot admit or deny a request to specify KidKraft's share on a particular date (in this case, November 25, 2016). Additionally, MidOcean objects to Request No. 7 as confusing in that it asks for share of sale calculation on a "continental United States" basis, and not on a domestic basis. MidOcean is not aware of share data on a continental United States basis and it would be overly burdensome and extremely costly for MidOcean to calculate KidKraft's "continental United States" share sales even if it was able

to determine the variables on which Plaintiffs would like for MidOcean to calculate the information to answer Request No. 7.

REQUEST FOR ADMISSION 8:

Admit that, as of November 25, 2016 and through the date hereof, KidKraft possessed at least a 30% share of wooden toy kitchen sales in the continental United States.

RESPONSE TO REQUEST FOR ADMISSION 8:

MidOcean objects to Request No. 8 as vague and ambiguous to the extent that Plaintiffs do not specify the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which MidOcean is to measure the share, or whether the share is to be calculated by units sold or dollars sold.  Moreover, MidOcean does not have access to share data on a daily basis, and as such, cannot admit or deny a request to specify KidKraft's share on a particular date (in this case, November 25, 2016).  Additionally, MidOcean objects to Request No. 8 as confusing in that it asks for share of sale calculation on a "continental United States" basis, and not on a domestic basis.  MidOcean is not aware of share data on a continental United States basis and it would be overly burdensome and extremely costly for MidOcean to calculate KidKraft's "continental United States" share sales even if it was able to determine the variables on which Plaintiffs would like for MidOcean to calculate the information to answer Request No. 8.

REQUEST FOR ADMISSION 9:

Admit that, as of November 25, 2016 and through the date hereof, KidKraft possessed at least a 40% share of wooden toy kitchen sales in the continental United States.

RESPONSE TO REQUEST FOR ADMISSION 9:

MidOcean objects to Request No. 9 as vague and ambiguous to the extent that Plaintiffs do not specify the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which MidOcean is to measure the share, or whether the share is to be calculated by units sold or dollars sold.  Moreover, MidOcean does not have access to share data on a daily basis, and as such, cannot admit or deny a request to specify KidKraft's share on a particular date (in this case, November 25, 2016).  Additionally, MidOcean objects to Request No. 9 as confusing in that it asks for share of sale calculation on a "continental United States" basis, and not on a domestic basis.  MidOcean is not aware of share data on a continental United States basis and it would be overly burdensome and extremely costly for

4

MidOcean to calculate KidKraft's "continental United States" share sales even if it was able to determine the variables on which Plaintiffs would like for MidOcean to calculate the information to answer Request No. 9.

REQUEST FOR ADMISSION 10:

Admit that, as of November 25, 2016 and through the date hereof, KidKraft possessed at least a 50% share of wooden toy kitchen sales in the continental United States.

RESPONSE TO REQUEST FOR ADMISSION 10:

MidOcean objects to Request No. 10 as vague and ambiguous to the extent that Plaintiffs do not specify the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which MidOcean is to measure the share, or whether the share is to be calculated by units sold or dollars sold.  Moreover, MidOcean does not have access to share data on a daily basis, and as such, cannot admit or deny a request to specify KidKraft's share on a particular date (in this case, November 25, 2016).  Additionally, MidOcean objects to Request No. 10 as confusing in that it asks for share of sale calculation on a "continental United States" basis, and not on a domestic basis.  MidOcean is not aware of share data on a continental United States basis and it would be overly burdensome and extremely costly for MidOcean to calculate KidKraft's "continental United States" share sales even if it was able to determine the variables on which Plaintiffs would like for MidOcean to calculate the information to answer Request No. 10.

REQUEST FOR ADMISSION 11:

Admit that, as of November 25, 2016 and through the date hereof, KidKraft possessed at least a 60% share of wooden toy kitchen sales in the continental United States.

RESPONSE TO REQUEST FOR ADMISSION 11:

MidOcean objects to Request No. 11 as vague and ambiguous to the extent that Plaintiffs do not specify the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which MidOcean is to measure the share, or whether the share is to be calculated by units sold or dollars sold.  Moreover, MidOcean does not have access to share data on a daily basis, and as such, cannot admit or deny a request to specify KidKraft's share on a particular date (in this case, November 25, 2016).  Additionally, MidOcean objects to Request No. 11 as confusing in that it asks for share of sale calculation on a "continental United States" basis, and not on a domestic basis.  MidOcean is not aware of share data on a

continental United States basis and it would be overly burdensome and extremely costly for MidOcean to calculate KidKraft's "continental United States" share sales even if it was able to determine the variables on which Plaintiffs would like for MidOcean to calculate the information to answer Request No. 11.

REQUEST FOR ADMISSION 12:

Admit that, as of November 25, 2016 and through the date hereof, KidKraft possessed at least a 70% share of wooden toy kitchen sales in the continental United States.

RESPONSE TO REQUEST FOR ADMISSION 12:

MidOcean objects to Request No. 12 as vague and ambiguous to the extent that Plaintiffs do not specify the time period (annual basis, monthly basis, weekly basis, aggregate basis, or daily basis) over which MidOcean is to measure the share, or whether the share is to be calculated by units sold or dollars sold.  Moreover, MidOcean does not have access to share data on a daily basis, and as such, cannot admit or deny a request to specify KidKraft's share on a particular date (in this case, November 25, 2016).  Additionally, MidOcean objects to Request No. 12 as confusing in that it asks for share of sale calculation on a "continental United States" basis, and not on a domestic basis.  MidOcean is not aware of share data on a continental United States basis and it would be overly burdensome and extremely costly for MidOcean to calculate KidKraft's "continental United States" share sales even if it was able to determine the variables on which Plaintiffs would like for MidOcean to calculate the information to answer Request No. 12.

REQUEST FOR ADMISSION 13:

Admit that KidKraft does not manufacture or sell plastic toy kitchens.

RESPONSE TO REQUEST FOR ADMISSION 13:

Admit.

REQUEST FOR ADMISSION 14:

Admit that Melissa & Doug produces wooden toy kitchens but not plastic toy kitchens.

RESPONSE TO REQUEST FOR ADMISSION 14:

MidOcean lacks knowledge and information to admit or deny this Request. MidOcean has made a reasonable inquiry and the information it knows or can readily obtain is insufficient to enable it to admit or deny because it does not know for certain that Melissa & Doug has not produced plastic toy kitchens.

REQUEST FOR ADMISSION 15:

Admit that Hape produces wooden toy kitchens but not plastic toy kitchens.

RESPONSE TO REQUEST FOR ADMISSION 15:

MidOcean lacks knowledge and information to admit or deny this Request. MidOcean has made a reasonable inquiry and the information it knows or can readily obtain is insufficient to enable it to admit or deny because it does not know for certain that Hape has not produced plastic toy kitchens.

REQUEST FOR ADMISSION 16:

Admit that Teamson produces wooden toy kitchens but not plastic toy kitchens.

RESPONSE TO REQUEST FOR ADMISSION 16:

Admit.

REQUEST FOR ADMISSION 17:

Admit that Ikea produces wooden toy kitchens but not plastic toy kitchens.

RESPONSE TO REQUEST FOR ADMISSION 17:

Admit.

REQUEST FOR ADMISSION 18:

Admit that Jupiter produces wooden toy kitchens but not plastic toy kitchens.

RESPONSE TO REQUEST FOR ADMISSION 18:

Admit.

REQUEST FOR ADMISSION 19:

Admit that wooden toy kitchens have advantages over plastic toy kitchens.

RESPONSE TO REQUEST FOR ADMISSION 19:

MidOcean objects to Request No. 19 as vague and ambiguous as the term "advantages" is unclear, ambiguous, and not defined.  In addition, the Request is unclear because it does not specify whether it is seeking information about net advantages – that is, whether the sum of any advantages outweighs any disadvantages.  Subject to that objection, MidOcean admits that wooden toy kitchens have certain advantages over plastic toy kitchens but also certain disadvantages in comparison to plastic toy kitchens.

REQUEST FOR ADMISSION 20:

Admit wooden toy kitchens typically sell at a higher price than otherwise similar plastic toy kitchens.

RESPONSE TO REQUEST FOR ADMISSION 20:

MidOcean objects to Request No. 20 as vague and ambiguous as the term "typically" is unclear, ambiguous, and undefined.  Therefore, MidOcean denies[PSE1].

REQUEST FOR ADMISSION 21:

Admit that there are barriers to entry for new manufacturers of wooden toy kitchens.

RESPONSE TO REQUEST FOR ADMISSION 21:

MidOcean objects to Request No. 21 as vague and ambiguous as the term "barriers to entry" is unclear, ambiguous, and undefined.  Therefore, MidOcean denies.

REQUEST FOR ADMISSION 22:

Admit that KidKraft, between September 2011 and the date hereof, has sold wooden toy kitchens to at least one retailer that sells only KidKraft wooden toy kitchens.

RESPONSE TO REQUEST FOR ADMISSION 22:

MidOcean objects to Request No. 22 because it is not in possession of information regarding the products sold by every retailer to which KidKraft has sold toy kitchens at all times since September 2011.  Subject to that objection, MidOcean is not aware of any retailer that sells KidKraft wooden toy kitchens and no other products.  On that basis, MidOcean denies the Request.

REQUEST FOR ADMISSION 23:

Admit that KidKraft at all times between September 2011 and the date hereof, has sold wooden toy kitchens to at least one retailer that sells only KidKraft wooden toy kitchens.

RESPONSE TO REQUEST FOR ADMISSION 23:

MidOcean objects to Request No. 23 because it is not in possession of information regarding the products sold by every retailer to which KidKraft has sold toy kitchens at all times since September 2011.  Subject to that objection, MidOcean is not aware of any retailer that sells KidKraft wooden toy kitchens and no other products.  On that basis, MidOcean denies the Request.

REQUEST FOR ADMISSION 24:

Admit that, prior to KidKraft terminating its relationship with OJC, MidOcean knew that NH was selling a wooden toy kitchen.

RESPONSE TO REQUEST FOR ADMISSION 24:

Deny.

REQUEST FOR ADMISSION 25:

Admit that, prior to KidKraft terminating its relationship with OJC, MidOcean knew that OJC was selling NH's wooden toy kitchens.

RESPONSE TO REQUEST FOR ADMISSION 25:

Deny.

REQUEST FOR ADMISSION 26:

Admit that, prior to KidKraft terminating its relationship with OJC, MidOcean knew that NH and OJC had the same owners.

RESPONSE TO REQUEST FOR ADMISSION 26:

Deny.

REQUEST FOR ADMISSION 27:

Admit that, prior to terminating its relationship with OJC, KidKraft never obtained a legal opinion as to whether KidKraft had viable intellectual property claims against NH arising from NH's manufacturing of wooden toy kitchens.

RESPONSE TO REQUEST FOR ADMISSION 27:

MidOcean objects to Request No. 27 as a request that should be asked of KidKraft, Inc., not MidOcean.  MidOcean objects to Request No. 27 as it improperly seeks privileged information.  On the basis of those objections, MidOcean denies this Request.

REQUEST FOR ADMISSION 28:

Admit that, prior to terminating its relationship with OJC, KidKraft never obtained an engineering report regarding the similarities or differences between any KidKraft wooden toy kitchen and NH wooden toy kitchen.

RESPONSE TO REQUEST FOR ADMISSION 28:

MidOcean objects to Request No. 28 as a request that should be asked of KidKraft, Inc., not MidOcean.  MidOcean lacks knowledge and information to admit or deny this Request.

REQUEST FOR ADMISSION 29:

Admit that, from 2011 to November 25, 2016, OJC's purchases and sales of KidKraft wooden toy kitchens had yielded net profits, as opposed to net losses, for KidKraft.

RESPONSE TO REQUEST FOR ADMISSION 29:

MidOcean objects to Request No. 29 as vague and ambiguous as to what "net profits" and "net losses" means as those terms are ambiguous and are not defined.  MidOcean denies Request No. 29.

REQUEST FOR ADMISSION 30:

Admit that, during the year prior to November 25, 2016, OJC's purchases and sales of KidKraft wooden toy kitchens had yielded net profits, as opposed to net losses, for KidKraft.

RESPONSE TO REQUEST FOR ADMISSION 30:

MidOcean objects to Request No. 30 as vague and ambiguous as to what "net profits" and "net losses" means as those terms are ambiguous and are not defined.  KidKraft denies Request No. 30.

REQUEST FOR ADMISSION 31:

Admit that in November 2016, KidKraft terminated its business relationship with OJC.

RESPONSE TO REQUEST FOR ADMISSION 31:

Admit.

REQUEST FOR ADMISSION 32:

Admit that, prior to KidKraft's termination of its business relationship with OJC, KidKraft had discussed with MidOcean (including via MidOcean's designees on KidKraft's board) OJC's sale of NH's wooden toy kitchens.

RESPONSE TO REQUEST FOR ADMISSION 32:

Deny.

REQUEST FOR ADMISSION 33:

Admit that, prior to November 25, 2016, MidOcean did not know of any dispute between OJC or NH and Guidecraft.

RESPONSE TO REQUEST FOR ADMISSION 33:

Admit.

REQUEST FOR ADMISSION 34:

Admit that, prior to November 25, 2016, MidOcean did not know of any dispute between OJC or NH and Ashley Furniture.

RESPONSE TO REQUEST FOR ADMISSION 34:

    Admit.

REQUEST FOR ADMISSION 35:

    Admit that KidKraft and MidOcean are and were as of November 25, 2016 separate entities.

RESPONSE TO REQUEST FOR ADMISSION 35:

    MidOcean objects to Request No. 35 as vague and ambiguous as the term "separate entities" is unclear, ambiguous and undefined.  Therefore, MidOcean denies this Request on that basis.

REQUEST FOR ADMISSION 36:

    Admit that KidKraft has and had as of November 25, 2016 officers or directors that are not officers or directors of MidOcean.

RESPONSE TO REQUEST FOR ADMISSION 36:

    Admit.

REQUEST FOR ADMISSION 37:

    Admit that MidOcean does not own 100% of KidKraft.

RESPONSE TO REQUEST FOR ADMISSION 37:

    Admit.

REQUEST FOR ADMISSION 38:

    Admit that one or more director on KidKraft's board, both as of November 25, 2016 and since then, was designated by a beneficial owner or owners of KidKraft other than MidOcean.

RESPONSE TO REQUEST FOR ADMISSION 38:

    Admit.

REQUEST FOR ADMISSION 39:

    Admit that, after MidOcean acquired a stake in KidKraft, KidKraft did not seek approval from MidOcean for every business decision made by KidKraft.

RESPONSE TO REQUEST FOR ADMISSION 39:

    Admit.

REQUEST FOR ADMISSION 40:

Admit that, after MidOcean acquired a stake in KidKraft, MidOcean has entered into contracts to which KidKraft is not a party.

RESPONSE TO REQUEST FOR ADMISSION 40:

Admit.

REQUEST FOR ADMISSION 41:

Admit that, after MidOcean acquired a stake in KidKraft, KidKraft has entered into contracts to which MidOcean is not a party.

RESPONSE TO REQUEST FOR ADMISSION 41:

Admit.

REQUEST FOR ADMISSION 42:

Admit that, after MidOcean acquired a stake in KidKraft, MidOcean and KidKraft have entered into contracts to which both MidOcean and KidKraft are listed as separate parties.

RESPONSE TO REQUEST FOR ADMISSION 42:

MidOcean objects to Request No. 42 as outside the bounds of Federal Rules of Civil Procedure as it seeks information irrelevant to the issues and facts in this case.  Deny.

REQUEST FOR ADMISSION 43:

Admit that MidOcean expected that losing the ability to sell KidKraft wooden toy kitchens would be economically costly to OJC.

RESPONSE TO REQUEST FOR ADMISSION 43:

Deny.

REQUEST FOR ADMISSION 44:

Admit that MidOcean anticipated that OJC's desire to maintain its business relationship with KidKraft might motivate OJC to discontinue selling NH wooden toy kitchens if KidKraft demanded that it do so.

RESPONSE TO REQUEST FOR ADMISSION 44:

Deny.

REQUEST FOR ADMISSION 45:

Admit that MidOcean expected that any discontinuation by OJC of the sale of NH wooden toy kitchens would be economically costly to NH.

12

RESPONSE TO REQUEST FOR ADMISSION 45:

Deny.

REQUEST FOR ADMISSION 46:

Admit that MidOcean expected that any decision by a given retailer, seller, or reseller to sell NH wooden toy kitchens in addition to KidKraft wooden toy kitchens would result in lost wooden kitchen sales for KidKraft.

RESPONSE TO REQUEST FOR ADMISSION 46:

Deny.

REQUEST FOR ADMISSION 47:

Admit that MidOcean expected that any decision by a given retailer, seller, or reseller to sell NH wooden toy kitchens in addition to KidKraft wooden toy kitchens would result in increased wooden kitchen sales for NH.

RESPONSE TO REQUEST FOR ADMISSION 47:

Deny.

REQUEST FOR ADMISSION 48:

Admit that both before and after November 2016 NH was a competitor of KidKraft in the sale of wooden toy kitchens.

RESPONSE TO REQUEST FOR ADMISSION 48:

MidOcean objects to Request No. 48 as vague and ambiguous as the term "competitor of KidKraft in the sale of wooden toy kitchens" is unclear, ambiguous and undefined. NH was a competitor of KidKraft for the sale of wooden toy kitchens in some situations, but not for all situations. Therefore, MidOcean denies.

REQUEST FOR ADMISSION 49:

Admit that OJC's continued sales of NH wooden toy kitchens was a factor in the decision to terminate KidKraft's business relationship with OJC.

RESPONSE TO REQUEST FOR ADMISSION 49:

MidOcean objects to Request No. 49 on the basis that this is a question better asked of KidKraft as MidOcean did not participate in KidKraft's termination of its business relationship with OJ Commerce. But, based on the information presently available to it, MidOcean denies.

REQUEST FOR ADMISSION 50:

Admit that the actual or potential termination of KidKraft's business relationship with OJC was discussed at a KidKraft board meeting attended by some or all of MidOcean's designees on the KidKraft board.

RESPONSE TO REQUEST FOR ADMISSION 50:

Deny.

REQUEST FOR ADMISSION 51:

Admit that OJC's sale of NH wooden toy kitchens was discussed at a KidKraft board meeting attended by some or all of MidOcean's designees on the KidKraft board.

RESPONSE TO REQUEST FOR ADMISSION 51:

Deny.

REQUEST FOR ADMISSION 52:

Admit that KidKraft's dominant share of the market for wooden toy kitchens was a factor in MidOcean's decision to acquire an equity stake in KidKraft.

RESPONSE TO REQUEST FOR ADMISSION 52:

MidOcean objects to Request No. 52 as vague and ambiguous as the term "dominant share" is undefined and confusing.  MidOcean denies Request No. 52.

REQUEST FOR ADMISSION 53:

Admit that the perceived difficulties facing then-current or future competitors in challenging KidKraft's dominant share of the market for wooden toy kitchens was a factor in MidOcean's decision to acquire an equity stake in KidKraft.

RESPONSE TO REQUEST FOR ADMISSION 53:

MidOcean objects to Request No. 53 as vague and ambiguous as the terms "perceived difficulties facing then-current or future competitors" and "dominant share" are undefined and confusing.  MidOcean denies Request No. 53.

REQUEST FOR ADMISSION 54:

Admit that a retailer, seller, or reseller that offers wooden toy kitchens but does not offer KidKraft's wooden toy kitchens will be at a competitive disadvantage to its competitors that do offer KidKraft's wooden toy kitchens.

RESPONSE TO REQUEST FOR ADMISSION 54:

Deny.

REQUEST FOR ADMISSION 55:

Admit that MidOcean regularly reviews the competitive position and market share of KidKraft and its other portfolio companies.

RESPONSE TO REQUEST FOR ADMISSION 55:

MidOcean objects to Request No. 55 as vague and ambiguous as the terms "regularly reviews," "competitive position," and "market share" are undefined, ambiguous, and confusing.  MidOcean admits that it reviews the performance of KidKraft and its other portfolio companies.

REQUEST FOR ADMISSION 56:

Admit that MidOcean regularly reviews how KidKraft and its other portfolio companies are responding to any threats to their market share posed by their competitors.

RESPONSE TO REQUEST FOR ADMISSION 56:

MidOcean objects to Request No. 56 as vague and ambiguous as the terms "regularly reviews," "threats," and "market share" are undefined, ambiguous, and confusing. MidOcean admits that it reviews the competitive performance of KidKraft and its other portfolio companies.

REQUEST FOR ADMISSION 57:

Admit that MidOcean regularly shares (whether directly or via board designees) with management of KidKraft and its other portfolio companies its own views as to how those portfolio companies should be maintaining their competitive position and responding to the actions of their competitors.

RESPONSE TO REQUEST FOR ADMISSION 57:

MidOcean objects to the Request No. 57 as vague and ambiguous as the terms "regularly shares," "views," and "maintaining their competitive position" are undefined, ambiguous, and confusing.  MidOcean admits that it shares its views with KidKraft's management as to how to improve KidKraft's performance, but it denies that it is involved in day-to-day business decisions of KidKraft.

REQUEST FOR ADMISSION 58:

Admit that the management of KidKraft and MidOcean's other portfolio companies regularly share (whether directly or via board designees) with MidOcean their views as to how to maintain their competitive position and respond to the actions of their competitors.

RESPONSE TO REQUEST FOR ADMISSION 58:

MidOcean objects to the Request No. 58 as vague and ambiguous as the terms "regularly share," "views," and "maintain their competitive position" are undefined, ambiguous, and confusing.   MidOcean admits that KidKraft's management shares its views with MidOcean as to how to improve KidKraft's performance.

REQUEST FOR ADMISSION 59:

Admit that all documents labeled with the bates MOP prefix are true and correct copies of a document maintained by you in the ordinary course of business.

RESPONSE TO REQUEST FOR ADMISSION 59:

MidOcean objects to Request No. 59 as an improper way to authenticate documents for admission into the record and is inconsistent with the requirements of Fed. R. Civ. P. 36(a)(2).

REQUEST FOR ADMISSION 60:

Admit MidOcean had input on the decision to terminate OJC as a KidKraft customer.

RESPONSE TO REQUEST FOR ADMISSION 60:

Deny.

REQUEST FOR ADMISSION 61:

Admit MidOcean encouraged the decision to terminate OJC as a Kidkraft customer.

RESPONSE TO REQUEST FOR ADMISSION 61:

Deny.

REQUEST FOR ADMISSION 62:

Admit MidOcean wanted NH to stop competing with Kidkraft.

RESPONSE TO REQUEST FOR ADMISSION 62:

Deny.

REQUEST FOR ADMISSION 63:

Admit MidOcean wanted OJC to stop competing with Kidkraft.

RESPONSE TO REQUEST FOR ADMISSION 63:

Deny.

REQUEST FOR ADMISSION 64:

Admit MidOcean wants KidKraft's market share for wooden toy kitchen sales to increase.

RESPONSE TO REQUEST FOR ADMISSION 64:

    MidOcean objects to Request No. 83 as vague and ambiguous and incomplete.  Therefore, MidOcean denies.

DATED:  May 21, 2020                Respectfully submitted,

                                 /s/ Joshua Lipton
                                 Joshua Lipton (*Pro Hac Vice*)
                                 GIBSON, DUNN & CRUTCHER LLP
                                 1050 Connecticut Avenue, N.W.
                                 Washington, DC 20036-5306
                                 Telephone:    202.955.8500
                                 Facsimile:    202.467.0539
                                 jlipton@gibsondunn.com

                                 Scott K. Hvidt (*Pro Hac Vice*)
                                 GIBSON, DUNN & CRUTCHER LLP
                                 2001 Ross Avenue, Suite 2100
                                 Dallas, Texas  75201
                                 Telephone:  (214) 698-3100
                                 Facsimile:  (214) 698-3400
                                 shvidt@gibsondunn.com

                                 -and-

                                 Lawrence D. Silverman, Esq.
                                 Florida Bar Number:  7160
                                 Email:  lawrence.silverman@akerman.com
                                 Alexandra M. Mora, Esq.
                                 Florida Bar Number:  052368
                                 Email:  alexandra.mora@akerman.com
                                 AKERMAN LLP
                                 Three Brickell City Centre
                                 98 Southeast Seventh Street
                                 Suite 1100
                                 Miami, FL 33131
                                 Phone:  (305) 374-5600
                                 Fax:  (305) 374-5095

                                 ATTORNEYS FOR DEFENDANTS

CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of May, 2020, a true and correct copy of the foregoing was served via e-mail upon all counsel of record.

/s/ Joshua Lipton
Joshua Lipton