UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO. 19-CV-60341-CIV-COOKE/SNOW

OJ COMMERCE LLC; and
NAOMI HOME, INC.,

       Plaintiffs,

v.

KIDKRAFT, INC.; and
MIDOCEAN PARTNERS IV, L.P.,

       Defendants.

_____/

## DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

TABLE OF CONTENTS

INTRODUCTION .................................................................................................................. 1

ARGUMENT ........................................................................................................................ 1

    I.    There Is No Basis For Plaintiffs to Invoke Rule 56(d). ................................... 1

    II.    There is No Evidence Defendants Foreclosed NH's Access to the Market. ........................................................................................................... 2

    III.    KidKraft's Termination of OJC Is Not an Antitrust Violation as a Matter of Law. .................................................................................................. 6

    IV.    As a Matter of Law, KidKraft Lacks Monopoly Power. ................................ 9

    V.    KidKraft and MidOcean Are Not Separate Entities Capable of Conspiring. ........................................................................................................ 9

CONCLUSION ..................................................................................................................... 10

INTRODUCTION

Plaintiffs do not point to any *actual evidence* to raise a genuine dispute of material fact. Instead, they try to conjure up disputed issues by pointing to contentions supported only by speculation, or factual issues that are legally insufficient to sustain their claims.

For example, Plaintiffs argue there should be a trial over KidKraft's "motive" for terminating OJC as a retailer. Under a century of unbroken law, however, KidKraft's termination of one retailer among hundreds is insufficient as a matter of law to support an antitrust claim—even if KidKraft had the motive (it did not) Plaintiffs now ascribe to it.

Plaintiffs also attempt to avert summary judgment based on their claim that KidKraft purportedly foreclosed NH's access to retail channels. But in support of that claim, Plaintiffs offer only speculation—there is no *actual evidence* KidKraft ever said anything about NH to Costco or anyone other than Plaintiffs. Under strikingly similar facts, Judge Cohn last week entered summary judgment where a plaintiff claimed the defendant had interfered with its sales efforts to Costco. *See W.P. Prods. v. Tramontina USA, Inc.*, No. 18-63162-CIV, Dkt. No. 104 (S.D. Fla. June 12, 2020) (Ex. 60). Just as here, the plaintiff offered no evidence of any statement by the defendant—just a self-serving declaration that boiled down to speculation. *Id.* at 5-6. This Court should likewise enter summary judgment in Defendants' favor.

In addition, among other legal errors Plaintiffs urge, they ask the Court to deny summary judgment on their conspiracy claim by applying the test that the Supreme Court expressly rejected in the landmark *Copperweld* decision. Defendants respectfully request that the Court decline Plaintiffs' invitation to commit clear legal error, and instead enter summary judgment on these baseless claims.

ARGUMENT

I.  There Is No Basis For Plaintiffs to Invoke Rule 56(d).

Plaintiffs invoke Rule 56(d) in bad faith and as an effort to unilaterally re-write this Court's scheduling order. On May 4, 2020, the Court denied Plaintiffs' request to extend the summary judgment deadline, specifically ordering that all deadlines in the case remain in place, other than a 60-day discovery extension. Dkt. No. 125. Accordingly, Defendants filed their summary judgment motion on the deadline reaffirmed by the Court. Undeterred by the

Court's instruction that it "will not grant any further extensions in this matter absent extenuating circumstances," *id.*, Plaintiffs have unilaterally declared a year of discovery is not enough, and this Court's summary judgment deadline is too soon.

Plaintiffs offer no substance to support their invocation of Rule 56(d). For example, in their Opposition Statement of Facts, Plaintiffs argue they "haven't had the chance to depose" the two Costco witnesses who submitted declarations that foreclose Plaintiffs' claims. *See* Reply SOF ¶¶ 62-64, 68-69, 71, 73. The Costco employee declarations, however, were served on Plaintiffs in <u>October 2019</u>. Not surprisingly, Plaintiffs offer no basis to support the preposterous claim that they "haven't had the chance" to depose these two witnesses <u>in the last eight months</u>.[1] Likewise, Plaintiffs' arguments about Defendants' document productions are without merit. Plaintiffs argue that Defendants produced 1,277 documents ten days <u>before</u> the summary judgment deadline, and 24 days before their Opposition was due. There is no "sandbagging," and Plaintiffs offer no credible basis why they cannot oppose Defendants' summary judgment motion 24 days after receiving 1,277 documents.

Plaintiffs simply want discovery to continue forever. But they do not make any credible showing that they have lacked sufficient time for discovery or that more discovery will uncover evidence that will somehow raise a genuine issue of fact. Indeed, Plaintiffs' repeated references to Rule 56(d) in the SOF are to witnesses they have known about for months but have elected not to depose. The Court should reject Plaintiffs' Rule 56(d) argument and enter summary judgment. *See, e.g.*, *Transcon. Gas Pipe Line Co., LLC v. 6.04 Acres, More or Less...*, 910 F.3d 1130, 1157 (11th Cir. 2018) (affirming summary judgment where nonmoving party failed to demonstrate additional discovery would have unearthed genuine issues of fact); *FEC v. Reform Party of the U.S.*, 479 F.3d 1302, 1309 (11th Cir. 2007) (same).

II.     <u>There is No Evidence Defendants Foreclosed NH's Access to the Market.</u>

Plaintiffs' claims relating to "foreclosure of distribution channels" for NH fail because, contrary to Plaintiffs' assertions, there is no evidence KidKraft took any action to foreclose

---

[1] Plaintiffs are equally without basis in claiming that their choice to take no depositions of Defendants' witnesses justifies Rule 56(d) relief. Plaintiffs have taken dates off the calendar that Defendants have offered during the times Plaintiffs requested, apparently electing to take no depositions prior to summary judgment briefing as part of their gamesmanship.

2

NH's access to the marketplace. Plaintiffs argue "[w]hether [KidKraft] did is a question of fact for the jury," MSJ Opp. at 15, but Plaintiffs misperceive the summary judgment standard.

To state an antitrust claim—even assuming Plaintiffs could prove KidKraft is a monopolist—Plaintiffs must show that KidKraft engaged in anticompetitive conduct. *See, e.g.*, *Trinko*, 540 U.S. at 407 ("the possession of monopoly power will not be found unlawful unless it is accompanied by an element of anticompetitive *conduct*"). To survive summary judgment, Plaintiffs "must present affirmative evidence" that KidKraft actually did the things they claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). Moreover, "speculation is not evidence." *Martin v. Fin. Asset Mgmt. Sys., Inc.*, 959 F.3d 1048, 1055 (11th Cir. 2020).

The centerpiece of Plaintiffs' "foreclosure" claim is their accusation that KidKraft threatened Costco to prevent it from purchasing toy kitchens from NH. And yet there is not a shred of evidence that KidKraft ever said *anything* to Costco about NH. Plaintiffs point to Mr. Weiss's declaration, and argue that a "jury is entitled to believe him." MSJ Opp. at 15-16. But even taking every assertion in that declaration as true, there still is no evidence that KidKraft made any threat to Costco, or even that it said anything at all about NH to Costco.

Mr. Weiss declares that an unknown person at Costco[2] told him that "███████████████████████████████████████████████████████████." *Id.* But even taking this statement as true (despite the fact both Costco's toy buyer (Triplett) and the person Plaintiffs initially identified (Lord) have denied there is any basis for this statement, Reply SOF ¶¶ 67–69, 73–74), this testimony does not say KidKraft did anything to prompt such a belief. It is not evidence that KidKraft ever said a word to Costco about NH. And because Mr. Weiss does not even know who he spoke to, it does not even establish that anyone in a decision-making role at Costco believed this.

Moreover, Plaintiffs' speculation based on the unverified ███████ of an unknown person is destroyed by the *undisputed* fact that Costco declined to purchase KidKraft's kitchen in that same sales cycle. Reply SOF ¶¶ 52–53. It is ludicrous to suggest KidKraft could use a threat to withhold its toy kitchens to coerce Costco into not doing business with NH, <u>when Costco had already chosen a competitor's kitchen over KidKraft's</u>. MSJ at 4, 10. And it

---

[2] As Plaintiffs concede, Mr. Weiss's original *sworn* representations identifying the individual at Costco (Shannon Lord) who purportedly said this have since been demonstrated to be unequivocally false. MSJ Opp. at 16 n.10; *see also* MSJ at 7-10.

reveals as wild speculation the claim that anyone at Costco would have been afraid to purchase NH's toy kitchens for fear of "jeopardizing Costco's relationship with KidKraft." Costco did not even buy KidKraft's kitchens that year.

Just last week, Judge Cohn granted summary judgment in almost identical circumstances. *See W.P. Prods.*, Ex. 60 at 5. As here, the plaintiff relied on a "self-serving declaration from its President" that "speculates that because Costco decided not to purchase" its product, the defendant must have said something to Costco. *Id.* But, just as here, the plaintiff "has not identified a single statement by [the defendant] to Costco that mentions [the plaintiff], let alone any statements" that could be perceived as unlawful. *Id.* Likewise, as here, the plaintiff "has not identified a single witness from Costco who heard anyone from [the defendant] mention [the plaintiff]." *Id.* at 6. And the plaintiff "has not uncovered a single written communication between [the defendant] and Costco that mentions [the plaintiff]." *Id.* The court concluded that the allegation about purported interference with sales to Costco "is based on nothing more than speculation," and thus granted summary judgment. *Id.*

So too here, Plaintiffs cannot identify anyone at Costco who heard anyone from KidKraft ever mention NH. Costco's witnesses have testified that there was no such statement. Reply SOF ¶¶ 67–74. And there is not a single statement from KidKraft to Costco that even mentions NH. As in Judge Cohn's case, there is nothing here but Plaintiffs' speculation based on a self-serving declaration that says nothing about any communication from KidKraft to Costco about NH.[3] Nor do Plaintiffs salvage their claims by pointing to Mr. Drobnis's declaration, which contains no evidence that KidKraft said anything to any retailer.[4]

Plaintiffs are equally misguided in arguing that KidKraft engaged in some sort of anticompetitive conduct that prevented NH from developing new toy kitchens. MSJ Opp. at 20. Again, the Court can take Plaintiffs' CEO's self-serving statements at face value

---

[3] Plaintiffs also argue that KidKraft pulled Target's inventory at one point because Target violated its pricing policy, but that has nothing to do with NH and is not even allegedly connected to foreclosure of NH's products. Reply SOF ¶ 106.

[4] Mr. Drobnis only said he found it "highly unusual" no retailer responded positively to his overtures, and that he had the "impression" they did not "want to upset the applecart" by carrying a non-KidKraft product. MSJ Opp. at 16-17. That is just more speculation, not evidence of anything KidKraft did. Indeed, it is undisputed Plaintiffs have *never* sold *any* NH product to any retailer other than OJC, underscoring the implausibility of their speculation that KidKraft must have been the cause of Mr. Drobnis's failed efforts. Reply SOF ¶ 12.

and there still is no evidence that KidKraft said or did anything unlawful. Mr. Weiss testified that on a phone call with a KidKraft salesperson in 2015, Mr. Weiss *proposed to KidKraft* that NH would refrain from making other products, but, as he testified, KidKraft "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"[5] As a proposed agreement not to compete, Mr. Weiss's proposal may well itself have been a *per se* antitrust violation.[6] It would thus be topsy-turvy to conclude that KidKraft had somehow violated the antitrust laws by *not agreeing* to such an offer.[7] In any event, Plaintiffs' own testimony is that KidKraft took no action in response to this offer. To whatever extent Plaintiffs refrained from producing any products in reliance on their own alleged unilateral offer to which KidKraft did not respond (and there is no evidence that Plaintiffs were ever developing any products in this timeframe or scaled back any plans), that is not evidence of any action by KidKraft that foreclosed NH from the marketplace in any way.

Plaintiffs' claims of market foreclosure also fail because there is no evidence of any substantial foreclosure from the market—even if one were to assume that KidKraft threatened Costco and made some sort of threat to OJC. MSJ at 11. It is undisputed that NH's sales of toy kitchens through OJC skyrocketed after KidKraft terminated OJC. Reply SOF ¶ 95. And there is no evidence that KidKraft threatened any of the hundreds of other retailers throughout the marketplace to which NH could have sold its toy kitchens. *Id.* ¶¶ 75–77.

Remarkably, Plaintiffs now argue that the Eleventh Circuit applied the wrong legal standard in *McWane*[8] by requiring "substantial foreclosure." MSJ Opp. at 18 & n.12. That is both perplexing and wrong. To survive the motion to dismiss, Plaintiffs argued that they would be able to show the facts of this case were just like *McWane*, and the Court denied the motion to dismiss on that basis. *See* MSJ at 7-8. Now, after Defendants have shown that

---

[5] Reply SOF ¶ 109 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮").

[6] *See, e.g., U.S. v. Cadillac Overall Supply Co.*, 568 F.2d 1078, 1087-90 (5th Cir. 1978) (agreement among competitors to not compete for each other's accounts is *per se* unlawful).

[7] *See, e.g., Schor v. Abbot Labs.*, 457 F.3d 608, 610 (7th Cir. 2006) ("Antitrust law does not require monopolists to cooperate with rivals by selling them products that would help the rivals to compete. . . . Cooperation is a *problem* in antitrust, not one of its obligations.").

[8] *McWane, Inc. v. F.T.C.*, 783 F.3d 814 (11th Cir. 2015).

Plaintiffs cannot possibly show "substantial foreclosure" as required in *McWane*, MSJ at 11, Plaintiffs argue the Eleventh Circuit applied the wrong legal standard. MSJ Opp. at 18 n.12.[9] Plaintiffs go so far as to argue that if KidKraft "threatened to refuse to deal with even one customer" that could be a basis for liability "regardless of the percentage of the market foreclosed." MSJ Opp. at 18. But Plaintiffs cite no authority for that radical proposition. Indeed, the Supreme Court has held the opposite. *Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 328-29 (1961) ("competition foreclosed . . . must be found to constitute a substantial share of the relevant market").[10] Under all claims asserted here, it is beyond dispute Plaintiffs must show "harm[] [to] competition, not just a competitor." *McWane*, 783 F.3d at 833 (citation omitted); see also MSJ at 6. This they cannot do.

III. KidKraft's Termination of OJC Is Not an Antitrust Violation as a Matter of Law.

Plaintiffs are left with nothing but their claim that KidKraft terminated one retailer. As stated in the Motion, however, Defendants are aware of no case in the 130-year history of the Sherman Act that has found an antitrust violation based on one supplier's termination of one retailer among hundreds. MSJ at 2, 12. Plaintiffs fail to identify any such case. Instead, they ask this Court to ignore an unbroken line of cases spanning over a century that expressly hold one supplier's termination of one retailer is not an antitrust violation. *See* MSJ at 13-14.

These unanimous cases recognize two bases for their holdings. First, courts protect a supplier's "right to control the marketing of its product," and thus recognize that "[e]ven a manufacturer with monopoly power is not obliged to retain an ineffective dealer or one which has become its competitor." *Healthco Int'l, Inc. v. A-dec, Inc.*, 1989 WL 104064, at *8 (D. Mass. Apr. 17, 1989); *see also* MSJ at 13 & n.2; *Verizon Comms. v. Law Offices of Curtis V.*

---

[9] Plaintiffs are also wrong to suggest that under Eleventh Circuit precedent "substantial foreclosure is not an essential element." MSJ Opp. at 18. "'Substantial foreclosure' continues to be a requirement for exclusive dealing to run afoul of the antitrust statutes." *McWane*, 837 F.3d at 837. Plaintiffs' citation to a secondary source predating that opinion does not abrogate the Eleventh Circuit's holding. *See* MSJ Opp. at 18.

[10] Plaintiffs compound their errors by arguing, contrary to law, that they can establish their Section 2 claims without showing any harm to competition. MSJ Opp. at 19. In support, Plaintiffs cite a group boycott case, which was found to be a *per se* violation of Section 1, and as such required no showing of harm to competition under the *per se* rule. *Id.* (citing *Klor's, Inc. v. Broadway-Hale Stores, Inc.*, 359 U.S. 207, 213 (1959)). But Plaintiffs do not allege this is a group boycott case.

*Trinko, LLP*, 540 U.S. 398, 408 (2004) ("the Sherman Act 'does not restrict the long recognized right of a ... manufacturer ... freely to exercise his own independent discretion as to parties with whom he will deal'") (quoting *U.S. v. Colgate & Co.*, 250 U.S. 300, 307 (1919)).

Second, courts recognize that the termination of a single retailer—particularly when it is one retailer among hundreds, as is undisputed here (Reply SOF ¶¶ 15, 32, 88)—will not have market-wide anticompetitive effects, as is required to state an antitrust claim. *See* MSJ at 15-16. This is true even when the terminated retailer claims to be a discounter, as OJC argues here (but without supporting evidence).[11] *See, e.g.*, *PSKS, Inc. v. Leegin Creative Leather Prod., Inc.*, 615 F.3d 412, 419 (5th Cir. 2010) ("It has been the rule since [*Colgate* (1919)]" that termination of one discounting reseller has no "anticompetitive effect" since "a manufacturer . . . can set resale prices and terminate non-conforming dealers").[12] Tellingly, Plaintiffs offer no evidence to suggest that KidKraft's termination of this one retailer—which sold less than ▮ of KidKraft's toy kitchens (Reply SOF ¶ 16) and only ▮ (!) KidKraft kitchens through a six-month stretch in 2016 (*Id.* ¶ 20)—plausibly led to any harm to competition in the nationwide market they allege. Indeed, it is undisputed that KidKraft reduced its number of retailers from ▮ in 2015 to ▮ in 2018, while simultaneously increasing its overall sales of toy kitchens. C. Vellturo Decl. Ex. 7; Reply SOF ¶ 32. And it is likewise undisputed that OJC's sales of NH kitchens skyrocketed after the termination. Reply SOF ¶ 95. In these circumstances, there is no viable claim of anticompetitive effects from KidKraft's termination of one retailer. *See, e.g.*, *Duty Free Americas, Inc. v. Estee Lauder Cos., Inc.*, 946 F. Supp. 2d 1321, 1336 (S.D. Fla. 2013) (even where the defendant is allegedly an attempted monopolist, refusing to deal with a discounter "is not an antitrust violation"); *Procaps S.A. v. Pa-*

---

[11] OJC asserts it "generally" tried to "meet or beat" competitors' prices, but presented no evidence it was the lowest-priced retailer of KidKraft products. Reply SOF ¶ 117. In fact, pricing data shows OJC was *almost never* the lowest-priced retailer of KidKraft kitchens, even when compared to just 5 of its hundreds of competitors. Vellturo Rebuttal Rep. ¶ 111, Ex. 4. In any event, summary judgment is required even if OJC could show that it was a discounter of KidKraft products.

[12] *See also, e.g.*, *Monsanto Co. v. Spray-Rite Service Corp.*, 465 U.S. 752, 761 (1984) ("Under *Colgate*, the manufacturer can announce its resale prices in advance and refuse to deal with those who fail to comply."); *Leegin Creative Leather Prod., Inc. v. PSKS, Inc.*, 551 U.S. 877, 902 (2007) (same).

*theon, Inc.*, 845 F.3d 1072, 1084 (11th Cir. 2016) (antitrust claim requires showing of anti-competitive effects like "reduction of output"). There is no evidence that KidKraft's termination of this one retailer "had a market-wide effect on anything." *Procaps*, 845 F.3d at 1087.

Plaintiffs argue, nonetheless, that there should be a trial over KidKraft's "motive" for terminating OJC. MSJ Opp. at 13-15. But that is wrong as a matter of law. While KidKraft's legitimate business motivations provide an independent reason for granting summary judgment, MSJ at 16-17, summary judgment is required *even if* KidKraft terminated OJC "because OJC was competing with [KidKraft]," as Plaintiffs argue. The cases are clear that a supplier—even an alleged monopolist—may terminate a retailer that has become a competitor. *See* MSJ at 13–14. Tellingly, even while arguing there should be a trial over KidKraft's motive, Plaintiffs do not cite any case holding to the contrary.

Plaintiffs likewise fail in their reliance on *Aspen Skiing*,[13] which does not stand for the proposition that a supplier's termination of a single retailer violates the antitrust laws. Indeed, Plaintiffs cite no case from any court that has ever applied *Aspen Skiing* as they argue. As the Supreme Court has twice explained, *Aspen Skiing* embodies a "limited exception" to the general rule that firms may choose the parties with whom they deal, and it is "at or near the outer boundary of § 2 liability." *Trinko*, 540 U.S. at 408-09; *Pac. Bell Tel. Co. v. Linkline Comms.*, 555 U.S. 438, 448 (2009) (same). And the facts of this case are simply nowhere near *Aspen Skiing*. Both *Aspen Skiing* and the *Viamedia* decision Plaintiffs cite involved markets with two competitors, permanent high barriers to entry, and a long-term prior course of dealing between competitors such that *cooperation between competitors was necessary for competition to exist*. *See Aspen Skiing*, 472 U.S. at 605-08; *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 453-464 (7th Cir. 2020).

Here, Plaintiffs admit OJC does not need to sell KidKraft's kitchens in order for Plaintiffs to compete with KidKraft. Reply SOF ¶ 94. Indeed, Plaintiffs admit NH's toy kitchen sales soared after OJC stopped selling KidKraft kitchens. *Id.* ¶¶ 95–96. Thus, unlike *Aspen Skiing* (and *Viamedia*), in which the smaller competitor could only compete via cooperation and competition was destroyed when the larger competitor refused to cooperate, there is no allegation here that cooperation between competitors is necessary for competition to exist.

---

[13] *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585 (1985).

8

This undisputed fact makes *Aspen Skiing* inapplicable.[14] Plaintiffs mistakenly argue that "[t]here is absolutely no merit" to limiting *Aspen Skiing* to its "exceptional fact pattern," but the Supreme Court and lower courts have repeatedly done exactly that.[15]

IV. <u>As a Matter of Law, KidKraft Lacks Monopoly Power.</u>

Plaintiffs' claims fail for a third independent reason: KidKraft lacks monopoly power in any market. This is clearly shown by the undisputed facts that KidKraft lost placement to competitors on the very accounts at which Plaintiffs claim they were foreclosed. Reply SOF ¶¶ 53, 56–57, 80–89. Plaintiffs do not dispute KidKraft lost those accounts, and thereby concede KidKraft lacks monopoly power to exclude competitors. MSJ at 18. Because Kidkraft could not restrict output or exclude competition, it lacks monopoly power as a matter of law. *See Ohio v. Am. Express Co.*, 138 S.Ct. 2274, 2288 (2018) ("Market power is the ability to raise price profitably *by restricting output*."). In response, Plaintiffs fall back on their expert's calculation of market shares. MSJ Opp. at 8–10. But, as Defendants explained in their Motion, it is well-established that evidence of market share alone is insufficient to establish monopoly power for summary judgment purposes. MSJ at 17-18 & n.6.

V. <u>KidKraft and MidOcean Are Not Separate Entities Capable of Conspiring.</u>

Plaintiffs do not dispute facts that prove as a matter of law KidKraft and MidOcean share a "unity of purpose" in KidKraft's performance. *See* Reply SOF ¶¶ 2–6. Defendants' Motion cited several analogous cases holding that where, as here, a parent with majority ownership controls the strategic direction of a subsidiary and has no interest in the market other than through the subsidiary, any agreement it has with that subsidiary is not depriving the market of competition that would otherwise exist, and therefore cannot violate Section 1. MSJ at 18-20. As the Supreme Court explained in *American Needle, Inc. v. NFL*, 560 U.S.

---

[14] Further, this case is also distinguishable from *Aspen Skiing* because (1) there are far more competitors than two; (2) there are no significant barriers to entry, (3) there is no allegation KidKraft was not willing to sell to OJC at retail prices; (4) there is no harm to competition; (5) there is no prior course of dealing between KidKraft and the competitor here, NH; and (6) the relationship between KidKraft and OJC was no longer mutually advantageous to KidKraft. *See* SOF ¶¶ 9–10, 13, 15, 29–30, 32, 80–96.

[15] *See, e.g., Trinko,* 540 U.S. at 408–09; *In re Adderall XR Antitrust Litig.*, 754 F.3d 128, 136 (2d Cir. 2014) (termination of resellers did not detail "facts that would place this case within *Aspen Skiing's narrow* exception"); *Tyntec Inc. v. Syniverse Tech., LLC*, 2020 WL 2786873, *2 (M.D. Fla. May 29, 2020) (*Trinko* "circumscribes *Aspen* within its idiosyncratic facts and . . . constricts 'refusal to deal' liability").

183, 195 (2010), to state a Section 1 claim a plaintiff must show an agreement among "separate economic actors pursuing separate economic interests" that "deprives the marketplace of independent centers of decisionmaking." The facts showing a unity of purpose among KidKraft and MidOcean are undisputed, and Plaintiffs cite no authority rebutting the cases that require summary judgment here.[16]

Instead, and remarkably, Plaintiffs ask the Court to apply the old standard the Supreme Court explicitly rejected in *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984). In *Copperweld*, 467 U.S. at 759 n.2, the lower court allowed a jury to consider whether a parent and its wholly owned subsidiary were separate entities based on factors such as having separate officers, corporate offices, and autonomy over day-to-day operations. The Supreme Court rejected that standard and reversed, holding that the proper test is whether there is a "unity of interest," such that an agreement between parent and subsidiary is not a "joining of economic resources that had previously served different interests." *Id.* at 771. And, as shown in the Motion, courts have applied *Copperweld*'s focus on *economic interest*—not corporate form, location of headquarters, day-to-day control, or other rejected factors—to a broad range of circumstances beyond the wholly-owned subsidiaries at issue in *Copperweld*, including majority- and minority-owned subsidiaries, separately owned franchisees, and even (in *American Needle*) different NFL teams. MSJ at 19. Plaintiffs ask this Court to ignore *Copperweld's* clear holding, and instead look at the factors the Supreme Court rejected in a footnote. *Id.* at 772 n.18; *Wuesthoff Health Sys., Inc. v. Health First, Inc.*, 2007 WL 9719123, at *4 (M.D. Fla. 2007) (*Copperweld* "disapproved the Seventh Circuit's 'separateness' analysis" quoted in n.18).[17] Obviously, where a clear legal error is Plaintiffs' only argument, summary judgment is appropriate.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion for summary judgment and award it judgment on all of Plaintiffs' claims as a matter of law.

---

[16] Regardless, Plaintiffs' § 1 claims fail as matter of law because there is no anticompetitive harm, no anticompetitive conduct, and no monopoly power.

[17] Plaintiffs also misrepresent this Court's holding in in *McArthur Dairy, LLC v. McCowtree Bros. Dairy, Inc.*, 2011 WL 2118701 (S.D. Fla. 2011) (Cooke, J.), as having applied the rejected factors from fn.18 of *Copperweld*. Those factors were not relevant to the Court's holding, however, which was simply that a parent and wholly owned subsidiary cannot be held to conspire under *Copperweld*. *Id.* at *3.

DATED: June 18, 2020                    Respectfully submitted,

/s/ *Joshua Lipton*
Joshua Lipton (*Pro Hac Vice*)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone:    202.955.8500
Facsimile:    202.467.0539
jlipton@gibsondunn.com

Scott K. Hvidt (*Pro Hac Vice*)
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue
Dallas, Texas 75201-6911
Telephone: (214) 698-3317
Facsimile: (214) 571-2981
shvidt@gibsondunn.com

-and-

Lawrence D. Silverman, Esq.
Florida Bar Number: 7160
Email: lawrence.silverman@akerman.com
Alexandra M. Mora, Esq.
Florida Bar Number: 052368
Email: alexandra.mora@akerman.com
AKERMAN LLP
Three Brickell City Centre
98 Southeast Seventh Street
Suite 1100
Miami, FL 33131
Phone: (305) 374-5600
Fax: (305) 374-5095

ATTORNEYS FOR DEFENDANTS

<u>Certificate of Service</u>

I hereby certify that on the 18th day of June, 2020, a true and correct copy of the foregoing brief was served via the Court's CM/ECF System upon all counsel of record.

<u>/s/ Alexandra M. Mora</u>
Alexandra M. Mora
