UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO. 19-CV-60341-CIV-COOKE/SNOW

OJ COMMERCE LLC; and
NAOMI HOME, INC.,

                 Plaintiffs,

v.

KIDKRAFT, INC.; and
MIDOCEAN PARTNERS IV, L.P.,

                 Defendants.

_____/

<u>DEFENDANTS' STATEMENT OF MATERIAL FACTS IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT</u>

Defendants KidKraft, Inc. ("KidKraft") and MidOcean Partners IV, L.P. ("MidOcean") (collectively "Defendants") pursuant to Local Rule 56.1, hereby file their Reply in Support of Their Statement of Material Facts in support of their Motion for Summary Judgment as follows.

First, a number of Plaintiffs' Responses to Defendants' Statements of Fact, as well as many of Plaintiffs' Responsive Statements, present recurring violations of L.R. 56.1 and other issues. To avoid repetition and present the issues in a consolidated way, Defendants set forth the following general (or recurring) objections, and then specifically reference them where applicable in particular statements of fact:

General Objection #1: In their responses to Defendants' Statement of Material Facts, OJ Commerce LLC ("OJC") and Naomi Home, Inc. ("NH") (collectively, "Plaintiffs") repeatedly violate this Court's Rule 56.1(a)(2) and Rule 56.1(b)(2)(C) by nominally disputing a fact but failing to cite any evidence to support the purported factual dispute. These responses (which are specifically noted below) are substantively and procedurally improper, and all such facts should be deemed undisputed.

General Objection #2: In both their responses to Defendants' Statement of Material Facts and in their "Additional Facts" section, Plaintiffs violate Federal Rule of Evidence 408 by relying on communications that occurred between the parties in an effort to resolve litigation between the parties underlying this lawsuit in order to support their claims of liability. This is wholly improper and a clear violation of Federal Rule of Evidence 408. *See Dolphin, LLC v. WCI Communities, Inc.*, 2008 WL 6894512, at *6 (S.D. Fla. Feb. 20, 2008) (striking settlement negotiation letters where they were offered to try to prove the invalidity of a claim as a violation of Rule 408), *aff'd*, 715 F.3d 1243 (11th Cir. 2013). Defendants request that the Court strike all of Plaintiffs' references to Rule 408 communications, specifically in Response Paragraphs 29, 30 and 33, and Plaintiffs' Opp. MSJ Ex. 1 (J. Weiss Decl. ¶ 15), or ignore those communications. If the Court considers such communications, Defendants request the opportunity for leave to later introduce Rule 408 communications between the parties to clarify Plaintiffs' mischaracterization of Defendants' negotiations with Plaintiffs to resolve litigation between the parties.

General Objection #3: In their "Additional Facts" section, Plaintiffs violate Local Rule 56.1(b)(1)(B) by not limiting their separately numbered paragraphs to "a single material fact."

*See, e.g.*, Paragraphs 108–10.

General Objection #4:  Plaintiffs improperly argue that depositions or discovery they have chosen not to take is a basis to "dispute" an undisputed fact, particularly without stating how that deposition or discovery would create a genuine issue of fact.  Discovery has been open for over a year, and the Rules do not permit Plaintiffs to decline to depose witnesses who have been known to them for a year and/or who have been made available to them, and then claim that an undisputed fact is somehow "disputed" because they chose not to take the deposition.  Therefore, the facts on which Plaintiffs make this argument are undisputed..  With regard to specific deponents whom Plaintiffs claim they "haven't had the chance" to depose:

- Daniel Penn was identified in Defendants' Initial Disclosures on October 21, 2019.  And he was identified on both Plaintiffs' and Defendants' Witness Lists on May 1, 2020.  Defendants offered Daniel Penn's deposition on a date requested by Plaintiffs, which fell before Plaintiffs' deadline to respond to Defendants' Motion for Summary Judgment, but Plaintiffs refused to take the deposition on that date.  The only reason the deposition has not yet taken place is that Plaintiffs postponed the deposition until after their summary judgment Opposition was due.

- Shannon Lord:  Plaintiffs introduced Shannon Lord into this case a year ago, on June 25, 2019, when they claimed in their sworn Interrogatory Responses that she was the individual at Costco to whom Jacob Weiss spoke.  Ex. 11 (Pls' 10/3/19 Updated Resp. to Defs.' ROG No. 1) ("Costco representative Shannon Lord told Jacob Weiss that Costco feared KidKraft's retaliation if Costco agreed to carry Naomi Home's wood kitchens.").  Four months later, in October 2019, Defendants served on Plaintiffs Shannon Lord's sworn declaration.  Plaintiffs' failure to take the deposition of Shannon Lord over the eight months since receiving her declaration cannot be a basis to dispute facts.

- Trisha Triplett:  Plaintiffs' assertion that they "haven't had the chance to depose Triplett" is both blatantly false and insufficient to create a disputed issue of fact.  In October 2019, Defendants served on Plaintiffs Trisha Triplett's sworn declaration.  Plaintiffs' failure to take the deposition of Trisha Triplett over the 8 months since receiving her declaration cannot be a basis to dispute undisputed facts.

- Chris  Light was identified in KidKraft's Rule 26 Initial Disclosures on May 9, 2019, and he was listed on *both parties'* witness lists on May 1, 2020.  Furthermore, Defendants have

offered dates for Mr. Light's deposition, which Plaintiffs have refused to take.  The only reason the deposition has not yet taken place is that Plaintiffs postponed the deposition until after their summary judgment Opposition was due.

<u>General Objection #5</u>:  Plaintiffs violate L.R. 56.1 by making several argumentative, subjective and legal statements that are not proper in Statement of Facts.

<u>General Objection #6</u>:  Plaintiffs violate L.R. 56.1(b)(2) by quibbling with commonly used terms as undefined in an effort to avoid responding.  Parties must respond material facts as stated.

<u>General Objection #7</u>:  Plaintiffs violate L.R. 56.1(b)(2) by adding additional non-material facts outside the facts stated in an individual paragraph. Plaintiffs characterize paragraphs on their terms and provide different details than the undisputed facts Defendants provide, which is improper.

1.   <u>Defendants' Reply Statement of Material Facts (Defs.' Reply)</u>:  Undisputed.

2.   <u>Defs.' Reply</u>:  Now undisputed.  General Objections #1 and #4.

3.   <u>Defs.' Reply</u>:  Now undisputed.  *See* Defs.' Reply to Paragraph 2.

4.   <u>Defs.' Reply</u>:  Now undisputed.  *See* Defs.' Reply to Paragraph 2.

5.   <u>Defs.' Reply</u>:  Now undisputed.  *See* Defs.' Reply to Paragraph 2.  In addition, the agreement referenced in D. Penn. Decl. ¶ 7 was produced to Plaintiffs on January 8, 2020 and is attached as Exhibit 2 to Defendants' Motion for Summary Judgment.

6.   <u>Defs.' Reply</u>:  Now undisputed.  *See* Defs.' Reply to Paragraph 2.

7.   <u>Defs.' Reply</u>:  Undisputed.

8.   <u>Defs.' Reply</u>:  Undisputed.

9.   <u>Defs.' Reply</u>:  Undisputed.

10.   <u>Defs.' Reply</u>:  Now undisputed.  General Objection #6.  Plaintiffs do not dispute the substance of Paragraph 10.

11.   <u>Defs.' Reply</u>:  Undisputed.

12.   <u>Defs.' Reply</u>:  Undisputed.

13.   <u>Defs.' Reply</u>:  Undisputed.

14.   <u>Defs.' Reply</u>:  Undisputed.  General Objection #7.  Paragraph 14, as stated, is undisputed.  The additional statistics Plaintiffs provide do not create a dispute of any material fact, and for purposes of this Motion Defendants do not dispute them.

15.   <u>Defs.' Reply</u>:  Undisputed.  This statement of fact is consistent with Defendants' statement in Paragraph 32.  Paragraph 32 and the expert report it cites show that KidKraft sold to 313 retailers in 2015, 209 retailers in 2016, and 124 resellers in 2017.  It is undisputed KidKraft terminated OJC in 2016, *see* Paragraph 13.  Therefore, undisputed.

16.   <u>Defs.' Reply</u>:  Undisputed.  Paragraph 16, as stated, is undisputed.  General Objection #7.  Moreover, the additional statistics Plaintiffs provide do not create a dispute of any material fact, and for purposes of this Motion Defendants do not dispute the figures as stated in the documents Plaintiffs attach.  For example, Plaintiffs admit that the highest share of KidKraft's domestic sales ever accounted for by OJC was ██%, and that figure occurred in the ████████████████████.  In 2016, when KidKraft terminated OJC, it accounted for less than █% of KidKraft's domestic toy kitchen sales.  *See* C. Vellturo Decl. ¶ 74;

C. Vellturo Ex. 7; Vanderhart Rep. n.125 (relying on C. Vellturo).

17.    <u>Defs.' Reply</u>:  Undisputed.  General Objection #7.  Paragraph 17, as stated, is undisputed.  Plaintiffs mischaracterize Ex. 34, which informed Mr. Weiss that ██% of items were out of stock for a brief period, were being replenished, and would only account for " ██████ " (*see id.*), but the characterization of Ex. 34 is not a material fact at issue.

18.    <u>Defs.' Reply</u>:  Undisputed.  General Objections #6–7.

19.    <u>Defs.' Reply</u>:  Undisputed.  General Objection #7.

20.    <u>Defs.' Reply</u>:  There is no disputed issue of material fact.  While the figures now asserted by Plaintiffs do not match the data they produced to Defendants, the difference in figures is not material.  For purposes of this Motion, Defendants will accept Plaintiffs' figures as asserted in this Paragraph as Undisputed.

21.    <u>Defs.' Reply</u>:  Undisputed

22.    <u>Defs.' Reply</u>:  Undisputed.  Paragraph 22, as stated, is undisputed.  General Objection #7.  Testimony speaks for itself.  *See* Ex. 6 (Weiss 5/21/20 30(b)(6) Dep. at 118:7–121:3).

23.    <u>Defs.' Reply</u>:  Undisputed.  Paragraph 23, as stated, is undisputed.  General Objection #7.  It is undisputed (and admitted by Plaintiffs' Rule 30(b)(6) witness in the cited testimony) that ███████████████████████████████████████ ██.  Plaintiffs quibble only as to whether OJC acted on the incentive, which is beyond the scope of Paragraph 23.

24.    <u>Defs.' Reply</u>:  Undisputed. The time when NH began selling the toy kitchen is undisputed—late 2013.  Plaintiffs assert that "NH began developing the product in 2012," but that is not a material fact for purposes of this Motion.

25.    <u>Defs.' Reply</u>:  Undisputed.

26.    <u>Defs.' Reply</u>:  Undisputed.

27.    <u>Defs.' Reply</u>:  Undisputed.  General Objections #4, #7.  Plaintiffs do not dispute Paragraph 27 as stated.  The additional facts asserted by Plaintiffs are not material to this Motion, do not raise a dispute about the stated fact, and Defendants do not dispute those other facts for purposes of this Motion.

28.    <u>Defs.' Reply</u>:  Undisputed.  General Objections #6–7.  Paragraph 28, as stated, is undisputed.

29.    <u>Defs.' Reply</u>:  General Objections #2, #4, #7.  Paragraph 29 is undisputed in that

Mr. Light's sworn declaration and documents surrounding the termination establish the bases for Mr. Light's decision to terminate OJC as one of KidKraft's resellers.  C. Light Decl. ¶ 6. Furthermore, Plaintiffs' reliance on 2017-2018 negotiations to establish "pretext" violates Fed. R. Evid. 408, as those conversations were part of negotiations to settle litigation underlying this dispute.  Regardless, Paragraph 29 says nothing about what Mr. Weiss claims anyone at KidKraft said to him.

30.    Defs.' Reply:  General Objections #2, #4, #7.  *See* SOF Reply ¶ 29.  Plaintiffs response is wholly improper.  Undisputed as stated.  Plaintiffs' response does not dispute the stated facts under Paragraph 30—which lists the factors considered by Mr. Light.

31.    Defs.' Reply:  Undisputed as stated.  General Objections #4, #7.  Further, Plaintiffs cannot rely on the fact they have not deposed Dr. Vellturo where they had not sought to depose him before their Response was due.

32.    Defs.' Reply:  Undisputed

33.    Defs.' Reply:  *See* SOF Reply ¶ 29.  General Objections #2, #7.  Undisputed as stated. The additional facts stated by Plaintiffs do not raise a genuine dispute as to the stated fact.

34.    Defs.' Reply:  Undisputed.  General Objections #6–7.

35.    Defs.' Reply:  Undisputed.  General Objection #7.  The points that Plaintiffs purportedly "dispute" are not part of this Paragraph.  Defendants have not stated that any of the resellers terminated OJC "because of alleged infringement."  Thus, to the extent there is any dispute over the additional facts they raise, any such dispute is not material to this Motion.

36.    Defs.' Reply:  Undisputed that, in response to interrogatories asking Plaintiffs to identify which retailers KidKraft had supposedly threatened, Plaintiffs only identified themselves and Costco.

37.    Defs.' Reply:  Undisputed as to material facts.  It is undisputed that Plaintiffs decided to try to sell its toy kitchen and several pieces of doll furniture to other retailers after KidKraft terminated OJC (in late November 2016).  *See* Pls. Opp. to Defs.' MSJ Ex. 1 (Weiss Decl. ¶ 17).  It is also undisputed (as shown in the evidence cited in this Paragraph) that Plaintiffs first reached out to other retailers to try to sell these products in early 2017.  Whether the decision by NH was made in late 2016 or early 2017 is not material to this Motion.

38.    Defs.' Reply:  Undisputed as stated.  General Objection #7.

39.   <u>Defs.' Reply</u>:  Undisputed as stated, which is based directly on the testimony of Plaintiffs' Rule 30(b)(6) witness, which speaks for itself.  Ex. 6 (J. Weiss 5/21/20 30(b)(6) Dep. at 171:14-17).  None of the testimony nor the declaration paragraphs Plaintiffs cite contradict the admission of Plaintiffs' Rule 30(b)(6) witness.

40.   <u>Defs.' Reply</u>:  Undisputed as stated, which is based directly on the testimony of Plaintiffs' Rule 30(b)(6) witness, which speaks for itself.  Ex. 6 (J. Weiss 5/21/20 30(b)(6) Dep. at 27:12-14).  The additional fact asserted by Plaintiffs—that they might hire an external person who had this knowledge—does not contradict the stated fact and is not a material fact for purposes of this Motion.

41.   <u>Defs.' Reply</u>:  Undisputed.  The cited testimony is from Mr. Weiss's deposition as Plaintiffs' Rule 30(b)(6) designee.  That testimony speaks for itself.  General Objection #7. The additional fact asserted by Plaintiffs—that they might hire an external person who had this knowledge—does not contradict the stated fact and is not a material fact for purposes of this Motion.

42.   <u>Defs.' Reply</u>:  Undisputed.  Mr. Weiss, who was testifying as the Rule 30(b)(6) designee for NH and OJC, testified that he is not aware of anyone in his company who knew "█████████████████████████."  Ex. 6 (J. Weiss 5/21/20 30(b)(6) Dep. at 172:1–7).  Moreover, it is undisputed that Michael Drobnis, an external person hired by NH, also did not know the toy buyer for Costco, as he had to be told by other Costco representatives who the Costco toy buyer was in order to ask about selling the NH toy kitchen.  *See* Paragraph 45, which Plaintiffs do not dispute.

43.   <u>Defs.' Reply</u>:  Undisputed as stated, and *see* SOF Reply ¶ 39.

44.   <u>Defs.' Reply</u>:  Undisputed.

45.   <u>Defs.' Reply</u>:  Undisputed.

46.   <u>Defs.' Reply</u>:  Undisputed.

47.   <u>Defs.' Reply</u>:  Undisputed.

48.   <u>Defs.' Reply</u>:  Undisputed as stated.  Plaintiffs do not introduce any evidence that purportedly creates a disputed issue of fact.  *See* L.R. 56.1(b)(2)(C).

49.   <u>Defs.' Reply</u>:  Undisputed as stated.  General Objection #7.  Plaintiffs do not introduce any evidence that creates a genuine dispute as to this fact, which Mr. Weiss, their Rule 30(b)(6) witness, admitted under oath.  Specifically, Mr. Weiss testified that Mr. Drobnis did

4

not report anything to him about Costco being threatened by KidKraft.  (Ex. 6 (J. Weiss 5/21/20 30(b)(6) Dep. at 182:15-17) ("███████████████████████████████████ ███████████████████████████").  Mr. Drobnis's declaration says nothing about reporting to Mr. Weiss or anyone that Costco was threatened by KidKraft.  *See* Pls.' Opp. to MSJ Ex. 18 (Drobnis Decl.).  Further, the statement about other efforts to reach out retailers is nonresponsive to Paragraph 49.

50.    <u>Defs.' Reply</u>:  Undisputed. General Objection #7.  Plaintiffs do not offer any evidence that creates a genuine dispute as to this fact.  The evidence cited in Paragraph 50 shows that KidKraft was informed on February 9, 2017 that it had lost the Costco business.  *See* Ex. 55 (T. Triplett (Costco) to F. Raines (KidKraft) on Feb. 9, 2017: "███████████████████ ████████████████████████████████████████████████ ███████████████████████████████████████." (emphasis in original)).  That timing is undisputed.  *See* SOF Reply ¶52.  The evidence cited by Plaintiffs (Exs. 19 & 20) does not create a dispute as to the timing of when Costco made its decision or informed KidKraft that it had lost the business.  Rather, they simply show when KidKraft subsequently learned the identity of the product that had replaced it in the Costco account.  There is thus no genuine dispute as to the fact stated in this Paragraph, which relates to the timing of Costco's decision.

51.    <u>Defs.' Reply</u>:  Undisputed.

52.    <u>Defs.' Reply</u>:  Undisputed.

53.    <u>Defs.' Reply</u>:  Undisputed, *see* Paragraphs 50 and 52 regarding timing of decision. General Objection #1.  The documents are not hearsay as they do not quote any statement of other individuals for the truth of the matter asserted.  The documents and statements are properly in the record.  Moreover, Plaintiffs do not identify any evidence that raises a genuine dispute as to either (i) that Costco chose to carry a toy kitchen manufactured by Teamson, or (ii) the timing of that decision.

54.    <u>Defs.' Reply</u>:  Undisputed.

55.    <u>Defs.' Reply</u>:  Undisputed, because Plaintiffs cite no evidence that raises a genuine dispute as to the stated fact. Plaintiffs do not cite any evidence showing that KidKraft made any statement of any kind to BJ's or Sam's Club.  General Objections #1, #7.

56.    <u>Defs.' Reply</u>:  Undisputed that KidKraft was not selected for Sam's Club's account

and Jupiter's toy kitchen was selected over KidKraft's.

57.    <u>Defs.' Reply</u>:  Undisputed.

58.    <u>Defs.' Reply</u>:  Undisputed, because Plaintiffs cite no evidence that raises a genuine dispute as to the stated fact. Plaintiffs cite no evidence showing that any retailer said anything to Mr. Drobnis about any threats from KidKraft. General Objections #1, #7.

59.    <u>Defs.' Reply</u>:  Undisputed as stated.  Exhibit 22 involves a communication with two individuals who did not work for a retailer, and Mr. Weiss testified he had "███████" if these individuals ever contacted any retailer to try to sell NH products.  Ex. 68 (J. Weiss 5/21/20 30(b)(6) Dep. at 235:11–15).

60.    <u>Defs.' Reply</u>:  Undisputed.  General Objections #1, #7.  Plaintiffs' testimony speaks for itself.  Furthermore, in their June 25, 2019 Interrogatory Response (which Plaintiffs have not amended), OJC and NH provided sworn testimony that Mr. Weiss spoke to "Costco representative Shannon Lord."  Ex. 11 (Pls' 10/3/19 Updated Resp. to Defs.' ROG No. 1). Plaintiffs now try to hide from their own sworn interrogatory response, because it is proven Ms. Lord is an IT analyst for Mexico who cannot possibly have known anything about any purported threat from KidKraft.  But Plaintiffs' attempt to hide from their own sworn responses does not create a genuine dispute of material fact.  Plaintiffs introduce no evidence indicating that Jacob Weiss spoke to anyone other than Shannon Lord.  And there is no evidence that Mr. Weiss actually spoke to Costco's toy buyer.  Moreover, Costco's toy buyer at the time of these events, Ms. Triplett, also testified in a sworn declaration that no such conversation occurred.  That declaration is uncontradicted.

61.    <u>Defs.' Reply</u>: Undisputed.  *See* SOF Reply ¶ 60.  Plaintiffs' testimony speaks for itself.

62.    <u>Defs.' Reply</u>:  Undisputed.  General Objections #1, #4, #7.  Plaintiffs do not introduce any evidence that could create a genuine dispute as to the stated fact, which is reflected in Shannon Lord's sworn declaration that was served on Plaintiffs <u>eight months ago</u>, in October 2019.

63.    <u>Defs.' Reply</u>:  Undisputed.  *See* SOF Reply ¶ 62.

64.    <u>Defs.' Reply</u>:  Undisputed.  *See* SOF Reply ¶ 62.

65.    <u>Defs.' Reply</u>:  Undisputed, and Mr. Weiss's testimony speaks for itself.

66.    <u>Defs.' Reply</u>:  Undisputed.  Plaintiffs' response is not responsive to Paragraph 66, and

the cited testimony speaks for itself.  Moreover, there is no evidence that KidKraft said any-thing to Costco to prompt any fear.  Plaintiffs' speculation is not evidence.  And their specu-lation that Mr. Weiss may have spoken to some unnamed, unidentified person (whether Shannon Lord or someone who might have been the toy buyer) is not evidence of anything. Moreover, the toy buyer for Costco at the time of these events, Trisha Triplett, has testified in a sworn and uncontradicted declaration that she has never made such a statement.  *See* SOF ¶¶ 71–74; T. Triplett Decl. ¶¶ 3–11.

67.    <u>Defs.' Reply</u>:  Undisputed.  *See* SOF Reply ¶ 62.

68.    <u>Defs.' Reply</u>:  Undisputed.  *See* SOF Reply ¶ 62.

69.    <u>Defs.' Reply</u>:  Undisputed.  *See* SOF Reply ¶ 62.

70.    <u>Defs.' Reply</u>:  Undisputed as stated, and Mr. Weiss's testimony speaks for itself.

71.    <u>Defs.' Reply</u>:  Undisputed.  General Objections #1, #4.  Plaintiffs do not introduce any evidence that could create a genuine dispute as to the stated fact, which is reflected in Ms. Triplett's sworn declaration that was served on Plaintiffs <u>eight months ago</u>, in October 2019.

72.    <u>Defs.' Reply</u>:  Undisputed.  General Objection #1.  The cited testimony from Mr. Weiss speaks for itself.  (J. Weiss 5/21/20 30(b)(6) Dep. at 176:8–21).  Plaintiffs introduce no evidence that could create a genuine dispute as to the stated fact.  At best, Plaintiffs now attempt to argue that Mr. Weiss has no idea to whom he spoke at Costco.

73.    <u>Defs.' Reply</u>:  Undisputed.  General Objections #1, #4.  Plaintiffs offer no evidence to dispute this Paragraph.  *See also* SOF Reply ¶ 71.

74.    <u>Defs.' Reply</u>:  Undisputed.  *See* SOF Reply ¶¶ 71, 73.

75.    <u>Defs.' Reply</u>:  Undisputed.  General Objections #1, #7.  Plaintiffs identify no evi-dence that could create a genuine dispute as to the stated fact.  There is not a single document or any testimony from any person that KidKraft ever made any such statement.  Plaintiffs offer only speculation—that is not evidence that KidKraft ever made any such statement.  Mr. Drobnis's declaration says nothing about KidKraft taking any action or making any statement to any retailer.  And Paragraphs 112-113 only relate to Mr. Weiss's allegations as to what KidKraft purportedly said to him—they are not evidence of any statement ever made by KidKraft to any other customer.  There is no evidence in the record KidKraft ever said any-thing about NH toy kitchens to any customer other than OJC.  Nothing cited in Plaintiffs' Response is to the contrary.  There is no genuine dispute as to this fact.

76.    <u>Defs.' Reply</u>:  Undisputed.  *See* SOF Reply ¶ 75.

77.    <u>Defs.' Reply</u>:  Undisputed.  *See* SOF Reply ¶ 75.

78.    <u>Defs.' Reply</u>:  Undisputed as stated.  General Objections #1, #7.  Plaintiffs cite no evidence that could create a genuine dispute as to the stated fact.  First, as to all retailers other than OJC, Plaintiffs cite no evidence that KidKraft has ever entered into any such agreement.  There are no documents or testimony reflecting any such agreement—only Plaintiffs' speculation, which is not evidence.  Second, as to OJC, Plaintiffs cite no evidence that there was ever such an agreement.  For example, in the cited testimony, Jacob Weiss of OJC testified that *he proposed to a KidKraft salesperson* that "███████████████████████████████

████████████████████████████████████████████████████████████

████" (J. Weiss 5/21/20 30(b)(6) Dep. at 266:6-268:16).  But as Mr. Weiss testified, KidKraft *did not respond to Mr. Weiss's proposal. Id.*  Thus, even taking the cited testimony at face value, there was no such agreement between OJC and KidKraft.  In any event, it is also undisputed that OJC has at all relevant times sold the NH toy kitchen, confirming that there was no agreement that OJC would sell exclusively KidKraft products.  *See* SOF Reply ¶ 92.

79.    <u>Defs.' Reply</u>:  Undisputed as stated.  General Objections #1, #4.  Plaintiffs cannot create a genuine dispute as to a fact by claiming that they did not adequately follow up on their own third-party subpoenas, particularly now that the case is over a year into discovery.

80.    <u>Defs.' Reply</u>:  Undisputed as stated.  General Objection #7.  It is undisputed that KidKraft lost the in-store Costco business in 2017 to Teamson and the in-store Sam's Club account to Jupiter, as well as other accounts described in the evidence cited.  Plaintiffs assert additional facts that do not create a genuine dispute as to Paragraph 80.  First, the fact that KidKraft won the Costco business back in 2018 does not create a genuine dispute over the stated fact.  Moreover, it is undisputed that KidKraft subsequently lost the Costco business again in 2019, further underscoring that Paragraph 80 as stated is undisputed.  C. Vellturo Decl. ¶ 59; Hvidt Decl. Appx. IV.  Second, Plaintiffs assert that KidKraft did not lose the *website* business at Costco and BJ's, but that does not create a genuine dispute as to the stated fact, which (a) states that KidKraft lost a number of large accounts (which is not genuinely disputed), and (b) provides specific examples of the *in-store* business at Costco and Sam's Club (which also is not genuinely disputed).  Plaintiffs' reference to BJ's is particularly misleading because it is undisputed that KidKraft sold <u>zero</u> kitchens to BJ's in 2017 and 2018.

*See* SOF Reply ¶ 57.

81.     Defs.' Reply:  Undisputed as stated.  There is nothing misleading about Paragraph 81.  The Paragraph specifically states that it is not necessary to *build* a factory or *acquire* specialized equipment.  The cited testimony from Mr. Weiss speaks for itself.   Plaintiffs attempt to create a dispute by changing the statement to whether one needs to "utilize" a factory, but that is not what Paragraph 81 states.

82.     Defs.' Reply:  Undisputed as stated.  General Objection #7.

83.     Defs.' Reply:  Undisputed as stated.  General Objection #7.

84.     Defs.' Reply:  Undisputed as stated, as Paragraph 84 does not say that this is the only step that a supplier needs to take.

85.     Defs.' Reply:  Undisputed as stated.

86.     Defs.' Reply:  Undisputed as stated.  General Objection #7.  Plaintiffs' response does not relate to Paragraph 86.  Little Tikes and Step2 are branded suppliers, not "large retailers."

87.     Defs.' Reply:  Undisputed as stated.

88.     Defs.' Reply:  It is undisputed that there are hundreds of retailers who sell wooden toy kitchens to consumers in the U.S.  *See* MSJ Opp. Ex. 1 (Weiss Decl. ¶ 18).  Whether the figure is hundreds or thousands of retailers is not material for purposes of this Motion.  Therefore, Defendants will accept Plaintiffs' assertion for purposes of this Motion.

89.     Defs.' Reply:  Undisputed as stated.  General Objections #1, #4, #5, #7.  Defendants submitted abundant evidence supporting the stated fact, and Plaintiffs have asserted no evidence in response.  Finally, Plaintiffs' reference to a legal conclusion (whether KidKraft has monopoly power) does not create a genuine dispute as to the fact stated.

90.     Defs.' Reply:  Undisputed as stated.  General Objections #1.  With respect to any supplier other than KidKraft and NH, Plaintiffs do not attempt to dispute the stated fact.  *See also* SOF Reply ¶ 91.  With respect to NH kitchens, Plaintiffs cite no evidence indicating that Defendants ever prevented OJC from selling NH kitchens.  To the contrary, in Paragraph 92, Plaintiffs do not dispute that OJC sold NH kitchens at all times except when NH was sold out of its entire inventory. Further, Plaintiffs' expert's damages calculation does not create a genuine dispute as to the stated fact.

91.     Defs.' Reply:  Undisputed.

92.     Defs.' Reply:  Undisputed that OJC has sold NH toy kitchens at all times from 2013

to the present unless it was out of inventory from having sold its entire inventory.

93.    <u>Defs.' Reply</u>:   General Objection #7.   The cited testimony, from Plaintiffs' Rule 30(b)(6) designee, admits the stated fact.   Ex. 6 (J. Weiss 5/21/20 30(b)(6) Dep. at 71:21-72:3).   Plaintiffs cite no evidence that could create a genuine dispute regarding the admission of their owner and Rule 30(b)(6) designee.

94.    <u>Defs.' Reply</u>:   Undisputed as stated.   General Objection #7.   Plaintiffs' reference to their expert's damage model is not responsive and does not create a genuine dispute.

95.    <u>Defs.' Reply</u>:   Undisputed as stated.   General Objection #6.   Plaintiffs' argument about the "implication" of the stated fact does not create a genuine dispute as to the stated fact.

96.    <u>Defs.' Reply</u>:   Undisputed as stated.   General Objection #7.   Plaintiffs offer no evidence that creates a genuine dispute as to the stated fact.   In particular, they offer no evidence that Defendants ever prevented OJC from selling NH play kitchens on any of the identified distribution channels.   Instead, Plaintiffs assert different facts (whether they would have developed other NH kitchen models), which are themselves unsupported by the testimony they cite, as Mr. Weiss expressly testified that KidKraft did not enter into any agreement with him about other models of toy kitchens.   *See* SOF Reply ¶ 93.

DEFENDANTS' RESPONSES TO PLAINTIFFS' ADDITIONAL FACTS

97.    Defs.' Resp.:  Undisputed, but not material, that Plaintiffs' expert did the analysis described.  Dispute the reliability of Dr. Vanderhart's analyses, but the relevance of Dr. Vanderhart's analyses or opinions to liability issues is questionable, as she states she was retained only "to provide an independent opinion regarding the amount of damages owed to the Plaintiffs if liability is found in this matter."  *See* Ex. 3 (Vanderhart Rep. ¶ 2).

98.    Defs.' Resp.:  Undisputed, but not material, that Dr. Vanderhart primarily relied on NPD data.  General Objection #3.  Dispute the reliability of Dr. Vanderhart's analyses, *see* SOF ¶ 97.  Undisputed that Plaintiffs accurately quote Plaintiffs Opp. MSJ Ex. 23.  Disputed (as not properly established) that KidKraft identified NPD data as "the only source for toys point of sale data," as the document cited is an NPD-created document. *See id.*  Undisputed that KidKraft bought access to NPD data in 2018, used it occasionally, and employees referenced that KidKraft's top customers shared data with NPD.  Disputed that NPD data is accurate, as KidKraft considers NPD highly flawed, and KidKraft's own data produced in this case proves it is highly inaccurate.  Tab H, Rebutaal Expert Report of Christopher A. Vellturo, Ph.D. ("Vellturo Rebuttal Rep.") ¶¶ 47–54.  Disputed that NPD data was the best data available to calculate market share as market actors produced first-party sales data that Dr. Vanderhart disregarded. *Id.*

99.    Defs.' Resp.:  Disputed, but not material, because summary judgment is required regardless of the reliability of Plaintiffs' market share figures.  Paragraph 99 makes no mention of what market KidKraft supposedly has 75% of on a revenue basis.  Defendants dispute this calculation nonetheless, but it is not material for this motion.  Vellturo Rebuttal Rep. ¶¶ 44–72, Exs. 5.1–8.  For 2018, the available data show, on a conservative basis, that KidKraft had a share of less than 61.38% of wooden toy kitchens sold in the U.S.  C. Vellturo Decl. Ex. 5.  Even accepting Dr. Vanderhart's flawed method and data, if her errors are corrected, KidKraft's share in 2018 would have been lower than  stated. *Id.*

100.    Defs.' Resp.:  Disputed, but not material, because summary judgment is required regardless of the reliability of Plaintiffs' market share figures.  Defendants dispute this calculation and note its same errors for the same reasons stated in Paragraph 99.  For 2017, the available data show, on a conservative basis, that KidKraft had a share of less than 59.40% of wooden toy kitchens sold in the U.S.  C. Vellturo Decl. Ex. 5.

11

101.    <u>Defs.' Resp.</u>:  Disputed, but not material, because summary judgment is required regardless.  Defendants dispute this calculation and note its same errors for the same reasons stated in Paragraph 99.  Also, disputed as reliant on no evidence as Dr. Vanderhart conducted no analysis of share data in these years, as she relied primarily on NPD data but admits she did "not have NPD data" for 2014–16.  Ex. 3 (Vanderhart Rep. ¶ 49).  For 2016, Defendants maintain, on a conservative basis, KidKraft had a share of less than 67.99% of wooden toy kitchens sold in the U.S.  C. Vellturo Decl. Ex. 5.

102.    <u>Defs.' Resp.</u>:  General Objections #3, #5.  Disputed as to the subjective characterization and argument that recent attempts to enter "have met with extremely limited success."  However, the underlying *facts* about market entry and relative performance of recent entrants are undisputed.  *See also* SOF ¶ 80 (showing, for example, Teamson increased from 1% to 10% share in 5 years and won Costco business; Jupiter increased from 0 sales to 4% share in 2 years and won Sam's Club business;  C. Vellturo Decl. Ex. 5 (NH sales increased from $59k to $692.5k in 5 years); Vellturo Rebuttal Rep. Ex. 8.

103.    <u>Defs.' Resp.</u>:  General Objections #3, #5.  Disputed, but not material, as to the subjective characterizations.  C. Vellturo Decl. ¶ 95; Vellturo Rebuttal Rep. ¶¶ 73–82.

104.    <u>Defs.' Resp.</u>:  General Objections #3, #5.  Undisputed that KidKraft had prior relationships with Chinese factories.  Disputed, but not material as to the arguments and subjective characterizations as it would not be a challenge to find a Chinese factory to make a wooden toy kitchen.  *See* C. Vellturo Decl. ¶¶ 59, 95; Vellturo Rebuttal Rep. ¶¶ 73–82.

105.    <u>Defs.' Resp.</u>:  General Objections #3, #5.  Legal conclusion (KidKraft has "pricing power") is disputed.  Vellturo Rebuttal Rep. ¶¶ 83–100.  Plaintiffs' comparison of average selling prices across two years is not material because it is incomplete and meaningless as not adjusted for changes in product mix, customer mix, customer types, differences in shipping arrangements, or other such factors, and does not test or control for other factors (e.g., costs).  Vellturo Rebuttal Rep. ¶¶ 82–88.  A more appropriate analysis of the data shows no meaningful increase.  *Id.*  Any disagreement among the experts on this pricing analysis is not material for purposes of this Motion.

106.    <u>Defendants' Resp.</u>:  General Objections #1, #3, #5.  The first sentence is not supported by evidence, as there is none.  Legal conclusion (KidKraft has "market dominance") is disputed.  *Id.* ¶¶ 43–100.  Undisputed that KidKraft temporarily shut off Target's inventory

feed when Target violated KidKraft's pricing policy, but Plaintiffs' proposed conclusions from those events are disputed, and not material to the present Motion.   Disputed, but not material and not a fact, that such act is evidence that KidKraft has any sort of "market dominance." *Id.*  To the contrary, KidKraft's retail pricing policy shows that KidKraft *lacks* market power, Ex. 63 (KKI_0006184, at 86); Vellturo Rebuttal Rep. ¶¶ 82–88, the policy applies to several KidKraft products and most vendors in the U.S. have such policies.  Vellturo Rebuttal Rep. ¶ 91.

107.   <u>Defs.' Resp.</u>:  General Objections #1, #3, #5.  Undisputed that Paragraph 107 accurately quotes the cited documents.  Disputed that KidKraft has ever had and that MidOcean has ever considered KidKraft to have a "dominant position in the wooden toy kitchen market" and disputed that MidOcean ever believed that KidKraft had "monopoly power."  *See* Ex. 14 (MidOcean's 5/21/20 Reponse to Plaintiffs' ROG No. 4).  Before acquiring KidKraft, MidOcean personnel made the quoted statement based on limited information; and, after acquiring KidKraft, learned the statements were not consistent with marketplace realities. *See id.*

108.   <u>Defs.' Resp.</u>:  General Objection #3.  Undisputed that OJC was one of KidKraft's top 20 retailers at certain points, but, after 2011, OJC never accounted for more than 1% of KidKraft's U.S. sales, and accounted for approximately 0.1% of KidKraft sales in 2016.  C. Vellturo Decl. Ex. 7.  Undisputed that OJC's sales of KidKraft's products for calendar year 2015 were significantly higher than other years.  Undisputed that OJC's sales of KidKraft products plummeted in 2016.  SOF ¶ 17.  Disputed, but not material and unsupported, that OJC's 2016 decline of KidKraft's products was "largely driven by KidKraft's products being out of stock" and/or KidKraft's pricing policies.  C. Vellturo Decl. Ex. 3.  Disputed, but not material and unsupported, that Kidkraft was concerned about the lack of OJC sales. C. Vellturo Decl. ¶¶ 48-54.

109.   <u>Defs.' Resp.</u>:  General Objections #1, #3.  Undisputed Mr. Light sent the email in Ex. 29 and undisputed that KidKraft's salespersons were frustrated with OJC because they learned the "knockoff" kitchen OJC was selling was "back" after they had been dealing with "rebate BS" with OJC.  *See* Ex. 62 (KKI_0000496).  Disputed, and not supported by the cited evidence, that KidKraft entered into arrangement described.  In fact, the cited testimony says exactly the opposite.  *See* MSJ Opp. Ex. 10 (J. Weiss 5/21/20 30(b)(6) Dep. at 266:9–268:16)

("Q: So he [Mr. Wolfson] didn't – he did not respond to your proposal; is that correct? A: That is correct. Q: Did you ever follow up with Mr. Wolfson about that conversation and your proposal?  A: No.").

110.    Defs.' Resp.:  General Objections #1, #3, #5.  Undisputed Mr. Barr spoke with Mr. Weiss on November 23, 2016 and KidKraft terminated OJC within days of call.  The remaining facts asserted are not material and/or unsupported by evidence.  Disputed, but not material, Mr. Barr said the quoted threat or gave the quoted assurance. Ex. 13 (KidKraft's 5/21/20 Resp. to Pls.' ROG No. 1).  Disputed, but not material, that KidKraft refused to drop-ship merchandise to OJC customers that had paid in full.  Ex. 64 (KKI_0013738).  Disputed, but not material, that the percentage of average holiday sales constitutes a "large portion of OJC's sales" of KidKraft products for the year.  C. Vellturo Decl. ¶¶ 48-54; Ex. 3.  Disputed, but not material, that KidKraft informed OJC about issues.  See SOF ¶ 30.

111.    Defs.' Resp.:  General Objection #1, #3.  Undisputed OJC had low inventory of some KidKraft products on some days in 2016.  Disputed, but not material that inventory was the cause of OJC's low sales total.  C. Vellturo Decl. ¶¶ 48-54; Ex. 3.  The remaining facts are not material to this Motion and/or unsupported by evidence.

112.    Defs.' Resp.:  Undisputed, but not material for purposes of this Motion.

113.    Defs.' Resp.:  General Objections #1, #3.  OJC's assertion that it believes its kitchen was not a KidKraft knock-off is disputed, but it is not material to this Motion.  The remaining facts are not material to this Motion and/or unsupported by evidence.

114.    Defs.' Resp.:  General Objection #1, #3.  Undisputed that Costco declined NH's efforts to sell NH's wooden toy kitchen to Costco.  Disputed as unsupported that Mr. Weiss spoke to Costco's toy buyer in 2017 about why Costco did not stock NH's kitchen; and contradicted by Mr. Weiss's testimony (he believe he spoke with an individual who is an IT analyst).  See SOF ¶¶ 71–74; Ex. 6 (5/21/20 J. Weiss 30(b)(6) Dep. at 164:20-25).  Also disputed, but not material, that an unidentified Costco person said Costco "was unwilling to stock NH's wooden toy kitchen for fear of endangering Costco's business relationship with KK."  This assertion is not material because, even if true, it is not evidence (a) KidKraft ever said anything to Costco about NH, (b) KidKraft ever did anything to prompt such a fear, (c) the Costco individuals who make toy buying decisions held such a fear, or (d) that NH would have made a sale to Costco in the absence of this unidentified individual's fear, particularly because

14

Costco awarded its business to Teamson in the same time period.

115.    <u>Defs.' Resp.</u>:  General Objections #1, #3.  Disputed, but not material, and contra-dicted by evidence.  SOF ¶¶ 52–53, 114; Ex. 6 (5/21/20 J. Weiss 30(b)(6) Dep. at 164:20-25).

116.    <u>Defs.' Resp.</u>:  General Objection #1, #3, #5.  Disputed, but not material, as Plaintiffs mischaracterizes the cited incomplete exchange.  *See* Ex. 61 (COSTCO_ 00000730) (Triplett informing reports Costco has "not been focusing on the ecom only items" for vendors like KidKraft, that she spoke with KidKraft "[j]ust yesterday," and is meeting them in August).  The full email exchange reflects no fear of KidKraft, and it does not indicate KidKraft has "market power."  That a person at Costco was annoyed a person had not replied to an email after a few days has no relevance to this Motion.  *See* SOF ¶ 51 (undisputed KidKraft lowered its price and changed its designs at Costco's demand).

117.    <u>Defs.' Resp.</u>:  General Objection #1.  Ambiguous and unclear but not material.  Plain-tiffs do not assert that OJC was ever the lowest-priced seller of KidKraft products.  Instead, they assert OJC "generally"—for some unidentified set of products—tries to "meet or beat" its competitors' prices.  To the extent Plaintiffs assert OJC was the lowest-priced seller of KidKraft kitchens, the cited materials do not support that.  Indeed, evidence is the opposite, as data from OJC and *just 5* other retailers shows OJC was *almost never* the lowest-priced seller of KidKraft kitchens.  Vellturo Rebuttal Rep. ¶ 111, Ex. 4.

118.    <u>Defs.' Resp.</u>:  Undisputed.

119.    <u>Defs.' Resp.</u>:  Undisputed.

120.    <u>Defs.' Resp.</u>:  Disputed, but not material.  *See* SOF ¶¶ 29–33; D. Penn Decl. ¶ 12.  MSJ at 18–19 (claims fail whether MidOcean involved or not).

121.    <u>Defs.' Resp.</u>:  Undisputed.

122.    <u>Defs.' Resp.</u>:  Undisputed that KidKraft personnel review competing products as part of their general marketplace research.  Disputed, but not material, that KidKraft does so "[t]o develop a new product."  Ex. 65 (KKI_0025363, at 363) (KidKraft performs a competitor sample review to "[i]dentify KidKraft's strengths, weaknesses and opportunities within com-petitive marketplace.").  KidKraft takes real world kitchen concepts, and transforms them into innovative play kitchens through a several step design process.  Exs. 66–67 (KKI_0021384 at 457); KKI_0010412, at 428); Opp. MSJ Ex. 34, at KKI_0010387–90.

DATED:  June 18, 2020

Respectfully submitted,

*/s/ Joshua Lipton*
Joshua Lipton (*Pro Hac Vice*)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone:    202.955.8500
Facsimile:     202.467.0539
jlipton@gibsondunn.com

Scott K. Hvidt (*Pro Hac Vice*)
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue
Dallas, Texas  75201-6911
Telephone:  (214) 698-3317
Facsimile:  (214) 571-2981
shvidt@gibsondunn.com

-and-

Lawrence D. Silverman, Esq.
Florida Bar Number:  7160
Email:  lawrence.silverman@akerman.com
Alexandra M. Mora, Esq.
Florida Bar Number:  052368
Email:  alexandra.mora@akerman.com
AKERMAN LLP
Three Brickell City Centre
98 Southeast Seventh Street
Suite 1100
Miami, FL  33131
Phone:  (305) 374-5600
Fax:  (305) 374-5095

ATTORNEYS FOR DEFENDANTS

16

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 18th day of June, 2020, a true and correct copy of the foregoing brief was served via the Court's CM/ECF System upon all counsel of record.


<u>*/s/ Alexandra M. Mora*</u>
Alexandra M. Mora