UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO. 19-CV-60341-CIV-COOKE/SNOW

OJ COMMERCE LLC; and
NAOMI HOME, INC.,

                Plaintiffs,

v.

KIDKRAFT, INC.; and
MIDOCEAN PARTNERS IV, L.P.,

                Defendants.
_____/

DEFENDANTS' EXPEDITED MOTION FOR RECONSIDERATION OF ORDER
[D.E. 166] GRANTING EXPEDITED MOTION TO COMPEL PRODUCTION OF
DOCUMENTS

KidKraft, Inc. and MidOcean Partners IV, L.P. (collectively, "Defendants") respectfully request that the Court reconsider its Order on Expedited Motion to Compel (Dkt. No. 166). The Order indicates the Court has misperceived the issue, and this has led to a result that is improper and inconsistent with the Federal Rules. Also, Defendants request that, to the extent any relief is required, the Court reconsider the relief ordered as it (a) would lead to an inappropriate outcome and (b) is impossible to accomplish.

A. The Court Misperceived the Issue, Leading to an Improper Result

The Court states that Defendants have "withheld" documents "on the basis of relevance," and "with[e]ld[] 94% of the documents that were identified in the ESI search on the basis of relevance." Order at 1, 3. That is not accurate. Defendants have not withheld any documents from production on the basis of relevance. Any documents not produced were on the basis of Defendants' good-faith determination that they were *not responsive* to Plaintiffs' document requests. Accordingly, the Court's Order would require production of thousands of documents not responsive to any request—a clear abuse of discretion.

The fundamental error is apparently that responsiveness to ESI search terms was equated with responsiveness to Plaintiffs' document requests. Order at 4. That is not accurate.[1] Defendants agreed to run extremely broad search terms and then—as was understood and *agreed by Plaintiffs*—reviewed that very broad set of documents for responsiveness to Plaintiffs' document requests. And here, all such documents responsive to Plaintiffs' document requests have been produced. Defendants' process was sound under the Federal Rules, which do not require Defendants to produce documents that are not responsive to Plaintiffs' document requests.[2]

---

[1] *See, e.g., Youngevity Int'l Corp. v. Smith*, No. 2017 WL 6541106, at *10 (S.D. Cal. Dec. 21, 2017) ("Search terms are an important tool parties may use to identify <u>potentially responsive</u> documents . . . . <u>Search terms do not, however, replace a party's requests for production</u>.") (emphasis added) (concluding documents are not responsive to "requests for production solely because they hit on a search term the parties' agreed upon"); *Gardner v. Cont'l Cas. Co.*, 2016 WL 155002, at *2-3 (D. Conn. Jan. 13, 2016) (rejecting as "untenable" plaintiffs' request to compel all documents hitting on search terms because "when performing [Westlaw searches] not every case responsive to a search command will prove to be relevant to the legal issues" one sought to find).

[2] *See, e.g., Pendlebury v. Starbucks Coffee Co.*, 2005 WL 8156155, at *1–2 (S.D. Fla. Sept. 8, 2005) (denying motion to compel defendants to produce 70,000 non-responsive documents defendants determined to be not responsive to document requests); *SEC v. Merkin*, 2012 WL 3203037, at *3 (S.D. Fla. Aug. 3, 2012) (finding that "if [a document is] not responsive to a document request, then there is no obligation to log it"); *Maplewood Partners, L.P. v. Indian Harbor Ins. Co.*, 295 F.R.D. 550, 593 n.185 (S.D. Fla. 2013) (noting non-responsive documents should not be disclosed under the Federal Rules); *U.S. ex rel Fago v. M & T Mort. Corp.*, 235 F.R.D. 11, 19 (D.D.C. 2006) (denying motion to compel documents not responsive to discovery request); *Makowski vs. SmithAmundsen LLC*, 2012 WL 1634832, at *3 (N.D. Ill. May 9, 2012) (denying motion to compel

1

The Court's Order is clearly in error, as it would require Defendants to turn over large quantities of documents that (a) they have no obligation to produce under any construction of the Federal Rules, and (b) the Plaintiffs have specifically agreed need not be produced in this case. A few examples illustrate the inappropriateness of the outcome here:

1. Defendant MidOcean Partners IV, L.P. (party) is a <u>fund</u> that is managed by individuals who work at the private equity firm MidOcean Partners (non-party). The custodians for MidOcean Partners IV, L.P. are employed by and oversee entities that are not parties to this litigation. They are involved with portfolio companies *other than KidKraft* and evaluate many transactions having nothing to do with KidKraft or the toy industry. To require these custodians to turn over all documents that hit on overbroad search terms would result in production of documents relating to portfolio companies and transactions that are far outside the scope of Plaintiffs' document requests (and would clearly be objectionable if Plaintiffs had requested such documents). Moreover, the Court's order to produce non-responsive documents would likely compel MidOcean to violate non-disclosure agreements with non-party transactional counterparts with respect to documents that have nothing to do with KidKraft. This is a serious concern that is not remotely justifiable.

2. Defendant KidKraft has a number of divisions and operations that have nothing to do with this case. This case relates to alleged conduct in relation to a purported market for the sale of wooden toy kitchens in the U.S. KidKraft has operations outside the U.S. that have nothing to do with this case. KidKraft also sells many product lines—such as outdoor play, dollhouses, kids' furniture, and many others—that have nothing to do with this case and

---

production of non-responsive documents and holding that "Non-responsive documents need not be produced by Defendants. . . . While Plaintiff complains that she should not have to rely on Defendants' assessment of whether a document is relevant or not, this is the way the discovery process works. A party requests specific types of documents and the responding party conducts a search for and review of those documents, producing only what is responsive."); *P.S. ex rel. Nelson v. Farm, Inc.*, 2009 WL 939123, at *5 (D. Kan. Apr. 6, 2009) (denying production of documents not responsive to document request); *FlowRider Surf, Ltd. v. Pac. Surf Designs, Inc.*, 2016 WL 6522807, at *7-8 (S.D. Cal. Nov. 3, 2016) (rejecting effort to compel production of all search term hits without review); *Bancpass, Inc. v. Highway Toll Admin., LLC*, 2016 WL 4031417, *2-3 (W.D. Tex. July 26, 2016) (rejecting effort to compel production of all search term hits without review); *Chen-Oster v. Goldman, Sachs & Co.*, 2014 WL 716521, at *1 (S.D.N.Y. Feb. 18, 2014) (rejecting plaintiffs' contention that "defendants are obligated to produce all documents returned by the search without exercising further judgment with respect to responsiveness"); *Wilson v. Rockline Indus., Inc.*, 2009 WL 10707835, at *1 (W.D. Ark. Oct. 22, 2009) (rejecting motion to compel produce all documents hitting on search terms because "[i]n our system of law, we allow the party responding to discovery to filter his own documents. . . . In the absence of some showing that relevant information is being withheld-and here there is none-there is no basis to make the responding party produce all information. Indeed, to do so would make a mockery of F.R.C.P. 26(b)(1).").

Plaintiffs' document requests did not seek all documents relating to all of these product lines.[3] But to now require KidKraft to turn over all documents that hit on Plaintiffs' overbroad search terms would require the production of large numbers of documents from business lines that were not requested by Plaintiffs (and would have been objectionable if requested).

3. Plaintiffs specifically *agreed* on significant categories of documents that need not be produced, many of which were mutual agreements, but that Defendants would now be required to produce under the Order. The parties negotiated on this over several months that ended months ago. And, now, well outside of the 30-day limitation in the L.R. 26.1(g)(1),[4] Plaintiffs requested relief that turned Defendants' good faith discovery efforts on it heads.[5] Most problematically, the parties specifically agreed that neither party would be required to produce (or log) documents relating to prior litigation between the partoes. These litigation-related materials include internal analyses of potential settlement terms, which clearly should not be turned over to opposing counsel in this case. As a result of the Court's Order, however, KidKraft would be required to produce (or log) these litigation documents Plaintiffs previously agreed should be deemed non-responsive to their requests. And there are numerous other examples of document categories Plaintiffs agreed would be non-responsive but Defendants would now be required to produce. These documents were not "withheld on the basis of relevance"—they are simply not responsive to any document request in this case, based on the terms of the requests and the parties' agreements regarding their scope.

Furthermore, and respectfully, the Court misperceives the issues in asserting that Plaintiffs provided "examples of documents they say are responsive to their requests but have not been produced to date." Order at 1. As Defendants have repeatedly explained to Plaintiffs, and as set forth in Defendants' submission to the Court (Dkt. No. 148, Appx. A at

---

[3] For example, Plaintiffs' RFP No. 4 asked Defendants to produce "All documents and communications relating to any competitors' wooden toy kitchen." Ex. 1. Plaintiffs' RFP No. 5 asked Defendants to produce "All documents and communications that relate to or reference competition in the toy kitchen market." *Id.* And there are many other such Requests that are similarly defined. Defendants have produced such documents.

[4] Plaintiffs first raised concern over Defendants' responsiveness rate before their April 14, 2020 motion for extension of discovery cut-off. *See* Dkt. No. 122. That is over 60 days before the Motion underlying the Court's order here. Thus, at best, Plaintiffs' motion was 30 days untimely, and if analyzed based on the agreed limitations, objections and interpretations of their discovery requests, Plaintiffs' requested relief seeks to undo agreements as old as 120 days (end of meet and conferral on key requests for production) and some even as old as 1 year stale (when Defendants served their objections to Plaintiffs' first requests). *See* Ex. 1.

[5] *See, e.g., Dolan v. JetBlue Airways Corp.*, 2019 WL 3890846, at *1–2 (S.D. Fla. June 20, 2019) (M.J., Snow) (denying motion to compel discovery as untimely over dispute raised 30 days after it could have been).

3

3), Plaintiffs' "specific examples" are actually examples in which Defendants have *already produced all responsive documents*. For example, Plaintiffs complain about "competitor sample review" documents (¶ F(2)), but Defendants have confirmed that all such documents from the custodians' files have been produced. And Plaintiffs identify three emails and complain that no responses to the emails have been produced (¶ F(3-5)), but Defendants confirmed that any responses to those emails that exist have already been produced.[6]

Moreover, the harm to Defendants goes beyond merely having to turn over non-responsive documents to a hostile party. There would be substantial *financial harm* to Defendants in having to conduct a page-by-page re-review of over one million pages of non-responsive documents for confidentiality and privilege designations. There is no conceivable reason, for example, MidOcean should be required to incur the substantial expense to produce many thousands of documents that relate to companies and transactions that have nothing to do with KidKraft and are not responsive to any of Plaintiffs' requests. Defendants estimate, conservatively, that reviewing for confidentiality and privilege and creating a privilege log for these non-responsive documents that hit on the search terms would impose costs of approximately $700,000.[7] To require Defendants to incur these expenses for *non-responsive documents* would amount to an unjustifiable sanction on Defendants.

The Court accepted Plaintiffs' misleading characterization of their requested relief as a "new" issue, accepted Plaintiffs' mischaracterization of Defendants' document review, and misunderstood the facts (taking at face value Plaintiffs' assertion they have identified responsive documents that have not been produced). Conversely, Defendants were afforded a three-page brief, with no opportunity to be heard, and are now compelled to produce 100,000 nonresponsive documents. The Court, moreover, did not appreciate Plaintiffs' request sought to reverse long-agreed limitations on the scope of the document requests,[8] at

---

[6] In addition, Plaintiffs complain that several copies of an email chain were produced, but the original emails in the chain were not separately produced (¶ F(1)). Defendants have confirmed the original emails *did not hit on any of the search terms*, which explains why they were not produced. Defendants have also confirmed that all iterations of that email chain that *did* hit on the search terms have already been produced.

[7] Defendants estimate, on a conservative pace of 60-documents per hour, it would take its 1st-level contract reviewers (cost ~$40/hr) 1,666 hours to complete review of 100,000 non-responsive documents, its 2nd-level document reviewers (average rate $350/hr) 1,666 hours to complete 2nd-level review, and its privilege log would likely cost in the range of $50,000 to produce. On a very conservative basis, without any consideration of attorney time answering questions on privilege determinations, this estimates out to roughly $700,000.

[8] The reality is Plaintiffs raised this concern with the Court over 2 months ago, and Defendants responded promptly and in good faith by conducting an audit of their responsiveness review, and produced specific

4

the very end of discovery. With mere weeks to go in discovery, this Order throws out a year of Defendants' good faith compliance with discovery obligations and cooperation.

The Order to turn over non-responsive documents is an abuse of discretion, as the Eleventh Circuit held when reviewing a strikingly similar improper order. *In re: Ford Motor Co.*, 345 F.3d 1315, 1316-17 (11th Cir. 2003); *see also* n.2. In *In re Ford*, the Eleventh Circuit granted mandamus review to vacate an order allowing plaintiff to access defendants' documents not responsive to any discovery requests. The district court, like the Court here, "made no findings" that "[defendant] had failed to comply properly with discovery requests," and "did not discuss its view of [defendant]'s objections." *Id.* at 1317. The Eleventh Circuit concluded the district court "clearly abused its discretion" by granting the sweeping order without making "a factual finding of some noncompliance." Similarly, in *Pendlebury*, 2005 WL 8156155, at *1–2, Judge Seltzer denied a request to produce thousands of "allegedly non-responsive" documents based on plaintiff's concern about the raw aggregate percentage of documents marked responsive, and where, as here, there was no "extrinsic evidence" that the defendant's representations as to what is responsive should not be "presumed . . . valid representations." Accordingly, Defendants respectfully request that the Court reconsider the Order and deny Plaintiffs' motion as Defendants did not violate any discovery rule.

### B.   Compliance with the Order Is Impossible

The Order requires Defendants to complete a privilege and confidentiality review of 100,000 documents—potentially totaling in excess of a million pages—and prepare all the documents for production in just three business days. Completing that production in that time is impossible.[9] To the extent the Court insists on a massive dump of non-responsive documents, Defendants respectfully request they be afforded sufficient time to review documents to protect their privileges and confidentiality—particularly considering any non-Highly Confidential documents will immediately be reviewed by a competitor on a wholesale basis. If the Court declines to reconsider its Order, Defendants respectfully request that the Order be stayed to enable them to object to the Order.

---

documents requested by Plaintiffs that even went beyond prior agreements. That Defendants rejected Plaintiffs' latest proposal, which asked for relief outside the bounds of the Federal Rules, cannot be held against Defendants where Plaintiffs sought to reverse months of good faith compromise on this issue.

[9] Even at an unrealistically fast pace of 1 document per minute, it would take 29 attorneys working non-stop from the moment of the Court's June 24, 2020 Order through 5:00 PM ET on Monday, June 29 to complete this review. And that does not even estimate the many hours required to produce a privilege log.

CONCLUSION

Pursuant to L.R. 7.1(d)(2), Defendants respectfully request, on an expedited basis and by Friday, June 26, 2020, that the Court Reconsiders the Order Granting the Motion to Compel [Dkt. No. 166], or in the alternative, grants an order staying the case to enable Defendants to object to the Order.

DATED: June 25, 2020

Respectfully submitted,

/s/ Joshua Lipton
Joshua Lipton (*Pro Hac Vice*)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone:   202.955.8500
Facsimile:    202.467.0539
jlipton@gibsondunn.com

Scott K. Hvidt (*Pro Hac Vice*)
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue
Dallas, Texas 75201-6911
Telephone: (214) 698-3317
Facsimile: (214) 571-2981
shvidt@gibsondunn.com

-and-

Lawrence D. Silverman, Esq.
Florida Bar Number: 7160
Email: lawrence.silverman@akerman.com
Alexandra M. Mora, Esq.
Florida Bar Number: 052368
Email: alexandra.mora@akerman.com
AKERMAN LLP
Three Brickell City Centre
98 Southeast Seventh Street
Suite 1100
Miami, FL 33131
Phone: (305) 374-5600
Fax: (305) 374-5095

ATTORNEYS FOR DEFENDANTS

## REQUEST FOR EXPEDITED RULING

Request for Expedited Ruling: Pursuant to L. R. 7.1(d)(2), Plaintiffs seek an expedited ruling by June 26,2020 as the Court's Order Granting the Expedited Motion to Compel Production of Documents requires compliance with the Order, including the production of many thousands of documents on June 29, 2020.

## CERTIFICATE OF CONFERENCE

I hereby certify that, pursuant to Local Rule 7.3(b), Defendants' counsel conferred with counsel for Plaintiffs about the relief sought herein by telephone on June 25, 2020. Plaintiffs' counsel indicated that Plaintiffs opposed the relief Defendants seek in this Motion.

*/s/ Joshua Lipton*
Joshua Lipton

## CERTIFICATE OF SERVICE

I hereby certify that on the 25th of June, 2020, a true and correct copy of the foregoing brief was served via the Court's CM/ECF System upon all counsel of record.

*/s/ Alexandra Mora*
Alexandra Mora