UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 19-60341-Civ-COOKE/SNOW

OJ COMMERCE LLC, and
NAOMI HOME, INC.,

    Plaintiffs,

vs.

KIDKRAFT LP,
and MID-OCEAN PARTNERS LP

    Defendants.

_____/

## ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGEMENT

This matter is before the Court on Defendants' Motion for Summary Judgment ("Motion") (ECF NO. 130). As discussed below, the Motion is **GRANTED**.

### I. BACKGROUND

This is an antitrust action brought by Plaintiffs OJ Commerce, LLC and Naomi Home, Inc. against Defendants KidKraft Inc. and Mid-Ocean Partners L.P asserting the following causes of action: (i) monopolization under Section 2 of the Sherman Act; (ii) attempted monopolization under Section 2 of the Sherman Act; (iii) concerted refusal to deal under Section 1 of the Sherman Act; (iv) conspiracy to commit concerted refusal to deal under Section 1 of the Sherman Act; and (v) tortious interference with a contract and business relationship. *See* ECF No.1 at 8-12.

OJ Commerce, LLC ("OJC") is an online retailer that sells products to consumers through its website. ECF No. 131-1 at 2; ECF No. 144 at 2. OJC is also an "aggressive discounter," offering products to consumers at discounted prices. ECF No. 144 at 16. Naomi Home, Inc. ("Naomi Home") manufactures wooden play kitchens. Naomi Home and OJC are owned by the same individual, Jacob Weiss. ECF No. 131-1 at 3; ECF No. 144 at 2. KidKraft LP ("KidKraft") is a family owned manufacturer that sells many products including kids' furniture and wooden play kitchens. ECF No. 131-1 at 2; ECF No. 144 at 2. Mid-

Ocean Partners LP ("Mid-Ocean") is a private equity firm with some ownership interest in KidKraft.

Since 2011, OJC and KidKraft have had an agreement under which OJC was allowed to sell KidKraft products—including its wooden play kitchens—on its online platform. ECF No. 131-1 at 3; ECF No. 144 at 2. In 2012 or 2013, Naomi Home began manufacturing wooden play kitchens, and OJC began selling Naomi Home's wooden play kitchens sometime in 2013. ECF No. 131-1 at 3; ECF No. 144 at 2. Sometime after OJC started selling Naomi Home's wooden play kitchens, Matan Wolfson, a representative or employee of KidKraft had a conversation with Jacob Weiss about the Naomi Home wooden play kitchens. ECF No. 144-1- at 78-81. According to Weiss, who did not recall the exact details of the conversation, Wolfson was "very angry" about OJC selling what Wolfson reportedly considered a "competitive product." ECF No. 144-1- at 78-81. On the same call, Weiss offered to ensure that his company would refrain from producing any more products that would compete with KidKraft. ECF No. 144-1- at 78-81. This offer was never formally accepted, according to Weiss. ECF No. 144-1- at 78-81.

According to KidKraft's Executive Vice President of Sales, Chris Light, OJC's sister company's production and sale of its wooden play kitchens transformed OJC from customer to competitor in a manner that raised concerns about whether OJC could continue to advance KidKraft's interests. ECF No. 235-14 at 7. According to KidKraft, Naomi Home's wooden play kitchen was a "knock off" of KidKraft's wooden kitchens, and OJC was using KidKraft's as a "prop" to sell its sister company's wooden play kitchens. ECF No. 235-14 at 7; ECF No. 131-5 at 3. OJC disputes these statements. According to OJC, Mid-Ocean induced and directed KidKraft to terminate its relationship with OJC. ECF No. 144 at 16.

OJC continued to sell Naomi Home's wooden play kitchens, and in 2016, KidKraft terminated the agreement that allowed OJC to sell KidKraft's wooden play kitchens. There were some discussions about reestablishing the business arrangement, but the parties were not able to resolve their differences. After the failure to resolve this issue, Plaintiffs brought this lawsuit alleging antitrust violations and one state law claim. Defendants moved to dismiss the complaint, which the Court denied. *See* ECF No. 49. Defendants now move this Court for summary judgment on numerous grounds. Although Plaintiffs initially sought denial of

the motion on grounds enumerated in Rule 56(d), Plaintiffs have now conducted additional discovery and both parties have supplemented their briefs.

## II.   LEGAL STANDARD

Summary judgment is proper "when the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1314 (11th Cir. 2011); *see* Fed. R. Civ. P. 56(a), (c). Thus, the existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion. A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could find for the non-moving party. In determining whether a genuine dispute of material fact exists, the court must view the evidence and all factual inferences drawn therefrom in the light most favorable to the non-moving party and must resolve any reasonable doubts in the non-movant's favor. The non-moving party, however, "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-movant must go beyond the pleadings and "identify affirmative evidence" that creates a genuine dispute of material fact." *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998). "[M]ere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)).

## III.   DISCUSSION

OJC and Naomi Home allege: two antitrust claims under Section 2 of the Sherman Act: monopolization and attempted monopolization; two antitrust claims of concerted refusal and concerted refusal to deal under Section 1 of the Sherman Act; and one claim of tortious interference with a contract and business relationship. The Court addresses each claim in turn.

### A. Monopolization Claim

The Complaint alleges that KidKraft unilaterally terminated its relationship with OJC to maintain monopoly power in the relevant market and for anti-competitive reasons.

Section 2 of the Sherman Act prohibits monopolizing or attempting to monopolize "any part of the trade or commerce among the several States." 15 U.S.C. § 2. Merely possessing "monopoly power[,] [however,] will not be found unlawful unless it is accompanied by an element of anticompetitive conduct." *Verizon Commc'ns Inc. v. Law Offices of Curtis v. Trinko, LLP*, 540 U.S. 398, 407 (2004). It is "the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *Id.*

Businesses are generally free to choose the parties with whom they wish to deal, and monopolists are not excluded from this general rule. *Morris Communs. Corp. v. PGA Tour, Inc.*, 364 F.3d 1288, 1295 (11th Cir. 2004). This rule is not without exceptions. The Supreme Court has opined that there are some limited circumstances under which a refusal to deal can constitute anti-competitive conduct that gives rise to antitrust liability. *See Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 608-611, (1985). *See also Trinko, LLP*, 540 U.S. at 408 (2004) ("Under certain circumstances, a refusal to cooperate with rivals can constitute anticompetitive conduct and violate § 2. We have been very cautious in recognizing such exceptions…."). Before assessing whether there has been a Sherman Act violation, the Court must first determine the relevant market and whether the defendant possesses monopoly power in that market.

1. **The Relevant Market & Monopoly Power**

The relevant market is made up of two components: the geographic market and the product market. *Duty Free Americas, Inc. v. Estee Lauder Cos., Inc.*, 797 F.3d 1248, 1263 (11th Cir. 2015). The Complaint alleges that the relevant geographic market is the continental entire United States, and that that the relevant product market is the wholesale markets for wooden play kitchens. *See* ECF No. 1 at ¶¶ 17, 22. There is at least a genuine issue of material fact regarding what the relevant product market is and whether KidKraft possess monopoly power that market. Plaintiffs' expert opined that KidKraft had over 70% market share in the wooden play kitchen market in 2017 and 2018. ECF No. 144-3 at ¶ 48. Although Defendants' expert contends that "a wood-only market is not a valid antitrust market," Defendants' expert's report notes that KidKraft held at least 50% market share in the wooden play kitchen market in 2017 and 2018. Defendants' expert also suggests that the relevant product market might be toy kitchens as a whole—including plastic toy kitchens. Plaintiffs' expert disagrees

4

with this definition of the relevant product market. *McWane, Inc. v. F.T.C.*, 783 F.3d 814, 828 (11th Cir. 2015) (defining a product market as "products that have reasonable interchangeability for the purposes for which they are produced").

Plaintiff has established that material issues of fact exist as to the relevant product market and market power, making summary judgment on this issue inappropriate. *See Duty Free Americas, Inc.*, 797 F.3d at 1263 ("Defining the relevant product market is a fact-intensive endeavor."). In any event, whether or not KidKraft possessed monopoly power in the wooden play kitchen market or in another yet to be determined relevant product market, Defendants are entitled to summary judgment as discussed below.

### 2. Refusal to Deal

Plaintiffs seek to hold KidKraft liable under Section 2 of the Sherman Act for its refusal to deal with OJC because OJC continued selling Naomi Home's wooden play kitchens. OJC sold KidKraft's wooden play kitchens on its online platform between 2011 and 2016. In 2013, OJC's sister company began selling its own wooden play kitchens on OJC's online platform. Although the parties disagree about why, KidKraft ultimately ended the agreement that allowed OJC to sell its wooden play kitchens.

Unilateral conduct is generally protected from antirust liability. Even monopolists are not required to do business with rivals. In *Aspen*, the Supreme Court recognized a narrow exception to this general rule. In that case, the defendant owned three of four ski mountains in the relevant market and plaintiff owned the fourth. The parties had maintained a joint venture under which they sold a joint ticket to customers. This joint ticket provided admission to all four ski mountains, and the parties shared the profits according to mountain usage percentage. At some point, the defendants proposed a new business structure under which plaintiff would receive a fixed profit percentage, instead of a profit allocation based on usage. The fixed percentage was much lower than what plaintiff had earned in the past based on the usage of its mountain, so plaintiff rejected the offer. Defendant subsequently stopped including plaintiff's mountain in the joint ticket. Plaintiff tried to attract customers by offering its own three-day pass which also included three vouchers to defendant's ski mountains. The defendant, however, refused to honor these vouchers. On these facts, the Supreme Court found that the jury could have concluded that the defendant "elected to forgo…short-run benefits because it was more interested in reducing competition in the Aspen market over the

long run by harming its smaller competitor." *Id.* at 608. The Supreme Court has clarified that *Aspen* is a limited exception to the rule, and that it falls "at or near the outer boundary of § 2 liability" for unilateral conduct. *Trinko*, 540 U.S. at 409.

For the *Aspen* exception to apply, "the monopolist's conduct must be irrational but for its anticompetitive effect." *Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064, 1075 (10th Cir. 2013). Critical to the outcome in *Aspen* was the fact that competition was destroyed in the relevant market by the monopolist's conduct. Terminating the joint venture in that case was irrational but for its anti-competitive goal of phasing out the fourth ski lodge's business eventually. This is hardly the case here. Although the Court does not find this case to fall within the *Aspen* exception, even if it did, Plaintiffs' failure to establish harm to competition is fatal to their anti-trust claims.

### 3. Harm to Competition

Harm to competition is a necessary element of all private antitrust claims. *Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commc'ns, Inc.*, 376 F.3d 1065, 1069 (11th Cir. 2004). Alleging and showing harm to one or more competitors will not suffice. Here, Plaintiffs allege and contend that KidKraft's refusal to deal with OJC harmed competition in the form of increased prices and lowered consumer production selection. Harm to competition can be shown through "reduction of output, increase in price, or deterioration in quality" and the plaintiff claiming such harm "should point to the specific damage done to consumers in the market." *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1339 (11th Cir. 2010). The Complaint here does not even allege these specific facts, and Plaintiffs have not provided evidence of competitive harm. Sure, Plaintiffs assert that KidKraft did in fact raise the price of its wooden play kitchens in 2017 and in 2018. However, "[h]igher prices alone are not the epitome of anticompetitive harm. Rather, consumer welfare, understood in the sense of allocative efficiency, is the animating concern of the Sherman Act." *Id.*

Plaintiffs' expert also opines that the termination of the agreement caused harm to competition. *See* ECF No. 144-3 at 34. The report states that KidKraft's threat caused Naomi Home to halt production of some other new items that it would otherwise have continued to produce and ultimately provided to the public. *Id.* In addition to being speculative, the harm described here is harm to competitors—not harm to the competition process in general, as required by law. As such, Plaintiffs have failed to establish harm to competition.

6

Where Plaintiff cannot show actual damage to competition, Plaintiff can show anti-competitive effect by alleging and ultimately showing potential for genuine adverse effects on competition. To benefit from this alternative method of showing competitive harm, however, Plaintiff needs to, at minimum, "define the relevant market and establish that the defendants possessed power in that market." *Maris Distrib. Co. v. Anheuser-Busch, Inc.*, 302 F.3d 1207, 1213 (11th Cir. 2002). Here the Court has concluded that there are genuine issues of material fact regarding the relevant market and market power. However, even if these were adequately defined and uncontested, and KidKraft's market share was sufficient to establish market power, this, by itself, would be insufficient to establish adverse effect. *Spanish Broad. Sys.*, 376 F.3d at 1073 ("Market power, while necessary to show adverse effect indirectly, alone is insufficient.") (quoting *Tops Mkts., Inc. v. Quality Mkts., Inc.*, 142 F.3d 90, 97 (2d Cir. 1998)).

### 4. Business Justification for Refusal to Deal

"[R]efusal to deal that is designed to protect or further the legitimate business purposes of a defendant does not violate the antitrust laws, even if that refusal injures competition." *Morris Communs*, 364 F.3d at 1295. "A legitimate purpose renders any accompanying purpose irrelevant; regardless of motive no firm has a general duty to injure itself in order to benefit a rival." *Id.* at 1284 (quoting Areeda, Antitrust Law, Vol. IIIA, P1613(b) at 211). Once a defendant has shown valid business justifications, the burden shifts and the plaintiff must show that the defendant's business justifications are pretextual. *Id.*

KidKraft has asserted various reasons for its decision to terminate its agreement with OJC: it determined that the Naomi Home kitchens was a "knock off" of KidKraft's kitchen (ECF No. 137-57 at 2; 137-58 at 2); OJC's sales of KidKraft plummeted, which KidKraft took as an indication that OJC was less focused on selling its kitchens; KidKraft believed that OJC was using KidKraft's kitchen as a "prop" to sell the Naomi Home toy kitchen; KidKraft believed that OJC's use of KidKraft as described was detrimental to Kidkraft; and KidKraft considered OJC to be a difficult and costly customer to work with because OJC's disputes with the sales and accounting team consumed a significant portion of KidKraft's time and resources. These justifications are mostly supported by deposition testimony from Chris Light, KidKraft's Executive Vice President of Sales. Although it is questionable whether

7

Defendants have met their burden of establishing legitimate business justifications, the Court does not need to decide this issue because Plaintiffs have not shown harm to competition.[1]

### B. Attempted Monopolization Claim

Plaintiffs also assert an attempted monopolization claim under Section 2 of the Sherman Act, which prohibits attempts to monopolize. Also necessary to succeeding on a claim of attempted monopolization is establishing harm to competition. *Spanish Broad.*, 376 F.3d 1065, 1069 (11th Cir. 2004). Because Plaintiffs have failed to show harm to competition in general, their attempted monopolization claim also fails.

### C. Concerted Refusal and Conspiracy to Commit Concerted Refusal to Deal

Relying heavily on *Copperweld*, Defendants argue that Plaintiffs' concerted refusal to deal claims fail as a matter of law because KidKraft and Mid-Ocean are not separate entities. Liability under Section 1 of the Sherman Act requires prohibited behavior between two separate entities. In *Copperweld*, the Supreme Court opined that "[a] parent corporation and its wholly owned subsidiary are incapable of conspiring with each other for purposes of § 1 of the Sherman Act." *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 777 (1984). The parties agree that Mid-Ocean does not *wholly* own KidKraft. Defendants, however, argue that Mid-Ocean controls KidKraft, and is thus incapable of conspiring with it. Plaintiffs dispute whether this is, in fact, true, and the record indicates that there is at least a genuine issue of material fact on this issue. Although the Court agrees with Plaintiffs that the issue is material and disputed, summary judgment is still due to be granted because Plaintiffs have not shown the necessary element of harm to competition.

### D. Tortious Interference with Contract or Business Relationship

At the hearing on Defendants' motion to dismiss, Plaintiffs conceded that their state law claim relies on their ability to succeed on their antitrust claim. Having failed to establish their anti-trust claims, the Court also grants summary judgment. Moreover, an element of a

---

[1] The Court also notes that Plaintiffs have not meaningfully responded to Defendants' assertions of legitimate business purposes. Plaintiffs' main response to these assertions is that OJC was never informed of these reasons, even during negotiations to reinstate the agreement, and that KidKraft's failure to inform OJC of these reasons is evidence that they are pretextual. ECF No. 144 at page 29. However, the Court notes that the record contains enough evidence from which a jury could conclude that at least one of the reasons provided are pretextual. For example, although KidKraft maintains that one of the reasons it ended its relationship with OJC was OJC's status as a difficult customer, Chris Light testified that KidKraft did not cut OJC off from all its other products. *See* ECF No. 235-14 and 3-4.

tortious interference claim under Florida law is the absence of *any* justification, which Plaintiffs have not alleged or shown here. *See Johnson Enters, of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1321 (11th Cir. 1998).

## IV.  CONCLUSION

Defendants' Motion for Summary Judgment (ECF NO. 130) is **GRANTED** as explained above. The **CLERK** will **CLOSE** this case. All other pending motion, if any, are **DENIED** *as moot*.

**DONE and ORDERED** in Chambers, in Miami, Florida, this 30th day of March 2021.

*[signature]*
MARCIA G. COOKE
United States District Judge


Copies furnished to:
*Lurana S. Snow, U.S. Magistrate Judge*
*Counsel of Record*